**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| **FRED WATSON** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 4:17-cv-2187** |
| | ) | |
| **EDDIE BOYD III** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **and** | ) | |
| | ) | |
| **CITY OF FERGUSON, MISSOURI** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

### Introduction

1.   Ferguson Police officer Eddie Boyd III ("Defendant Boyd") unlawfully arrested and initiated charges against Plaintiff Fred Watson ("Mr. Watson") without probable cause and in retaliation for Mr. Watson engaging in protected First Amendment conduct, first by questioning Defendant Boyd's authority to demand irrelevant personal information and then by lodging a complaint in protest to Defendant Boyd's actions.

2.   The Defendant City of Ferguson ("Defendant Ferguson"), consistent with years-long customs and practices, ratified and enabled Defendant Boyd's conduct by charging and prosecuting Mr. Watson for the baseless allegations.

3.   As a result of the unlawful conduct of Defendants Boyd and Ferguson, Mr. Watson has been forced to hire multiple attorneys and defend himself against the City's unethical prosecution of fabricated charges for the past five years, losing employment, financial security, and a basic sense of faith in society along the way.

4.  Mr. Watson's experience has been highlighted by the United States Department of Justice as being emblematic of the unconstitutional practices that have persisted for many years in the City of Ferguson.

5.  Mr. Watson now brings this civil action under the First, Fourth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

## PARTIES

6.  Mr. Watson is a citizen of the United States of America and currently resides in the City of Fairview Heights, State of Illinois.

7.  Defendant Eddie Boyd III is a sworn peace officer employed by the City of Ferguson. All of Defendant Boyd's actions set forth in this Complaint were done under color of law. Defendant Boyd is sued in his individual capacity.

8.  Defendant City of Ferguson, Missouri, is a body politic and corporate organized and existing pursuant to Missouri law.

## JURISDICTION AND VENUE

9.  This cause is brought pursuant to 42 U.S.C. §1983. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), since the Defendants are located, and all of the incidents giving rise to this suit occurred, in this judicial district.

## FACTS

### Background and Arrest

10. Mr. Watson is a proud father and veteran of the United States Navy. At the time of the incidents described herein, Mr. Watson had been a government cybersecurity contractor for

nearly ten years, and for two years with the National Geospatial-Intelligence Agency. As a government contractor, he had top-secret security clearance.

11. On the afternoon of August 1, 2012, Mr. Watson was playing basketball with friends in Forestwood Park in the City of Ferguson, Missouri. After the game ended, Mr. Watson returned to his car to cool down.

12. As Mr. Watson sat in his car, Defendant Boyd approached Mr. Watson's vehicle. As Defendant Boyd approached, he appeared to unsnap the strap on his firearm holster.

13. Mr. Watson lowered his window three quarters of the way down so that he would be able to communicate with the officer.

14. Without reasonable suspicion of any unlawful behavior, Defendant Boyd immediately shouted, "Put your hand on the steering wheel! Do you know why I'm stopping you? Do you know why I pulled you over?"

15. Perplexed, Mr. Watson replied that he had not been pulled over; in fact, he had been sitting in his parked car trying to cool off for at least ten minutes.

16. Defendant Boyed then demanded Mr. Watson's license, insurance, and social security number.

17. Mr. Watson asked why Defendant Boyd needed that information when he had done nothing wrong. Defendant Boyd responded by suggesting that Mr. Watson could be a pedophile for all he knew, citing the presence of children in the park.

18. Not believing that Defendant Boyd had lawful justification for the request, Mr. Watson declined to provide Defendant Boyd with his social security number.

19. Mr. Watson did provide Defendant Boyd with his full name and Florida address (where he was domiciled at the time) and offered to provide his driver's license, which was located in the back of his car.

20. Apparently unhappy with Mr. Watson's questioning of him and refusal to provide a social security number, Defendant Boyd ordered Mr. Watson out of his vehicle.

21. Mr. Watson, his hands still on the steering wheel, asked Defendant Boyd for his name and badge number.

22. Defendant Boyd, now visibly upset, refused: "No, you don't need that. It'll be on your ticket."

23. Mr. Watson asked, "What ticket? I have not broken any law."

24. Defendant Boyd responded, "Well I think your tint is too dark and I can give you a ticket for that."

25. Mr. Watson responded, "Okay, sir, that's fine." At this point, Mr. Watson picked up his phone from his center console with his right hand and said that he was calling 911 himself.

