**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

FRED WATSON,                 )
                                     )
           Plaintiff,           )      Case No. 4:17-cv-2187-RLW
                                       )
    v.                                   )
                                     )
CITY OF FERGUSON, MISSOURI, et al.    )
                                     )
           Defendants.       )

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR JOINT**
**MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff Freddie "Fred" Watson ("Plaintiff" or "Watson") filed his First Amended Complaint asserting various claims under 42 U.S.C. § 1983, including claims against Defendant Eddie Boyd ("Officer Boyd") for Unlawful Search and Seizure (Count I); Unlawful Retaliation (Count II); and Malicious Prosecution (Count III); and a claim against the City for *Monell* municipal liability (Count IV). The undisputed facts in this case establish that Officer Boyd had probable cause to detain, investigate, question, and ultimately arrest Watson.  Because of such probable cause and because any other actions taken by Officer Boyd were objectively reasonable as a matter of law, Watson is not entitled to any recovery on any of his claims against either of the Defendants. Moreover, even if no probable cause is established, Officer Boyd is entitled to qualified immunity and Defendants entitled to summary judgment on each of Plaintiff's claims. For these reasons and those discussed more fully below, Defendants are therefore entitled to summary judgment on each of the claims against them.

**BACKGROUND**

On August 1, 2012, Officer Boyd was patrolling at Forestwood Park, where there had been a spate of recent car break-ins. (*See* Defendants' Joint Statement of Undisputed Material Facts ("SUMF") ¶2). At approximately 8:17 p.m., Officer Boyd observed a vehicle with illegally tinted windows and no front license plate, backed into a parking space against a tree line, idling, headlights

on, near a playground where children were playing. (*See* SUMF ¶3). Based on these observations, and in light of the recent break-ins at the park, Officer Boyd decided to investigate, pulling his police cruiser adjacent to the vehicle and then approaching the car on foot. (*See* SUMF ¶4). Watson was sitting in the driver's seat of the idling vehicle, without a seatbelt. (*See* SUMF ¶7).

Officer Boyd requested Watson to provide his pedigree information, including his name and address, as well as his driver's license and proof of insurance. (*See* SUMF ¶8). Watson testified that Officer Boyd did not ask for any identification, but simply asked him for his social security number, which he refused to provide. Officer Boyd testified that he may have asked Watson for his social security number after he could not find Watson in the system. (*See* SUMF ¶16). Despite this factual dispute, there is no dispute that Watson's vehicle had no front license plate and excessively tinted windows. (*See* SUMF ¶¶3, 5). It is also undisputed that Watson never provided Officer Boyd with a drivers' license[1] or proof of insurance (*see* SUMF ¶¶9–10) and when Officer Boyd asked Watson for his pedigree information, Watson provided Officer Boyd with the name "Fred Watson" when he admittedly knew that nothing would come up if Officer Boyd performed a search under that name. (*See* SUMF ¶12). Watson also provided Officer Boyd with a Florida address when he knew he did not reside in Florida. (*See* SUMF ¶13).

During the stop, Officer Boyd attempted to locate Watson's name in REJIS, a computer system used by law enforcement agencies to identify individuals, including locating driver's license information. (*See* SUMF ¶14). Officer Boyd reviewed REJIS and could not locate an individual with the name "Fred Watson" with the information provided by Watson.  (SUMF ¶15).

During the stop, Watson also reached for his cell phone, which he claims he planned to use to call 911. (SUMF ¶19). For officer safety purposes, Officer Boyd directed Watson not to use the phone and to keep his hands on the steering wheel. (SUMF ¶20). Officer Boyd then directed Watson to

---

[1]Watson claims he told Officer Boyd his Florida driver's license was located in the back of the car. (SUMF ¶11). Watson also claims that the Florida driver's license remained in the car until he picked it up the following morning, August 2, 2012, from the impound lot.  (SUMF ¶11). However, credit union records reveal that Watson used his driver's license to make a $2,100 cash withdrawal from his credit union the morning of August 2, 2012, shortly before he went to pick up his vehicle where the driver's license was purported located. (SUMF ¶11).

2

throw his keys out of the car window, which Watson again refused. (SUMF ¶22). Officer Boyd also repeatedly ordered Watson to exit his vehicle; Watson refused. (SUMF ¶23).

Because of Watson's refusal to exit the vehicle despite requests, Officer Boyd requested backup and two Ferguson officers responded. (SUMF ¶24). After their arrival, and after Officer Boyd requested that Watson exit the vehicle multiple times, Watson finally exited. (SUMF ¶25). While doing so and before he was fully handcuffed, Watson used his leg to kick the car door closed, which Officer Boyd interpreted as a furtive movement. (SUMF ¶26). Watson admits he kicked the door shut with his foot to prevent the officers from searching his vehicle. (SUMF ¶27).

During a search of the vehicle incident to it being towed, Officer Boyd located documentation indicating that Watson's real name was "Freddie Watson," and Officer Boyd was thereafter able to locate his name in REJIS. (SUMF ¶29). REJIS indicated that Watson was a Missouri resident, that he had never surrendered his Missouri license, and that his license had expired. (SUMF ¶30). Officer Boyd was not able to locate a valid driver's license for Watson in Florida, Illinois, or Florida, although the car was registered in Florida. (SUMF ¶31).

Officer Boyd issued Watson the following citations: (1) driving without operator's license in possession (as Watson admitted); (2) violation of financial responsibility ordinance (no insurance, as Watson could not provide proof of insurance); (3) vision-reducing materials applied to windshield (illegal window tint); (4) failure to register vehicle (because he believed Watson to be a Missouri resident and the car was registered in Florida); (5) no inspection sticker (safety & emission testing) (as required by Missouri law); (6) no seatbelt (which Boyd observed); (7) expired driver's license (as reflected by the REJIS report); (8) failure to comply (for failing to provide pedigree information and refusing to exit vehicle when advised he was under arrested); and (9) making a false statement (giving the name "Fred Watson" and stating that he did not have identification, but a government ID was later located in the vehicle). (SUMF ¶33).

Watson claims that as a result of his arrest and charges, he lost his security clearance, and as a result his job with a contractor for the National Geospatial-Intelligence Agency ("NGA") called

NJVC, LLC. (SUMF ¶34; First Amended Complaint ("FAC") (Doc. #35) at ¶¶87–94). An NGA representative testified that although the citations resulted in Plaintiff receiving a conditional security clearance (which did not constrain his access to classified information), his full clearance would have been reinstated had he provided documentation showing the citations were resolved, such as by pleading guilty and paying a fine to the existing charges. (SUMF ¶35). It was not necessary that Watson be exonerated from the charges to keep his clearance. (SUMF ¶36). The NGA unequivocally testified that Watson's security clearance was not suspended because of the pendency of any charges by the City. (SUMF ¶37). Rather, Watson's security clearance was suspended solely because he made the following statement to an NGA personnel security officer: "What if I went out there and started telling the Government's secrets on my time?  Do you think they would go to court with me then." (SUMF ¶37). Because the security officer and the Chief of NGA's Adjudication Branch understood Watson's statement to be a serious threat to national security, the NGA suspended his security clearances. (SUMF ¶38). Because his security clearances were suspended, NJVC terminated Watson's employment. (SUMF ¶39).

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In *Celotex*, the Court noted, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). The moving party bears the burden of demonstrating there is no genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). An issue is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248 (1986).

