UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FRED WATSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:17-CV-2187 RLW |
| | ) |
| EDDIE BOYD, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Fred Watson's Motion to Compel (ECF No. 54), Plaintiff Fred Watson's Motion for Protective Order or, In the Alternative, Motion to Compel (ECF No. 56), Defendant City of Ferguson, Missouri's Motion to Bifurcate Claims and to Stay Discovery and Trial (ECF No. 65), Defendant Eddie Boyd's Motion to Join In and Adopt Defendant City of Ferguson's Motion to Bifurcate Claims and to Stay Discovery and Trial (ECF No. 71), Plaintiff's Motion to Quash Subpoena (ECF No. 81), Plaintiff's Motion to Compel Discovery of Previously Taken Depositions (ECF No. 87), and Plaintiff's Motion to Deem Admitted Plaintiff's Request for Admissions Directed to Defendant City of Ferguson (ECF No. 89).

## BACKGROUND

On August 1, 2012, Plaintiff Fred Watson ("Watson") was sitting in his car after a basketball game at Forestwood Park. Watson alleges that Defendant Eddie Boyd ("Boyd"), an on-duty Ferguson Police Department ("FPD") officer, aggressively accosted Watson. Watson claims that when he asked Boyd for the grounds for this harassment, Boyd retaliated against him by writing nine frivolous tickets against Watson, including a False Declaration/False Reports and

Failure to Comply ticket. Watson asserts that Boyd acted pursuant to a FPD custom of unconstitutional policing to generate revenue for the City of Ferguson. Watson filed this lawsuit alleging a variety of claims under 42 U.S.C. §1983, including unlawful search and seizure, unlawful retaliation in violation of the First Amendment, and malicious prosecution against Boyd, as well as a *Monell* claim against the City of Ferguson, based upon his arrest and the citations issued by Boyd on August 1, 2012.

## DISCUSSION

### I. Discovery from Defendant Boyd

#### A. Legal Standard

Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery. *See* Fed. R. Civ. P. 37 (a)(1) ("On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery."). Likewise, Rule 26 governs the scope of discovery in federal matters:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1).

#### B. Internal Affairs and Personnel Files

"[A] plaintiff alleging police misconduct and a municipal policy condoning such alleged misconduct is generally entitled to discovery of the internal affairs investigations conducted regarding the incident complained." *D.B. v. St. Charles Cty.*, No. 4:12-CV-654-JAR, 2013 WL

4042215, at *2 (E.D. Mo. Aug. 8, 2013) (citing *Rohrbough v. Hall,* Case No. 4:07–cv–00996–ERW (Doc. No. 43) (E.D. Mo. Sept. 18, 2008)). Courts, however, have held that broad requests for all internal affairs documents for several years are overly broad and not reasonably calculated to lead to discoverable, admissible evidence. *D.B. v. St. Charles Cty.*, No. 4:12-CV-654-JAR, 2013 WL 4042215, at *2 (E.D. Mo. Aug. 8, 2013); *Rohrbough v. Hall,* Case No. 4:07–cv–00996–ERW (Doc. No. 43) (E.D. Mo. Sept. 18, 2008).

Watson asserts Boyd should produce his entire Ferguson, St. Ann, and St. Louis Metropolitan Police Department ("SLMPD") personnel files in his possession, allowing for the redaction of his medical or financial information. (ECF No. 55 at 9). Watson claims that the personnel files are relevant to his case to "establish a pattern of misconduct similar to what is alleged in Plaintiff [sic] complaint; the files will allow Plaintiff to determine whether Boyd provided truthful testimony about his departure from the St. Louis and St. Ann police departments; and they are highly relevant to Plaintiff's claims that City of Ferguson failed to screen, supervise, and discipline Officer Boyd." (ECF No. 55 at 9). Watson claims "Defendant Boyd's counsel is already in possession of all of his personnel records minimizing any burden created by production." (ECF No. 55 at 9).[1] Watson asserts that the Boyd has failed to produce certain personnel documents, requiring this Motion to compel. (ECF No. 55 at 10).

The Court hereby orders Boyd to produce his personnel files, redacted for medical, financial, or other sensitive information, to the extent that they are in Boyd's possession. Boyd shall produce a privilege/confidentiality log for any documents not produced. If Boyd has previously produced all of his personnel documents, then he shall so state to Watson.

---

[1] It is unclear to the Court how Watson can assert what is in Boyd's counsel's possession. Boyd is not the custodian of records for any of his personnel files.

