## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| FRED WATSON, | ) |
| | ) |
| Plaintiff, | ) No. 4:17-CV-2187 RLW |
| | ) |
| v. | ) |
| | ) |
| EDDIE BOYD, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Joint Motion for Summary Judgment (ECF No. 128) and Defendants' Joint Motion to Strike Plaintiff's Summary Judgment Submission (ECF No. 140). These matters are fully briefed and ready for disposition.

## BACKGROUND

On August 1, 2012, Officer Eddie Boyd, a Ferguson Police Officer, was patrolling at Forestwood Park in Ferguson, Missouri. (Defendants' Joint Statement of Undisputed Material Facts ("DSUMF"), ECF No. 129, ¶2). At approximately 8:17 p.m., Boyd observed a car with tinted windows and no front license plate, backed into a parking space against a tree line, and idling with its headlights on. (DSUMF, ¶3). Boyd claims he decided to investigate based upon some recent break-ins at the park. (DSUMF, ¶4). Boyd pulled his police cruiser next to Watson's vehicle and approached the car on foot. (DSUMF, ¶4).[1] Watson, having recently finished playing

---

[1] Defendants claim that Boyd pulled his car adjacent to Watson's car. Watson asserts Boyd pulled his patrol vehicle in front of the car, blocking Watson into his parking spot. (DSUMF, ¶4, PSUMF, ¶17).

basketball, sat in the driver's seat of his idling vehicle, without wearing a seatbelt. (DSUMF, ¶7, PSUMF, ¶1).

Boyd asked for Watson's name and address. Watson provided the name "Fred Watson" and his Florida address that corresponded to his Florida driver's license. (PSUMF, ¶¶25-28).[2] Watson claims Boyd asked for Watson's social security number, which Watson refused to provide. (PSUMF, ¶21). Boyd could not find Watson in the system. (DSUMF, ¶16).

Watson asked Boyd for his name and badge number, but Boyd told Watson to look on the tickets he would receive. (PSUMF, ¶¶30-31). Watson then reached for his cell phone on the dashboard of his car to call 911. (DSUMF, ¶19; PSUMF, ¶¶32-33). Boyd claims he directed Watson not to use his cell phone (DSUMF, ¶20). Watson asserts Boyd drew his gun and pointed it at Watson's head. (PSUMF, ¶¶36-38). Boyd claims Watson refused to throw his keys out of the car and refused to exit the vehicle. (DSUMF, ¶¶22-23).

After two other Ferguson police officers responded as backup (DSUMF, ¶24), Watson exited his vehicle. (DSUMF, ¶25; PSUMF, ¶50). As he exited his vehicle, Watson closed his car door with his foot because he did not want his vehicle to be searched. (PSUMF, ¶51; DSUMF, ¶27). Boyd claims he interpreted this as a "furtive" movement. (DSUMF, ¶26). Watson claims that Boyd proceeded to ransack Watson's vehicle, looking for contraband, but found nothing. (PSUMF, ¶¶59-62).

Boyd states that during his search of the vehicle he located Watson's identification showing his name was "Freddie Watson." With this full information, Boyd then located Watson's name in the Regional Justice Information System ("REJIS") computer database. (DSUMF, ¶29). REJIS

---

[2] Defendants claim Watson provided the name "Fred Watson" instead of "Freddie Watson" even though "he admitted knew that nothing would come up [on the Regional Justice Information System ("REJIS") system] if Officer Boyd performed a search under that name." (DSUMF, ¶12).

indicated Watson was a Missouri resident, he had not surrendered his Missouri license, and his license had expired. (DSUMF, ¶30). Boyd was not able to locate a valid driver's license for Watson in Florida, although the vehicle was registered in Florida. (DSUMF, ¶31). At the conclusion of the interaction, Boyd issued the following nine citations against Watson:

(1) Driving without operator's license in possession;

(2) Violation of financial responsibility ordinance (no insurance);

(3) Vision-reducing materials applied to windshield (illegal window tint);

(4) Failure to register vehicle (assuming Watson was a Missouri resident and the car was not actually registered in Florida);

(5) No inspection sticker (safety and emission testing);

(6) No seatbelt;

(7) Expired Missouri driver's license;

(8) Failure to comply (for refusal to provide pedigree information and refusing to exit the vehicle when advised he was under arrest); and

(9) Making a false statement (giving the name "Fred Watson" and stating he did not have identification, but a government ID was later located in his vehicle).

(DSUMF, ¶33).

At the time of these incidents, Watson was employed by the National Geospatial-Intelligence Agency ("NGA") by government contractor NJVC. (PSUMF, ¶3). Watson claims that during a routine periodic re-investigation into this background, his top-secret security clearance was not renewed, and he was placed on conditional status because he was unable to show that he resolved the citations from the City of Ferguson. (PSUMF, ¶¶118-120). Watson claims he was not able to show he resolved the tickets after two years and his security clearance was

revoked, and he was terminated from his position. (PSUMF, ¶¶115, 123). Defendants, however, maintain that Watson's security clearance was suspended because he made the following statement to a NGA personnel security officer: "What if I went out there and started telling the Government's secrets on my time? Do you think they would go to court with me then?" (DSUMF, ¶37). Defendants contend that Watson's statement was deemed a serious threat to national security, his NGA security clearances were suspended, and NJVC terminated Watson's employment. (DSUMF, ¶¶38-39).

Watson filed his First Amended Complaint ("FAC") asserting various claims under 42 U.S.C. § 1983, including claims against Boyd for Unlawful Search and Seizure (Count I), Unlawful Retaliation (Count II), and Malicious Prosecution (Count III); and a claim against the City of Ferguson ("the City") for *Monell* municipal liability (Count IV).[3]

## DISCUSSION

## I.     MOTION TO STRIKE

### A.  Standard of Review

Rule 12(f) provides "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "'To prevail on a motion to strike, the movant must clearly show that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants.'" *Laney v. City of St. Louis, Mo.*, No. 4:18 CV 1575 CDP, 2019 WL 2423308, at *8 (E.D. Mo. June 10, 2019) (citing *Aldridge v. City of St. Louis, Mo.*, No. 4:18-CV-1677 CAS, 2019 WL 1695982, at *15 (E.D. Mo. Apr. 17, 2019) (quoting 2 James W. Moore, et al., *Moore's Federal Practice* § 12.37[3] (3rd ed. 2018)).

---

[3] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).

## B. Discussion

First, Defendants argue that Watson cannot provide his own statement of additional facts under Local Rule 4.01. *See* ECF No. 141 at 2. The Court has never interpreted this local rule in this manner and the Court denies Defendants' motion to strike a plaintiff's statement of additional facts on this basis.

Further, many of the documents in dispute are public records, which are admissible under Fed. R. Evid. 803(8).[4] Similarly, the Court finds even if some of these public records contain hearsay, then those objections can be cured through witness testimony at trial. Matters regarding admissibility of the reports and declarations will be addressed as part of other pretrial matters. The Court, however, addresses a few specific issues outlined by the parties.

---

[4] The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

Public Records. A record or statement of a public office if:

    **(A)** it sets out:

        **(i)** the office's activities;

        **(ii)** a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or

        **(iii)** in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and

    **(B)** the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803(8).

## 1. Dissimilar and No Merit

Defendants argue that the documents related to allegations of misconduct against Boyd are inadmissible because they are dissimilar to the allegations in this case. Watson sets forth facts related to several complaints from citizens, Ferguson employees, and a police clerk. Defendants assert that the complaints should be stricken because Watson cannot demonstrate that any of the complaints were found to have merit and their "mere existence" cannot serve to support a claim for municipal liability. (ECF No. 141 at 5).

The Court denies the motion to strike these complaints against Watson simply because they are somewhat dissimilar and because some have not been sustained. The Court can evaluate and weigh the relevance of the complaints compared to the allegations in this case. Further, the Court holds that even unsustained complaints can have relevance to this case, particularly given the allegations that the City of Ferguson purposefully and systematically failed to supervise and discipline its officers. As a result, the Court denies the motion to strike these complaints.