26. Defendant Boyd yelled, "Put your fucking phone down and put your hands on the steering wheel!" Defendant Boyd also pulled out his gun and pointed it at Mr. Watson as he began calling for backup.

27. Mr. Watson complied, placing his hand back on the steering wheel.

28. Defendant Boyd then ordered Mr. Watson to throw the keys out of the car window and turn off the car.

29. Fearful of how Defendant Boyd might respond to any slight movement on his part, Mr. Watson replied that he was not going to throw the keys out of the window. Instead, he just sat still with his hands on the steering wheel waiting for the backup units to arrive.

30. After a few minutes, three additional Ferguson officers arrived on the scene, including one officer from the K-9 unit.

31. Mr. Watson heard Defendant Boyd state to the K-9 officer, "We could let the K-9 out to sniff around his shit and tear it up." The officer responded, "It's your call, whatever you want to do."

32. One of the officers came to Mr. Watson's vehicle and asked, "What's the problem? Why don't you just do what he asked so we don't have to take the dogs out, search your car and take you to jail? If you don't, that's exactly what's going to happen."

33. Mr. Watson provided the officer with his name and explained what had transpired before he arrived. He then stated that he would get out of the car, but would not give consent to search his vehicle. The officer replied, "Okay."

34. Mr. Watson raised his window, opened the door, and exited the vehicle. As he did so, Defendant Boyd screamed for Mr. Watson to get out slowly and put his hands behind his back. Mr. Watson complied.

35. Once Mr. Watson had fully exited, Defendant Boyd pushed him back against the car and squeezed the handcuffs onto his wrists. While being handcuffed, Mr. Watson used his leg to close the car door.

36. Defendant Boyd placed Mr. Watson in the back of a patrol vehicle and returned to speak with the other officers.

37. Defendant Boyd opened the door to Mr. Watson's car while speaking with the other officers. A few of the officers went over to the car, stuck their heads inside, and appeared to look around.

5

38. Minutes later, Mr. Watson watched as Defendant Boyd opened Mr. Watson's car and began rummaging through his personal belongings, including the glove compartment, center console, backpack, and pants left folded on the back seat, leaving Mr. Watson's items strewn all over the vehicle. Defendant Boyd searched the car in this fashion at least twice, once before a tow truck arrived and again with the truck driver present.

39. At one point, the officer who had spoken with Mr. Watson at his vehicle went to Mr. Watson's car, retrieved his phone, and brought it to Mr. Watson in the police car. The officer told Mr. Watson, "Just be cool and do whatever the officer tells you to do and things will be okay." Mr. Watson thanked him.

40. Defendant Boyd transported Mr. Watson to the Ferguson Police station.

41. At the station, a different officer completed the booking process with Mr. Watson. Mr. Watson asked this officer for his name and the officer promptly identified himself as Officer Hayden.

42. Mr. Watson then asked Officer Hayden for the name of the arresting officer and Defendant Boyd interjected, "Don't tell him that! It will be on his tickets."

43. When Mr. Watson asked if Defendant Boyd's badge number would be on the tickets as well, Defendant Boyd cut in and stated, "You are not privy to that information."

44. Officer Hayden completed the booking process by fingerprinting Mr. Watson, taking his mug shots, and placing him in a holding cell.

45. Mr. Watson was forced to pay a bond of $700 to secure his release.

46. Defendant Boyd initially issued Mr. Watson seven tickets for:

    a. Driving Without Operators License in Possession;

    b. Financial Liability Required;

      c.   Vision-Reducing Materials Applied to Windshield or Windows;

      d.   Failure to Register Vehicle;

      e.   Safety & Emission Testing; Inspection Sticker Required;

      f.   Seat Belts Required; and

      g.   Driving While License or Driving Privilege Revoked.

47. At the time of Mr. Watson's arrest, Mr. Watson had a valid driver's license, car insurance, and registration, all of which was inside of his vehicle. Neither Mr. Watson's windshield nor windows were illegally tinted. Further, Defendant Boyd issued a seat belt ticket despite the fact that Mr. Watson was parked and stationary at the time Defendant Boyd approached the vehicle.