To avoid summary judgment, the nonmovant "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts

showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc), quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Though the Court must view the evidence in the light most favorable to the nonmovant, giving that party the benefit of all inferences that may be reasonably drawn from the evidence, the party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Manning v. Cotton*, 862 F.3d 663, 667 (8th Cir. 2017), *citing Anderson,* 477 U.S. at 248. Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson* 477 U.S. at 247-48 (emphasis in original). Evidence of a disputed factual issue that is merely colorable or not significantly probative will not prevent entry of summary judgment. *Id.* at 248.

Further, a properly supported Motion for Summary Judgment will not be defeated by self-serving testimony. *Bacon v. Hennepin Cty. Med. Ctr.*, 550 F.3d 711, 716 (8th Cir. 2008) (citation omitted); *Gander Mountain Co. v. Cabela's Inc.*, 540 F.3d 827, 831 (8th Cir. 2008) (citation omitted). A plaintiff "must substantiate allegations with sufficient probative evidence that would permit a finding in [his] favor." *Bacon*, 550 F.3d at 716; *Gander*, 540 F.3d at 831. The plaintiff's opinions, coupled with unsubstantiated allegations, are not sufficient to raise a genuine issue of fact. *Assam Drug Co. v. Miller Brewing Co.*, 798 F.2d 311, 319 (8th Cir.1986).

## **ARGUMENT**

I. **DEFENDANT BOYD IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS I, II, AND III OF THE FIRST AMENDED COMPLAINT BECAUSE WATSON CANNOT MEET ITS BURDEN OF PROOF REGARDING EACH AND EVERY ELEMENT OF HIS CLAIMS UNDER 42 U.S.C. §1983.**

Section 1983 is a remedial statute allowing for a person acting under "color of any statute, ordinance, regulation, custom, or usage, of any State . . ." to be held liable for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [its] laws." 42 U.S.C. §1983. It is "merely a vehicle for seeking a federal remedy for violations of federally protected rights." *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987). In a §1983 action, two essential elements must be present:

(1) the conduct complained of was committed by a person acting under the color of state law; and (2) the conduct complained of deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999). Therefore, in evaluating a §1983 claim, the precise constitutional violation which is alleged must be identified. *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 796 (8th Cir. 1998).

In this case, Watson claims that Officer Boyd unlawfully searched and seized him, sought to deter him from exercising his right to free speech, and engaged in malicious prosecution in violation of Watson's rights under the First, Fourth, and Fourteenth Amendment. Alternatively, Officer Boyd is entitled to summary judgment as his conduct is protected by qualified immunity. As discussed herein, summary judgment should be entered in favor of Officer Boyd on each of these claims.

### A. Officer Boyd did not unlawfully seize Watson because he had probable cause or at least arguable probable cause to stop and/or arrest Watson under any one of Watson's multiple infractions and was objectively reasonable.

"To establish a violation of the Fourth Amendment in a section 1983 action, the claimant must demonstrate a seizure occurred and the seizure was unreasonable." *McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003). A §1983 false arrest or false imprisonment claim relies on a substantive Fourth Amendment right to be free from unreasonable searches and seizures. *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986). A police officer "who arrests someone without probable cause is not liable for false arrest [or false imprisonment] simply because the innocence of the suspect is later proved." *Id.* at 1389 (quoting *Pierson v. Ray*, 386 U.S. 547, 555 (1967)).

Here, Officer Boyd had reasonable suspicion and probable cause to approach and detain Watson, as he observed a vehicle with illegally tinted windows and no front license plate, backed into a parking space against a tree line, idling, headlights on, near a playground where children were playing. (SUMF ¶3). It was based on these observations, and in light of the recent break-ins at the park, that Officer Boyd decided to investigate and discovered Watson was in violation of numerous other laws. (SUMF ¶4). Officer Boyd did not unreasonably seize Watson, and, therefore, no

underlying constitutional violation occurred, because Officer Boyd had probable cause to stop and arrest Watson for any one of Watson's multiple violations of the law. *See Greenman v. Jessen*, 787 F.3d 882, 888 (8th Cir. 2015) ("If the officers had probable cause to arrest, then [the plaintiff] 'has failed to make out a violation of a constitutional right' in the first instance."). *See also Green v. Missouri*, 734 F. Supp. 2d 814, 832 (E.D. Mo. 2010) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001) (stating that a false arrest claim under 42 U.S.C. § 1983 "fails as a matter of law where the officer had probable cause to make the arrest.").

If no constitutional right is violated under the established allegations, there is no need for further inquiry concerning qualified immunity. *McCoy v. City of Monticello (McCoy I)*, 342 F.3d 842, 846 (8th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). However, where the constitutional right would have been violated, an officer defendant is entitled to qualified immunity, and, therefore, not liable, if there is at least "arguable probable cause" to support the officer's conduct. *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011).  *See also Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000) ("there need not be actual probable cause for an officer to be shielded by qualified immunity; an objectively reasonable belief that there was probable cause is enough."). Probable cause exists "when the totality of the circumstances at the time of arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1059 (8th Cir. 2013). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is objectively reasonable." *Peterson v. Kopp*, 754 F.3d 594, 598 (8th Cir. 2014).

In this case, Officer Boyd had probable cause, or at least arguable probable cause, to believe that Watson committed numerous offenses, all of which, or any one of which, entitled Officer Boyd to stop and/or arrest Watson. *See, e.g., United States v. Luna*, 368 F.3d 876, 878 (8th Cir. 2004) ("An officer's observation of a traffic violation, however minor, gives the officer probable cause to stop a

vehicle[.]"). *See also Green v. Missouri*, 734 F. Supp. 2d 814, 832 (E.D. Mo. 2010) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Because Officer Boyd had probable cause, or at least arguable probable cause, to detain, arrest, and cite Watson, judgment should be entered in his favor on Watson's claim for unlawful seizure.

> **i.    Officer Boyd had probable cause or arguable probable cause to detain, arrest, and cite Watson because Watson's vehicle had illegal tint applied to his windows.**

Both Missouri law and the Ferguson City Code of Ordinances ("City Code") restrict vision reducing material applied to the windows and windshield of a car. *See* R.S.Mo. § 307.173; City Code 44-404. (SUMF ¶51). Here, it is undisputed that Watson's car windows were heavily tinted at the time of his stop and arrest. (SUMF ¶¶3, 5). In fact, Officer Boyd testified that the windows were so dark that he was unsure whether the vehicle was occupied until he exited his vehicle and walked up to it, at which time he saw movement in the car. (SUMF ¶5). And that was Watson's intent, as he thought tinted windows would reduce racial profiling. (SUMF ¶5).

The tinted windows alone provided Officer Boyd with both reasonable suspicion and probable cause to stop and arrest Watson. *See U.S. v. Boyd*, 2010 WL 3842015, at *10 (W.D. Mo. 2010) ("Prior to pulling the vehicle over, the officers observed that its windows were extremely darkly tinted . . . [t]his traffic violation provided probable cause to stop the vehicle."). *See also U.S. v. Slaughter*, 2010 WL 4366539, at *4 (E.D. Mo. 2010) ("Had Officer Stewart decided that defendant's window tinting exceeded the legal threshold, which would have been reasonable were he unable to see the driver, he would have had reasonable suspicion to pull over the [defendant]."). Watson's attorney even advised Watson that the tint was illegal under Missouri law and that this fact gave Officer Boyd probable cause to arrest Watson. (SUMF ¶5).

Even if Officer Boyd was mistaken as to whether the tint was dark enough to be rendered illegal, he did not violate Watson's constitutional rights because he had arguable probable cause to arrest Watson. *See Loch v. City of Litchfield*, 689 F.3d 961, 966 (8th Cir. 2012) ("An act taken based

upon a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment."). *See also United States v. Mendez*, 2006 WL 852376, at *3 (E.D. Mo. 2006) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)) ("The validity of an arrest does not depend on whether the suspect actually committed the crime . . ."); *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 846 (8th Cir. 2011) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.").