### C. Deposition Transcript from a Former Federal Lawsuit

Watson seeks the deposition transcript of then-head of SLMPD Internal Affairs, John Hayden, from *C.I.D. v. Boyd*, 4:08cv788 (Mo. E.D.). Watson asserts *C.I.D. v. Boyd* "involved an allegation that Defendant Boyd assaulted a juvenile and falsified the police report in an attempt to charge the juvenile he assaulted with a crime." (ECF No. 55 at 11). According to a court filing, Hayden testified in his deposition he "recommended that [the SLMPD Internal Affairs complaint] against Boyd be sustained in that Boyd issued a false report and Boyd violated the department's policy for abuse of prisoners." *C.I.D. v. Boyd*, 4:08cv788 (ECF No. 79-2, at 5, ¶12). Watson alleges that Hayden's deposition is "highly relevant to Boyd's habit of filing malicious charges." (ECF No. 55 at 12). Watson argues Hayden's deposition testimony is "in no way burdensome to produce, as Boyd's former counsel still maintains it in his possession." (ECF No. 55 at 13).[2] Boyd contends that the allegations in the instant lawsuit are unrelated to the allegations in *C.I.D. v. Boyd* and, therefore, Watson's Motion to Compel should be denied.

In this case, Watson alleges Boyd "unlawfully arrested and initiated charges against Mr. Watson without probable cause and in retaliation for Mr. Watson engaging in protected First Amendment conduct." (ECF No. 35, ¶1). The Court has already ordered Boyd and the City of Ferguson to produce Boyd's internal affairs records. Presumably, these records would include the recommendation of Hayden. The Court holds that ordering the production of the entire deposition transcript is cumulative and overbroad. The Court denies the Motion to Compel Boyd to produce the deposition testimony of John Hayden from *C.I.D. v. Boyd*, 4:08cv788.

---

[2] Again, Boyd is not the custodian of records for this prior lawsuit and it is unclear how Watson allegedly knows that Boyd's counsel maintains this deposition.

## II. Discovery from City of Ferguson

### A. Internal Affairs Files

Watson requests the City of Ferguson produce all citizen complaints and internal affairs records from 2010-2017. Watson claims that the current agreement between the parties has proved "unworkable" and City of Ferguson has not produced some relevant records. (ECF No. 55 at 18).

The Court holds the City of Ferguson should not be compelled to produce all of its internal affairs files for an eight-year timeframe. Rather, City of Ferguson shall provide internal affairs documents regarding Boyd and regarding "similar conduct" with respect to: complaints of being charged with failure to obey or false declaration, complaints of retaliatory or excessive ticketing, complaints of being seized and/or searched without probable cause, and complaints of malicious prosecution. The Court orders City of Ferguson to engage in another search to ensure that it has produced all relevant records and to produce those documents within ten days.

### B. Email Correspondence

Watson asks the Court to compel the City of Ferguson to search and produce all relevant emails in its possession related to Boyd. (ECF No. 55 at 18-19). Watson claims that its search of the database for another litigation, *Fant v. City of Ferguson*, 4:15cv253 (AGF) (hereinafter, the "*Fant*" case) has yielded additional citizen and officer complaints against Boyd that were not produced by the City of Ferguson in this case. (ECF No. 55 at 19). The Court holds that Watson is entitled to search for emails related to Boyd's acts of misconduct or any complaints regarding Boyd. The Court orders the City of Ferguson to conduct another research for any complaints against or about Boyd or any allegations of misconduct.

## C. Department of Justice Records

Request number 14 in Plaintiff's Second Request for Production directed to the City of Ferguson requests documents listed in 41 separate subsections, all of which cite to the Department of Justice (DOJ) Report, which is attached to Plaintiff's First Amended Complaint. *See* ECF No. 35-4. Watson asserts that production of these documents is not burdensome because the request "attempts to obtain proof of incidents that bear similarities to the allegations in Mr. Watson's complaint."

The Court orders City of Ferguson to produce source documents from the DOJ Report that relate to Boyd or that relate to "similar conduct" to the allegations in this case. Specifically, complaints of being charged with failure to obey or false declaration, complaints of retaliatory or excessive ticketing, complaints of being seized and/or searched without probable cause, and complaints of malicious prosecution. If City of Ferguson is unable to identify the incident discussed in the DOJ Report, then counsel shall discuss that issue with counsel for Watson and attempt to discern the relevant incident and produce any relevant documents accordingly.