## 2. Allegations of Misconduct After August 2012

Defendants further state that allegations of misconduct that occurred after August 2012 cannot support Watson's claims for constitutional violations. (ECF No. 141 at 6). Defendants contend that, under federal law, "[c]itizen complaints against an officer are only relevant to a municipal liability claim when the complaints were lodged prior to plaintiff's alleged injury." (ECF No. 141 at 6). That is, the municipality's inaction in the face of such allegations against the officer must be the "moving force" behind the plaintiff's injury for the complaints to be admissible. (ECF No. 141 at 6 (citing *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 807 (8th Cir. 1994) ("[A] government custom of laxness or inaction must be the moving force behind the constitutional violation"); *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397 (1997) ("Bryan

County") ("The plaintiff must . . . demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged") (emphasis in original)). Accordingly, Defendants argue that allegations that occurred after August 1, 2012 are inadmissible to support Watson's claims of constitutional injury.

In response, Watson argues that "even if Boyd's misconduct after August 1, 2012 cannot be admitted to prove that it caused the deprivation of Mr. Watson's constitutional rights, it can be admitted to show the existence of Ferguson's custom of failing to discipline and supervise its officers." (ECF No. 149 at 19-20).

The Court finds that documents related to events that occurred after August 1, 2012 are irrelevant to Watson's allegations and shall be stricken. Watson cannot use post-arrest actions to prove a custom or policy that was in effect at the time of the arrest.

### 3. Employment Prior to City of Ferguson

"The prior complaints in an applicant's background must be nearly identical to the type of officer misconduct that caused the constitutional deprivation allegedly suffered by a plaintiff." *Morris v. Crawford Cty.*, 299 F.3d 919, 923 (8th Cir. 2002). Defendants argue that the complaints against Boyd prior to his employment at the City of Ferguson are inadmissible because they are not "nearly identical" to the allegations lodged against him in this litigation.

The Court will not strike evidence related to Boyd's employment prior to the City of Ferguson outright. The Court can evaluate and weigh the relevance of the complaints compared to the allegations in this case. The Court believes that some of the documents predating Boyd's employment with Ferguson are relevant to Watson's allegations that the City failed to adequately screen Boyd before employing him. The Court denies the motion to strike these documents *en masse*.

### 4. Inadmissible Hearsay and Lacks Authentication

Defendants argue that the hearsay statements from citizen complaints contained within police reports and other internal affairs files are inadmissible and Watson is precluded from using these documents as evidence to oppose summary judgment. (ECF No. 141 at 8-9) (citing Exhibit A).

The Court will consider these documents only to the extent that they can be authenticated prior to the trial and have already been addressed by Watson. *See* ECF No. 149 at 4-7. The Court does not believe that unilaterally striking such documents would be proper at this juncture.

### 5. Deposition Testimony and Disclosures

As exhibits in support of his opposition to Defendants' Motion for Summary Judgment, Watson included declarations from several individuals: Glen Reynolds, Christopher Dixon, Sue Shrago, Tiffani Taylor, Walter Rice, Robert Mentzel, Tracy Williams-Kelley, Larry Garner, and Pamela Ingram-Townsend. Watson also proffered deposition testimony from Richard Henke, William Ballard, Harry Dilworth, and Dennis McBride. Watson's initial disclosures filed on February 2, 2019 did not include any of those individuals. Likewise, Watson's interrogatory responses only included two of these individuals (Sue Shrago and Tiffani Taylor). Defendants contend that Watson only provided the declarations to opposing counsel on July 2, 2019, long after discovery had closed and only a couple of months before the original trial date. Defendants argue that these untimely disclosures should be stricken. (ECF No. 141 at 11). Defendants further contend that Watson's mass disclosure of "individuals who suffered unconstitutional conduct by any Ferguson Police Officer from 2008-2017" and "former colleagues of Defendant Boyd at the ... Ferguson Police Department" are likewise insufficient because these disclosures are not

complete and detailed. Finally, several of the declarations are not based upon personal knowledge. (ECF No. 141 at 12).

Boyd further claims that Watson's opposition refers to testimony of Richard Henke (a former Ferguson Police Department Captain), Williams Ballard (a former Ferguson Police Department Lieutenant) and Dennis McBride (a former Ferguson Police Department Captain) for undisclosed and improper expert opinion. (ECF No. 141 at 13). Defendants state that Henke and Ballard's opinions on the appropriateness of the discipline and supervision of Boyd are based upon their specialized knowledge of police practices and, therefore, their testimony should be stricken as undisclosed expert testimony. (ECF No. 141 at 14).

In response, Watson states that he timely disclosed all witnesses. Watson states he disclosed Chris Dixon, Sue Shrago, and Tiffani Taylor was potential witnesses in his disclosures and supplemental disclosures. He states Glenn Reynolds was known through documents provided by Watson to Defendants and when Boyd was questioned about Reynolds. (ECF No. 149 at 21). Further, Watson states that he identified "[a]ll individuals who filed official or unofficial complaints against Eddie Boyd in the City of Ferguson." Watson states that he disclosed his witnesses in this manner because Ferguson produced almost 1,500 pages of documents after the close of discovery and the information regarding these individuals was in the possession of Defendants, not Watson. (ECF No. 149 at 22). Watson further claims that Henke, Ballard, Dilworth, and McBride all supervised Boyd and the parties took their depositions after the close of discovery. (ECF No. 149 at 23). Finally, Watson maintains that Henke, Ballard, and McBride did not provide expert testimony, but only testimony "based on their experience supervising Defendant Boyd as well as investigating complaints and disciplining officers." (ECF No. 149 at 24 (citing Fed. R. Evid. 701 ("If a witness is not testifying as an expert, testimony in the form of

- 9 -

an opinion is limited to one that is: (a) rationally based on the witness's perception; and (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue."). Watson claims "the opinions by Henke, Ballard, and McBride that Defendant Boyd was not adequately supervised or disciplined are lay opinions and Mr. Watson was not required to identify or disclose those officers as experts." (ECF No. 149 at 24 (citing *In re Air Crash at Little Rock Arkansas, on June 1, 1999*, 291 F.3d 503, 515 (8th Cir. 2002)).[5]

The Court is aware of the protracted and turbulent discovery disputes engaged in by the parties. The Court likewise knows that obtaining discovery took significantly longer than it would in less complex cases. Therefore, the Court finds that Watson's failure to timely disclose some of its witnesses may have been due to his delay in receiving documents, rather than an attempt to surprise Defendants and subvert the discovery process. Accordingly, the Court will not strike Watson's submissions simply because he did not formally disclose some of his witnesses, particularly since Defendants have not identified any specific prejudice and because the parties conducted some depositions after the close of discovery. Likewise, the Court will consider the testimony of Richard Henke, Williams Ballard, and Dennis McBride because the Court believes their testimony is based upon their perceptions and provides important insight to the factual issues in this case.

_____

[5] As explained in *In re Air Crash at Little Rock Arkansas, on June 1, 1999*:

> Rule 701 requires that lay witness opinion testimony need only be rationally based on perception and helpful to a determination of a fact in issue. Fed.R.Evid. 701. Personal knowledge or perceptions based on experience is a sufficient foundation for such testimony. *Id.* at 350. Lay opinion testimony is admissible if an analysis of the events, in the form of an opinion, is necessary.

291 F.3d 503, 515–16 (8th Cir. 2002).

### 6. DOJ Report

The DOJ Report found a pattern or practice of unlawful conduct within the Ferguson Police Department that violates the First, Fourth, and Fourteenth Amendments. Boyd argues that the DOJ Report is inadmissible under Fed. R. Evid. 902(4) because it has not been authenticated. (ECF No. 141 at 14). Boyd further argues that the DOJ Report lacks trustworthiness. Fed. R. Evid. 803(8)(B) ("The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: A record or statement of a public office if the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness."). In determining the trustworthiness of a report, the Court must consider the following factors: (1) the timeliness of the investigation; (2) the special skill and experience of the investigator; (3) whether a hearing was held and at what level the hearing was conducted; and (4) improper motivation underlying the investigation. Fed R. Evid. 803 advisory committee's note. Boyd argues the DOJ Report is not trustworthy because it relies upon the statements of biased witnesses, was prepared in anticipation of litigation, is based in substantial part on allegations of conduct that occurred after the date of the incident between Boyd and Watson, contains inadmissible hearsay within hearsay, and includes inadmissible legal conclusions. (ECF No. 141 at 14-20).