48. When Mr. Watson finally received the tickets, Defendant Boyd's name was completely illegible. On five of the seven tickets, Defendant Boyd's badge number was left blank. On the other two tickets, the badge number had been scratched out. *See* Exhibit 1, Cit. No. 111787147 & 111787149.

49. Defendant Boyd's arrest of Mr. Watson was retaliatory and carried out despite a complete lack of probable cause.

**Retrieving Vehicle and Complaints against Defendant Boyd**

50. The following day, on August 2, 2012, Mr. Watson went to the tow yard at 1803 Chambers Road to retrieve his vehicle. When he arrived, he was told that he would need a release from the City of Ferguson in order to take the car.

51. Mr. Watson returned to Ferguson to pay the required fee to secure a release. The release documents identified Defendant Boyd as the arresting officer.

52. When Mr. Watson asked the clerk to confirm that this was true, she asked to have the paperwork back. Mr. Watson refused to return it.

53. Once he returned to the tow yard and retrieved his vehicle, Mr. Watson found that his clothes were thrown in the front of the car, his documents were pulled out of the glove compartment, items were missing from the center console—including $2,000 that he had intended to use on tuition payments for his children—and the contents of his backpack were dumped out all over the car.

54. The tow yard employee, who stated that Defendant Boyd was the only person he had witnessed going through the vehicle, agreed to witness Mr. Watson as he accessed the car for the first time and took photographs of its condition.

55. Mr. Watson then called the Ferguson Police Department to ask an officer to witness the condition of Mr. Watson's car and perform an inventory check. Ferguson Police Officer Dandridge told him that the tow yard was outside of the City's jurisdiction and that he needed to call St. Louis County.

56. Mr. Watson called St. Louis County Police, who sent an officer to the tow yard. When the officer arrived, he refused to witness the vehicle's condition or verify its contents, instead referring Mr. Watson back to the Ferguson Police.

57. Mr. Watson then went in person to the Ferguson Police Department and asked to speak to the chief about a complaint on Defendant Boyd. An assistant or subordinate officer came out and told Mr. Watson that the chief was not in the station and that there was no one available to speak with him about his complaint.

58. In retaliation for Mr. Watson's complaints, Defendant Boyd initiated additional charges for:

   a.   Failure to Comply with Order of Police Officer; and

   b.   False Declaration.

**Defendant Ferguson's Malicious and Unethical Prosecution of Mr. Watson**

59. Mr. Watson retained Attorney Freeman Bosley to defend him against the charges in the Ferguson Municipal Court.

60. On or about March 1, 2013, Mr. Watson pleaded not guilty to all of the charges against him.

61. Mr. Watson and his attorney provided Defendant Ferguson, through Ferguson Municipal Prosecutor Stephanie Karr[1], with proof of valid license, insurance, and vehicle registration. Despite this proof, Defendant Ferguson persisted with its prosecution of Mr. Watson on all charges.

62. On or about June 5, 2013, Mr. Watson's cases were certified to the Circuit Court of St. Louis County, with Mr. Watson's $700 bond transferring to the Circuit Court pursuant to Missouri Supreme Court Rule 37.24.[2]

63. On or about August 15, 2013, Mr. Watson's cases were remanded to Ferguson Municipal Court.

64. Thirty Dollars ($30) of Mr. Watson's $700 bond was retained by the Circuit Court of St. Louis County for the clerk's fee, and $670 returned to the Ferguson Municipal Court.

---

[1] At the time, Ms. Karr also served as City Attorney for Defendant Ferguson, in which capacity she was responsible for representing the City in civil matters, including, *inter alia*, suits brought against the City and its police department for wrongful arrests.

[2] Rule 37.24 requires, in part, that all bonds must be "transmitted forthwith to the clerk of the court in which the accused is required to appear." Mo. Sup. Ct. R. 37.24, *available at* http://www.courts.mo.gov/courts/ClerkHandbooksP2RulesOnly.nsf/c0c6ffa99df4993f86256ba50057dcb8/0b0128d4 c2de3e1e86256ca6005212e5?OpenDocument.

65. On or about August 26, 2013, Defendant Ferguson, without lawful justification or approval from Mr. Watson, appropriated Mr. Watson's $670 bond as payment of fines for case numbers 111787144 – 111787150 (the seven original charges).