In this case, Officer Boyd observed tinted windows that he believed violated both Missouri law and the City Code. Watson admitted that his windows were tinted, and his attorney admitted and advised Watson that the tint was illegal. Because Officer Boyd had probable cause or arguable probable cause to arrest Watson for the window tint violation, he did not violate Watson's constitutional rights.

> ### ii.    Officer Boyd had probable cause to cite and arrest Watson for failing to provide a driver's license.

City Code 44-81(a) provides that "[i]t shall be unlawful for any person  to drive any motor vehicle . . . in the city unless such person shall have a driver's license . . . as required by state law, and shall have such license in possession at all times while so driving on the streets of the city." (SUMF ¶52). Even more, City Code 44-81(c) specifically provides that "[f]ailure to produce a driver's . . . license upon lawful demand shall give a police officer probable cause to arrest the driver . . . ." (SUMF ¶52).

It is undisputed that Watson, who was sitting in the driver's seat of his vehicle with the engine idling when he was stopped, never provided Officer Boyd with a drivers' license. (*See* SUMF ¶10). Although Watson claims that the driver's license was in his back seat, "once probable cause is developed, officers have 'no constitutional obligation to conduct further investigation in the hopes of uncovering potentially exculpatory evidence.'" *Clayborn v. Struebing*, 734 F.3d 807, 809-10 (8th Cir. 2013) (quoting *Matthews v. City of East St. Louis*, 675 F.3d 703, 707 (7th Cir. 2012)). Because Watson admittedly did not provide Officer Boyd with a valid driver's license and Officer Boyd had reason to believe Watson was driving his vehicle (given the undisputed fact that the engine was

running and Watson was sitting in the driver's seat), he had probable cause (or at least arguable probable cause) to both issue a citation for failing to provide a driver's license and arrest Watson. Thus, Officer Boyd did not violate Watson's constitutional rights.

### iii.   Officer Boyd had probable cause to arrest Watson because Officer Boyd reasonably believed that Watson was driving his vehicle under an expired state operator's license.

Missouri law provides that "it shall be unlawful for any person . . . to . . . [o]perate any vehicle upon any highway in this state unless the person has a valid license." R.S.Mo. § 302.020. Similarly, the City Code provides that "[i]t shall be unlawful for any person to drive any motor vehicle . . . in the city unless such person shall have a driver's license . . . as required by state law, and shall have such license in possession at all times while so driving on the streets of the city." City Code 44-81. (SUMF ¶51). It is undisputed that Watson did not provide Officer Boyd with a valid license during the stop. Officer Boyd attempted to locate Watson's name in REJIS to identify him and locate his driver's license information with the misinformation Watson provided him. (SUMF ¶14). Officer Boyd reviewed REJIS and could not locate an individual named "Fred Watson." (SUMF ¶15). After retrieving Watson's real name, Officer Boyd conducted another search of REJIS, which indicated that Watson was a Missouri resident with an <u>expired</u> driver's license. (SUMF ¶30). Officer Boyd was unable to locate a valid driver's license for Watson in Florida, Missouri, or Illinois. (SUMF ¶31). Even more, REJIS indicated that the expired license had not been surrendered to another state.[2] (SUMF ¶30). After conducting these searches in REJIS, Officer Boyd had probable cause, or at least arguable probable cause, to believe that Watson was driving with an expired driver's license.

### iv.   Officer Boyd also had probable cause to arrest and cite Watson for failing to comply with his lawful command because Watson failed to comply with Officer Boyd's order to exit the vehicle.

---

[2] Missouri law provides that "The licensing authority in the state where application is made shall not issue a license to drive to the applicant if:…(3) The applicant is a holder of a license to drive issued by another party state and currently in force unless the applicant surrenders such license." Mo. Ann. Stat. § 302.600. In this case, Officer Boyd determined that the Missouri license had never been surrendered and was expired. (SUMF ¶29). Because he was unable to locate a driver's license for Watson in any other state and Watson's Missouri license was never surrendered (as required to obtain a license in another state), Officer Boyd reasonably believed that Watson had no valid driver's license.

Section 29-16 of the City Code provides that it shall be unlawful for any person to "to willfully and knowingly obstruct, resist, oppose or fail to obey a lawful command of any police officer or city official charged with enforcement of this Code. . ." (SUMF ¶53). Here, it is undisputed that Officer Boyd instructed Watson to throw his keys out the window and exit his vehicle, but Watson repeatedly refused. (SUMF ¶¶22–23). Because Watson refused to comply with Officer Boyd's lawful request that Watson exit the vehicle, Officer Boyd had probable cause to cite and arrest Watson.

> **v.    Officer Boyd had probable cause to arrest and cite Watson because Watson made false statements to Officer Boyd.**

Officer Boyd also had probable cause to cite and arrest Watson for providing a false declaration in violation of City Code 29-16. (SUMF ¶53). Here, Watson identified himself as "Fred Watson" to Officer Boyd in response to Officer Boyd's request for Watson's name. (SUMF ¶12). Officer Boyd searched the name "Fred Watson" in REJIS, which did not yield any results. (SUMF ¶15). Watson admitted that he knew that if Officer Boyd performed a search under the name "Fred Watson" in the REJIS system, his information would not be found. (SUMF ¶12). Watson not only willfully concealed his true legal name, he also provided Officer Boyd with a false Florida address when he knew he did not reside in Florida. (SUMF ¶13). These two false declarations were material because they hindered Officer Boyd in determining Watson's true identity. Accordingly, Officer Boyd had probable cause (or at least arguable probable cause) to arrest and cite Watson.

> **vi.    Officer Boyd had probable cause to arrest and cite Watson because Watson did not provide proof of insurance.**

Missouri law provides that "[n]o owner of a motor vehicle registered in this state, or required to be registered in this state, shall operate, register or maintain registration of a motor vehicle . . . unless the owner maintains the financial responsibility which conforms to the requirements of the laws of this state." R.S.Mo. § 303.025. The City's Code of Ordinances also provides that "[t]he operator of the motor vehicle shall exhibit the proof of financial responsibility on the demand of any police officer who lawfully stops such operator while that officer is engaged in the performance of

the duties of his/her office." City Code 44-66(e). (SUMF ¶54). Here, it is undisputed that Watson did not provide proof of insurance to Officer Boyd upon request. (SUMF ¶¶8–9). Because Watson did not provide proof of insurance, Officer Boyd had probable cause to believe that Watson was in violation of the Missouri statute and the City's Ordinance. Even if Watson's insurance card was actually in his car, Officer Boyd "had no duty to conduct further investigation once [he] had (arguable) probable cause to arrest." *Clayborn v. Struebing*, 734 F.3d 807, 809 (8th Cir. 2013).

### vii.   Officer Boyd also had probable cause to cite and arrest Watson because Watson failed to register an out of state vehicle within thirty days of residency.