## D. Records of Arrests Made by Boyd on the Day of Watson's Arrest

Request 12 of Watson's Second Request for Production seeks records of all arrests made by Boyd on August 1, 2012, the day Watson was arrested and charged, to determine if Boyd "conducted similarly unconstitutional seizures of individuals in [his] patrol of Forestwood Park on the day of Plaintiff's arrest." (ECF No. 55 at 23). Watson maintains "[t]hese reports could support Plaintiff's claim that Defendant Boyd's patrol of Forestwood Park consisted of seizing individuals without reasonable suspicion and then asking them to identify themselves." (*Id.*) Watson claims that Boyd's August 2, 2012 arrest reports "could support Plaintiff's claims that Defendant Boyd falsified police reports in order to justify these seizures." (*Id.*)

The Court holds that Watson has failed to identify the relevance of Boyd's arrest record on August 1, 2012 to the claims in this case. Only Boyd's arrests involving "similar conduct" or that resulted in an internal affairs investigation of Boyd could be relevant to Watson's claim. Those documents should have been produced pursuant to other requests. Therefore, the Court denies Watson's motion to compel Request 12 of Watson's Second Request for Production because it is irrelevant and not reasonably calculated to lead to discoverable evidence.

### E. Request for Inspection

Watson requested to review the "court files" for thirty-nine individuals, as well as an unknown number of individuals who entered guilty pleas on August 26, 2013. Watson asserts "inspection of court files is necessary and vital to Mr. Watson's ability to prove his claims because many aspects of Mr. Watson's prosecution seem hard to believe: that a plea was entered on all of his cases without a single documents stating this from either Mr. Watson, his attorney, or the City Prosecutor; that the City's own files seem to show that several of the case, including two of the most serious ones, were still open well after Mr. Watson's alleged guilty plea in August 2013; and that a plea was somehow entered into the Ferguson Court reporting system in January 2015, around the time that Ferguson's City Prosecutor told Mr. Watson's attorney that the cases had been closed for months." (ECF No. 55 at 25). Watson claims he needs to inspect these documents to determine how many of the pleas were entered without a signature of a defendant or a counsel. (ECF No. 55 at 27). Additionally, Watson avers these court files could reveal "additional falsified police reports." (ECF No. 55 at 27).

The Court denies Watson's request to inspect these court files. The only relevant court file is that for Watson. Watson's *Monell* claim is not based upon policies or customs of the Ferguson Municipal Court. Rather, Watson's claims are based upon the alleged policies and

customs of the City as to law enforcement practices. *See* ECF No. 35, ¶¶131-148). The Court denies the request for inspection of Ferguson Municipal Court files because they are beyond the scope of the First Amended Complaint and, therefore, irrelevant to this action.

### III. Motion for Protective Order or, In the Alternative, Motion to Compel

Watson claims that counsel for the City of Ferguson, Ron Norwood, gave Watson's counsel permission to search a database from the *Fant* case. Watson's counsel had access to the *Fant* database because they also serve as the plaintiff's counsel in *Fant*. Watson's counsel provided a list of proposed search terms to counsel for the City of Ferguson on October 6, 2018. (ECF No. 57-2). On October 11, 2018, counsel for the City of Ferguson gave Watson's counsel permission to search the *Fant* database. (ECF Nos. 57-3, 57-4, and 57-5). Counsel for the City of Ferguson did not object to the search, despite several emails demonstrating Watson's counsel was searching the *Fant* database. (ECF Nos. 57-6 and 57-7). On October 30, 2018, counsel for the City of Ferguson, Jacqueline Graves, emailed Watson's counsel and indicated that the City of Ferguson would agree to allow Watson's counsel to search the *Fant* database and then compare those searches with searches conducted by the City of Ferguson during the same period. (ECF No. 57-8 at 3).[3] The City of Ferguson reserved its right to object to production of said documents, including if such production would be unduly burdensome based upon the number of hits due to search terms. (*Id.*).

In response, City of Ferguson argues that Watson's counsel engaged in "improper mining of documents" from the *Fant* database. (ECF No. 68 at 1). Watson notes that the documents and information produced by the City of Ferguson in the *Fant* case are subject to Protective Orders entered by the District Court Judge in that case. (*Id.*) Counsel for the City of Ferguson claims

---

[3] Apparently, the City of Ferguson had experienced data loss and the parties could not be certain that its document production was complete.

that the parties discussed Watson's counsel performing certain preliminary searches of the *Fant* database, but that they never agreed to any use of the documents from the *Fant* database, nor could they have because of the protective order in the *Fant* litigation.

It appears that the parties came to an inarticulate agreement, or a "proposal" as characterized by the City of Ferguson, that allowed Watson's counsel virtually unfettered access to search for documents from the *Fant* litigation. The only dispute now is what to do with the results of those searches. *See* ECF No. 68 at 10 ("The City made clear every step of the way that it was reserving its rights to object to the use of any such documents and information."). The Court holds that the City of Ferguson must produce documents from the *Fant* database that are responsive to the relevant document requests in this case, as previously outlined in this Order.[4] The Court emphasizes that production of any documents pursuant to this Order does not mean that such documents will be admissible in this litigation. At this stage of the litigation, the parties shall produce documents that may be relevant in this action and reasonably calculated to lead to admissible evidence, as previously discussed in this Order.