In response, Watson states that the DOJ investigation was timely because it was initiated less than a month after a Ferguson Police Officer killed Michael Brown. (ECF No. 149 at 9-10). In addition, Watson maintains the DOJ has special skills and experience, which weighs in favor of admissibility. (ECF No. 149 at 10). Watson further contends that, although there was not a public hearing, Defendants had ample opportunity to participate in the investigation and the evidence relied upon by the DOJ through interviews and emails. Watson also notes that Defendants entered

into a consent decree with the DOJ in lieu of responding to the allegations and cross-examining witnesses. Watson contends that Defendants cannot now complain that the DOJ Report is biased when Defendants conceded any opportunity to dispute the investigation and its findings when the City of Ferguson entered into the consent decree. (ECF No. 149 at 11). Watson further states that Defendants cannot identify any biased witnesses in the DOJ Report, other than Watson, and even if any witnesses were deemed bias, then the proper remedy would be rebuttal witnesses at trial. (ECF No. 149 at 12). In addition, Watson maintains that the fact that the DOJ Report was prepared in anticipation of litigation does not mean that it is untrustworthy. Watson states "[t]he mere fact that litigation may result does not mean that the investigation was conducted for the specific purpose of gathering evidence for an inevitable lawsuit." (ECF No. 149 at 12 (citing *Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 613, 618 (8th Cir. 1983)).

The Court finds that the DOJ Report lacks a proper indicium of reliability to be used in support of summary judgment and contains inadmissible hearsay. The Court finds that the DOJ Report was clearly prepared in anticipation of litigation and by a biased preparer. Further, the Court holds that the DOJ Report contains inadmissible legal conclusions. Therefore, the Court strikes the DOJ Report from consideration as part of the summary judgment motion briefing.

## II.    MOTION FOR SUMMARY JUDGMENT

### A.  Standard of Review

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law

- 12 -

determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Fed. R. Civ. P. 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials; or (B) showing that the materials cited do not establish

the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

## B. Probable Cause

42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" shall be held liable for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." To support a claim under §1983, a plaintiff must allege (1) that the defendant acted under color of state law; and (2) that the defendant's alleged conduct deprived the plaintiff of a constitutionally, protected federal right. *See Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). Here there is no dispute that Boyd acted under color of state law. Rather, the parties dispute whether Boyd violated Watson's constitutional rights under the Fourth Amendment. *Chestnut v. Wallace*, No. 4:16-CV-1721 PLC, 2018 WL 5831260, at *5 (E.D. Mo. Nov. 7, 2018), *aff'd*, 947 F.3d 1085 (8th Cir. 2020).

The Eighth Circuit has provided significant guidance on probable cause under such circumstances:

> Probable cause exists when the totality of circumstances demonstrates that a prudent person would believe that the arrestee has committed or was committing a crime. *United States v. Washington,* 109 F.3d 459, 465 (8th Cir.1997). We must give law enforcement officers "substantial latitude in interpreting and drawing inferences from factual circumstances," *id.,* but such latitude is not without limits. First, because the *totality* of circumstances determines the existence of probable cause, evidence that tends to negate the possibility that a suspect has committed a crime is relevant to whether the officer has probable cause. An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists. *See Bigford v. Taylor,* 834 F.2d 1213, 1218 (5th Cir.), *cert. denied,* 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988), 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 108 (1988).
>
> Second and relatedly, law enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as "law enforcement would not [be] unduly hampered ... if the agents ... wait[ ] to obtain more facts before seeking to arrest." *See United States v. Woolbright,* 831 F.2d 1390, 1394 (8th Cir.1987); *United States*

*v. Everroad,* 704 F.2d 403, 407 (8th Cir.1983); *see also* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.2(d), at 47–48 (3d ed.1996). An officer need not conduct a "mini-trial" before making an arrest, *Brodnicki v. City of Omaha,* 75 F.3d 1261, 1264 (8th Cir.), *cert. denied,* 519 U.S. 867, 117 S.Ct. 179, 136 L.Ed.2d 119 (1996); *Morrison v. United States,* 491 F.2d 344, 346 (8th Cir.1974), but probable cause does not exist when a "minimal further investigation" would have exonerated the suspect. *See Bigford,* 834 F.2d at 1219; *BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir.1986) (a police officer "may not close her or his eyes to facts that would help clarify the circumstances of an arrest"); *Romero v. Fay,* 45 F.3d 1472, 1476–77 and n. 2 (10th Cir.1995) (police need not interview alleged alibi witnesses but must "reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention"); *Sevigny v. Dicksey,* 846 F.2d 953, 956–58 (4th Cir.1988) (no probable cause where officer unreasonably failed to interview witnesses at scene of automobile accident who would have corroborated plaintiff's version of story); *Baptiste,* 147 F.3d at 1259 (officers may weigh the credibility of witnesses in making a probable cause determination, but they may not ignore available and *651 undisputed facts). *Cf. Brodnicki,* 75 F.3d at 1264 (no duty to investigate suspect's proffered alibi prior to arrest); *Criss v. City of Kent,* 867 F.2d 259, 263 (6th Cir.1988) (suspect's plausible explanation of events held not to require officer "to forego arrest pending further investigation if the facts as initially discovered provide probable cause").

*Kuehl v. Burtis,* 173 F.3d 646, 650 (8th Cir. 1999).

In the FAC, Watson alleges that Boyd unlawfully searched and seized him in violation of his Fourth and Fourteenth Amendment rights. Boyd argues that he is entitled to summary judgment on Counts I, II, and III of the FAC because Watson cannot meet his burden of proof for §1983 claims. Specifically, Boyd asserts that he had probable cause or arguable probable cause to stop and/or arrest Watson based upon Watson's infractions. Boyd claims that he had reasonable suspicion and probable cause to approach and detain Watson because he was in a vehicle with illegally tinted windows and no front license plate, backed into a parking space against a tree line, idling, headlights on, near a playground where children played. (DSUMF, ¶3). Based upon these observations and considering the recent break-ins at the park, Boyd claims that he investigated and discovered other Watson's other violations. (DSUMF, ¶4; ECF No. 131 at 6-7).

Defendants mention several times that there had been several break-ins at the park. Defendants, however, never state that Watson looked like any suspect or assailant or that Boyd had any reason to believe that Watson's car was stolen. In fact, the only arguable basis that Boyd provides for stopping Watson's car was the allegedly illegal window tinting.

## i.    Illegal Tint

Boyd claims that Watson's car windows were tinted at the time of his stop and arrest. (DSUMF, ¶¶3,5). Both Missouri law and the Ferguson City Code of Ordinances ("City Code") restrict vision reducing material applied to the windows and windshield of a car. (R.S. Mo. §307.173; City Code 44-404; DSUMF, ¶57).[6] Boyd argues that even if he was mistaken as to whether the tint was dark enough to be illegal, he did not violate Watson's constitutional rights because he had "arguable probable cause" to arrest Watson. ECF No. 131 at 9 (citing *Loch v. City of Litchfield*, 689 F.3d 961, 966 (8th Cir. 2012) ("An act taken based on a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment.")). Boyd asserts that he "had probable cause or arguable probable cause to stop and arrest Watson for the window tint violation" and did not violate Watson's constitutional rights. (ECF No. 131 at 9).

---

[6] In Missouri,

> Any person may operate a motor vehicle with front sidewing vents or windows located immediately to the left and right of the driver that have a sun screening device, in conjunction with safety glazing material, that has a light transmission of thirty-five percent or more plus or minus three percent and a luminous reflectance of thirty-five percent or less plus or minus three percent. Except as provided in subsection 5 of this section, any sun screening device applied to front sidewing vents or windows located immediately to the left and right of the driver in excess of the requirements of this section shall be prohibited without a permit pursuant to a physician's prescription as described below.

Mo. Rev. Stat. § 307.173.1.

The Court finds this first purported violation to be the most important because it is the basis for the entire stop. The Court finds that genuine issues of fact exist as to whether Boyd had probable cause or arguable probable cause to stop and arrest Boyd. Boyd wrote a ticket stating, "vision reducing material applied to windshield," with no ordinance cited. (PSUMF, ¶¶76-77). Boyd testified at his deposition that Watson's windshield was tinted. (PSUMF, ¶10). Watson, however, testified that his windshield was not tinted. (PSUMF, ¶9). Therefore, an issue of fact exists, and summary judgment is not appropriate.