66. At no point in time did Mr. Watson plead guilty to any offense charged by the City of Ferguson, nor did Mr. Watson authorize his then-attorney Freeman Bosley to enter a guilty plea on his behalf.[3]

67. Furthermore, Mr. Watson would not have voluntarily pleaded guilty to any of the charges against him, as he did not wish to risk any convictions that could endanger his high-level security clearance.

68. According to Defendant Ferguson's court records, at least twice between October 2013 and April 2014, warrants for Failure to Appear were issued against Mr. Watson on the Failure to Comply and False Declaration charges.

69. On February 26, 2014, Ferguson Prosecutor Karr sent a recommendation regarding the charges against Mr. Watson for Failure to Appear ($152 fine), Failure to Comply ($542 fine), and False Declaration ($327 fine) to Attorney Bosley.

70. On or about April 9, 2014, Mr. Watson retained a second attorney, Bevis Schock, to represent him regarding his charges still pending in Ferguson, prompting Ferguson Prosecutor Karr to resend the recommendation for Failure to Appear, Failure to Comply, and False Declaration to Attorney Schock.

71. On April 29, 2014, Attorney Schock certified Mr. Watson's pending cases to the St. Louis County Circuit Court.

---

[3] In a letter dated July 12, 2016, Attorney Bosley confirms, "I represented Mr. Watson in the City of Ferguson in early February 2013. Mr. Watson did not accept any of the recommendation [*sic*] I obtained for him.") *See* Exhibit 2, Ltr. From Bosley to Hall.

72. On or about November 13, 2014, Mr. Watson's cases were inexplicably remanded back to the Ferguson Municipal Court, and Ferguson Prosecutor Karr produced yet another recommendation.

73. Mr. Schock describes the time from his appearance on the case until January 22, 2015 as follows:

> There then ensued endless maneuvering by the city back and forth, which, right or wrong, I interpreted as an unwillingness on the part of the city to either try the add-on cases or dismiss them. For example I filed papers to transfer all the cases to the Circuit Court of St. Louis County, but the Ferguson Municipal court only transferred those tickets against Mr. Watson which were for failure to appear. I tried other approaches to getting a resolution, but despite countless letters, phone calls and in-person visits to Ms. Karr's office, I was unable to resolve the matters.

Exhibit 3, Ltr. From Schock re: Fred Watson, 2.

74. On or about January 22, 2015, Attorney Schock appeared on Mr. Watson's behalf in the Ferguson Municipal Court. Attorney Schock recalled the events as follows:

> I appeared in court with Mr. Watson and, as is customary, I went to a 'back room' to meet with the Prosecuting Attorney, Stephanie Karr. Ms. Karr then told me that the cases had been rolled up into the disposition of the original tickets by Mr. Bosley and that these charges had in fact not even been pending for the prior year. . . . I don't quite understand how she could take that position given that she had taken positions contrary to that position throughout that time period.

*Id.*

75. On January 22, 2015, a recommendation was sent to Mr. Watson's attorney, and the False Declaration and Failure to Comply charges were amended to littering.

76. On the very next day, January 23, 2015, Mr. Watson's fines were either stayed or paid off, according to Ferguson.

77. Mr. Watson made no such payment. Instead, it appears that the record was manipulated in such a way as to account for the mishandling and improper prosecution of Mr. Watson's cases.

11

78. On or about January 26, 2015, Ferguson Prosecutor Karr wrote Attorney Schock a letter stating that Mr. Watson's cases had all been resolved and that "All fines have been paid. Mr. Watson does not owe any amount to the City of Ferguson as of the date of this letter." Exhibit 4, Ltr. From Karr to Schock.

79. At no point in time did Mr. Watson either plead guilty to any offense charged by Defendant Ferguson, authorize Attorney Schock to enter a guilty plea on his behalf, or authorize the appropriation of his bond money to pay fines associated with any charges.

80. On or about May 19, 2016, Mr. Watson, through his current counsel at ArchCity Defenders, requested in writing Mr. Watson's complete court file from Defendant Ferguson following months of oral requests by Mr. Watson having been declined or ignored. The file was subsequently provided.

81. On or about August 2, 2016, Mr. Watson filed a Motion to Withdraw Guilty Pleas and Declare Convictions Void for all charges stemming from Mr. Watson's arrest on August 1, 2012.