Missouri law provides that a vehicle "[a]pplication for registration of a motor vehicle not previously registered in Missouri . . . and previously registered in another state shall be made within thirty days after the owner of such motor vehicle has become a resident of this state." R.S.Mo. § 301.100. Here, Watson provided Officer Boyd with a Florida address and indicated that his name was "Fred Watson" when he knew that he did not reside in Florida. (SUMF ¶13). Officer Boyd searched for this name in REJIS, which yielded no results. (SUMF ¶15). During a subsequent search of Watson's car, Officer Boyd located documentation in the vehicle indicating that Watson's real name was "Freddie Watson." (SUMF ¶29). Officer Boyd then searched for the name "Freddie Watson" in REJIS, which also indicated that Watson was a Missouri resident with an expired license and that his Missouri license had never been surrendered. (SUMF ¶30). This search also indicated that Watson did not have a valid driver's license in Florida, Illinois, or Missouri, even though the car was registered in the state of Florida. (SUMF ¶31). These facts provided Officer Boyd with probable cause, or at least arguable probable cause, to believe that Watson was a Missouri resident who failed to register his vehicle pursuant to Missouri law. Such failure was a violation of the City Code 44-387. (SUMF ¶55). Because Officer Boyd therefore had probable cause, or at least arguable probable cause, to issue the citation and arrest Watson, he did not violate Watson's constitutional rights.

### viii.   Officer Boyd also had probable cause to cite and arrest Watson because Watson's vehicle did not have an inspection sticker.

Missouri law requires that the owner of every vehicle that is required to be registered in

Missouri "shall submit such vehicles to a biennial inspection of their mechanism and equipment…and obtain a certificate of inspection and approval and a sticker . . . ." R.S.Mo. § 307.350. So too does the City Code. Code 44-406. (SUMF ¶56). It is undisputed that Watson's vehicle did not have an inspection approval sticker. (SUMF ¶32). Because Officer Boyd had probable cause, or at least arguable probable cause, to believe that Watson's vehicle was required to be registered in the state of Missouri based on the information located in Rejis (*see, supra*), Officer Boyd had probable cause to believe Watson was in violation of the law and therefore cite and arrest him for the violation.

> ### ix.     Officer Boyd had probable cause to arrest Watson because Watson was not wearing a seat belt.

State and local law requires that "[e]ach driver…of a passenger car…operated on a street or highway in this [state or city] shall wear a properly adjusted and fastened safety belt…." R.S.Mo. § 307.178; City Code 44-402. (SUMF ¶57). It is undisputed that Watson's car was running in a public park and that Watson was not wearing a seat belt. (SUMF ¶¶2, 3, 7). Accordingly, even if Officer Boyd mistakenly issued a seat belt violation, "[t]he protection of qualified immunity applies regardless of whether a government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)). An officer is "entitled to qualified immunity if [he] arrest[s] a suspect under the mistaken belief that [he has] probable cause to do so – provided that the mistake is objectively reasonable." *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000). Even if Officer Boyd did not have probable cause to arrest Watson for the seatbelt violation, he had probable cause to arrest Watson for driving a vehicle under an expired state operator's license. The fact that multiple other violations justified the arrest likewise render irrelevant any reliance of this violation as justification for Watson's arrest.

> ### B.  Under the facts alleged, Officer Boyd did not unreasonably seize Watson if he drew his weapon during the stop.

When an officer makes an arrest or investigatory stop, an officer maintains "the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396

(1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Whether an officer's actions are deemed reasonable must account "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation." *Id.* at 397. The officer's "underlying intent or motivation" is irrelevant to the reasonableness inquiry. *Id.*

In this case, Watson claims that Officer Boyd pulled his gun after Watson reached for an object (his cell phone) within his vehicle during the stop. (SUMF ¶21). Although Officer Boyd disputes that he pulled a gun. (SUMF ¶21), doing so until backup arrived would have been reasonable under the circumstances because Officer Boyd was confronted with a non-compliant occupant of a vehicle with heavily tinted windows that obstructed Officer Boyd's view and Watson had made a sudden movement within the vehicle. (SUMF ¶¶3–21). *See Mudd v. City of New Haven, Indiana*, 196 F. Supp. 3d 882, 886, 889 (N.D. Ind. 2016) (where officer, "[f]earing for his safety, [the officer] pointed his weapon at [plaintiff] until backup arrived," "the totality of the circumstances warranted [the officer's] brief display of force and was objectively reasonable based on the totality of the circumstances."). See also *U.S. v. Hensley*, 469 U.S. 221, 235 (1985) (officer "authorized to take such steps as were reasonably necessary to protect [his] personal safety and to maintain the status quo during the course of the stop."). Moreover, it is not clearly established that the particular conduct alleged in this case would have been unlawful. *Mullenix v. Luna*, 136 S. Ct. 305, 308–09 (2015). As such, even if Officer Boyd did draw his gun, no constitutional violation can be established by Watson.

### C. Officer Boyd did not conduct an unlawful search of Watson's vehicle as the search was an inventory search or search pursuant to the automobile exception.

An officer may lawfully conduct an inventory search of a vehicle after a lawful arrest has been made. *See South Dakota v. Opperman*, 428 U.S. 364, 373 (1976) (stating that when a vehicle is "in lawful police custody," an officer may lawfully search such vehicle "where the process is aimed at securing or protecting the car and its contents."). An officer may also search a vehicle where an officer has lawfully stopped a vehicle and has probable cause to believe contraband or evidence of criminal

activity is inside. *United States v. Caves*, 890 F.2d 87, 89 (8th Cir. 1989). As discussed herein, Officer Boyd legally stopped Watson. Following Watson's arrest, Officer Boyd lawfully searched Watson's vehicle, both because he believed Watson was attempting to conceal contraband and in order to conduct an inventory search to secure any valuable items, all in accordance with standard police procedures based upon his training at the police academy. (SUMF ¶¶27–28). Accordingly, the search did not violate Watson's constitutional rights.

> **D.  Summary judgment should be entered in favor of Officer Boyd on Watson's claim for unlawful retaliation in violation of the First Amendment because Watson cannot prove all of the elements of his claim.**

Watson asserts that Officer Boyd unlawfully retaliated against him in violation of his First Amendment rights because Watson asked Officer Boyd for his name and badge number. (FAC at ¶114). To succeed in a First Amendment retaliation claim under 42 U.S.C. § 1983, "the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). He must also show "lack of probable cause or arguable probable cause." *Peterson,* 754 F.3d at 602.

> **i.  Watson has not shown that Officer Boyd's arrest and the citations issued to him were motivated at least in part by Watson's speech.**

The third prong of a First Amendment retaliatory arrest claim requires that a plaintiff show "'affirmative evidence from which a jury could find' that his constitutionally protected conduct informed [Officer Boyd's] decision" to cite or arrest him. *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)). The plaintiff must also clear the very high hurdle of showing "that the retaliatory motive was a but-for cause of the harm; that is, that [Plaintiff] was 'singled out' for adverse treatment because of his exercise of constitutional rights." *Id.* (quoting *Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007)). The Supreme Court has explained that "retaliation is subject to recovery as the but-for cause of official action offending the Constitution" when "nonretaliatory grounds are in fact insufficient to provoke the adverse

consequences." *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

In this case, Watson's only alleged proof of retaliatory animus is his interpretation that Officer Boyd was angry with his request for Officer Boyd's name and badge number. (*See* FAC ¶¶114-115, 21-22). This is simply insufficient to demonstrate but-for causation, particularly since Watson alleges that when he asked for Officer Boyd's name and badge number, Officer Boyd stated that this information would be on Watson's ticket for illegal tint, indicating that Officer Boyd had already decided to cite Watson. (*See* FAC ¶¶22-24). This is insufficient to rise to the level of proof required to show but-for cause, especially since as discussed *supra*, nonretaliatory grounds were sufficient to provoke the consequences that came next. Indeed, Officer Boyd had probable cause or at least arguable probable cause to issue the citations and arrest Watson.