IV.     **Motion to Bifurcate Claims and to Stay Discovery and Trial**

City of Ferguson, Missouri filed a Motion to Bifurcate Claims and to Stay Discovery and Trial, and Boyd joined in this Motion. Defendants seek to bifurcate the constitutional claims against Boyd from the *Monell* claim against the City of Ferguson and stay the action against the City of Ferguson until resolution of Watson's claims against Boyd. Defendants argue "[b]ifurcation is appropriate because it serves to further the interests of judicial economy,

---

[4] To the extent that it is required, the parties must also work with the District Court Judge in the *Fant* case to supplement or amend the protective order in that case to allow the parties to utilize the *Fant* database in this case.

decreases the changes of confusion or prejudice against any of the parties, and will have no effect on Plaintiff's rights to recovery." (ECF No. 66 at 4).

Watson filed this Complaint on July 31, 2017. (ECF No. 1). City of Ferguson did not move to bifurcate the claims until January 11, 2019. (ECF No. 65). Due to the extensive discovery that has already occurred in this case, the Court holds that the interests of judicial economy will not be served by bifurcation of Watson's claims against City of Ferguson and Boyd. Therefore, the Court denies the Motion to Bifurcate.

V.     **Motion to Quash Subpoena**

On January 14, 2019, City of Ferguson served a subpoena to produce records upon ArchCity Defenders, counsel for Watson. The subpoena asked for production of all non-privileged documents between ArchCity Defenders and any party or third-party regarding Watson, the prosecution of Watson by the City of Ferguson based on his 2012 arrest and subsequent charges, and/or the claims at issue in this case. (ECF No. 82 at 1-2). Watson's counsel argued that a subpoena was an inappropriate means to obtain this information and instead supplemented Watson's production in response to document request number 1. Document request number 1 asked for the production of any statements or affidavits from any person relating to the occurrences described in the Complaint or otherwise concerning any of Watson's claims. (ECF No. 82 at 2).

In response, the City of Ferguson argues that its subpoena should not be quashed because Watson has not adequately responded to the discovery requests. In addition, the City of Ferguson contends it needs to subpoena Watson's counsel because "false information" has been provided to various media outlets. (ECF No. 85).

This motion relates to the interplay between Fed. R. Civ. P. 45 for subpoenas and Fed. R. Civ. P. 34 for production of documents. "[I]n describing the relationship between Rule 34 and other discovery rules, at least one commentator indicates that '[i]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45].'" *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 100 (D. Mass. 1996) (quoting 8A Wright, Miller & Marcus: Federal Practice and Procedure § 2204 (1994)). The City of Ferguson has not provided an adequate basis for subpoenaing Watson's counsel, particularly because Watson supplemented his discovery production after reexamining its files. *See Thomas v. IEM, Inc.*, No. CIV. A. 06-886-B-M2, 2008 WL 695230, at *2 (M.D. La. Mar. 12, 2008) (quoting *Burns v. Bank of America*, 2007 WL 1589437 (S.D.N.Y.2007) ("Rule 45 subpoenas, although not technically precluded by the language of Rule 45 from being served upon parties to litigation, are generally used to obtain documents from non-parties and are 'clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34.'"). Likewise, the parties' dispute over the correct narrative in this action does not form a basis for subpoenaing a party's counsel. Therefore, the Court grants Watson's Motion to Quash Subpoena.

### VI.   Motion to Compel Previously Taken Depositions

Watson requests from Boyd the production of depositions of the Ferguson Chief of Police (Moss) and Boyd from a separate action where Boyd is alleging racial discrimination against the City of Ferguson. *See Boyd v. City of Ferguson*, 17SL-CC4379 (Circuit Court of St. Louis County, State of Missouri). In *Boyd v. City of Ferguson*, the City of Ferguson raised the affirmative defense that actions were taken against Boyd based upon legitimate, non-discriminatory reasons and not based upon Boyd's race. Watson claims that these depositions

bear on his case against the City of Ferguson because they relate to Ferguson's "supervision, control and discipline of Boyd." (ECF No. 88 at 2).