Further, the Eighth Circuit has held that "[a]n officer's observation of a traffic violation, however minor, gives the officer probable cause to stop a vehicle, even if the officer would have ignored the violation but for a suspicion that greater crimes are afoot." *United States v. Pena-Ponce*, 588 F.3d 579, 583 (8th Cir. 2009) (citing *United States v. Luna,* 368 F.3d 876, 878 (8th Cir. 2004)). In *Pena-Ponce*, however, the Court found that the officer stopped the truck because it had a temporary tag and excessive tint on its windows, and "law enforcement verified with a tint meter that the windows did not allow the required transparency under Iowa law." *United States v. Pena-Ponce*, 588 F.3d 579, 583 (8th Cir. 2009). Here, there has been no such independent verification. Rather, Boyd relies on his belief and the belief of Beavis Shock, an attorney. (*See* DSUMF, ¶¶3,5). Those beliefs are controverted by Watson's statements that his windows were legally tinted in the state of Florida, where his vehicle was registered. (PSUMF, ¶¶5,6). *See* Fla. Stat. Ann. § 316.2953 ("A sunscreening material is authorized for such windows if, when applied to and tested on the glass of such windows on the specific motor vehicle, the material has a total solar reflectance of visible light of not more than 25 percent as measured on the nonfilm side and a light transmittance of at least 28 percent in the visible light range. A violation of this section is

- 17 -

a noncriminal traffic infraction . . . .").[7] Moreover, Boyd admits that the car was registered in Florida (DSUMF, ¶31). Watson also contends that Boyd's purported "objectively reasonable belief" that the windows were tinted was merely a pretext for Boyd's improper stop of Watson. (ECF No. 136 at 18). The Court holds that these factual disputes preclude summary judgment.

## ii. Failure to Provide a Driver's License and to Provide Proof of Insurance

City Code 44-81(a) provides that "[i]t shall be unlawful for any person to drive any motor vehicle . . . in the city unless such person shall have a driver's license . . . as required by state law, and shall have such license in possession at all times while so driving on the streets of the city." (SUMF ¶58). Further, City Code 44-81(c) specifically provides that "[f]ailure to produce a driver's . . . license upon lawful demand shall give a police officer probable cause to arrest the driver . . . ." (SUMF ¶58). Boyd contends he had probable cause or arguable probable cause to cite and arrest Watson for failure to provide a driver's license. Boyd notes that Watson did not provide him with a valid driver's license and Watson appeared to be driving his vehicle because the engine was running and Watson was sitting in the driver's seat. (ECF No. 131 at 10). Thus, Boyd claims he had arguable probable cause to issue Watson a citation because he did not provide a driver's license.

Further, Missouri law provides that "[n]o owner of a motor vehicle registered in this state, or required to be registered in this state, shall operate, register or maintain registration of a motor

---

[7] Florida also does not require a front license plate:

> Every vehicle, at all times while driven, stopped, or parked upon any highways, roads, or streets of this state, shall be licensed in the name of the owner thereof in accordance with the laws of this state unless such vehicle is not required by the laws of this state to be licensed in this state and shall... display the license plate or both of the license plates assigned to it by the state, one on the rear and, if two, the other on the front of the vehicle[.]

Fla. Stat. Ann. § 316.605.

vehicle . . . unless the owner maintains the financial responsibility which conforms to the requirements of the laws of this state." Mo. Rev. Stat. § 303.025. The City Code also provides that "[t]he operator of the motor vehicle shall exhibit the proof of financial responsibility on the demand of any police officer who lawfully stops such operator while that officer is engaged in the performance of the duties of his/her office." City Code 44-66(e). (DSUMF ¶60; ECF No. 131 at 12). Boyd claims Watson did not provide proof of insurance upon request, in violation of state statute and the City Code. (DSUMF, ¶¶8-9).

The Court holds an issue of fact exists as to whether Boyd had probable cause or arguable probable cause to cite and arrest Watson for failing to have a license in his possession and failing to produce insurance. Watson maintains that Boyd pulled a gun out on his and threated to shoot him, saying that if Watson was shot, "Nobody would give a shit." (PSUMF, ¶¶36, 38). Watson testified he did not retrieve his driver's license or insurance from his pants pocket in the backseat of the car because Boyd had instructed him to keep his hands on the steering wheel and Watson feared for his life. (PSUMF, ¶¶42). Watson's allegations create an issue of fact, and the Court must deny Boyd's motion for summary judgment. Based upon the foregoing, the Court finds that Boyd is not entitled to summary judgment and not entitled to qualified immunity on this claim.

### iii. Expired Driver's License

Missouri law provides that "it shall be unlawful for any person . . . to . . . [o]perate any vehicle upon any highway in this state unless the person has a valid license." Mo. Rev. Stat. § 302.020. Similarly, the City Code provides that "[i]t shall be unlawful for any person to drive any motor vehicle . . . in the city unless such person shall have a driver's license . . . as required by state law, and shall have such license in possession at all times while so driving on the streets of the city." City Code 44-81. (SUMF ¶58).

Boyd maintains he had probable cause or arguable probable cause to cite and arrest Watson for operating a vehicle under an expired state driver's license because the REJIS system indicated that Watson's Missouri driver's license was expired and had not been surrendered to another state. (SUMF, ¶30). Missouri law provides, "The licensing authority in the state where application is made shall not issue a license to drive to the applicant if: . . . (3) The applicant is a holder of a license to drive issued by another party state and currently in force unless the applicant surrenders such license." Mo. Rev. Stat. § 302.600. In this case, Boyd determined that Watson's Missouri license had never been surrendered and was expired. (SUMF ¶29). Because he was unable to locate a driver's license for Watson in any other state and Watson's Missouri license was never surrendered (as required to obtain a license in another state), Boyd contends he reasonably believed that Watson had no valid driver's license. Boyd was unable to locate a valid driver's license for Watson in Florida, Missouri, or Illinois. (SUMF, ¶31). Boyd contends "[a]fter conducting these searches in REJIS, Officer Boyd had probable cause, or at least arguable probable cause, to believe that Watson was driving with an expired driver's license." (ECF No. 131 at 11).

The Court holds that an issue of fact exists regarding whether Boyd had probable cause to cite or arrest Watson for driving with an expired license. First, as discussed herein, Watson has identified information available to Boyd to show that Watson had a valid Florida driver's license including Watsons' license in the vehicle (PSUMF, ¶65), REJIS results showing Watson had a Florida driver's license (PSUMF, ¶54), and Watson's recitation of his Florida address to Boyd (PSUMF, ¶¶28-29). The Court holds that Boyd had evidence that conflicted his claimed arguable probable cause that Watson was driving without a valid driver's license, and the Court denies summary judgment on this claim.

## iv.    Failure to Comply with Command to Exit Vehicle and Providing False Statements

Section 29-16 of the City Code provides that it shall be unlawful for any person to "to willfully and knowingly obstruct, resist, oppose or fail to obey a lawful command of any police officer or city official charged with enforcement of this Code." (SUMF ¶59). Boyd states that he ordered Watson to throw his keys out of the window and exit his vehicle, but Watson repeatedly refused. (DSUMF, ¶22-23). Because Watson refused to comply with Boyd's demands, Boyd contends he had probable cause to arrest Watson.

Boyd also maintains he had probable cause to arrest and cite Watson for providing a false declaration in violation of City Code 29-16. (SUMF ¶59).[8] Here, Watson identified himself as "Fred Watson" (not "Freddie Watson") to Officer Boyd in response to Boyd's request for Watson's

---

[8] Section 29-16 of the City Code provides:

It shall be unlawful for any person to:

> (1) Fail to comply with the lawful order or request of a police officer in the discharge of the officer's official duties where such failure interfered with, obstructed or hindered the officer in the performance of such duties; or

> (2) Fail to identify himself or herself by name upon request when lawfully detained by a police officer, provided, however, that the person may not be compelled to answer any other inquiry of the police officer; or

> (3) In any matter within the jurisdiction of any law enforcement officer of this city, knowingly: falsifies, conceals or covers up by any trick, scheme or device, a material fact; makes any materially false, fictitious or fraudulent statement or representation; or makes or uses any false writing or document knowing the same to contain any materially false, fictitious or fraudulent statement or entry.

City Code, art. II, sec. 29-16,
https://library.municode.com/mo/ferguson/codes/code_of_ordinances?nodeId=PTIICOOR_CH2
9OF_ARTIIOFAGPUAD_S29-16FACOORPOOF
(last visited March 16, 2020).

name. (DSUMF ¶12). Boyd also claims that Watson provided a false Florida address when Watson knew he did not reside in Florida. (DSUMF, ¶13). Boyd asserts these two false declarations were "material" because they hindered Boyd in determining Watson's true identity. Therefore, Boyd claims he had probable cause or arguable probable cause to cite and arrest Watson.

The Court finds that an issue of fact exists as to whether Watson gave false statements. The Court finds an issue of fact as to whether Boyd had probable cause for issuing a citation and arresting Watson for stating his name was "Fred" rather than "Freddie". Specifically, a reasonable jury must determine whether Boyd could have had probable cause to believe Watson willfully or knowingly deceived Boyd when he gave the first name of "Fred" and not "Freddie". In addition, the Court finds an issue of fact regarding whether Boyd had probable cause to cite and arrest Watson for failure to produce a driver's license when Watson has provided evidence that he offered to provide his military identification, but Boyd would not allow Watson to retrieve it from the back of his car. (PSUMF, ¶ 42). A reasonable jury could find that Boyd had no probable cause or arguable probable cause to cite and arrest Watson for failure to produce his license. Finally, the Court finds that an issue of fact exists as to whether Boyd had probable cause to cite and arrest Watson for providing a false address, given that he provided the address on his driver's license. (PSUMF, ¶28). Watson's testimony and Boyd's own police report state that Watson provided his Florida address to Boyd. (PSUMF, ¶¶ 25-28). Notably, Boyd cannot retroactively create probable cause by claiming that Watson gave a false address when none of the arresting documents claimed Watson knowingly misrepresented his address. *See Peterson v. City of Plymouth*, 60 F.3d 469, 476 (8th Cir. 1995) (noting that "the role of the jury in the new trial should be limited to determining what the officers knew at the time of the arrest").

- 22 -

In addition, the Court holds that an issue of material fact exists as to whether Watson's refusal to throw his keys out of the window was willful or knowing. Watson has presented evidence that Boyd ordered Watson to get out of his vehicle and Boyd drew his weapon and pointed it at Watson's head at point-blank range. (PSUMF, ¶36). Watson testified that he did not move because he feared for his life. (PSUMF, ¶42). Therefore, the Court finds an issue of fact exists as to whether Watson knowingly failed to obey this ordinance. The Court denies Boyd's Motion for Summary Judgment on this point.

### v. Failure to Register an Out-of-State Vehicle and Vehicle Inspection Sticker

Missouri law provides that a vehicle "[a]pplication for registration of a motor vehicle not previously registered in Missouri . . . and previously registered in another state shall be made within thirty days after the owner of such motor vehicle has become a resident of this state." Mo. Rev. Stat. § 301.100. As previously discussed, Boyd claims that Watson gave him an incorrect name ("Fred Watson") and an incorrect (Florida) address (DSUMF, ¶¶13, 15, 29). After performing a revised REJIS search, Boyd found a "Freddie Watson" with an expired Missouri license that had never been surrendered. (DSUMF, ¶30). Boyd claims that this incorrect information provided Boyd with probable cause to believe that Watson was a Missouri resident who failed to register his vehicle under Missouri law.

Similarly, Missouri law requires that the owner of every vehicle that is required to be registered in Missouri "shall submit such vehicles to a biennial inspection of their mechanism and equipment . . . and obtain a certificate of inspection and approval and a sticker." Mo. Rev. Stat. § 307.350. So, too, does the City Code. Code 44-406. (SUMF ¶62). Section 44-406 states that an inspection sticker is necessary "as required for state law." Mo. Rev. Stat. § 307.350 sates only vehicle registered in the State of Missouri need a Missouri inspection certificate. Boyd argues he

- 23 -

had probable cause, or at least arguable probable cause, to believe that Watson's vehicle was required to be registered in the state of Missouri based on the information located in REJIS[9] and, therefore, Boyd further claims he had probable cause to believe Watson was in violation of the law for failure to have an inspection approval sticker.

The Court holds that an issue of fact exists regarding whether Boyd had probable cause to issue citations and arrest Watson. First, Boyd located Watson's legal and valid Florida registration before he issued Watson tickets. (PSUMF, ¶62). Watson also had a vehicle with a Florida license plate, which Boyd noted in his arrest documentation. (PSUMF, ¶70). A search on REJIS on the day of Watson's arrest showed Watson's car was lawfully registered to Freddie Watson, with proper Florida registration and insurance. (PSUMF, ¶¶54-55). Finally, Boyd's police report confirms that Watson provided his Florida address to Boyd. (PSUMF, ¶29). Given this plainly exculpatory evidence that Watson's vehicle was registered in Florida, the Court finds, at the very least, an issue of fact exists as to whether Boyd had probable cause or arguable probable cause to cite and arrest Watson for these violations. *See Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) ("An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists.").

#### vi.    Seat Belt

State and local law requires that "[e]ach driver . . . of a passenger car . . . operated on a street or highway in this [state or city] shall wear a properly adjusted and fastened safety belt." Mo. Rev. Stat. § 307.178; City Code 44-402. (DSUMF ¶63). A "street or highway" is defined to include "every way or place open for vehicular travel by the public and regardless of whether it

---

[9] Watson notes there is no record of any REJIS search being done, let alone one finding Watson did not have a driver's license in Florida. *See* PSUMF, ¶54 (noting a REJIS search showed Watson had a valid driver's license).

has been legally established by constituted authority or used for the statutory period of time as a public highway." City Code 44-1. (DSUMF ¶65). Boyd argues that Watson, sitting in his running vehicle in a public park, violated the law by not wearing his seatbelt, which afforded Boyd probable cause or arguable probable cause to cite and arrest Watson. (ECF No. 131 at 13-14).

The Court finds an issue of fact precludes entry of summary judgment. The Court believes a reasonable jury could discern that Watson was not "operating" a vehicle because his car was parked in a parking lot while idling. Thus, the Court denies summary judgment because a jury could find Boyd had no probable cause to cite or arrest Watson for failing to wear a seatbelt.

## C. Fourth Amendment: Reasonable Suspicion for the Stop

The Fourth Amendment forbids searches and seizures that are unreasonable, *Terry v. Ohio*, 392 U.S. 1, 9 (1967), and "generally requires police to secure a warrant before conducting a search." *Maryland v. Dyson*, 527 U.S. 465, 466 (1999); *United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir. 2002). Police may "briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity." *United States v. Long*, 532 F.3d 791, 795 (8th Cir. 2008) (quoting *United States v. Winters*, 491 F.3d 918, 921 (8th Cir. 2007) (internal quotation omitted)).[10] Reasonable suspicion must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the investigative stop." *Id.* (internal quotation omitted). Reasonable suspicion requires more than a general hunch, but only that "police articulate some minimal, objective justification for an investigatory stop." *United States v. Fuse*, 391 F.3d 924, 929 (8th Cir. 2004). Reasonable

---

[10] The standards for the stop as a traffic stop or as a *Terry* stop are similar. *See Rodriguez v. United States*, 575 U.S. 348, 354 (2015) ("[A] relatively brief encounter," a routine traffic stop is "more analogous to a so-called '*Terry* stop' . . . than to a formal arrest."); *Knowles v. Iowa*, 525 U.S. 113, 117 (1998) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984), in turn citing *Terry*, 392 U.S. 1).

suspicion is "a particularized and objective basis for suspecting the particular person stopped of breaking the law." *Heien v. North Carolina*, — U.S. ——, 135 S.Ct. 530, 536 (2014) (quotation omitted); *United States v. McLemore*, 887 F.3d 861, 864 (8th Cir. 2018). "To determine whether a traffic stop was based on probable cause or was merely pretextual, an 'objective reasonableness' standard is applied." *United States v. Jones*, 275 F.3d 673, 680 (8th Cir. 2001), *as corrected* (July 25, 2001) (citing *United States v. Miller*, 20 F.3d 926, 929 (8th Cir. 1994)). The standard is less difficult to meet than the probable cause standard required for arrests. *United States v. Spotts*, 275 F.3d 714, 718 (8th Cir. 2002).

Boyd claims that he had reasonable suspicion that a crime was being committed when he seized Watson. Boyd asserts he had such suspicions because Watson's car was backed into its parking space and, according to Boyd, "people back in when they're planning on doing something illegal." (PSUMF, ¶13). Boyd's police report also states that he had reasonable suspicion because there had been several break-ins at the park committed by the owner of a black vehicle with tinted windows. (PSUMF, ¶7). Boyd has identified an email regarding a break-in at Forestwood Park, but no document supports a finding that a black vehicle with tinted windows was involved. (PSUMF, ¶8). Boyd further contends that the presence of children on a nearby playground also supported reasonable suspicion. Boyd, however, does not state how children on a playground provides support reasonable suspicion that criminal activity is afoot or what would preclude an officer from finding "reasonable suspicion" around every playground with children. Moreover, Watson testified that the closest playground was at least 150 feet from where he was detained. (PSUMF, ¶12). Therefore, the Court finds a material issue of fact exists regarding whether the proximity of children provided a reasonable basis for the stop.

Finally, Boyd asserts that the tint on the windows in Watson's car provided reasonable suspicion for the stop. Watson, however, maintains that Boyd's reference to Watson's windows is merely pretextual. Watson states that Boyd only recognized Watson's tinted windows after Boyd seized him and after Watson questioned Boyd's aggression. (PSUMF, ¶24). Further, Watson contends that Boyd possessed but did not utilize his device to measure the window's tint, which further supports an inference of pretext. (PSUMF, ¶78). The Court finds that, construing the facts in the light most favorable to the nonmoving party, an issue of fact exists as to whether Boyd had reasonable suspicion at the time he seized Watson. Watson has plausibly argued that Boyd's reference to Watson's window tint was a merely pretextual basis for justifying stopping and seizing Watson. Therefore, the Court denies summary judgment on this basis because an issue of fact exists as to whether Boyd had reasonable suspicion to stop Watson.

## D. Searches

Boyd claims his search of Watson's vehicle was legal as either an inventory search because Boyd had probable cause to believe that evidence of criminal activity was inside or as a search incident to arrest. (ECF No. 143 at 12-13). Boyd asserts that when a suspect fails to provide a license and registration and provides false pedigree information, then a warrantless search of the vehicle for evidence of the suspect's identity is constitutional under the automobile exception and as a search incident to arrest. (ECF No. 143 at 12-13 (citing *United States v. Grajeda*, 587 F.2d 1017, 1019 (9th Cir. 1978); *United States v. Smith*, 389 F.3d 944, 950–53, n.1 (9th Cir. 2004); *United States v. Mensah*, 737 F.3d 789, 795 (1st Cir. 2013)).[11] Boyd further maintains that a search is permissible when the officer believes the suspect is making furtive movements. (ECF No. 143 (citing *State v. Kinnane*, 689 So. 2d 1088 (Fla. Dist. Ct. App. 2d Dist. 1996), *reh'g denied*, (Jan.

---

[11] Notably, none of these cases are Eighth Circuit precedent.

28, 1997)). Boyd states that he was searching the vehicle to determine Watson's identity and to obtain additional evidence of a crime, in particular Watson's legal name was "Freddie" and not "Fred". (ECF No. 143 at 13). Likewise, Boyd notes Watson admitted that he closed the door of his vehicle with his foot because he did not want the police to search his vehicle.[12]

The Court holds that issues of fact preclude entry of summary judgment in favor of Boyd regarding the legality of the searches. The Court cannot hold as a matter of law that Boyd performed a lawful contraband search because there is an issue of fact as to whether Boyd had probable cause. The automobile exception allows an officer to legally search a vehicle only if he or she has probable cause. *United States v. McGhee*, 944 F.3d 740, 742 (8th Cir. 2019) (citing *United States v. Shackleford*, 830 F.3d 751, 753 (8th Cir. 2016)); *see also United States v. Grooms*, 602 F.3d 939, 942–43 (8th Cir. 2010) ("The Supreme Court justified the departure from the traditional warrant requirement because of the lower expectation of privacy in vehicles and also their unique mobility."). Other than a claim that Watson was making "furtive movements" and gave a false pedigree, Boyd has not identified what alleged contraband or criminal activity may have been afoot. Therefore, the Court finds that Boyd's failure to identify his particularized probable cause for searching Watson's car precludes summary judgment based upon the automobile exception.

Similarly, the Court holds that an issue of fact exists, causing the Court to deny summary judgment to Boyd regarding the alleged inventory search. The Eighth Circuit has detailed what is required for a lawful inventory search:

The inventory search exception is necessary for "the protection of the owner's property while it remains in police custody; the protection of the police against

---

[12] Although Boyd mentions that Watson closed his car door because he did not want his car searched, this information cannot be used to in support of a finding of probable cause. Watson's lack of consent to having his car searched does not support a probable cause determination.

claims or disputes over lost or stolen property; and the protection of the police from potential danger." *South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (internal citations omitted). Because the police are engaging in their community caretaking function—not their criminal investigatory function—in meeting these needs, they do not need a warrant or probable cause. *Marshall,* 986 F.2d at 1174. The search of a vehicle to inventory its contents must nevertheless be reasonable under the totality of the circumstances, *United States v. Hall,* 497 F.3d 846, 851 (8th Cir.2007), and may not be "a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). The reasonableness requirement is met when an inventory search is conducted according to standardized police procedures, which generally "remove the inference that the police have used inventory searches as 'a purposeful and general means of discovering evidence of a crime.' " *Marshall,* 986 F.2d at 1174 (quoting *Colorado v. Bertine,* 479 U.S. 367, 376, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (Blackmun, J., concurring)).

*United States v. Taylor,* 636 F.3d 461, 464 (8th Cir. 2011). "The Government bears the burden of showing that its conduct complied with the inventory search exception to the warrant requirement." *United States v. Taylor,* 636 F.3d 461, 464 (8th Cir. 2011) (citing *United States v. Marshall,* 986 F.2d 1171, 1173 (8th Cir. 1993)).

Here, Boyd did not comply with the City's protocol and police procedures and, therefore, the Court denies Boyd's motion for summary judgment. The City's Tow Policy provides, "Any valuables found in the vehicle are to be brought to the station and held awaiting an owner." (PSUMF, ¶67). The City's Tow Policy lists "cash" as a valuable to be collected. (*Id.*) However, some of Watson's money was lying in the vehicle, breaking with protocol. (PSUMF, ¶66). Additionally, Watson claims that his items were strewn through his otherwise normally tidy vehicle. (PSUMF, ¶¶60-61). The Court holds that an issue of fact exists as to whether Boyd complied with the requirements for an inventory search in this instance and denies summary judgment on this basis. *See Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990) (an inventory search must be regulated by "standardized criteria" or "established routine" so as not to "be a ruse for a general rummaging in order to discover incriminating evidence").

## E. Fourth Amendment: Use of Weapon

"The Supreme Court has long recognized an officer's right to conduct an investigatory stop inherently includes the right to use some degree of physical force or threat to effect the stop." *El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 457 (8th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). *See United States v. Newell*, 596 F.3d 876, 879 (8th Cir. 2010) ("Officers must use the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose of the *Terry* stop.") (internal quotation marks and citation omitted); *United States v. Mohamed*, 630 F.3d 1, 6–7 (1st Cir. 2010) ("When challenged, the government must be able to point to some specific fact or circumstance that could have supported a reasonable belief that the use of [handcuffs] was necessary to carry out the legitimate purposes of the stop without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm.") (internal quotation marks and citation omitted).

Here, Watson alleges Boyd pulled his gun after Watson reached for his cell phone within his vehicle during a stop. (DSUMF, ¶21). Boyd claims he is entitled to summary judgment because the use of his weapon in response to Watson's perceived threat was not objectively unreasonable. (ECF No. 143 at 14). Boyd states that his use for force was reasonable under the circumstances because he was confronted with a non-compliant occupant of a vehicle with heavily tinted windows that obstructed his view and Watson had made a sudden movement within the vehicle. (DSUMF, ¶¶3-21). Watson alleged that he reached for his phone inside his vehicle, and Boyd pulled his gun and directed him to put his phone down. (PSUMF, ¶¶32-36, 38). Boyd claims that Watson's admission that he used his phone to call for his safety and that Boyd called dispatch to request backup demonstrates that Boyd was concerned for his safety. (ECF No. 143 at 11-12, n.6). Moreover, Boyd claims that there was no constitutional violation and Boyd was entitled to

qualified immunity. Specifically, Boyd maintains "it is not clearly established that the particular conduct alleged in this case would have been unlawful[.]" (ECF No. 131 at 15; *see also* ECF No. 143 at 14).

The Court holds that issues of material facts exists that preclude summary judgment. Watson testified that he reached for his phone to call the police only after experiencing bullying and harassment by Boyd. (PSUMF, ¶32). Importantly, Watson notes that his phone was on top of his dashboard and in plain sight. (PSUMF, ¶33). Further, Watson testified that it was not until after he put his phone back that Boyd pulled his gun, which suggests that Boyd was not concerned that Watson was reaching for a weapon and did not fear for his safety. (PSUMF, ¶23, 35-36, 42). Additionally, Watson alleges Boyd said as he pulled his gun, "I could shoot you right here, nobody will give a shit." (PSUMF, ¶38). These allegations, taken together, create an issue of fact regarding whether Boyd's use of his weapon was reasonably related to safety. The Court, therefore, denies summary judgment on this basis.

## F. Unlawful Retaliation (Count II) against Boyd

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). If an official takes adverse action against someone based on that forbidden motive, and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the injured person may generally seek relief by bringing a First Amendment claim. *Id.* (citing *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 283–284 (1977)).

"To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action

against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). To prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." *Hartman*, 547 U.S. at 259; *Nieves*, 139 S. Ct. at 1722. It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive. *Hartman*, 547 U.S. at 260 (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway"). The "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves*, 139 S. Ct. at 1724. "[I]f the plaintiff establishes the absence of probable cause, 'then the [the following] test governs: The plaintiff must show that the retaliation was a substantial or motivating factor behind the [arrest], and, if that showing is made, the defendant can prevail only by showing that the [arrest] would have been initiated without respect to retaliation.'" *Id.* at 1725 (quoting *Lozman v. Riviera Beach*, 585 U.S. ——, 138 S. Ct. 1945, 1952-53 (2018) (citing *Hartman*, 547 U.S. at 265–266)).

Boyd maintains that Watson's claim for First Amendment retaliation fails because Boyd had probable cause to arrest and charge Watson based upon the citations he received, and Boyd acted reasonably even by pointing a gun at Watson. (ECF No. 143 at 14 (citing *Peterson*, 754 F.3d at 602 (plaintiff must plead and prove a "lack of probable cause or arguable probable cause" to assert a First Amendment retaliation claim). In addition, Boyd asserts Watson's First

- 32 -

Amendment claim for retaliation fails because Watson cannot demonstrate that any of Boyd's allegedly retaliatory conduct was caused by Watson asking for Boyd's name and badge number. (ECF No. 143 at 15). Boyd claims that "it was clear" he had already decided to charge Watson, as "he had previously told Plaintiff that he could be cited for having tinted windows." (PSUMF, ¶24). Finally, Boyd maintains he only pulled his gun after Watson "suddenly" reached for his phone, and Boyd then requested backup and reholstered his gun. (ECF No. 143 at 15).

Initially and as previously discussed, the Court holds that an issue of fact exists as to whether Boyd had probable cause to arrest and charge Watson. Therefore, the lack of probable cannot be a basis for granting summary judgment on Watson's First Amendment claim.

Further, the Court holds that there is evidence to support a finding that Boyd's actions could have been motivated by Watson's protected speech. Watson contends he requested Boyd's name and badge number, which promoted Boyd to threaten to cite Watson. (PSUMF, ¶¶30-31). Then, when Watson attempted to call the police to complain about Boyd's actions, Watson states that Boyd drew his weapon, pointed it at Watson at point-blank range, and threated to shoot him. (PSUMF, ¶¶36-38). The Court holds that a reasonable jury could find that Boyd's actions — arresting of Watson for relatively minor alleged infractions, issuing nine tickets, and ransacking Watson's car, and attempting to conceal his badge number — were motivated by Watsons's speech. (PSUMF, ¶¶53, 77-79, 59-62, 73-74). Therefore, the Court denies summary judgment on Watson's First Amendment claim.

## G. Malicious Prosecution (Count III) against Boyd

"It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Marksmeier v. Davie*, 622 F.3d 896, 900 (8th Cir. 2010) (quoting *Hannah v. City of Overland, Mo.*, 795 F.2d

1385, 1389 (8th Cir. 1986)). An officer, however, is entitled to qualified immunity for a warrantless arrest if the arrest was supported by at least "arguable probable cause." *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011) (quoting *Walker*, 414 F.3d at 992). Probable cause exists when "the totality of the circumstances at the time of the arrest '[is] sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Id.* at 523 (quoting *Fisher v. Wal–Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010)). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is 'objectively reasonable.'" *Id.* (quoting *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008)). The fact that the person arrested is later found innocent is not material. *Linn v. Garcia*, 531 F.2d 855, 861 (8th Cir. 1976). Whether a law enforcement officer had probable cause at the time of arrest is a question of law. *Fisher*, 619 F.3d at 816; *Joseph v. Allen*, 712 F.3d 1222, 1226–27 (8th Cir. 2013).

The Eighth Circuit has stated that "an allegation of malicious prosecution without more cannot sustain a civil rights claim under § 1983." *Joseph v. Allen*, 712 F.3d 1222, 1228 (8th Cir. 2013) (citing *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001) (emphasis added); *Powers v. City of Ferguson*, 229 F. Supp. 3d 894, 904 (E.D. Mo. 2017). Watson contends that the Eighth Circuit recently held that a malicious prosecution claim is a viable constitutional claim where it a brought alongside other constitutional claims. (ECF No. 136 at 26 (citing *Powers v. City of Ferguson*, 229 F. Supp. 3d 894, 904 (E.D. Mo. 2017)). Watson argues that because he raised several other constitutional claims, including violation of his First and Fourth Amendment rights that his malicious prosecution claim is cognizable. (ECF No. 136 at 16).

The Court hold that there is no § 1983 claim for malicious prosecution. *See Kurtz v. City of Shrewsbury,* 245 F.3d 753, 758 (8th Cir.2001) ("Moreover, this court has uniformly held that

- 34 -

malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury."); *Technical Ordnance, Inc. v. United States*, 244 F.3d 641, 650 (8th Cir.2001) ("The general rule is that an action for malicious prosecution does not state a claim of constitutional injury."); *Harrington v. City of Council Bluffs, Iowa*, 678 F.3d 676, 679 (8th Cir. 2012) (Eighth Circuit has expressed uncertainty as to whether "malicious prosecution is a constitutional violation at all"). Moreover, even if there were a cause of action for malicious prosecution, the Court holds that Boyd would be entitled to qualified immunity as to Watson's qualified immunity claim. That is, "No 'reasonable officials acting in [Officer Boyd's] position would ... have understood they were violating' [Boyd's] constitutional right against malicious prosecution because no such constitutional right had been clearly established." *See Bates v. Hadden*, 576 F. App'x 636, 639 (8th Cir. 2014) (citing *Harrington*, 678 F.3d at 680). The Court grants Boyd's Motion for Summary Judgment on Watson's malicious prosecution claim.

## H. *Monell* Municipal Liability (Count IV) against the City

Although the Supreme Court has "held that a municipality is a 'person' that can be liable under § 1983," it is well established "that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. (2018). Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an "official municipal policy," *Monell*, 436 U.S. at 691; (2) an unofficial "custom," *id.* at 690–91; or (3) a deliberately indifferent failure to train or supervise, *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197 (1989); *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013).

Watson purports to bring a *Monell* claim based not on an official City policy, but upon several City customs that led to the violations of his rights. (ECF No. 136 at 30). Specifically, Watson alleges claims for municipal liability for failing to screen, train, supervise, or discipline its officers. In response, the City claims that it is entitled to summary judgment because there was no underlying constitutional violation and because there is insufficient evidence to demonstrate that any custom was the moving force behind the violation of Watson's rights. (ECF No. 131 at 20).

## 1. Underlying Constitutional Violation

Boyd states that he had probable cause or arguable probable cause to act in the manner he did in this case. "Without a constitutional violation by the individual officers, there can be no § 1983 or *Monell* failure to train municipal liability." *Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523, 527 (8th Cir. 2007) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Walker v. Bonenberger*, 438 F.3d 884, 890 (8th Cir. 2006)). Therefore, Boyd maintains none of Watson's rights were violated and the City cannot be liable under a *Monell* theory of liability. (ECF No. 131 at 20-21). *See Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) ("Because Moore failed to establish Officer Malady violated Moore's constitutional rights, Moore cannot maintain this action [for failure to train and supervise] against either Chief Bullock or the city.").

Here, the Court has denied summary judgment on most of the individual constitutional claims against Boyd. Therefore, the Court will deny summary judgment against the City on this basis.

## 2. Custom

Boyd maintains that Watson has not alleged a custom that would be the basis for a *Monell* violation. (ECF N. 131 at 21-23). "A governmental custom involves a 'a pattern of persistent and

widespread . . . practices which bec[o]me so permanent and well settled as to have the effect and force of law.'" *Teasley v. Forler*, 548 F. Supp. 2d 694, 705 (E.D. Mo. 2008) (citing *Monell*, 436 U.S. at 646). "[A] [p]laintiff[] must show a (1) continuing, widespread, and persistent pattern of unconstitutional behavior; (2) a deliberate indifference or tacit authorization of the conduct by the policymakers after being put on notice; and (3) that the custom was the moving force behind [the plaintiff's] injury." *Id.* at 707 (citing *Ware v. Jackson Cty.*, 150 F.3d 873, 880 (8th Cir. 1998); *see Jane Doe A.*, 901 F.2d at 645 (setting out standard for individual liability, which mirrors standard for municipal liability)). "Additionally, a single incident does not usually suffice to prove a custom claim." *Id.* (citing *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999)).

Boyd contends that Watson has failed to demonstrate an unconstitutional custom and presented insufficient evidence of "continuing, widespread, persistent pattern of unconstitutional misconduct." (ECF No. 131 at 28-30). Boyd relies on the inadmissibility of the DOJ Report to show the lack of any evidentiary support for a custom. However, Watson points to other evidence to support a finding of a custom. For example, in the fourteen months leading up to Watson's arrest, the City received at least seven complaints from citizens about Boyd's misconduct. Seven of those were regarding retaliatory arrests and charges and four were related to arrests for failing to comply. (ECF No. 136 at 31-32). In addition, the City received at least three additional complaints from other Ferguson Police Department employees regarding Boyd's misconduct. (ECF No. 136 at 32). At this stage, the Court holds that these complaints are sufficient evidence of a custom in support of *Monell* claim to withstand Defendants' Motion for Summary Judgment.

### 3. Failure to Screen

"The Supreme Court has stated that only where 'adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious

consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute deliberate indifference.'" *Teasley*, 548 F. Supp. 2d at 707 (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 411, (1997)). Additionally, Watson must show more than the "mere probability that any officer inadequately screened will inflict any constitutional injury." *Id.* at 412. Instead, Watson must show that "*this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.* (emphasis in original).

Boyd argues that the prior misconduct of Boyd identified by Watson cannot constitute deliberate indifference for a failure to screen claim as a matter of law. (ECF No. 131 at 23-25). Namely, Watson alleged that Boyd had a history of filing false police reports and lying in police investigations, that his Missouri Peace Officer Standards and Training License had been revoked, and that he had been a party to a lawsuit related to his duties as an officer (DSUMF, ¶45). Boyd acknowledges that his conduct was the subject of an administrative hearing brought by the Missouri Department of Public Safety that sought to have Boyd's license revoked and that same conduct was also the subject of a lawsuit brought in federal court for excessive force and a state law battery claim. (DSUMF, ¶¶49-50). Boyd claims that the revocation of his Peace Officer Standards and Training License was stayed and ultimately the case against him was dismissed after the jury found in his favor in the lawsuit. (DSUMF, ¶¶49-50). Boyd maintains that this "exoneration" and the other previous allegations that are unrelated to excessive force do not satisfy the criteria to state a claim for a failure to screen claim.

Upon consideration, the Court finds that Watson's evidence provides sufficient support to deny summary judgment on the failure to screen claim. Here, an adequate investigation into Boyd's past would have uncovered the five separate internal affairs investigations against Boyd while he was employed with the St. Louis Metropolitan Police Department, including three of which were sustained. In two of those sustained reports, Boyd was found to have made false reports, just as he is alleged to have done in this case. (ECF No. 136 at 38). Moreover, a sustained complaint also found Boyd pointed his weapon at several children with whom he had instigated a fight, similar to the unholstering of the weapon done by Boyd in this case. (*Id.*) Further, In two of the three sustained internal affairs investigations, Boyd attempted to file false charges against the citizens he had abused, as is alleged to have occurred here. (*Id.*) In addition, it appears that the City was unaware as to the fact that Boyd's Missouri Department of Public Safety revoked Boyd's police license in 2009, or why this occurred (ECF No. 136 at 39), and why Boyd was terminated from his previous positions at the St. Louis Metropolitan Police Department and the St. Ann Police Department. As such, the Court denies summary judgment to the City based on the decision to hire Boyd. *See Teasley*, 548 F. Supp. 2d at 708.

### 4. Inadequate Training

A local government may be subject to § 1983 liability for "inadequate training of its employees," *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), "where (1) the [county's] . . . training practices [were] inadequate; (2) the [county] was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by [the county]'; and (3) an alleged deficiency in the . . . training procedures actually caused the plaintiff's injury." *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (quoting *City of Canton*, 489 U.S. at 389); *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010)).

State law requires that all officers be trained by the *Missouri* Department of Public Safety. *See Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014). Therefore, the Court holds Watson cannot state a plausible cause of action against *the City* for failure to train Watson. *Id.* The Court grants Boyd's motion for summary judgment on Watson's inadequate training claim under *Monell*.

## 5. Failure to Supervise or Discipline

A failure to supervise or discipline claim may be maintained only if a defendant demonstrated deliberate indifference or tacit authorization of the offensive acts. *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998) (citing *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994)). A failure to supervise or discipline claim "is governed by the deliberate indifference standard." *Liebe*, 157 F.3d at 579.

Watson asserts that the City was on notice of Boyd's purported "dishonesty and unconstitutional practices" and his "dishonesty and retaliation against citizens (including assaulting them)." (DSUMF¶53). Watson further asserted that the City did not take "any affirmative steps to provide greater training or supervision to Defendant Boyd despite his repeated constitutional violations." (DSUMF ¶53). Defendants maintain Watson has not identified any similar complaints of misconduct prior to August 1, 2012, which had any merit (DSUMF ¶54), as he is required to do to prevail on this claim. (ECF No. 131 at 27 (citing *Rogers v. City of Little Rock*, 152 F.3d 790, 799 (8th Cir. 1998)).

The Court finds evidence of a continuing, widespread pattern of unconstitutional conduct in the Ferguson Police Department that is sufficient to withstand Defendants' Motion for Summary Judgment. Watson notes at least four examples of Ferguson officers attempting to avoid taking citizen complaints against its officers, including three against Boyd. (ECF No. 136 at 33-34).

Nevertheless, there were still four internal affairs investigations against Boyd in the thirteen months prior to Watson's arrest, yet the City did not sustain any of those investigations. (ECF No. 136 at 33-34). Upon consideration, the Court finds that a reasonable jury could find that a custom of failing to supervise and discipline Boyd existed. Watson has put forward evidence that the City did not properly investigate these complaints. Specifically, the City failed to investigate an incident where Boyd was alleged to have broken the windows of a vehicle and assaulted the occupant and a supervisor wrote, "I hope there isn't video." (ECF No. 136 at 34). This evidence and other incidents create a genuine issue of material fact about whether a municipal custom existed and whether the City was deliberately indifferent to the misbehavior of Boyd and other officers. Although tenuous, the Court also finds that this evidence could allow a reasonable jury to conclude that such a custom was the moving force behind the constitutional violations at issue in this case. As such, the Court will deny summary judgment on this theory. *Teasley*, 548 F. Supp. 2d at 707.

## I. Qualified Immunity

"Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Liebe*, 157 F.3d at 577). To withstand the application of qualified immunity, a plaintiff must assert a violation of a constitutional or statutory right; that right must have been clearly established at the time of the violation; and, given the facts most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right. *Id.* (citing *Foulks v. Cole County, Mo.*, 991 F.2d 454, 456 (8th Cir. 1993)).

Throughout this Memorandum and Order, the Court has outlined issues of fact regarding whether Boyd violated Watson's constitutional rights. The Court holds that Watson has alleged constitutional violations against Boyd and that a reasonable official would have known that his actions violated Watson's constitutional rights. Thus, the Court finds that Boyd is not entitled to qualified immunity on the remaining claims.

## J. Watson's Claims for Damages

Watson seeks compensatory damages, including lost wages. Watson also seeks damages for "fear, apprehension, depression, anxiety, consternation, and emotional distress." Boyd asks the Court to enter summary judgment in favor of Defendants because Watson cannot demonstrate he is entitled to such damages. (ECF No. 131 at 31-34).

The Court holds that damages are an issue of fact that are for the jury to determine at trial. The Court denies summary judgment on Watson's claim for damages.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Joint Motion for Summary Judgment (ECF No. 128) is **DENIED**, in part, and **GRANTED**, in part. The Court **GRANTS** Defendants' Motion for Summary Judgment with respect to Plaintiff's Malicious Prosecution claim under 42 U.S.C. §1983 and the *Monell* Failure to Train claim. Defendants' Motion for Summary Judgment is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Defendants' Joint Motion to Strike Plaintiff's Summary Judgment Submission (ECF No. 140) is **DENIED,** in part, and **GRANTED,** in part, as outlined above.

Dated this 7th day of March, 2020.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**