82. On December 12, 2016, Ferguson Municipal Judge Terry L. Brown granted the motion, set aside the guilty pleas attributed to Mr. Watson, and set Mr. Watson's cases for trial.

83. On February 10, 2017, Mr. Watson filed a motion to certify all pending matters to the St. Louis County Associate Circuit Court for jury trial. The case was filed with the St. Louis County Circuit Court clerk 77 days later, on April 28, 2017.

84. At the time of this filing, five years after Mr. Watson's initial arrest on August 1, 2012, Defendant Ferguson continues to prosecute Mr. Watson for all of the charges initiated by Defendant Boyd.

**Mr. Watson's Loss of Employment**

85. Mr. Watson was in the process of a security clearance review at the time that Defendant Boyd initiated false charges against him.

86. Due to the review, Mr. Watson immediately reported the charges to supervisors at the National Geospatial-Intelligence Agency (NGA). He assured them that the charges were meritless and that he was seeking to get them resolved.

87. As time passed with no resolution, he continued to face questions regarding the pending charges, and his security clearance remained under review.

88. Eventually, with the cases still active in Ferguson, Mr. Watson's clearance was suspended pending final review, leaving him in a state of limbo that prevented him from performing the sort of cybersecurity work that he had done for years.

89. In August of 2014, Mr. Watson was fired from the NGA because he could no longer work without the security clearance.

90. Without this clearance, Mr. Watson is unable to find employment in the highly specialized field of government cybersecurity. As a result, he has remained jobless for most of the past five years and is now undertaking efforts to begin a new career.

**U.S. Department of Justice Report**

91. On March 4, 2015, the United States Department of Justice Civil Rights Division published its *Investigation of the Ferguson Police Department*. *See* Exhibit 5.

92. The 105-page report detailed myriad constitutional violations by Defendant Ferguson, particularly with respect to its police department and municipal court.

93. With respect to the Ferguson Municipal Court, the report concluded in part that:

> [w]hile the Municipal Judge presides over court sessions, the Court Clerk, who is employed under the Police Chief's supervision, plays the most significant role in managing the court and exercises broad discretion in conducting the court's daily operations. Ferguson's municipal code confers broad authority on the Court Clerk, including the authority to collect all fines and fees, accept guilty pleas, sign and issue subpoenas, and approve bond determinations. Ferguson Mun. Code § 13-7. Indeed, the Court Clerk and assistant clerks routinely perform duties that are, for all practical purposes, judicial. For example, documents indicate that court clerks have disposed of charges without the Municipal Judge's involvement.

*Id.* at 8.

94. The DOJ report provides extensive support for its conclusion that "[Ferguson] City officials have consistently set maximizing revenue as the priority for Ferguson's law enforcement activity," *id*. at 9-15, and that "City, police, and court officials for years have worked in concert to maximize revenue at every stage of the enforcement process, beginning with how fines and fine enforcement processes are established," *id*.

95. Under the section titled *Police Practices*, the DOJ found that the Ferguson Police Department engaged in a pattern of constitutional violations and specifically cited the instant matter as an example of Defendant Ferguson's "routine misconduct":

> [The] culture within FPD influences officer activities in all areas of policing, beyond just ticketing. Officers expect and demand compliance even when they lack legal authority. They are inclined to interpret the exercise of free-speech rights as unlawful disobedience, innocent movements as physical threats, indications of mental or physical illness as belligerence. Police supervisors and leadership do too little to ensure that officers act in accordance with law and policy, and rarely respond meaningfully to civilian complaints of officer misconduct. The result is a pattern of stops without reasonable suspicion and arrests without probable cause in violation of the Fourth Amendment; infringement on free expression, as well as retaliation for protected expression, in violation of the First Amendment; and excessive force in violation of the Fourth Amendment.
>
> Even relatively routine misconduct by Ferguson police officers can have significant consequences for the people whose rights are violated. For example, in the summer of 2012, a 32-year-old African-American man sat in his car cooling off after playing basketball in a Ferguson public park. An officer pulled up behind

the man's car, blocking him in, and demanded the man's Social Security number and identification. Without any cause, the officer accused the man of being a pedophile, referring to the presence of children in the park, and ordered the man out of his car for a pat-down, although the officer had no reason to believe the man was armed. The officer also asked to search the man's car. The man objected, citing his constitutional rights. In response, the officer arrested the man, reportedly at gunpoint, charging him with eight violations of Ferguson's municipal code. One charge, Making a False Declaration, was for initially providing the short form of his first name (e.g., "Mike" instead of "Michael"), and an address which, although legitimate, was different from the one on his driver's license. Another charge was for not wearing a seat belt, even though he was seated in a parked car. The officer also charged the man both with having an expired operator's license, and with having no operator's license in his possession. The man told us that, because of these charges, he lost his job as a contractor with the federal government that he had held for years.

*Id.* at 2-3.

## CAUSES OF ACTION

## COUNT I

## UNLAWFUL SEIZURE BY DEFENDANT BOYD IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS COGNIZABLE UNDER 42 U.S.C. § 1983

For his cause of action against Defendant Boyd in Count I, Mr. Watson states:

96. By this reference, Mr. Watson incorporates each and every allegation and averment set forth in the preceding paragraphs as though fully set forth herein.

97. Defendant Boyd did not have probable cause to arrest Mr. Watson.

98. Defendant Boyd unreasonably seized Mr. Watson, thereby depriving Mr. Watson of his right to be free from unreasonable seizure of his person in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

99. Further, Mr. Watson was seized and remains seized by virtue of the charges instigated by Defendant Boyd and ratified by Defendant Ferguson through its ongoing prosecution.

100.     As a direct result of the conduct of Defendant Boyd described herein, Mr. Watson suffered damages including: great concern for his own safety; fear, apprehension, depression, anxiety, consternation and emotional distress; loss of employment; lost time; and loss of faith in society.

101.     The acts of Defendant Boyd described herein were intentional wanton, malicious, and/or were callously indifferent to the rights of Mr. Watson, thus entitling Mr. Watson to an award of punitive damages against Defendant Boyd.

102.     If Mr. Watson prevails, he is entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Fred Watson respectfully prays that this Court enter judgment in his favor and against Defendant Boyd for compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.

## COUNT II

## UNLAWFUL RETALIATION BY DEFENDANT BOYD IN VIOLATION OF THE FIRST AMENDMENT COGNIZABLE UNDER 42 U.S.C. §1983

For his cause of action against Defendant Boyd in Count II, Mr. Watson states:

103.  By this reference, Mr. Watson incorporates each and every allegation and averment contained in the preceding paragraphs as though fully set forth herein.

104.  Mr. Watson was engaged in lawful First Amendment conduct when he spoke with and questioned Defendant Boyd in Defendant Boyd's capacity as a law enforcement officer, including when Mr. Watson asked that Defendant Boyd provide his name and badge number.

105.  In retaliation for this exercise of his First Amendment rights, Defendant Boyd arrested and initiated charges against Mr. Watson.

16

106. Subsequently, Mr. Watson engaged in lawful First Amendment conduct by seeking to file a complaint about his treatment by Defendant Boyd.

107. In retaliation for this exercise of his First Amendment rights, Defendant Boyd initiated additional, more serious charges against Mr. Watson.

108. A police officer stopping, seizing, arresting, incarcerating, and charging a person, supporting charges against a person by writing an Incident Report, and standing ready to testify to the substance of what is written against a person would chill a person of ordinary firmness from continuing to question, challenge, or complain about police activity.

109. Defendant Boyd acted in retaliation against Mr. Watson, and for the purpose of deterring Mr. Watson from exercising his rights under the First Amendment to question, challenge, and subsequently complain about Defendant Boyd's actions in his capacity as a law enforcement officer.

110. The conduct of Defendant Boyd in stopping, seizing, arresting, incarcerating, and charging Mr. Watson, supporting charges against Mr. Watson by writing an Incident Report, and standing ready to testify to the substance of what he wrote against Mr. Watson violates the First Amendment to the United States Constitution in that Defendant Boyd deprived Mr. Watson of his right to free speech by acting in retaliation against Mr. Watson and for the purpose of deterring Mr. Watson from questioning, challenging, or complaining about Defendant Boyd's actions in his capacity as a law enforcement officer.

111. As a direct and proximate result of the conduct of Defendant Boyd, Mr. Watson suffered injuries and damages including but not limited to: great concern for his own safety; fear, apprehension, depression, anxiety, consternation and emotional distress; suppression of his First

Amendment right to freedom of speech, punishment for exercising his First Amendment rights; lost time; and loss of faith in society.

112.  The acts of Defendant Boyd described herein were intentional, wanton, malicious, and/or were callously indifferent to the rights of Mr. Watson, thus entitling Mr. Watson to an award of punitive damages against Defendant Boyd.

113.  If he prevails, Mr. Watson is entitled to recover attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Fred Watson respectfully prays that this Court enter judgment in his favor and against Defendant Boyd for compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.

## COUNT III

### MALICIOUS PROSECUTION BY DEFENDANT BOYD IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS COGNIZABLE UNDER 42 U.S.C. § 1983

For his cause of action against Defendant Boyd in Count III, Mr. Watson states:

114.  Mr. Watson incorporates by reference the allegations and averments contained in the preceding paragraphs of this Complaint as though fully set forth herein.

115.  Defendant Boyd caused to be issued and assisted in the prosecution of the following quasi-criminal municipal charges:

    a.  Driving Without Operators License In Possession;

    b.  Financial Liability Required;

    c.  Vision-Reducing Materials Applied to Windshield or Windows;

    d.  Failure to Register Vehicle;

    e.  Safety & Emission Testing; Inspection Sticker Required;

  f. Seat Belts Required

  g. Driving While License or Driving Privilege Revoked;

  h. Failure to Comply with Order of Police Officer; and

  i. False Declaration.

116. Defendant Boyd was motivated in the pursuit of quasi-criminal charges against Plaintiff Watson not by a belief that the charges had any factual or legal merit or that probable cause for their issuance existed, but for malicious, improper, illegal, and unconstitutional purposes:

  a. Defendant Boyd sought to protect himself from civil and/or criminal liability for the unlawful treatment of Mr. Watson as described in this Complaint by initiating the falsified charges against Plaintiff Watson; and

  b. Defendant Boyd sought to punish Mr. Watson for exercising legally and constitutionally protected rights.

117. Defendant Boyd falsified official reports on the quasi-criminal charges and provided false statements in an attempt to secure a conviction against Plaintiff.

118. Defendant Boyd's conduct as described above violated of Mr. Watson's right to be free of unreasonable and unlawful seizure, secured by the Fourth and Fourteenth Amendments to the United States Constitution and actionable under 42 U.S.C. § 1983.

119. As a direct result of the conduct of Defendant Boyd described herein, Mr. Watson suffered damages including: lost time and resources expended on defending himself against false charges; fear, apprehension, depression, anxiety, consternation and emotional distress; loss of employment; and loss of faith in society.

120.  The acts of the Defendant as described above were intentional, wanton, malicious, oppressive, reckless and callously indifferent to the rights of Mr. Watson, thus entitling Mr. Watson to an award of punitive damages against Defendant Boyd.

121.  If he prevails, Mr. Watson is entitled to recover attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Fred Watson respectfully prays that this Court enter judgment in his favor and against Defendant Boyd for compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.

## COUNT IV

### MUNICIPAL LIABILITY AGAINST THE CITY OF FERGUSON COGNIZABLE UNDER 42 U.S.C. § 1983

For his cause of action against Defendant Ferguson in Count IV, Mr. Watson states:

122.  Mr. Watson incorporates by reference the allegations and averments contained in the preceding paragraphs of this Complaint as though fully set forth herein.

123.  At all times relevant to this Complaint, Defendant Boyd, as a police officer of the Ferguson Police Department, was acting under the direction and control of the Defendant City of Ferguson, which acted through its agents and employees who were responsible for making policy of the Police Department, its officers, and operations.

124.  Defendant Boyd was acting pursuant to either official policy or the practice, custom, and usage of Defendant Ferguson and its Police Department.

125.  Defendant Ferguson has and has had a custom and usage of taking law enforcement action, including making arrests and pursuing charges against individuals, like Mr. Watson, who are engaged in activity protected by the First Amendment to the United States Constitution.

126.  Defendant Ferguson is and has been aware that its police officers take law enforcement action against individuals, like Mr. Watson, who are engaged in activity protected by the First Amendment to the United States Constitution and has been deliberately indifferent in its duty to correct, supervise, control, and, when appropriate, discipline its agents, officers, and employees when they have committed acts that violate the constitutional rights of those they encounter.

127.  Defendant Ferguson, rather than taking affirmative steps to stop the unlawful practices of its officers, agents, and employees, has ratified the malfeasance by prosecuting alleged violations of Ferguson ordinances against people who have engaged in lawful and/or constitutionally-protected activity, like Mr. Watson, when the City knew or should have known that the charges were without merit.

128.  After an arrest is made or citation issued, it is the policy or custom and usage of Defendant Ferguson, acting through its officers, agents and employees, to create a record including charges, police reports, public statements, and testimony, that purports to provide legal justification for the arrest or citation, even in the absence of probable cause for the arrest or citation.

129.  The Department of Justice has observed that "[i]n Ferguson ... officers frequently make enforcement decisions based on what subjects say, or how they say it." Ex. 5 at 24-25.

130.  Detailing three incidents, in addition to Mr. Watson's arrest, occurring in February 2012, July 2012, and February 2014 as examples of what the report calls "contempt of cop cases"—cases in which Ferguson police officers arrest and charge civilians for lawfully exercising their First Amendment rights to free speech—the DOJ observed, "These accounts are drawn entirely from officers' own descriptions, recorded in offense reports. That FPD officers believe criticism and insolence are grounds for arrest, and that supervisors have condoned such

21

unconstitutional policing, reflects intolerance for even lawful opposition to the exercise of police authority." *Id.* at 25-26.

131.  Defendant Boyd, in particular, has faced multiple allegations of past misconduct as a police officer, including at least one that was sustained by a previous department.[4]

132.  In the instant case, Defendant Boyd lied and initiated unfounded charges against Mr. Watson. This behavior went unchallenged by at least two Ferguson Municipal Prosecutors despite sufficient evidence in their possession to demonstrate the falseness of the charges and stop the prosecution of Mr. Watson.

133.  The Department of Justice noted that the Ferguson Municipal Prosecutor has previously allowed an FPD officer to testify without informing opposing counsel that the officer "had previously been found untruthful during an official FPD investigation." *Id.* at 44.

134.  That officer is Defendant Boyd.

135.  Despite Defendant Boyd's history, Defendant Ferguson has done nothing to correct and prevent his improper and unconstitutional behavior. Instead, Defendant Ferguson has continued to enable and empower Defendant Boyd as a sworn FPD officer.

136.  As a direct and proximate result of the conduct of Defendant Ferguson, Mr. Watson suffered injuries and damages, including but not limited to: great concern for his own safety; lost time and resources expended on defending himself against false charges; fear, apprehension, depression, anxiety, consternation, and emotional distress; suppression of his First Amendment

---

[4] *See, e.g.*, "At Least 5 Ferguson Officers Apart from Brown Shooter Have Been Named in Lawsuits," *Washington Post*, Aug. 30, 2014, https://www.washingtonpost.com/politics/at-least-6-ferguson-officers-apart-from-brown-shooter-have-been-named-in-lawsuits/2014/08/30/535f7142-2c96-11e4-bb9b-997ae96fad33_story.html?utm_term=.a7c408a47ea6; "Push to Keep 'Gypsy Cops' with Questionable Pasts Off the Streets, *CBS News*, Sept. 27, 2016, http://www.cbsnews.com/news/gypsy-cops-with-questionable-pasts-hired-by-different-departments-lack-of-oversight-police/.

right to freedom of speech and punishment for exercising his First Amendment rights; loss of employment; and loss of faith in society.

137.  If he prevails, Mr. Watson is entitled to recover attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Fred Watson respectfully prays that this Court enter judgment in his favor and against Defendant City of Ferguson for compensatory damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.


Date submitted: July 31, 2017                          Respectfully Submitted,

                                                      **ARCH CITY DEFENDERS**

                                                      By: */s/ Blake A. Strode*_____
                                                          Thomas B. Harvey (MBE #61734MO)
                                                          Michael John Voss (MBE #61742MO)
                                                          Blake A. Strode # (MBE #68422MO)
                                                          Nathaniel R. Carroll (MBE #67988MO)
                                                          1210 Locust Street, 2nd Floor
                                                          Saint Louis, MO 63103
                                                          855-724-2489 ext. 1015
                                                          314-925-1307 (fax)
                                                          tharvey@archcitydefenders.org
                                                          mjvoss@archcitydefenders.org
                                                          bstrode@archcitydefenders.org
                                                          ncarroll@archcitydefenders.org

                                                      *Attorneys for Plaintiff*