>    ii.    **Watson has not shown that Officer Boyd did not have probable cause, or arguable probable cause, to arrest Watson and issue the citations.**

The fourth prong of a First Amendment retaliation claim requires that Watson "plead and prove a lack of probable cause for the underlying charge . . . ." *Williams v. City of Carl Junction, Missouri*, 480 F.3d 871, 875 (8th Cir. 2007). *See also Peterson*, 754 F.3d at 602 ("We agree that [the officer] is entitled to qualified immunity on [plaintiff's] retaliatory arrest claim because, as detailed above, [the officer] had at least arguable probable cause for the arrest."). Even if Watson could show his arrest and the issued citations were motivated by protected speech, the "alleged motive for the arrest cannot vitiate an otherwise lawful arrest." *Id.* at 599. In this case, Officer Boyd had probable cause or at least arguable probable cause to arrest and charge Watson, as explained *supra*.  Watson therefore cannot demonstrate the lack of probable cause for the underlying charges.

Accordingly, Watson cannot demonstrate each and every element of his claim for unlawful retaliation in violation of the First Amendment, judgment should be entered in favor of Officer Boyd on Count II of the First Amended Complaint.

>    E.    **Summary judgment should be entered in favor of Officer Boyd on Watson's claim for malicious prosecution because no such claim is recognized under the law and even if it were, Officer Boyd had probable cause or arguable probable cause to issue the citations and arrest Watson and Watson's rights were not clearly established.**

Watson apparently seeks to bring a claim for malicious prosecution against Officer Boyd based upon the assertions that Officer Boyd issued citations to Watson without probable cause, falsified reports to support the charges, and assisted in the prosecution of Watson for those charges. (FAC ¶¶123–126). First, Plaintiff cannot maintain a substantive due process claim for malicious prosecution because no such claim exists. *Powers v. City of Ferguson*, 229 F. Supp. 3d 894, 904 (E.D. Mo. 2017) (explaining that a "claim that a § 1983 plaintiff 'was arrested or prosecuted without probable cause, even if labeled a claim of malicious prosecution, must be judged under the Fourth Amendment, not substantive due process.'") (quoting *Stewart v. Wagner*, 836 F.3d 978, 983 (8th Cir. 2016) and *Albright v. Oliver*, 510 U.S. 266, 270–71 & n.4, (1994)); *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 919, 197 L. Ed. 2d 312 (2017) ( "If the complaint is that a form of legal process resulting in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment" and the claim is not "convert[ed] into one founded on the Due Process Clause").

Even under the Fourth Amendment, however, neither the Supreme Court nor the Eighth Circuit has recognized that a pre-trial detention or prosecution in the absence of probable cause results in a claim for malicious prosecution. *Manuel*, 137 S.Ct. 911, 923 (Alito, J., dissenting) (acknowledging that the majority's decision did not address whether a claim of malicious prosecution may be brought under the Fourth Amendment). *See also Manuel v. City of Joliet, Illinois*, 903 F.3d 667, 670 (7th Cir. 2018) ("After *Manuel*, 'Fourth Amendment malicious prosecution' is the wrong characterization. There is only a Fourth Amendment claim—the absence of probable cause that would justify the detention.  The problem is the wrongful custody.  There is no such thing as a constitutional right not to be prosecuted without probable cause."); *Bates v. Hadden*, 576 F. App'x 636, 639 (8th Cir. 2014) ("In a pair of 2001 decisions, we observed that malicious prosecution is not a constitutional injury . . . As recently as 2012, we expressed uncertainty as to whether 'malicious prosecution is a constitutional violation at all.'"); *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001)

(stating "this court has uniformly held that malicious prosecution by itself is not punishable under §

1983 because it does not allege a constitutional injury.").

Even if a claim for malicious prosecution under § 1983 does exist, summary judgment must

still be entered in favor of Officer Boyd.  First, as discussed *supra*, Officer Boyd had probable cause

or at least arguable probable cause to cite and arrest Watson. *See Harrington v. City of Council Bluffs,

Iowa*, 678 F.3d 676, 679 (8th Cir. 2012) ("Sufficient probable cause would defeat the appellees'

§1983 claims based on malicious prosecution . . . ."); *Pace v. City of Des Moines*, 201 F.3d 1050,

1055 (8th Cir. 2000) (explaining that "there need not be actual probable cause for an officer to be

shielded by qualified immunity; an objectively reasonable belief that there was probable cause is

enough."); *Peterson*, 754 F.3d at 599 (explaining the "alleged motive for the arrest cannot vitiate an

otherwise lawful arrest."). Second, even if Watson could show that Officer Boyd lacked probable

cause or arguable probable cause, Watson's malicious prosecution claim still fails because Officer

Boyd's actions "did not violate a clearly established constitutional right at the time of the alleged

violation." *Harrington v. City of Council Bluffs, Iowa*, 678 F.3d 676, 680 (8th Cir. 2012).  *See also

Bates v. Hadden*, 576 F. App'x 636, 639 (8th Cir. 2014) (finding "[n]o reasonable officials acting in

[the officer's] position would  . . . have understood they were violating [the plaintiff's] constitutional

right against malicious prosecution because no such constitutional right had been clearly

established.") (quotations omitted). Summary judgment should therefore be entered in favor of

Officer Boyd on Watson's claim for malicious prosecution.

II.     **THE CITY OF FERGUSON IS ENTITLED TO SUMMARY JUDGMENT ON
        COUNT IV BOTH BECAUSE WATSON HAS FAILED TO ESTABLISH AN
        UNDERLYING CONSTITUTIONAL VIOLATION AND WATSON
        HAS ADDUCED NO EVIDENCE TO ESTABLISH THE CITY OF FERGUSON'S
        CONDUCT WAS THE MOVING FORCE BEHIND ANY ALLEGED
        CONSTITUTIONAL VIOLATIONS.**

A municipal entity cannot be held vicariously liable under § 1983 on a *respondeat superior*

theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Atkinson v. City of Mountain View,*

*Missouri*, 709 F.3d 1201, 1214 (8th Cir. 2013). Section 1983 liability for a constitutional violation may attach to a municipality for a "*Monell* claim" if the alleged violation resulted from "(1) an official municipal policy; (2) an unofficial custom; or (3) a deliberately indifferent failure to train or supervise." *Atkinson*, 709 F.3d at 1214. In order to ensure that *Monell* liability does not collapse into *respondeat superior* liability, the Supreme Court has instructed courts to employ strict standards of causation and culpability. *See Bd. of the Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 405 (1997) ("*Bryan County*"). It is not sufficient for a plaintiff to merely identify conduct attributed to the municipality; rather, the plaintiff must demonstrate that, through the municipality's deliberate conduct, the municipality was the "moving force" behind the alleged injury. *Bryan County*, 520 U.S. at 404 (1997). Further, a municipality may be held liable <u>only</u> if the municipal employee is found liable on the underlying substantive constitutional claim. *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) (*McCoy II*).

Watson purports to allege a claim for municipal liability against the City as a result of certain claimed customs of the City, as well as for failing to screen, train, supervise, or discipline its officers. The City is entitled to summary judgment both because there was no underlying constitutional violation and because there is no evidence the City's claimed custom, policy, or procedures or a deliberate indifferent failure to train or supervise were the moving force behind Watson's purported constitutional violations.

    **A.**    **Watson's claim against the City fails because there is no underlying constitutional violation.**

In *City of Los Angeles v. Heller*, the Supreme Court declared that "neither *Monell*[] nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." 475 U.S. 796, 799 (1986). This is true even if there is official municipal policy that authorized actions which themselves may have violated a party's constitutional rights, as the Court explained, "[i]f a person has suffered no constitutional injury at the hands of the individual

police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point." *Id.* (emphasis original). The Eighth Circuit has fully endorsed this viewpoint, holding that "[w]ithout a constitutional violation by [] individual officers, there can be no § 1983 or *Monell . . .* municipal liability." *Sanders v. City of Minneapolis, Minnesota*, 474 F.3d 523, 527 (8th Cir. 2007).  *See also Suschanke v. Neske*, 498 F.App'x 672, 672-73 (8th Cir. 2013), citing *Moore v. City of Desloge, Mo*., 647 F.3d 841, 849 (8th Cir. 2011) (failure to prove §1983 claim against police officer foreclosed any claim of municipal liability); *Crawford v. Van Buren Cty., Ark*., 678 F.3d 666, 669 (8th Cir. 2012) (county may only be liable if custom or policy caused the violation of plaintiff's rights).

As discussed in Section I, *supra*, Officer Boyd had probable cause to act as he did in this case, and none of Watson's constitutional rights were violated. Because Watson suffered no violation of his constitutional rights, the City cannot be found liable and judgment should be entered in favor of the City on Count IV of the First Amended Complaint.

> **B. Watson has no admissible evidence that the City had any policy, custom, or deliberate indifference to its screening, training, supervision, or discipline that caused any constitutional deprivation to Watson.**

Should this Court determine that Watson has sufficient evidence to demonstrate an underlying constitutional violation, the City is still not subject to municipal liability because Watson cannot meet the standard required to show a municipal violation under §1983. A municipality can be held directly liable under § 1983 "only where the municipality *itself* causes the constitutional violation at issue." *Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 690) (emphasis in original). Watson must therefore prove that the City either: a) implemented, executed, and promulgated unconstitutional "policy;" b) that there existed informal approval of a "custom" so widespread as to have the force of law that caused a constitutional deprivation under *Monell*, or c) that the City exhibited a deliberate and conscious choice by failing to adequately train or supervise Officer Boyd, thereby causing harm to Watson. *Monell*, 436 U.S. at 690–91, 694. Moreover, Watson must also

demonstrate that the City's engaged in deliberate conduct that was the "moving force" behind his alleged injury. *Bryan County*, 520 U.S. at 404. Watson lacks evidence to make such a showing for any of his claims and, therefore, summary judgment should be entered in favor of Defendant City and against Watson.

### i.   Watson has failed to establish that any policy of the City was unconstitutional on its face or by implementation and resulted in the purported constitutional violation suffered by Watson.

A plaintiff may establish municipal liability under § 1983 by proving that his constitutional rights were violated by an action taken pursuant to an official municipal policy. *Monell*, 436 U.S. at 691. The terms "policy" and "custom" are not used interchangeably in a *Monell* analysis. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). To establish an unconstitutional policy under *Monell*, a plaintiff must prove there was "an official policy." *Mettler*, 165 F.3d at 1204; *Wilson v. Spain*, 209 F.3d 713, 717 (8th Cir. 2000). A policy is "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, MO*, 829 F.3d 695, 699-700 (8th Cir. 2016). Where a plaintiff fails to identify any policy or custom that played a role in the plaintiff's injuries, the plaintiff's claim must fail. *Mettler*, 165 F.3d at 1204.

Here, Watson's First Amended Complaint alleges that the City has a "policy or custom and usage . . . to create a record including charges, police reports, public statements, and testimony, that purports to provide legal justification for the arrest or citation, even in the absence of probable cause . . ." and that the city has a "policy or custom" of "attempt[ing] to generate a pretextual reason to justify the stop." (*See* FAC ¶139).  However, Watson has since admitted through discovery that the City's purported conduct was not taken pursuant to an official policy but rather is based upon "informal and unwritten policies in the form of customs, patterns, practices and usage. . . These are not formally enacted policies established by a particular person . . ." (SUMF ¶44). Accordingly, Watson has not and cannot adduce evidence of an unconstitutional "policy" of the City and, to the

extent the First Amended Complaint attempts to assert a claim based upon any "policy" of the City, judgment should be entered in favor of the City and against Watson.

> **ii.     Watson has not established that the City's purported failure to screen Officer Boyd was the moving force behind a constitutional violation suffered by Watson or that the City acted with deliberate indifference.**

The Supreme Court has held that a claim for inadequate screening of potential employees requires a finding of "deliberate indifference." *Bryan County*, 520 U.S. at 411 (1997). Deliberate indifference exists only where "adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." *Teasley v. Forler*, 548 F. Supp. 2d 694, 707 (E.D. Mo. 2008) (quoting *Bryan County*, 520 U.S. at 411). The plaintiff must demonstrate "more than the 'mere probability that any officer inadequately screened will inflict any constitutional injury,'" but rather that "*this* officer was likely to inflict the *particular* injury suffered by the plaintiff.  The connection between the background of the particular applicant and the specific constitutional violation must be strong."   *Teasley*, 548 F.Supp.2d at 707 (emphasis in original) (quoting *Bryan County*, 520 U.S. at 412, 416).

This is a "daunting burden of proof."  *Flora v. Moniteau Cty.*, No. 05-4244-CV-C-NKL, 2006 WL 2707347, at *3 (W.D. Mo. Sept. 19, 2006).  Thus, plaintiffs have been unable to meet this burden in a variety of contexts. *See, e.g. Teasley*, 548 F. Supp. at 708 (finding officer's prior convictions for driving while intoxicated, minor in possession, and arrest for assault did not make it "plainly obvious" that an officer would improperly use deadly force"); *Aguillard v. McGowen*, 207 F.3d 226, 230–31 (5th Cir. 2000) (finding county not liable for hiring decision where deputy shot and killed citizen where prior record showed officer pistol whipped teenage boy, threatened the mother of a juvenile, and was not formally disciplined); *Gros v. City of Grand Prairie*, 209 F.3d 431, 435 (5th Cir.2000) (holding city not liable under §1983 for officer's sexual assault of two women during traffic stops where his file contained statements regarding aggressiveness and complaints about his overbearing

nature at traffic stops); *Estate of Smith v. Silvas,* 414 F.Supp.2d 1015, 1019 (D.Colo.2006) (holding that fact that officer had been involved in eight previous shootings, five of which involved a death, did not make it plainly obvious that he would use excessive deadly force); *Barney v. Pulsipher,* 143 F.3d 1299, 1309 (10th Cir.1998) (finding municipality not liable for hiring a prison guard that sexually assaulted several inmates where his record stated that he was arrested for possession of alcohol at age seventeen and had several speeding tickets); *Riddick v. Sch. Bd. of the City of Portsmouth,* 238 F.3d 518, 525 (4th Cir.2000) (holding school board could not be held liable for hiring a high school coach videotaping teenage girls nude in the locker room because prior to that incident, he had only been investigated for videotaping fully clothed girls); *Crete v. City of Lowell,* 418 F.3d 54, 66 (1st Cir.2005) (holding not plainly obvious from prior assault and battery conviction that officer would employ excessive force).

In this case, Plaintiff has adduced no evidence that the City's hiring practices were inadequate, rose to the level of a constitutional violation, or caused Plaintiff's alleged harm. Instead, Watson appears to claim that the City's single hiring decision related to its hiring of Officer Boyd gives rise to a clam for failure to screen. To the extent a single hiring decision could establish a constitutional violation, the there is simply no evidence in this case to demonstrate that Boyd's prior history reveals "more than the mere probability" that Officer Boyd was likely to inflict the particular injuries allegedly suffered by Watson in this case. To the contrary, the alleged prior misconduct of Boyd (namely, that his License was revoked or suspended, that he was subject to an internal affairs investigation related to a claim that Officer Boyd detained a juvenile, pointed a gun at him, and hit him in the face, and that he was involved in a lawsuit related to his duties as an on-duty officer) is not admissible evidence and cannot, as a matter of law, rise to the level of deliberate indifference required to state a claim for failure to screen. Plaintiff's purported evidence stems from an incident that is not similar to this case and in which Officer Boyd was actually exonerated for his conduct in that case after a jury found in favor of Officer Boyd on both a federal claim for excessive force and a state law

claim of battery. (SUMF ¶50). Moreover, Officer Boyd's Class A License from the Missouri Department of Public Safety, was never suspended or revoked. (SUMF ¶49). To the extent Plaintiff asserts Officer Boyd was involved in previous misconduct, those are likewise not similar to the allegations in this case. With such an exoneration, and with the facts of this case being starkly different from Boyd's alleged prior misconduct, it is simply not possible for Watson to demonstrate, as he is required to do, "more than the mere probability" that Officer Boyd was likely to inflict the particular injuries allegedly suffered by Watson in this case.

Accordingly, judgment should be entered in favor of the City on Watson's claim for municipal liability to the extent it is based upon its alleged failure to screen.

>    iii.    **Watson cannot establish the City was responsible for training its officers or that Officer Boyd received inadequate training from the City and therefore, to the extent Watson asserts a claim for failure to train, judgment should be entered in favor of the City and against Watson.**

It is unclear whether Watson is actually asserting a failure to train claim against the City (*see* FAC ¶134), but to the extent he is, it must fail. To prevail on a claim regarding inadequate training, the plaintiff must show that (1) the police department's training was inadequate, (2) this failure to train reflects a deliberate and conscious choice by the department, and (3) the alleged deficiency in the training procedures actually caused harm. *Teasley*, 548 F. Supp. 2d at 706. *See also Ambrose v. Young*, 474 F.3d 1070, 1079 (8th Cir.2007); *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996).

Both the Eighth Circuit and this Court have held that a §1983 claim against a municipality for failure to train a law enforcement officer is not cognizable, as Missouri law requires that officers be trained by the Missouri Department of Public Safety, not municipalities. *See Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014); *Moore v. City of Ferguson, Missouri*, 213 F. Supp. 3d 1138, 1148–49 (E.D. Mo. 2016).

In this case, Officer Boyd received his Class A License from the Missouri Department of Public Safety following his graduation from the St. Louis City Police Academy and completing the

requirements of Missouri law (R.S.Mo. §§ 590.100–180). (SUMF ¶47). Officer Boyd testified that

he receives continuing education training, which training Officer Boyd receives training from the St.

Louis County and Municipal Academy, a POST provider for continuing education. (SUMF ¶48).

Accordingly, Plaintiff cannot demonstrate that the City has a custom of failing to train its officers or

Officer Boyd, that its training reflects a deliberate and conscious choice by the City, or that any

conduct by the City caused Watson's alleged injury. Hence, the City is entitled to summary judgment

on any purported failure to train claim.

> iv.   **Watson cannot introduce evidence that the City failed to supervise or discipline its officers and, therefore, to the extent Watson asserts a claim for failure to supervise or discipline, judgment should be entered in favor of the City and against Watson.**

In order to demonstrate a claim for failure to supervise or discipline, like a claim for failure to

train, a plaintiff must demonstrate that (1) the city's supervision and discipline practices were

inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that

the failure to supervise and discipline reflects a deliberate or conscious choice by the city; and (3) an

alleged deficiency in the supervising and disciplining procedures actually caused the plaintiff's injury.

*Glasper v. City of Hughes, Arkansas*, 269 F. Supp. 3d 875, 901 (E.D. Ark. 2017) (citing *B.A.B., Jr. v.

Bd. of Educ. of City of St. Louis*, 698 F.3d 1037, 1040 (8th Cir. 2012)).  Deliberate indifference in this

context is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or

obvious consequence of his action.  *Id.*  Deliberate indifference "is a difficult burden for a plaintiff to

meet and becomes the key issue."  *See Jacob v. City of Osceola, Mo*., No. 05-0323CVWNKL, 2006

WL 741918, at *6 (W.D. Mo. Mar. 20, 2006). At issue is whether, "in light of the duties assigned to

specific officers . . . the need for more or different training [or supervision] is so obvious, and the

inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city

can reasonably be said to have been deliberately indifferent to the need." *S.M. v. Lincoln Cty.*, 874

F.3d 581, 585 (8th Cir. 2017). Moreover, the plaintiff must show "[a] pattern of similar constitutional

violations by untrained employees." *Thurmond v. Elkins*, No. 4:17CV00314-JM-JTK, 2018 WL 1631056, at *4 (E.D. Ark. Mar. 22, 2018) (emphasis added) (quoting *Lincoln Cty.*, 874 F.3d at 585). The municipality's failure to act must occur <u>prior</u> to the date of the alleged injury and any subsequent conduct cannot be used to demonstrate deliberate indifference or to show that the municipality tacitly authorized any unconstitutional conduct. *Liebe v. Norton*, 157 F.3d 574, 580 (8th Cir. 1998).

In this case, Watson has failed to adduce evidence meeting this high bar.  In fact, when requested to provide this information in discovery, Plaintiff made conclusory statements lacking any factual support and focusing solely on the conduct of Boyd. (SUMF ¶45–46). Plaintiff cannot demonstrate that conduct, although unidentified by Plaintiff, involves allegations of <u>similar</u> conduct undertaken <u>prior</u> to the incident on August 1, 2012, that such evidence demonstrates inadequate supervision or discipline, that the City was deliberately indifferent to the rights of others, or that the City's conduct was the moving force behind Plaintiff's alleged injury. Accordingly, Watson cannot demonstrate a constitutional violation based upon the City's alleged failure to supervise or discipline.

> ### v. Watson has failed to adduce evidence that any "custom" of the City was the moving force behind the alleged violation of his constitutional rights.

To demonstrate the existence of informal approval of a "custom" so widespread as to have the force of law that caused a constitutional deprivation under *Monell*, a plaintiff must demonstrate:

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Corwin*, 829 F.3d at 700, quoting *Snider*, 752 F.3d at 1160. "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan County*, 520 U.S. at 410. This requires a showing that the municipality had a custom of "failing to act upon <u>prior similar</u> complaints of unconstitutional conduct, which caused the constitutional injury at issue." *Andrews*, 98 F.3d at 1075 (citing *Monell*, 436 U.S. at 694) (emphasis

added); *see also Jacob*, 2006 WL 741918 at *6.

In the First Amended Complaint, Watson alleges several "customs" of the City of Ferguson not otherwise discussed herein, including a (1) custom and usage of taking law enforcement action such as making arrests and pursuing charges against individuals engaged in activity protected by the First Amendment; (2) having a custom of encouraging officers to generate revenue by writing excessive tickets, conducting pretextual searches and seizures, and engaging in "other unconstitutional conduct"; and (3) having a custom of acting through its officers, agents, and employees "to create a record including charges, police reports, public statements, and testimony, that purports to provide legal justification for the arrest or citation, even in the absence of probable cause for the arrest or citation;" and (4) to "attempt to generate a pretextual reason to justify the stop." (FAC ¶¶ 133, 136, 139).

First, Plaintiff has failed to obtain evidence that such "customs" are widespread, persistent patterns or, even if they do exist, demonstrate they are unconstitutional. Second, for all the reasons discussed herein, *supra*, the evidence does not demonstrate that Officer Boyd or anyone else in the City pursued charges against Watson for engaging in protected activity, conducted a pretextual search or seizure, created a record to provide legal justification for Watson's arrest, or engaged in any "other unconstitutional conduct." To the contrary, the evidence demonstrates that Officer Boyd had probable cause to act as he did in this case. Moreover, Watson has no evidence to demonstrate that <u>prior</u> to August 1, 2012, there was a continuing, widespread, persistent pattern of <u>similar</u> unconstitutional misconduct or that the City was aware of such conduct and deliberately failed to take remedial action. Accordingly, City cannot be held liable for any customs in this case.

### C. To the extent Watson asserts a claim for municipal liability on the basis of malicious prosecution, summary judgment should be entered in favor of the City because no such claim exists or has been clearly established.

While Plaintiff does not explicitly state a claim for malicious prosecution against the City, to the extent he attempts to do so, judgment should be entered in favor of the City for such claim for all

the reasons stated in Section I.E., *supra*.

### III. JUDGMENT SHOULD BE ENTERED IN FAVOR OF DEFENDANTS ON WATSON'S CLAIMS FOR DAMAGES AND PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OF SUCH AT TRIAL.

Watson seeks compensatory damages, including lost wages, and, although he does not assert as much in his prayer for relief, he also apparently seeks damages for "fear, apprehension, depression, anxiety, consternation and emotional distress" and "loss of faith in society." (*See* FAC ¶¶ 110, 119, 127, 124). He also requests punitive damages on his claims against Officer Boyd. However, because Watson cannot demonstrate that he is entitled to such damages, this Court should enter summary judgment in favor of Defendants and against Watson on these issues and preclude him from introducing evidence on these issues at trial.

### A. This Court should enter judgment in favor of Defendants on Plaintiff's claim for lost wages and preclude Plaintiff from offering evidence of such damages at trial.

Damages in a §1983 action are designed "'to compensate persons for injuries that are caused by the deprivation of constitutional rights.'" *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (quoting *Carey v. Piphus*, 435 U.S. 247, 254 (1978)).  Where there is no genuine issue as to whether a plaintiff can establish damages with "reasonable certainty," the court may grant summary judgment on that issue and preclude the plaintiff from offering evidence on that issue at trial. *See Johnson v. Al Tech Spec. Steel Corp.*, 731 F.2d 143, 147 (2d Cir.1984) (holding that, where the plaintiff "failed to document any claims for lost wages, . . . the trial court properly [ ] grant[ed] partial summary judgment"); *Wang v. Yum! Brands, Inc.*, No. 05-CIV-1783JFBMDG, 2007 WL 1521496, at *5–6 (E.D.N.Y. May 22, 2007) (granting summary judgment on claim for lost wages and precluding plaintiff from offering evidence of lost wages at trial).  The Court should do so here.

Watson asserts that he lost his security clearance, and as a result his job, due to the actions of Defendants. (FAC ¶¶87–94). However, that allegation is not supported by the evidence adduced in this case. The evidence demonstrates that Watson was employed by NJVC, LLC, a contractor for the

NGA. (SUMF ¶34). Although he received a conditional security clearance (which did not constrain his access to classified information) and was simply required to provide documentation showing he had resolved the citations he received from Officer Boyd, the NGA testified that he could have resolved the citations by pleading guilty and paying a fine; it was not necessary that he be found "not guilty" in order for his full security clearance to be reinstated. (SUMF ¶¶35–36). Moreover, the NGA testified that the reason Watson's security clearance was suspended was not the pendency of any charges by the City. (SUMF ¶37). Rather, NGA personnel testified unequivocally that Watson's clearance was suspended only because he made the following statement to an NGA personnel security officer: "What if I went out there and started telling the Government's secrets on my time?  Do you think they would go to court with me then." (SUMF ¶37). Because the NGA understood Watson's statement to be a threat to national security, it suspended his security clearances. (SUMF ¶38). Watson's employer then terminated Watson's employment because he lacked a security clearance. (SUMF ¶39). Accordingly, Watson has not and cannot demonstrate that he has suffered from lost wages as a matter of law in this case. Judgment should be entered in favor of Defendants on this issue and Watson should be precluded from introducing evidence of the same at trial.

**B.  Judgment should be entered in favor of Defendants on Plaintiff's claim for emotional distress and preclude Plaintiff from offering evidence of such damages at trial.**

In addition, Watson has failed to offer any evidence that he has suffered from a compensable injury of "fear, apprehension, depression, anxiety, consternation and emotional distress" and "loss of faith in society." Indeed, the Supreme Court has held that compensatory damages cannot be awarded for the violation of a right absent proof of actual injury. *Farrar v. Hobby*, 506 U.S. 103, 112, 113 S. Ct. 566, 573, 121 L. Ed. 2d 494 (1992). *See also S.M. v. Lincoln Cty.*, 874 F.3d 581, 589 (8th Cir. 2017) (holding compensatory damages award for emotional distress must be accompanied by "competent evidence of genuine injury"). No such evidence has been offered here. In fact, during his deposition, Watson was unable to testify as to what damages he is seeking, instead stating that he

would request "whatever the law sees fit for this situation." (SUMF ¶40). Further, in response an interrogatory request seeking "all damages that you claim in this action," Watson asserts only that he has "suffered all of the types of damages set forth in the First Amended Complaint." (SUMF ¶41). Watson has failed to offer any evidence of his damages, let alone evidence of physical or mental injuries. (SUMF ¶42). Because Watson has failed to offer any evidence that he has suffered from "fear, apprehension, depression, anxiety, consternation and emotional distress" and "loss of faith in society," judgment should be entered in favor of Defendants on this issue.

C. **Judgment should be entered in favor of Officer Boyd on Plaintiff's claim for punitive damage and preclude Plaintiff from offering evidence of such at trial**.

Plaintiff has requested punitive damages from Officer Boyd, but this request must fail. Punitive damages on available under §1983 in only two limited circumstances, "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Schaub v. VonWald*, 638 F.3d 905, 922 (8th Cir. 2011). In this case, Plaintiff has failed to adduce evidence demonstrating the requisite level of evil motive or indifference to Plaintiff's rights. (SUMF ¶43). While Watson has an alternative view of whether the facts of this case are sufficient to support his arrest citation, he has no evidence to demonstrate that Officer Boyd's conduct demonstrates evil motive or reckless indifference to Watson's rights. Judgment should therefore be entered in favor of Officer Boyd on this issue. *In re Tetracycline Cases*, 747 F. Supp. 543, 552 (W.D. Mo. 1989) (granting summary judgment on issue of punitive damages).

### CONCLUSION

For the reasons set forth herein, Defendants' Motion for Summary Judgment should be granted and judgment should be entered in favor of Defendants on all counts of Watson's Complaint.

Respectfully submitted,

**LEWIS RICE LLC**

By:  /s/ Ronald A. Norwood
      Ronald A. Norwood, #33841MO
      Aarnarian D. Carey, #58286MO
      Jacqueline K. Graves, #64875MO
      600 Washington Ave., Suite 2500
      St. Louis, Missouri  63101
      (314) 444-7759 (Telephone)
      (314) 612-7759 (Facsimile)
      rnorwood@lewisrice.com
      acarey@lewisrice.com
      jgraves@lewisrice.com

*Attorneys for Defendants City of Ferguson*

**MICKES O'TOOLE, LLC**

By:  /s/ Geri Lynn Arrindell
      Geri Lynn Arrindell, #66357MO
      12444 Powerscourt Drive
      Suite 400
      St. Louis, MO 63131
      garrindell@mickesotoole.com

*Attorney for Defendant Eddie Boyd, III*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 1st day of March, 2019, a true copy hereof was electronically filed with the Clerk of the Court using the CM/ECF system, to be served by operation of the Court's electronic filing system on all counsel of record.

      /s/ Ronald A. Norwood