In response, Boyd argues that the questions directed to Boyd and Police Chief Moss at their depositions were relevant to Boyd's employment relationship with the City of Ferguson and whether race was a factor in any City of Ferguson's adverse employment action against Boyd. (ECF No. 92 at 3). Boyd maintains that the transcripts are not reasonably calculated to the lead to the discovery of admissible evidence. Boyd notes that Watson's counsel did not inquire regarding the *Boyd v. City of Ferguson* during Boyd's deposition. Boyd states that his counsel in this action is not his counsel in *Boyd v. City of Ferguson* and did not take the depositions of Boyd or Police Chief Moss. (ECF No. 92 at 3). Boyd argues that the requests are overly broad and burdensome because they are not limited to the issues in this case. (ECF No. 92 at 4). Even if Watson's request for the deposition transcript is proper and the materials are discoverable, Boyd argues that the deposition transcripts cannot be used in this litigation because *Boyd v. City of Ferguson* does not involve the same subject matter between the same parties as required by Fed. R. Civ. P. 32(a)(8). *See* Fed. R. Civ. P. 32(a)(8)("A deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action.").

The Court holds that the deposition transcripts from *Boyd v. City of Ferguson* are not discoverable. As Watson admits, the transcripts would be relevant in this case only to show Boyd's qualifications for employment and the City of Ferguson's knowledge regarding any issues before and during his employment with the City of Ferguson. This information is more readily available from other sources than the deposition transcript of another case that involves

issues unrelated to this case. Presumably, any information should have been included in Boyd's personnel file. In addition, Watson's counsel could have inquired about the *Boyd v. City of Ferguson* lawsuit during depositions in this case, but they did not. Therefore, the Court holds that Watson's Motion to Compel is denied because the document requests are overbroad and not reasonably calculated to lead to admissible evidence.

### VII. Plaintiff's Motion to Deem Admitted Plaintiff's Request for Admissions Directed to Defendant City of Ferguson

Watson sent City of Ferguson Request for Admissions relating to the United States Department of Justice's Report, dated March 4, 2015. In the Request for Admissions, Watson asked the City of Ferguson to admit or deny the Department of Justice made certain findings. City of Ferguson has not provided responses to the Requests for Admissions. Watson asks the Court to deem his Requests for Admissions directed to the City of Ferguson to be admitted. (ECF No. 89).

In response, City of Ferguson argues that it cannot be required to admit legal conclusions. In addition, City of Ferguson contends it cannot be required to admit statements that contain hearsay within hearsay.

The Court holds that City of Ferguson should respond to Watson's requests for Admissions because they ask for admissions of certain findings, not for the legal conclusions that are outlined in the report. *See Moore v. City of Ferguson*, Missouri, WL 3141244, at *2 (E.D. Mo. June 6, 2016) ("The Court holds that the Requests involve permissible inquiries regarding application of law to facts."). As in *Moore*, the Court finds that Defendants' concerns regarding some of the findings in the Report are premature because "[m]atters regarding admissibility of the Report and its findings will be addressed as part of other pretrial matters." *Moore v. City of Ferguson, Missouri*, No. 4:14-CV-1443 SNLJ, 2016 WL 3141244, at *3 (E.D. Mo. June 6,

2016). Further, the Court finds that Defendant's hearsay arguments are not well-founded because many of the findings would be fit into a hearsay exception, such as Fed. R. Evid. 801(d)(2) and Fed. R. Evid. 803(6)(B). City of Ferguson is ordered to respond to the Requests for Admissions within ten (10) days.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Fred Watson's Motion to Compel (ECF No. 54) is **DENIED**, in part, and **GRANTED**, in part as outlined above. Defendants shall supplement their responses within ten (10) days.

**IT IS FURTHER ORDERED** that Plaintiff Fred Watson's Motion for Protective Order or, In the Alternative, Motion to Compel (ECF No. 56) is **GRANTED**, in part, and **DENIED**, in part, as outlined above. Defendants shall supplement their responses within ten (10) days.

**IT IS FURTHER ORDERED** that Defendant City of Ferguson, Missouri's Motion to Bifurcate Claims and to Stay Discovery and Trial (ECF No. 65) and Defendant Eddie Boyd's Motion to Join In and Adopt Defendant City of Ferguson's Motion to Bifurcate Claims and to Stay Discovery and Trial (ECF No. 71) are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Quash Subpoena (ECF No. 81) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Discovery of Previously Taken Depositions (ECF No. 87) is **DENIED**.

**IT IS FINALLY ORDERED** that Plaintiff's Motion to Deem Admitted Plaintiff's Request for Admissions Directed to Defendant City of Ferguson (ECF No. 89) is **GRANTED**, in part. Defendant City of Ferguson is ordered to respond to the Requests for Admissions within ten (10) days.

Dated this 5th day of April, 2019.

/s/ Ronnie L. White
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE