**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FRED WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:17-cv-2187 JCH |
| | ) | |
| v. | ) | |
| | ) | |
| EDDIE BOYD, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF FRED WATSON'S STATEMENT OF**
**ADDITIONAL MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COME NOW City of Ferguson and Officer Eddie Boyd (collectively, "Defendants"), by and through their undersigned counsel, and for their Response to Plaintiff Fred Watson's ("Plaintiff") Statement of Additional Uncontroverted Material Facts in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("PASUMF") (Doc. #196-2), state as follows:

The Eighth Circuit recognized in *Watson v. Boyd*, 2 F.4th 1106, 1110 (8th Cir. 2021) that "a district court cannot deny summary judgment merely by finding that genuine issues of fact exist; those issues must also be material–that is, affecting the outcome of the suit under applicable law." Here, however, Plaintiff Freddie Watson ignores the Eighth Circuit's directive and asserts hundreds of additional facts that are wholly immaterial to the relief sought in Defendants' Joint Motion for Summary Judgment.  Rather than tailor their PASUMF to Defendants' newly filed summary judgment pleadings, which focus on the issue of qualified immunity, Plaintiff simply reused the PASUMF he filed in response to Defendants' original summary judgment.  Defendants object to the submission of these additional claimed factual statements and request that the Court

find them immaterial to the issues before the Court on Defendants' current Joint Motion for Summary Judgment.

Additionally, Plaintiff has wholly ignored this Court's Memorandum and Order on Defendants' original Joint Motion to Strike Plaintiff's Summary Judgment Submissions, wherein the Court struck from consideration certain statements and evidence in its entirety, including, but not limited to (a) statements and evidence related to Officer Boyd's purported misconduct after August 2012 and (b) the DOJ Report.  (Doc. #158 at pp. 7, 12).  Defendants therefore object to the submission of these additional claimed factual statements and evidence as the Memorandum and Order constitutes the law of the case on these issues, and request that the Court deem them stricken from the summary judgment record once again.

Additionally, Defendants respond to each Statement in PASUMF as follows:

1.     On August 1, 2012, Plaintiff Fred Watson was sitting in his vehicle at Forestwood Park in Ferguson, Missouri after playing basketball. See Fred Watson Deposition ("Watson Dep.") 83:8-84:1, attached as Exhibit 1.

**RESPONSE: Admit.**

2.     Mr. Watson was a Navy veteran who had lived for several years in Florida working for the government. Id. at p. 26:16-27:5.

> **RESPONSE:   Admit.   In further response, Defendants state that Plaintiff was ultimately discharged from the Navy in June, 2002 because of "a pattern of misconduct."  *See* Fred Watson Deposition ("Watson Dep.") 308:22–309:7, attached hereto at Exhibit 6.  Further, Defendants state that Plaintiff admitted that he had not resided in Florida since 2005, had been living in Illinois continuously since at least 2009, and continued to live in Illinois at the time of the stop.  *See* Watson Dep. 5:22-6:9; 17:20-19:14; 286:6-15, attached hereto as Exhibit 6; 12:18-13:3; 25:7–28:15; 193:23-194:23; 455:1–456:4, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).**

3.     In August of 2012, Mr. Watson was a government contractor with Top Secret clearance who worked for the National Geospatial-Intelligence Agency. Id. at 38:23-39:5.

**RESPONSE:  Denied on the grounds that the cited pages from Plaintiff's deposition does not support the Statement.  In addition, Defendants state that Plaintiff was employed by NJVC, not the National Geo-Spatial Intelligence Agency.  *See* Watson Dep. 50:17–51:18, 57:20–58:10; 262:24–263:15, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2). In addition, this Statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

4.      The vehicle was running, the air conditioning was on, the driver's side window was

halfway down. Id. at 83:13-21.

**RESPONSE:  Defendants admit that the vehicle was running and the air conditioner was on but deny that the window was halfway down because Plaintiff admitted the window was "cracked, " which he claimed meant that it was a fourth of the way down *See* Watson Dep. 457:4–458:9, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).**

5.      The vehicle was lawfully registered in Florida, where Mr. Watson had a driver's

license and had established residence. Id. at p. 285:14-16; 367:18-368:2.

**RESPONSE:  Defendants object to this Statement as an improper and inadmissible legal opinion by Plaintiff that the vehicle was "lawfully" registered in Florida and the implication that he had a valid Florida drivers' license given Plaintiff's admissions that he resides in Illinois, worked in St. Louis, and did not reside in the State of Florida. *See* Watson Dep. 25:24–28:15; 193:23-194:23; 455:1-456:4, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2). Further, Defendants state that Plaintiff admitted that he had not resided in Florida since 2005, had been living in Illinois continuously since at least 2009, and continued to live in Illinois at the time of the stop. *See* Watson Dep. 5:22-6:9; 12:18-13:3; 17:20-19:14, attached hereto as <u>Exhibit 6</u>; 25:7–28:15; 193:23-194:23; 455:1–456:4, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).**

6.      Mr. Watson's tint was legal in the state of Florida. Id. at 257:21-258:4.

**RESPONSE:  Defendants object as an improper and inadmissible legal opinion by Plaintiff that the tint was legal in the State of Florida. In fact, Plaintiff told his attorney Bevis Schock that the reason he had tinted windows was so that police could not see into his car and Mr. Schock told Plaintiff his windows were in clear violation of Missouri law, that he could have been arrested for having them, and that he needed to take steps to correct that violation. *See* Deposition of Bevis Schock ("Schock Dep.") 62:4-65:3, attached to Defendants' SUMF at Ex. 3 (Doc. #187-3); 79:10-12; 84:21-88:15, attached hereto at <u>Exhibit 7</u>.  Plaintiff also testified that he did not know if the tint violated Missouri law and admitted that he worked in Missouri daily and parked the car in Missouri regularly.  *See* Watson Dep. 257:21-259:12, attached hereto at <u>Exhibit 6</u>.  Further, Defendants state that Plaintiff admitted that he had not resided in Florida since 2005, had been living in Illinois continuously since at least 2009, and**

continued to live in Illinois at the time of the stop.  *See* Watson Dep. 5:22-6:9; 12:18-13:3; 17:20-19:14, 286:6-15, attached hereto as **Exhibit 6**; 25:7–28:15; 193:23-194:23; 455:1–456:4, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).

7.      Boyd claimed in his police report that there had been several break-ins by a black vehicle with tinted windows. See Police Report, attached as Exhibit 3 at 2.

**RESPONSE:  Defendants admit the allegations in this statement.**

8.      Defendants have produced no evidence of such break ins by a black vehicle with tinted windows.

**RESPONSE:  Denied.  Plaintiff admits being provided with documents evidencing recent break-ins. *See* Plaintiff's Response to Defendants' Joint SUMF (Doc. #194) ¶2.**

9.      The windshield on Mr. Watson's vehicle was not tinted. See Ex. 1, Watson Dep. 82:17-19.

**RESPONSE:   Denied. *See* Eddie Boyd Deposition ("Boyd Dep.") 148:25-149:2, attached hereto at Exhibit 8.**

10.      Boyd claimed in deposition that Mr. Watson's windshield was tinted. See Deposition of Eddie Boyd, Ex. 3, 148:25-149:2.

**RESPONSE: Admitted.**

11.      Boyd claimed that one factor for his seizure of Mr. Watson was that the car was parked adjacent to a playground. Id at 26:23-25.

**RESPONSE:  Defendants admit that the fact that Plaintiff was near a playground (which Officer Boyd also called an obstacle course) was one of many factors that caused Officer Boyd to investigative and inquire of Plaintiff. *See* Boyd Dep. 22:22–29:12, attached hereto at Exhibit 8; 194:19–195:4, attached to Defendants' SUMF at Ex. 1 (Doc. #187-1).**

12.      While families were playing in the area, there was no playground in the immediate vicinity of Mr. Watson's vehicle. See Ex. 4, Declaration of Fred Watson, at PARA.

**RESPONSE: Defendants admit that families were playing in the area.  Defendants deny that there was no playground in the immediate vicinity of Mr. Watson's vehicle.**

**See Boyd Dep. 17:10–18:22, 26:23-25, attached to Defendants' SUMF at Ex. 1 (Doc. #187-1).**

13.     Mr. Boyd claimed that one reason he seized Mr. Watson was because his vehicle was backed in, which means that a person might be planning to do something illegal. See Ex. 1, Watson Dep. 27:25-28:4.

> **RESPONSE: Denied on the grounds that the cited pages do not support the Statement.  Further answering, Defendants deny that Officer Boyd stated at any time that he "seized" Plaintiff.  Officer Boyd testified that he considered several factors in deciding to stop Plaintiff, including the fact that the vehicle was backed in along the tree line, with heavily tinted windows, and no front license plate, which Plaintiff has admitted. See Boyd Dep. 26:14-28:25, attached to Defendants' SUMF at Ex. 1 (Doc. #187-1). See also Watson Dep. 454:20 ("I do not have a front license plate."), attached to Defendant's SUMF at Ex. 2 (Doc. #187-2).**

14.     Ferguson Police Officer Eddie Boyd pulled his police vehicle directly in front of Mr. Watson's car, blocking him. See id. at 83:23-84:1.

> **RESPONSE:  Denied. See Boyd Dep. 18:23-19:13, attached to Defendants' SUMF at Ex. 1 (Doc. #187-1). In addition, this Statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

15.     Boyd claimed that he did not block Watson in. See Ex. 3, Boyd Dep. 19:8-13.

> **RESPONSE:    Admit.    In addition, this Statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

16.     Boyd's police report claims that Watson was "enraged." See Ex. 2, Police Report at 3.

> **RESPONSE:   Defendants admit that the police report states, "Watson became enraged as I attempted to retrieve his pedigree information."**

17.     Boyd got out of his police vehicle, and, while unsnapping the holster to his gun, asked Mr. Watson, "Do you know why I stopped you, do you know why I pulled you over?" See Ex. 1, Watson Dep. 84:3-7.

> **RESPONSE:   Denied. See Boyd Dep. 95:3-7, attached to Defendants' SUMF at Ex. 1 (Doc. #187-1); Defendant Eddie Boyd III's Answer and Affirmative Defenses to**

5

**Plaintiff's First Amended Complaint ("Boyd Answer"), ¶12 (Doc. #44).  In addition, this Statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

18.     Mr. Watson told Defendant Boyd that Defendant Boyd had not pulled him over, as

Mr. Watson had been parked in that location for 10-15 minutes. See id. at 84:10-12.

**RESPONSE:  Denied. *See* Boyd Answer, ¶12 (Doc. #44).  In addition, this Statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

19.     Mr. Watson rolled his car window down further in order to speak with Defendant

Boyd. See id. at 84:19-21.

**RESPONSE:  Admit.**

20.     Boyd admitted that he was able to see into Mr. Watson's vehicle. See Ex. 3, Boyd

Dep. 53:16-19.

**RESPONSE:  Denied.  Boyd testified at the cited page only that he was able to see that Plaintiff's seatbelt was not on.   Further, Plaintiff testified that his window had been "cracked," or about a quarter of the way down, when he was stopped and had rolled his window only "a little more" as Officer Boyd approached. *See* Watson Dep. 84:13–17, 457:4–458:9, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).**

21.     Boyd demanded that Mr. Watson provide his social security number, which Mr.

Watson declined to provide. See Ex. 1, Watson Dep. 88:11-20.

**RESPONSE:  Defendants admit that Officer Boyd may have requested Plaintiff's social security number after Plaintiff failed to provide his driver's license and insurance information and after Officer Boyd could not find anything in the REJIS System on "Fred Watson." *See* Boyd Dep. 64:19-65:23, attached to Defendants' SUMF at Ex. 1 (Doc. #187-1).  Defendants also admit that, if Officer Boyd requested Plaintiff's social security number, Mr. Watson declined to provide it.  Further, Defendants state that Plaintiff admitted that Officer Boyd initially asked for his *driver's license, insurance* and social security number in his original Complaint and in notes he prepared shortly after the encounter. *See* Complaint (Doc. # 1) at ¶16; Watson Dep. 442:10-443:5; 463:5-465:18, Ex. 34 at WATSON_01617, attached hereto at <u>Exhibit 6</u>.**

22.     Boyd proceeded to make a series of allegations justifying his request for

identification, including that Mr. Watson "could be a pedophile." Id. 88:23-89:1.

> **RESPONSE:  Denied.** *See* **Boyd Answer ¶17 (Doc. #44).  In addition, this Statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

23.     Boyd was yelling at Mr. Watson, but Mr. Watson kept his hands on the steering

wheel. Id. at 104:13-18.

> **RESPONSE:  Denied. Plaintiff admitted that he did not keep his hands on the steering wheel, but attempted to grab his telephone and that Officer Boyd directed Plaintiff to put his phone down for safety reasons.** *See* **Watson Dep. 104:12-106:21, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).**

24.     Only after several statements did Boyd attempt to justify his seizure of Mr. Watson

by stating that Mr. Watson could be cited for having tinted windows. See id. at 93:21-22.

> **RESPONSE:  Defendants admit that Officer Boyd advised Plaintiff that he could and would be cited for illegally tinted windows. However, Defendants deny the remaining statements in this paragraph are speculation and not supported by the cited pages for Plaintiff's deposition. In addition, this Statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

25.     Boyd then asked Mr. Watson for his name, and Boyd admits that he did not ask Mr.

Watson for his full name. See Ex. 1, Watson 97:17-19; Ex. 3, Boyd Dep. 222:1-5.

> **RESPONSE:  Defendants admit that Officer Boyd asked Plaintiff for his name and address and that rather than providing his legal name ("Freddie Watson") to Officer Boyd in response, Plaintiff provided Officer Boyd with his non-legal name ("Fred Watson"), a name Plaintiff knew would not come up in the system.** *See* **Watson Dep. 101:3-102:6, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2). Plaintiff also provided Officer Boyd with a false Florida address when Plaintiff did not reside in the State of Florida.** *See* **Watson Dep. 194:12-23; 455:1-456:4, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2). Further, Defendants state that Plaintiff admitted that he had not resided in Florida since 2005, had been living in Illinois continuously since at least 2009, and continued to live in Illinois at the time of the stop.** *See* **Watson Dep. 5:22-6:9; 12:18-13:3; 17:20-19:14, 286:6-15, attached hereto as <u>Exhibit 6</u>; 25:7–28:15; 193:23-194:23; 455:1–456:4, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).**

26.     Mr. Watson stated that his name was "Fred Watson." See Ex. 1, Watson Dep.

97:20-22; Ex. 3, Boyd Dep. 60:16-24.

**RESPONSE:  Admit.**

27.     When Mr. Watson told Boyd his name, he was not willfully attempting to conceal

his identity. See Declaration of Fred Watson, Ex. 4.

> **RESPONSE:  Denied. Plaintiff was fully aware that "Fred Watson" was not his legal
> name, was not the name on his Florida issued driver's license, and that nothing would
> come up in the system under "Fred Watson." *See* Watson Dep. 101:3-102:6, attached
> to Defendants' SUMF at Ex. 2 (Doc. #187-2). Additionally, Plaintiff admitted that he
> understood Officer Boyd was trying to run the name "Fred Watson" and could not
> find it, explaining, "I know I said before he tried to run my name, I believe it was
> twice he tried to run the name so he . . . finds my registration and it's not Fred, it's
> Freddie . . ."  *See* Watson Dep. 121:25–122:7; 127:10–19, attached to Defendants'
> SUMF at Ex. 2 (Doc. #187-2).  In addition, this Statement, including what was
> Plaintiff's subjective intent, is immaterial to whether Officer Boyd had reasonable
> suspicion or probable cause or Defendants are entitled to judgment in their favor as
> a matter of law.**

28.     Mr. Watson also gave Mr. Boyd the address listed on his Florida drivers' license.

See Ex. 1, Watson Dep. 194:10-11.

> **RESPONSE:  Admit that Plaintiff provided Officer Boyd with a false Florida address
> when Plaintiff admittedly did not reside in the State of Florida. *See* Watson Dep.
> 194:12-23; 455:1-456:4, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2). Any
> Florida driver's license held by Plaintiff was invalid under Illinois and Missouri law.
> Further, Defendants state that Plaintiff admitted that he had not resided in Florida
> since 2005, had been living in Illinois continuously since at least 2009, and continued
> to live in Illinois at the time of the stop.  *See* Watson Dep. 5:22-6:9; 12:18-13:3; 17:20-
> 19:14, 286:6-15, attached hereto as **Exhibit 6**; 25:7–28:15; 193:23-194:23; 455:1–
> 456:4, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).**

29.     Boyd's police report also states that Mr. Watson provided his name and Florida

address. See Police Report, Ex. 2 at 3.

> **RESPONSE:   Defendants admit that Officer Boyd's police report properly
> documents the fact that Plaintiff provided Officer Boyd with his non-legal name of
> "Fred Watson" and the false Florida address. *See also* Watson Dep. 101:3-102:6;
> 194:12-23; 455:1-456:4, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).
> Further, Defendants state that Plaintiff admitted that he had not resided in Florida**

since 2005, had been living in Illinois continuously since at least 2009, and continued to live in Illinois at the time of the stop.  *See* Watson Dep. 5:22-6:9; 12:18-13:3; 17:20-19:14, 286:6-15, attached hereto as <u>Exhibit 6</u>; 25:7–28:15; 193:23-194:23; 455:1–456:4, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).

30.     Mr. Watson asked Mr. Boyd for his name and badge number, which Boyd refused

to provide. See Ex. 1, Watson Dep. 98:13-15; 198:1-8.

> **RESPONSE:   Denied. *See* Boyd Answer ¶¶21–22 (Doc. #44).   In addition, this Statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

31.     Boyd told Mr. Watson that the information would be on his tickets. See id. at

133:14-16.

> **RESPONSE:   Denied. *See* Boyd Answer ¶22 (Doc. #44).   In addition, this Statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

32.     Mr. Watson testified that because of this harassment, he attempted to call the police.

See id. at. 104:13-22.

> **RESPONSE: Denied. While Plaintiff testified here that he wanted to call the police, he did not testify that it was "because of this harassment." In addition, this Statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

33.     To reach his phone, Mr. Watson moved his hand from the top of the steering wheel

to the console above the radio. See id. at. 106:17-21.

> **RESPONSE: Defendants admit that this testimony establishes that Plaintiff suddenly moved his hands off the steering wheel and picked up his phone.**

34.     Mr. Boyd called in a complaint on Mr. Watson. Id. at 109:9-18.

> **RESPONSE: Denied. Officer Boyd testified he called for backup after Plaintiff's repeated refusals to comply with his directives. *See* Boyd Dep. 79:4-18, hereto as <u>Exhibit 8</u>; Watson Dep. 109:19–23, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).**

35.     Officer Boyd commanded Watson to put the phone down, preventing Mr. Watson from notifying the police about his harassment. See id. at 105:23-107:6.

> **RESPONSE: Defendants admit that because of safety concerns, Officer Boyd commanded Plaintiff to put his phone down.** *See* **Watson Dep. 104:12-106:21, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).**

36.     Mr. Watson testified that when he was seized by Mr. Boyd, there was "still a lot of daylight out." Id. at 347:1-4.

> **RESPONSE: Defendants admit that Plaintiff testified as to this statement, but deny its truthfulness.  Plaintiff testified that he believed he was stopped "around 6. It wasn't late in the evening, still a lot of daylight out."** *See* **Watson Dep. 346:19–25.** *See also* **Defendants' response to 45-46,** *infra***. Further answering, Defendants deny that Plaintiff testified that Officer Boyd "seized" him.**

37.     Defendant Boyd testified that he directed Mr. Watson to put the phone down because he believed Mr. Watson was going to call someone to ambush him, See Ex. 3, Boyd Dep. 204:12-19.

> **RESPONSE: Defendants admit that because of safety concerns, Officer Boyd commanded Plaintiff to put his phone down (***see* **Watson Dep. 104:12-106:21, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2)) and that one of those concerns was that Plaintiff could call someone to ambush him.  Indeed Plaintiff admitted that Officer Boyd told him to put his phone down for safety reasons.  (***See* **Watson Dep. 104:13-106:21, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).**

38.     Mr. Watson returned his phone to the dashboard. See Ex. 1, Watson Dep. 110:16.

> **RESPONSE: Admitted.**  *See* **Watson Dep. 104:12-106:13, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).**

39.     Mr. Boyd pulled his gun on Mr. Watson and pointed it at his head. See Ex. 1, Watson Dep. 110:10-111:3; 347:17-348:4.

> **RESPONSE:  Denied.** *See* **Boyd Dep. 95:3-7, attached to Defendants' SUMF at Ex. 1 (Doc. #187-1).  Further responding, Defendants state that Plaintiff admitted in his deposition that Officer Boyd pulled out his gun and pointed it at Plaintiff for "ten seconds or so" and then re-holstered the gun.** *See* **Watson Dep. 200:1–25; 347:17– 348:4, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).**

40.     Boyd claims that he did not draw his weapon on Mr. Watson. See Ex. 3, Boyd Dep. 95:3-7.

**RESPONSE: Admit.**

41.     Defendant Boyd said to Mr. Watson that Boyd could shoot Watson and nobody would "give a damn." See Ex. 1, Watson Dep. 110:22-111:2.

**RESPONSE:  Denied. This testimony conflicts with the allegations in Paragraph 26 of Plaintiff's Amended Complaint (Doc. # 35).  *See also* Boyd Answer ¶26 (Doc. #44). This statement also conflicts with the notes that Plaintiff prepared immediately after the encounter, which do not reflect that Officer Boyd ever pulled a gun or made such a statement.  *See* Watson Dep. 442:10-443:7, Ex. 34, attached hereto at <u>Exhibit 6</u>.**

42.     Mr. Watson testified that Boyd then ordered Watson to throw his keys out of his car and to produce his driver's license and registration. See id. at 111:17-25.

**RESPONSE:  Defendants admit that Officer Boyd requested Plaintiff to provide his driver's license and proof of insurance and ultimately to throw his keys out of the car, and Plaintiff failed to comply with these requests.  *See* Watson Dep. 108:2–15, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).  *See also* Defendants' response to ¶21, *supra*.**

43.     Mr. Watson's vehicle started remotely, and his keys were in the backseat of his car. Id. at 103:11-24; 126:10-11.

**RESPONSE:  Defendants admit that Plaintiff has testified that his vehicle started remotely and that his keys were in his pants pocket. In addition, this Statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

44.     Mr. Watson, with his hands on the steering wheel, stated that all of those items were out of his immediate reach, and because Mr. Watson feared for his life, he did not reach for those items. See id. at 114:21-115:3.

**RESPONSE:  Denied. Plaintiff admitted that he did not throw his keys out of the car and did not provide any reason to Officer Boyd for failing to comply with the directive to throw out his keys. *See* Watson Dep. 108:2-15, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).  *See also* Watson Dep. 474:5–17, 476:22–477:5, attached hereto as <u>Exhibit 6</u>.**

45.    Backup officers from the Ferguson Police Department eventually arrived at approximately 8:18. See Ex. 3, Boyd Dep. 107:1-11.

**RESPONSE:  Admit.**

46.    Ferguson records indicate that the officers arrived at 8:18 p.m. See Exhibit 5 at 1.

**RESPONSE: Defendants object to this statement on the grounds that Exhibit 5 lacks proper authentication and, therefore it is inadmissible.**

**Subject to and without waiving this objection, Defendants admit the document indicates backup arrived at 8:18 p.m. In addition, this Statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

47.    The officers conferred within earshot of Mr. Watson. See Ex. 1, Watson Dep. 118:7-119:4.

**RESPONSE:  Admit that the officers conferred within earshot of Mr. Watson, but deny the contents of the evidence cited. In addition, this Statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

48.    Boyd's police report states that he instructed Watson to get out of his vehicle five times once backup officers arrived. See Ex. 2, Police Report at 3.

**RESPONSE:  Denied.  The police report states that Officer Boyd instructed Plaintiff to get out of his vehicle five times, but does not state that it was "once backup officers arrived."  Officer Boyd ordered Plaintiff to exit the vehicle both before and after backup officers arrived. *See* Boyd Dep. 55:15–56:5, 68:20–69:7, attached to Defendants' SUMF at Ex. 1 (Doc. #187-1); Amended Complaint ¶¶20–21, 28–29 (Doc. #35). Officer Boyd also ordered Plaintiff to throw his keys out of the car, which order Plaintiff refused.  *See* Defendants response to 44, *supra*.**

49.    Boyd stated that he wanted to get the police dog to go into Mr. Watson's car. See Ex. 1, Watson Dep. 118;18-25.

**RESPONSE:  Denied. *See* Boyd Answer ¶31 (Doc. #44).  *See also* Gregory Casem Deposition ("Casem Dep.") 28:7–22, attached hereto as <u>Exhibit 9</u>; Deposition of Todd Mink ("Mink Dep.") 65:5–9, attached hereto at <u>Exhibit 10</u>. In addition, this Statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

50.     An officer approached Mr. Watson and told him that he needed to do whatever Boyd instructed him to do. He further said that he didn't want to have to let the dog out to "tear [Mr. Watson's] shit out." Id. at 116:25-117:4.

> **RESPONSE:  Denied.** *See* **Boyd Answer ¶31 (Doc. #44).** *See also* **Casem Dep. 28:7– 22, attached hereto as __Exhibit 9__; Mink Dep. 65:5–9, attached hereto at __Exhibit 10__. In addition, this Statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

51.     Mr. Watson told the officer that he did not give permission for his vehicle to be searched. Id. at 121:12-16.

> **RESPONSE:  Denied.** *See* **Boyd Answer ¶33 (Doc. #44).  Further, neither of the backup officers who arrived on the scene remember the incident.** *See* **Casem Dep. 12:16–13:3, attached hereto as __Exhibit 9__; Mink Dep. 22:1–12, attached hereto at __Exhibit 10__. In addition, this Statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

52.     No longer fearful for his life, and without making any sudden moves, Mr. Watson has testified that when Boyd instructed him to get out of the vehicle, he complied. See id. at 120:6-9.

> **RESPONSE:  Denied. Plaintiff did not state in the cited deposition pages that he finally exited the vehicle because he no longer feared for his safety. Plaintiff repeatedly refused to exit the vehicle and refused Officer Boyd's orders to throw his keys out of the vehicle without explanation.** *See* **Defendants' responses to 44, 48,** *supra***.** *See also* **Plaintiff's Response to Defendants' Joint SUMF ¶¶20, 21 (Doc. #194), admitting that he did not throw his keys out of the car and did not exit the vehicle despite Officer Boyd's demand.  Further answering, Plaintiff's subjective reason for refusing to exit the vehicle and finally deciding to exit the vehicle are immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

53.     When Mr. Watson exited the vehicle, he closed the door with his foot because he did not want the police to search his vehicle. See id. at 120:15-121:5.

> **RESPONSE:  Defendants admit that Plaintiff closed the door with his foot, which Officer Boyd interpreted as an effort to conceal something.** *See* **Boyd Dep. 212:8-12, attached to Defendants' SUMF at Ex. 1 (Doc. #187-1).  Further answering, Plaintiff's unexpressed, subjective reason for closing the door is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

54.     Boyd's police report claims that he conducted a search incident to arrest. See Exhibit 2, Police Report at 3.

**RESPONSE:  Admit.**

55.     Boyd handcuffed Watson, squeezing the cuffs to cause pain, and placed in the back of Boyd's police car. See Ex. 1, Watson Dep. 121:23-24; Ex. 4, Declaration of Fred Watson at ¶ 4.

**RESPONSE:  Defendants object as speculation the statement that Officer Boyd put the cuffs on to cause pain.  Defendants further object because this statement is not material since Plaintiff suit is not based on any unpleaded claim of excessive force regarding his cuffing.**

56.     Ferguson General Order 408.08 states that officers should only make arrests without warrants when "There is an immediate need for the prevention of a crime, protection of persons or apprehension of a suspect." See Ex. 85, General Order 408, at 3.

**RESPONSE:  Defendants object to this statement on the grounds that Exhibit 85 lacks proper authentication and, therefore it is inadmissible.**

**Subject to and without waiving this objection, Defendants state that Plaintiff has quoted an excerpt of the general order. Further responding, this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

57.     Ferguson's records produced in this case include documentation of a REJIS search run on the night of Mr. Watson's arrest that identified Mr. Watson, his Illinois address, his Florida residency, and the lawful registration and insurance of his vehicle. See Ex. 6, REJIS search at 1-2.

**RESPONSE: Defendants object to this statement on the grounds that Exhibit 6 lacks proper authentication and, therefore it is inadmissible.  Defendants further object on the grounds that Exhibit 6 constitutes hearsay and relies upon hearsay. Defendants further object on the grounds that this statement contains legal conclusions, including the allegations that Plaintiff was had a "Florida residency" or that he had "lawful registration" for his vehicle in Florida. Plaintiff has admitted that he resided in Illinois and has never "lived" in the state of Florida. *See* Watson Dep. 194:12-23; 455:1-456:4, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2). Further, the**

14

document cited does not indicate that Plaintiff's Florida driver's license was valid, that he properly surrendered his expired Missouri driver's license, that his vehicle registration was lawful, or that his insurance was valid.  Nor does the document list an "Illinois address," but rather includes a post office box.  Nevertheless, the fact that Plaintiff now claims he has an "Illinois address" is further evidence that he was not a Florida resident (and knew as much) in 2012.  Further, Defendants state that Plaintiff admitted that he had not resided in Florida since 2005, had been living in Illinois continuously since at least 2009, and continued to live in Illinois at the time of the stop. *See* Watson Dep. 5:22-6:9; 12:18-13:3; 17:20-19:14, 286:6-15, attached hereto as <u>Exhibit 6</u>; 25:7–28:15; 193:23-194:23; 455:1–456:4, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).

Further, a REJIS Report for Missouri's Department of Revenue records run on the night of Mr. Watson's arrest indicates that Mr. Watson's Missouri license was "valid expired" and had not been surrendered to another state.  *See* Boyd Dep. at 112:20–25, 117:16–121:2, Ex.  3 at FERG-WAT 00268, attached to Defendants' SUMF at Ex. 2 (Doc. #187-1).  Officer Boyd testified that he believed that based on this REJIS information, Plaintiff was a resident of Missouri.  *See* Boyd Dep. 164:7–13, attached to Defendants' SUMF at Ex. 1 (Doc. #187-1).

58.     Boyd admitted that on the day he detained and arrested Mr. Watson, he had access to the REJIS system. See Ex. 3, Boyd Dep. 113:17-19.

**RESPONSE: Admit.**

59.     Mr. Watson testified that the reason the name "Fred Watson" would not come up in the REJIS computer system was that he had never had any prior tickets or law enforcement infractions. See Ex. 1, Watson Dep. 101:9-1F8.

**RESPONSE:  Denied, as this statement fails to provide the full context of Plaintiff's testimony.  Plaintiff went on to answer the following: "Q. . . . So you're saying though that you understood that Fred Watson wouldn't come up because you didn't have a license under the name of Fred Watson and you didn't have any traffic tickets, right? A. Yes."  *See* Watson Dep. 102:1–6, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).**

60.     Mr. Watson testified that Boyd opened the door of Mr. Watson's car. See id. at 123:8-10.

**RESPONSE:  Admit.**

61.     Mr. Watson testified that after Boyd opened the door, he had a discussion with the other officers at the scene. See id. at. 123:11-14.

**RESPONSE:  Admit.**

62.     The two other Ferguson officers stuck their heads in the car but did not search anything. See id. at 124:16-19.

**RESPONSE:  Admit.**

63.     Boyd then opened the passenger side door. See id. at 124: 8-15.

**RESPONSE:  Admit.**

64.     Boyd then entered Mr. Watson's car on the passenger side, where he dumped the contents of Mr. Watson's bookbag in the back seat and threw his jeans into the front seat. See id. at 124:20-125:6.

> **RESPONSE:  Admit that Watson testified that Officer Boyd entered his car and searched his bookbag.  Defendants further admit that Officer Boyd searched the vehicle as a search incident to arrest, in an attempt to attempt to discover Plaintiff's real identity and because of the suspicious actions of Plaintiff in closing the door with his foot.  *See* Boyd Dep. 169:19-170:25;  178:23-179:20;  212:8–213:3, Ex. 5 at Watson_00042, attached to Defendants' SUMF at Ex. 1 (Doc. #187-1).**

65.     Boyd also opened Mr. Watson's glove compartment, where Mr. Watson's car registration was present. See id. at 113:20-23; 125:5.

> **RESPONSE:  Admit that Plaintiff testified that Officer Boyd opened Plaintiff's glove compartment and separately testified that he kept his registration in his glove compartment.  Defendants further admit that Officer Boyd searched the vehicle as a search incident to arrest, in an attempt to attempt to discover Plaintiff's real identity and because of the suspicious actions of Plaintiff in closing the door with his foot.  *See* Boyd Dep. 169:19-170:25;  178:23-179:20;  212:8–213:3, Ex. 5 at Watson_00042, attached to Defendants' SUMF at Ex. 1 (Doc. #187-1).**

66.     Boyd then returned to his vehicle with Mr. Watson's Florida registration, and told Mr. Watson that he now understood that Mr. Watson's legal name was Freddie, not Fred. See id. at 127:12-25.

**RESPONSE:   Admit.  Plaintiff further admitted in the cited testimony that he understood Officer Boyd was trying to run the name "Fred Watson" and could not find it, explaining, "I know I said before he tried to run my name, I believe it was twice he tried to run the name so he . . . finds my registration and it's not Fred, it's Freddie . . ."   *See* Watson Dep. 122:1–7; 127:12–19, attached to Defendants' SUMF at Ex. 1 (Doc. #187-1).**

67.    Mr. Watson stated that he commonly went by "Fred," although his legal name is

Freddie.. Id. at 262:12-14.

**RESPONSE:   Denied.   This Statement is not supported by the cited testimony.  Further answering, see Defendants' response to 25, *supra*.**

68.    Mr. Watson's Florida driver's license and his registration were visible in the car.

See id. at 143:1-3.

**RESPONSE:   Denied.   Plaintiff testified that when he entered his car on August 2, 2012, after his car had been towed, he viewed his driver's license on the floor and pointed out his registration.  However, credit union records reveal that Plaintiff used his driver's license to make a $2,100 cash withdrawal from his credit union the morning of August 2, 2012, the day after his arrest and shortly before he went to pick up his vehicle where the driver's license was purportedly located.  *See* Deposition Transcript of Ayse Alexander 14:3–15:12; 16:5–12, attached hereto as Exhibit 11. Further responding, this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

69.    Mr. Watson also found some money in the console of his vehicle, but not as much

money as before he was arrested. See id. at 143:11-17.

**RESPONSE:   Denied. Although Plaintiff originally alleged that there was $2,000 missing from his vehicle (*see* Complaint ¶53 (Doc. #1)), Plaintiff has withdrawn and abandoned that allegation in his Amended Complaint. *See* Amended Complaint ¶53 (Doc. #35).  Plaintiff also admitted that he cannot say that Officer Boyd took any money from his vehicle and acknowledged that his door may have been unlocked when he retrieved his vehicle at the impound. *See* Watson Dep. 141:8–142:3, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2); *see also* Watson Dep. 147:19–25, 149:5–7, attached hereto as Exhibit 6. Further responding, this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

70.    Mr. Watson then went to the Ferguson Police Department to try to file a complaint,

where he was told that he was not able to make a complaint. See id. at 149:15-150:3.

**RESPONSE: Denied. Plaintiff testified that he went to Ferguson to make a complaint, and that he "wanted to talk to the chief."  Plaintiff testified that he was advised that the Chief was not there and available to take his complaint, and that he did not feel comfortable talking to anyone else.  Plaintiff further testified that he never notified the City that he believed he was missing money.**  *See* **Watson Dep. at 149:15–150:10, 150:25–152:4, attached hereto as <u>Exhibit 6</u>.  Further responding, this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

71.     Mr. Watson later attempted to again file a complaint at the Ferguson Police Department and was not allowed. See id. at 150:17-21.

**RESPONSE:  Denied.  Plaintiff testified that he only felt comfortable making his complaint to the Chief and the Chief was unavailable to speak to him.**  *See* **Watson Dep. 150:11–24, attached hereto as <u>Exhibit 6</u>.  Further responding, this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

72.     A tow form completed by Boyd after the arrest represented that Watson's vehicle had a Florida license plate. See Exhibit 7, Incident Tow Form.

**RESPONSE:  Defendants object to this statement on the grounds that Exhibit 8 lacks proper authentication and, therefore it is inadmissible.**

**Subject to and without waiving this objection, admitted.**

73.     At deposition, Boyd stated that an officer can search any person's vehicle upon arresting him or her. See Ex. 3, Boyd Dep. 169:19-22.

**RESPONSE:  Denied, as this statement fails to provide the full context of Officer Boyd's testimony in which was describing a search incident to arrest.  Further responding, this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

74.     A close relative of Mr. Watson's was with him when he retrieved his vehicle, and said that everything inside it appeared to have been "thrown all around." Ex. 8, Robin Daniels Dep. 11:22-12:3.

**RESPONSE:  Admit that this statement reflects Ms. Daniels' testimony.  However, this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

75.     When Mr. Watson was released, he was given seven municipal tickets from the

City of Ferguson. See Ex. 1, Watson Dep. 155:21-22.

> **RESPONSE:  Defendants admit that Plaintiff was handed seven tickets when he was bonded out.  Defendants further admit that all nine of the citations issued to Plaintiff were listed on the bond form he was provided.  *See* Watson Dep. 215:7–23, Ex. 7, attached hereto as <u>Exhibit 6</u>.**

76.     A scrawled signature is illegible in the "Officer" entry of each of the tickets Mr.

Watson received. See Ex. 9, Watson Tickets

> **RESPONSE:  Defendants admit that Officer Boyd's signature is in the "Officer" entry of each of the tickets.  However, this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

77.     For six of the seven tickets, the "Badge" entry is blank on Mr. Watson's yellow

copy of carbon-copy tickets. Id.

> **RESPONSE:   Admitted. However, this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

78.     For one ticket, the entry next to the badge number appears to have been scribbled

out. See Id. at 6.

> **RESPONSE:   Admitted. However, this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

79.     On the white Ferguson copies of the tickets, Boyd's badge number is clearly legible.

See Ex. 10, Ferguson tickets.

> **RESPONSE:   Admitted. However, this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

80.     Officer Boyd listed the following violations on Mr. Watson's tickets:

a.     "No operators license in possession"

b.     "No proof of insurance"

c.     "Vision reducing material applied to windshield"

d.      "Expired state operators license"

e.      "No seat belt"

f.      "Failure to register an out of state mot-veh within 30 days of residence"

g.      "No vehicle inspection"

See Ex. 9,Watson Tickets.

**RESPONSE:  Admitted.**

81.      Even though Boyd had a device that measured the tint on windows, there is no record that Boyd used that device to measure whether Mr. Watson's windows or windshield were tinted. See Ex. 3, Boyd Dep. 150:1-18.

> **RESPONSE:  Admitted. Further answering, Officer Boyd testified that he viewed the tint, which had been applied to the windshield, which is why he wrote Plaintiff a citation for "vision reducing material applied to windshield. Boyd Dep. 148:5–149:25, attached hereto as <u>Exhibit 8</u>.  Plaintiff admitted that he had tinted windows.  *See* Watson Dep. 82:11–13, attached to Defendants' SUMF as Ex. 2 (Doc. #187-2) ("I have tinted windows."). Further, Plaintiff's attorney, Bevis Schock, told Plaintiff his windows were in clear violation of Missouri law, that he could have been arrested for having them, and that he needed to take steps to correct that violation. *See* Schock Dep. 62:4-65:3, attached to Defendants' SUMF as Ex. 3 (Doc. #187-3); 79:10-12, 84:21-88:15, attached hereto at <u>Exhibit 7</u>. Plaintiff also testified that he did not know if the tint violated Missouri law and admitted that he worked in Missouri daily and parked the car in Missouri regularly.  *See* Watson Dep. 257:21-259:12, attached hereto at <u>Exhibit 6</u>. Further responding, this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

82.      Months later, Mr. Watson would learn that he was charged with two other offenses, one for a false report/false statement, and another for failing to obey the orders of an officer. See Ex. 1, Watson Dep. 153:9-154:5.

> **RESPONSE:  Denied. Plaintiff admitted that he was provided with a bond form when he was released, which form listed all nine of the citations issued to Plaintiff, including the charges for failure to obey and false declaration.  *See* Watson Dep. 215:7–23, Ex. 7, attached hereto as <u>Exhibit 6</u>.  Additionally, this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.**

83.     These charges were written on a complaint, rather than a ticket. One complaint alleges that Watson "fail[ed] to obey an officer— Watson refused to provide pedigree information when asked. Then refused to exit his vehicle when advised he was under arrest." See Exhibit 11, Complaints, at 2.

**RESPONSE: Admitted.**

84.     A second complaint alleges "False statement— Watson gave a false name after advising that he did not have his identification on him. He later said his military ID was in the vehicle he tried to secure before being taken into custody." Id.

**RESPONSE: Admitted.**

85.     The section of the complaint listing the ordinance violations for both complaints are left blank. Id.

**RESPONSE: Admitted.**

86.     Boyd testified that he did not remember whether or not he asked Mr. Watson to remove his keys from his vehicle. Ex. 3, Boyd Dep. 96:7-10.

**RESPONSE: Denied, as this statement fails to provide the full context of Officer Boyd's testimony, in which he stated he would need to review his report.  Further, Plaintiff admitted that Officer Boyd ordered him to remove his keys from the vehicle. *See* Watson Dep. 108:2-15, attached to Defendants' SUMF at Ex. 2 (Doc. #187-2).  *See also* Watson Dep. 474:5–17, 476:22–477:5, attached hereto as <u>Exhibit 6</u>.**

87.     Ferguson's City Code 29-21 states: False reports.

(a)     A person commits the offense of making a false report if he knowingly:

(1)     Gives false information to a law enforcement officer for the purpose of implicating another person in a crime;

(2)     Makes a false report to a law enforcement officer that a crime has occurred or is about to occur;

(3)    Makes a false report or causes a false report to be made to a law enforcement officer, security officer, fire department or other organization, official or volunteer, which deals with emergencies involving danger to life or property that a fire or other incident calling for an emergency response has occurred….

See Ex. 12

**RESPONSE:  Defendants object to this statement on the grounds that Exhibit 12 lacks proper authentication and, therefore it is inadmissible.**

**Subject to and without waiving this objection, denied, as Plaintiff has failed to provide a copy of the "false reports" ordinance as it existed at the time of the incident in 2012. In addition, this statement is immaterial to the question of whether Defendants are entitled to judgment in their favor as a matter of law.**

88.    Watson's Court Case Report indicates he was charged with 29-21, False Reports. See Court Case Report, False Report, Ex. 13.

**RESPONSE:  Denied. Neither the referenced exhibit, nor any other document in the summary judgment record, supports this statement.  Moreover, as admitted by Plaintiff in statement 84, *supra*, Plaintiff was charged with "False statement—Watson gave a false name after advising that he did not have his identification on him. He later said his military ID was in the vehicle he tried to secure before being taken into custody." Stephanie Karr, the City's prosecuting attorney, testified that she charged Plaintiff with a false declaration, which is different than the charge of "false reports."  *See* Deposition of Stephanie Karr ("Karr Dep.") 141:18–144:20, attached hereto as Exhibit 12.  In addition, various court documents, including the City's Municipal Division Filing Memorandum, the memorandum it filed with the St. Louis County Circuit Court on July 17, 2013, in conjunction with Plaintiff's request to certify his cases, shows that Plaintiff was charged with "False Declaration" under ordinance number 29-16.  *See* Karr Dep. 122:4–18, Ex. 2 at p. 7 (*see also* page 2, listing as one of the charges "False Declaration"), attached hereto as Exhibit 12. Similarly, Plaintiff's own attorneys recognized that Plaintiff was charged with false declaration when they filed their Motion to Withdraw Guilty Pleas and Declare Convictions Void on his behalf in 2016. *See* FERG-WAT 75-87, attached hereto as Exhibit 13.**

89.    Ferguson's Court Case Report for that charge does not state that Watson was charged with any other charge. Id.

**RESPONSE:  Denied. *See* Defendants' response to 88, *supra*.**

90.     Mr. Watson initially attempted to get the seven tickets resolved himself, going to court with his registration, driver's license, and insurance, all of which were in the car with him on that day. See Ex. 1, Watson Dep. 156:11-24.

**RESPONSE:  Denied. The cited document merely states that Plaintiff took his license and registration to court and wanted to talk to the judge but was unable to.  It does not state that he took his insurance, nor does it state that his license, registration, and insurance were all in the car with him.  In addition, this statement is immaterial to the question of whether Defendants are entitled to judgment in their favor as a matter of law.**

91.     Despite this, his tickets were not dismissed. See Ex. 1, Watson Dep. 156:11-22.

**RESPONSE:  Denied. The cited document merely states that Plaintiff took his license and registration to court and wanted to talk to the judge but was unable to. In addition, this statement is immaterial to the question of whether Defendants are entitled to judgment in their favor as a matter of law.  Further answering, see Defendants' response to 93, *infra*.**

92.     Mr. Watson's Court Case Report for ticket 111787147 shows that he was charged with 44.387.A. See Court Case Report, Ex. 13.

**RESPONSE:  Defendants object on the grounds that the referenced exhibit does not support this statement.**

**Subject to and without waiving this objection, Defendants admit that the Court Case Report for ticket 111787147 reflects that Plaintiff was charged with violating 44.387.A.**

93.     Ferguson later dismissed all charges against Mr. Watson nolle prosequi. See Ex. 15.

**RESPONSE: Defendants admit that the prosecuting attorney dismissed the charges against Plaintiff in accordance with the terms of the Consent Decree entered by the City of Ferguson. The prosecutor did not dismiss the charges because he believed they lacked merit. *See* Deposition of Lee Clayton Goodman ("Goodman Dep.") 22:8–25:9, 29:22–31:19, 33:5–37:25, 56:11–57:19, attached hereto as <u>Exhibit 14</u>. In addition, this statement is immaterial to the question of whether Defendants are entitled to judgment in their favor as a matter of law.**

Mr. Watson's Employment Problems Due to Ferguson

94.     Mr. Watson held Sensitive Compartmented Information ("SCI") status from the federal government, the highest level of security clearance. See Tracy Thornton Deposition ("Thornton Dep.") 10:22-11:4, attached as Exhibit 16.

**RESPONSE:   Admit.   However, this statement is immaterial to the question of whether Defendants are entitled to judgment in their favor as a matter of law.**

95.     In 2014, Mr. Watson was due for a periodic reinvestigation of his SCI clearance. See Ex. 16, Thornton Dep. 11:12-20.

**RESPONSE:   Admit.  However, this statement is immaterial to the question of whether Defendants are entitled to judgment in their favor as a matter of law.**

96.     Mr. Watson was found to be completely eligible for a renewed clearance, except for the stipulation that he needed to provide proof of resolution of his tickets from Ferguson. See Ex. 16, Thornton Dep. 14: 11-18.

**RESPONSE:   Admit.  However, this statement is immaterial to the question of whether Defendants are entitled to judgment in their favor as a matter of law.**

97.     On July 23, 2014, Mr. Watson was granted conditional clearance. See Ex. 16, Thornton Dep. 55:9-55:18.

**RESPONSE:   Admit.  However, this statement is immaterial to the question of whether Defendants are entitled to judgment in their favor as a matter of law.**

98.     Mr. Watson would have been granted full SCI clearance if he had been able to resolve his Ferguson tickets. See Ex. 16, Thornton Dep. 55:9-13.

**RESPONSE:  Denied.  The statement supports a conclusion that Plaintiff would have been granted full SCI clearance if he provided proof of resolution of his Ferguson tickets.  Further, this statement is immaterial to the question of whether Defendants are entitled to judgment in their favor as a matter of law.**

99.     Mr. Watson was never told by NGA or NJVC staff that his eligibility would not be revoked if he pleaded to the charges. See Ex. 16, Thornton Dep. 57:12-18; Ex. 4, Declaration of Fred Watson at ¶ 5.

24

**RESPONSE: Denied.  The NGA representative testified that the letter "does not state that if he plead guilty it would be revoked."  Further, Ms. Thornton testified that correspondence from the NGA to Plaintiff indicated that "if a charge is upheld . . . that would mean he's guilty of that charge, and so if he just provided receipt of the payment or, you know, whatever the court requirement was for that, then the terms of the conditional would have been met."  *See* Thornton Dep. 57:5–18, attached hereto as <u>Exhibit 15</u>. Further, this statement is immaterial to the question of whether Defendants are entitled to judgment in their favor as a matter of law.**

100.    Because of his conditional status, Mr. Watson had to regularly check in with NGA security staff to update them on any resolution of his charges. See Ex. 16, Thornton Dep. 14:11-18.

**RESPONSE: Denied on the grounds that the referenced evidence does not support this statement.  Further, this statement is immaterial to the question of whether Defendants are entitled to judgment in their favor as a matter of law.**

101.    Mr. Watson described this time as stressful and frustrating, and he was eventually fired by NJVC. See Ex. 1, Watson Dep. 263:24-264:10; 328:3-4.

**RESPONSE:  Denied.  Plaintiff testified that his frustration was "with my security personnel about how I'm being bounced between all these different places," leading him to make the statement that led to the suspension of his security clearance.  The NGA unequivocally testified that Plaintiff's security clearance was suspended solely because he made the following statement to an NGA personnel security officer: "What if I went out there and started telling the Government's secrets on my time? Do you think they would go to court with me then." *See* Thornton Dep. 15:10–17:13; 58:23–59:13, attached hereto as <u>Exhibit 15</u>. Because the security officer and the Chief of NGA's Adjudication Branch understood Watson's statement to be a serious threat to national security, the NGA suspended his security clearances. *See* Thornton Dep. 15:13–17:13; 32:3–21; 58:23–59:13, attached hereto as <u>Exhibit 15</u>.  Because his security clearances were suspended, NJVC terminated Watson's employment.  *See* Patrick O'Neil Deposition Transcript at 37:14–23, attached hereto as <u>Exhibit 16</u>. Further, this statement is immaterial to the question of whether Defendants are entitled to judgment in their favor as a matter of law.**











**RESPONSE:  Defendants object to this statement on the grounds that it is immaterial**













119.     These charges were not issued by prosecutors. See Ex. 23, Declaration of

Christopher Dixon at ¶ 10.

**RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As set forth in the Memorandum and Order as it relates to Defendants' Motion to Strike (Doc. #140), the Court held that evidence of Officer Boyd's prior employment may be relevant solely for purposes of evaluating Plaintiff's "failure to screen" claim against the City.  (Doc. #158 at p. 7).   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on this individual claim (instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because his claimed rights were not clearly established) and, therefore, pursuant to the law of the case, this statement should be deemed stricken.**

**Defendants further object on the grounds that the Declarant, Christopher Dixon, was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case. *See* Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>.  . The Declaration is further inadmissible because the declarant lacks personal knowledge and relied upon hearsay.**

**RESPONSE:  Defendants object to this statement on the grounds that it is immaterial**







124.    Boyd was employed at the St. Ann Police Department from 2007-2010. See Ex. 3,

Boyd Dep. 292:17-25.

**RESPONSE:  Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that evidence of Officer Boyd's prior employment may be relevant solely for purposes of evaluating Plaintiff's "failure to screen" claim against the City.  (Doc. #158 at p. 7).   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on this individual claim (instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because his claimed rights were not clearly established).   Therefore, pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Subject to and without waiving the foregoing objection, admit.**





Boyd's Hiring at Ferguson

126.    The Ferguson employment application Defendant Boyd completed for the police

department is four pages long. See Ex. 3, Boyd Dep. 299:3-5.

**RESPONSE:  Admit, but this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's claim for failure to screen, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because his claimed rights were not clearly established.**

127.    The application did not ask if Defendant Boyd had ever been disciplined at any of

his previous departments. See Ex. 26, Boyd Application at 1-4.

**RESPONSE: Defendants object to this statement on the grounds that Exhibit 26 lacks authentication and, therefore, is inadmissible. Further, this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's claim for failure to screen, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because his claimed rights were not clearly established.**

**Subject to and without waiving their foregoing objections, Defendants admit the statement.**

128.    The application did not ask whether Boyd had been involved in any lawsuits. See

Ex. 3, Boyd Dep. 301:17-19.

**RESPONSE:  Defendants object on the grounds that this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's claim for failure to screen, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because his claimed rights were not clearly established.**

**Subject to and without waiving their foregoing objections, Defendants admit the statement.**

129.    If the application would have asked about prior lawsuits, Boyd would have answered honestly that he had been involved in a lawsuit concerning his assault of a juvenile. See Ex. 3, Boyd Dep. 301:20-302:9.

**RESPONSE:  Defendants object on the grounds that this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's claim for failure to screen, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because his claimed rights were not clearly established.**

**Subject to and without waiving their foregoing objections, Defendants admit the statement.**

130.    The Ferguson Police Department's background investigation of Defendant Boyd did not inquire into any of Boyd's previous disciplinary history at either St. Ann or St. Louis City. See Ex. 27, Boyd Background.

**RESPONSE:  Defendants object on the grounds that this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's claim for failure to screen, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.  Defendants further object to this statement on the grounds that Exhibit 27 lacks authentication and, therefore, is inadmissible.**

**Subject to and without waiving their objection, Defendants deny this statement, as it is not supported by the document.**

Case: 4:17-cv-02187-JCH   Doc. #: 208   Filed: 02/23/22   Page: 42 of 139 PageID #: 5300

131.    The investigation's only documented outreach with either of Boyd's former police

employers merely confirmed the dates of his employment. See Ex. 35.

> **RESPONSE:  Defendants object on the grounds that this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's claim for failure to screen, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established. Defendants further object on the grounds that the cited document does not support Plaintiff's conclusion. Defendants object to this statement on the grounds that Exhibit 35 (and Exhibit 27) lack authentication and, therefore, are inadmissible.**

> **Subject to and without waiving their objections, Defendants deny this statement, as it assumes without any basis that Defendant City could have obtained any additional information from the former employers.**

132.    The background investigation called several neighbors and acquaintances of Boyd,

but did not call any of his former supervisors. See id.

> **RESPONSE:  Defendants object on the grounds that this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's claim for failure to screen, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established. Defendants further object on the grounds that the cited document does not support Plaintiff's conclusion.**

> **Defendants further object to this statement on the grounds that Exhibit 35 (and Exhibit 27) lack authentication and, therefore, are inadmissible.**

> **Subject to and without waiving their objections, Defendants deny this statement, as it is not supported by the document.**



135.    Ferguson records indicate that Boyd was hired on July 19, 2010. See Ex. 29, Personnel Action Form.

**RESPONSE: Defendants object on the grounds that this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's claim for failure to screen, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

**Defendants further object to this statement on the grounds that Exhibit 29 lacks authentication and, therefore, is inadmissible.**

**Subject to and without waiving its objection, admitted.**







140.    At the police station, Boyd intentionally pushed the handcuffed young man into a wall, causing him to bleed. See Ex. 32 at ¶ 4.

**RESPONSE: Defendants object on the grounds that this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's claim for failure to supervise, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

**Defendants further object on the grounds that the Declaration is from an individual who has not been identified by Plaintiff in his discovery responses and, therefore, her testimony cannot be proffered by Plaintiff in this case. *See* Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>.  Further answering, Exhibit 32 is not based upon personal knowledge, contains hearsay, and is inadmissible under Rule 56.**





**Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as**































175.    On July 20, 2012, Ferguson business owner Sue Shrago saw that her African-American employee had been detained outside of her store by Boyd. See Declaration of Sue Shrago at 1, attached as Exhibit 48.

> **RESPONSE:  Defendants object on the grounds that this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's claim for failure to supervise, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

**Subject to and without waiving the foregoing objection, admit.**



178.    Shrago called the police to report Boyd's conduct. See Ex. 48, Shrago Dec. at 2.

**RESPONSE:  Defendants object on the grounds that this statement is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's claim for failure to supervise, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

**Subject to and without waiving the foregoing objection, admitted that Shrago called the police.**















192.    The woman's tickets were believed to be dismissed by somebody at the City of

Ferguson. See Declaration of Tiffani Taylor (" Taylor Dec.") at ¶ 2, attached as Exhibit 56.

**RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object on the grounds that the Declaration is inadmissible under Rule 56 because the declarant lacks personal knowledge and because the declaration states beliefs, not facts, and therefore is purely speculating.**

































224.    On June 3, 2014, Eddie Boyd approached Walter Rice at Forestwood Park when he saw Mr. Rice's two-year-old child urinating in the park. See Declaration of Walter Rice ("Rice Dec.") at ¶ 4, attached as Exhibit 66.

**RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be**

deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.

Defendants further object on the grounds that the Declarant in Exhibit 66 was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case. *See* Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as **Exhibit 17**; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as **Exhibit 18**. The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.

225.   According to a sworn declaration of Walter Rice, Boyd was going to write him a ticket for this. See id. at ¶ 9.

**RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7). Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object on the grounds that the Declarant in Exhibit 66 was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case. *See* Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as Exhibit 17; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as Exhibit 18. The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.**

226.   When Mr. Rice's wife expressed surprise that her husband was getting ticketed for the incident, Boyd said to Mr. Rice, "Since she decided to run her mouth, you're going to jail." See id. at ¶ 11.

**RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7). Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object on the grounds that the Declarant in Exhibit 66 was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case.** *See* **Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>.  The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.**

227.     Boyd then arrested Mr. Rice, tightening the handcuffs very tight. See id.

**RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object on the grounds that the Declarant in Exhibit 66 was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case.** *S See* **Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>.  The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.**

228.     Mr. Rice's wife and children were in the car following the two to Ferguson's jail.

See id.. at ¶ 14.

**RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object on the grounds that the Declarant in Exhibit 66 was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case.** *See* **Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>.  The Declaration is further inadmissible**

**because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.**

229.    As Mrs. Rice and her children were following in the car behind Boyd, Boyd said,

"she didn't use her turn signal. She's going to jail too." See id. at ¶ 14.

> **RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7). Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**
>
> **Defendants further object on the grounds that the Declarant in Exhibit 66 was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case.** *See* **Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>. The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.**

230.    Boyd then threatened to take the family's children away and call the authorities.

See id. at ¶ 16.

> **RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7). Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**
>
> **Defendants further object on the grounds that the Declarant in Exhibit 66 was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case.** *See* **Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>. The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.**

231.    When the couple were released from jail, the video of Boyd that had been on Mrs.

Rice's phone had been erased. See id. at ¶ 25.

> **RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**
>
> **Defendants further object on the grounds that the Declarant in Exhibit 66 was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case. *See* Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>.  The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.**

232.    In 2014, Boyd detained Robert Mentzel and his sister in their pickup truck. See

Declaration of Mentzel ("Mentzel Dec.") at ¶ 3, attached as Exhibit 67.

> **RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**
>
> **Defendants further object on the grounds that the Declarant in Exhibit 67 was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case. *See* Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>.  The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.**

233.    Even though Mentzel was not driving, Boyd ordered Mentzel to provide his driver's

license. See id. at ¶ 4.

> **RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As**

set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.

Defendants further object on the grounds that the Declarant in Exhibit 67 was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case. *See* Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>.  The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.

234.     Mentzel was attempting to record the incident on his phone. Boyd told Mentzel to put the phone on the dashboard. See id. at ¶ 6.

RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.

Defendants further object on the grounds that the Declarant in Exhibit 67 was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case. *See* Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>.  The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.

235.     Boyd then arrested Mentzel for failure to comply for not following his orders quickly enough. See id.. at ¶ 9.

RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be

deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.

Defendants further object on the grounds that the Declarant in Exhibit 67 was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case. *See* Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>. The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.

236.    Boyd ticketed Mentzel's sister, telling her, "If your brother hadn't run his mouth, I wouldn't have given you this ticket." See id. at ¶ 11.

RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7). Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.

Defendants further object on the grounds that the Declarant in Exhibit 67 was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case. *See* Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>. The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.







241.    In January of 2015, Tracy Williams-Kelley was driving home around 10 at night with her young child. See Declaration of Williams-Kelley ("Williams-Kelley Dec.") at ¶ 2, attached as Exhibit 69.

> **RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**
>
> **Defendants object on the grounds that the Declarant was not disclosed by Plaintiff and, therefore, neither her testimony, nor her Declaration, can be proffered by Plaintiff in this case. See Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as Exhibit 17; Plaintiff's Rule 26(a)(1) Initial Disclosures,**

attached hereto as <u>Exhibit 18</u>.  **The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.**

242.    Boyd told Williams-Kelley that she was not allowed to use her phone during her stop. See id.. at ¶ 7.

**RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants object on the grounds that the Declarant was not disclosed by Plaintiff and, therefore, neither her testimony, nor her Declaration, can be proffered by Plaintiff in this case.** *See* **Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>.  The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.**





245.    She also filed a complaint with the Ferguson Police Department. *See* Ex. 69,

Williams-Kelley Dec. at ¶ 10.

**RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants object on the grounds that the Declarant was not disclosed by Plaintiff and, therefore, neither her testimony, nor her Declaration, can be proffered by Plaintiff in this case. *See* Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>.  The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.**

246.    When Williams-Kelley called back weeks later, she was told that the Police

Department had no record of the complaint. *See id.* at ¶ 11.

**RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants object on the grounds that the Declarant was not disclosed by Plaintiff and, therefore, neither her testimony, nor her Declaration, can be proffered by Plaintiff in this case. *See* Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>.  The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.**







251.    In 2015, Larry Gardner was arrested after Defendant Boyd asked him for his

identification. See Declaration of Larry Gardner ("Gardner Dec.") at ¶ 4-8, attached as Exhibit 72.

> **RESPONSE: Defendants object to this statement on the grounds that it is immaterial
> to whether Defendants are entitled to judgment in their favor as a matter of law.  As
> set forth in the Court's Memorandum and Order, as it relates to Defendants' original
> Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer
> Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken."
> (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be
> deemed stricken or disregarded by the Court in its consideration of the instant Motion
> for Summary Judgment.**
>
> **Defendants object on the grounds that the Declarant was not disclosed by Plaintiff
> and, therefore, neither his testimony, nor his Declaration, can be proffered by
> Plaintiff in this case. _See_ Plaintiff's Supplemental Interrogatory Responses, Nos. 1
> and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures,
> attached hereto as <u>Exhibit 18</u>.  The Declaration is further inadmissible because the
> declarant lacks personal knowledge, relies upon hearsay, and is speculative.**
>
> **Subject to and without waiving the foregoing objections, Defendants state that
> Declaration asserts that Larry Gardner was arrested after he failed to provide Officer
> Boyd his identification and failed to exit the car upon request.**

252.    When Mr. Gardner declined to provide identification, Boyd told him, "Get out of

the car, mother fucker." See id. at ¶ 5.

> **RESPONSE: Defendants object to this statement on the grounds that it is immaterial
> to whether Defendants are entitled to judgment in their favor as a matter of law.  As**

set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.

Defendants object on the grounds that the Declarant was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case. *See* Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>.  The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.

253.   When Mr. Gardner did not immediately get out of the car, Boyd threatened to shoot the windows out of the car. See id. at ¶ 6.

RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.

Defendants object on the grounds that the Declarant was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case. *See* Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>.  The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.

254.   When Mr. Gardner got out of the car, Boyd arrested him, alleging that Gardner had spit in Boyd's face, which Mr. Gardner denied. See id. at ¶ 9.

RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.

**Defendants object on the grounds that the Declarant was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case.** *See* **Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>.  The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.**

255.   When Boyd arrested Mr. Gardner, he jerked the handcuffs and pushed Gardner

against his vehicle. See id. ¶ 10.

**RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants object on the grounds that the Declarant was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case.** *See* **Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures, attached hereto as <u>Exhibit 18</u>.  The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.**

256.   When Gardner went to court on this ticket, he told the judge about the charge Boyd

had issued. The judge dismissed the ticket. See id. at ¶ 12.

**RESPONSE: Defendants object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court held that allegations of misconduct by Officer Boyd after August 2012 "are irrelevant to Watson's allegations and shall be stricken." (Doc. #158 at p. 7).   Pursuant to the law of the case, this statement should either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants object on the grounds that the Declarant was not disclosed by Plaintiff and, therefore, neither his testimony, nor his Declaration, can be proffered by Plaintiff in this case.** *See* **Plaintiff's Supplemental Interrogatory Responses, Nos. 1 and 2, attached hereto as <u>Exhibit 17</u>; Plaintiff's Rule 26(a)(1) Initial Disclosures,**

attached hereto as <u>Exhibit 18</u>.  The Declaration is further inadmissible because the declarant lacks personal knowledge, relies upon hearsay, and is speculative.



































The Department of Justice's Investigation into the FPD.

295.    Following the killing of Michael Brown, The Department of Justice opened an investigation of the FPD. (ECF No. 35-4, at 1).

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report. As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12). Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

296.    The investigation consisted of approximately 100 person-days at Ferguson with the DOJ team reviewing over 35,000 pages of police records and other FPD documents. ("DOJ Report") (ECF No. 35-4, at 1).

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report. As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12). Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. In its**

new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.

297.    The DOJ completed its investigation with a report entitled "Investigation of the

Ferguson Police Department" See id.

> **RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

> **Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

298.    The DOJ Report "revealed a pattern or practice of unlawful conduct within the

Ferguson Police Department that violates the First, Fourth, and Fourteenth Amendments to the

United States Constitution." Id. at 1.

> **RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

> **Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its**

new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.

299.    The DOJ Report found that "the Ferguson Police Department Engages in a Pattern of Unconstitutional Stops and Arrests in Violation of the Fourth Amendment." Id. at 16.

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

300.    The DOJ Report found that "African Americans are more than twice as likely as white drivers to be searched during vehicle stops even after controlling for non-race based variables such as the reason the vehicle stop was initiated, but are found in possession of contraband 26% less often than white drivers, suggesting officers are impermissibly considering race as a factor when determining whether to search. Id. at 4.

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement**

should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.

Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.

301.    The DOJ Report found that "Many of the unlawful stops we found appear to have been driven, in part, by an officer's desire to check whether the subject had a municipal arrest warrant pending. Several incidents suggest that officers are more concerned with issuing citations and generating charges than with addressing community needs." Id. at 17.

RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.

Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.

302.    The DOJ Report found that "In reviewing FPD records, we found numerous incidents in which—based on the officer's own description of the detention—an officer detained an individual without articulable reasonable suspicion of criminal activity or arrested a person without probable cause." Id. at 17.

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

303.    The DOJ Report found that "FPD routinely makes arrests without probable cause.

Frequently, officers arrest people for conduct that plainly does not meet the elements of the cited

offense." Id. at 18.

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

304.    The DOJ Report found that "FPD Officers Routinely Abuse the 'Failure to Comply'

Charge." Id. at 19.

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

305.    The DOJ Report found that "Officers rely heavily on [failure to comply] to arrest individuals who do not do what they ask, even when refusal is not a crime." Id. at 19.

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

306.    The DOJ Report found that "Many cases initiated under [the 'Failure to Comply'] provisions begin with an officer ordering an individual to stop despite lacking objective indicia that the individual is engaged in wrongdoing. The order to stop is not a lawful order under those

circumstances because the officer lacks reasonable suspicion that criminal activity is

afoot...Nonetheless when individuals do not stop in those situations, FPD officers treat that conduct

as a failure to comply with a lawful order, and make arrests." Id. at 19.

> **RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report. As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12). Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**
>
> **Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

307.    The DOJ Report found that "In an...incident from December 2011, police officers

approached two people sitting in a car on a public street and asked the driver for identification.

When the driver balked, insisting that he was on a public street and should not have to answer

questions, the officers ordered him out of the car and ultimately charged him with Failure to

Comply." Id. at 21.

> **RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report. As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12). Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**
>
> **Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law. In its**

new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.

308.    The DOJ Report found that "FPD supervisors are more concerned with the number of citations and arrests officers produce than whether those citations and arrests are lawful or promote public safety." Id. at 22.

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

309.    The DOJ Report found that "Between July 1, 2010, and June 30, 2014, the City of Ferguson issued approximately 90,000 citations and summonses for municipal violations. Notably, the City issued nearly 50% more citations in the last year of that time period than it did in the first. This increase in enforcement has not been driven by a rise in serious crime. While the ticketing rate has increased dramatically, the number of charges for many of the most serious offenses covered by the municipal code—e.g., Assault, Driving While Intoxicated, and Stealing—has remained relatively constant." Id. at 7.

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to**

**Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

310.   The DOJ Report found that "When another commander tried to discipline an officer for over-ticketing, he got the same response from the Chief of Police: 'No discipline for doing your job.'" Id. at 12.

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

311.   The DOJ Report found that "FPD Engages in a Pattern of First Amendment Violations." Id. at 24.

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to**

**Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

312.    The DOJ Report found that "In Ferguson, officers frequently make enforcement decisions based on what subjects say, or how they say it. Just as officers reflexively resort to arrest immediately upon noncompliance with their orders, whether lawful or not, they are quick to overreact to challenges and verbal slights." Id. at 25.

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

313.    Much of the unconstitutional conduct was contained in reports that Ferguson supervisors routinely approved. The DOJ Report found that "These accounts are drawn entirely

from officers' own descriptions, recorded in offense reports. That FPD officers believe criticism and insolence are grounds for arrest, and that supervisors have condoned such unconstitutional policing, reflects intolerance for even lawful opposition to the exercise of police authority." Id. at 26.

>**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

>**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

314.    The DOJ Report found that "[FPD officers] act as if every offender has a gun, justifying their decisions based on what might be possible rather than what the facts indicate is likely." Id. at 33.

>**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

>**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on**

Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.

315.    The DOJ Report found that "[I]n June 2011, officers arrested a man at gunpoint

because the car he was driving had an active wanted." Id. at 23.

> **RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**
>
> **Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

316.    The DOJ Report found that "An officer placed his gun on a wall or post and pointed

it back and forth to each of two store employees as he talked to them while they took the trash out

late one night. In another case..., a person reported that an FPD officer removed his ECW during

a traffic stop and continuously tapped the ECW on the roof of the person's car." Id. at 80.

> **RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**
>
> **Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its**

new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.

317.     The DOJ Report found that "Ferguson's internal affairs system fails to respond meaningfully to complaints of officer misconduct. It does not serve as a mechanism to restore community members' trust in law enforcement, or correct officer behavior. Instead, it serves to contrast FPD's tolerance for officer misconduct against the Department's aggressive enforcement of even minor municipal infractions, lending credence to a sentiment that we heard often from Ferguson residents: that a "different set of rules" applies to Ferguson's police than to its African-American residents, and that making a complaint about officer misconduct is futile." Id. at 82.

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

318.     The DOJ Report found that "Ferguson Police Department makes it difficult to make complaints about officer conduct, and frequently assumes that the officer is telling the truth and the complainant is not, even where objective evidence indicates that the reverse is true." Id. at 82.

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to**

**Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

319.     The DOJ Report found that "It is difficult for individuals to make a misconduct complaint against an officer in Ferguson, in part because Ferguson both discourages individuals from making complaints and discourages City and police staff from accepting them." Id. at 82.

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

320.     The DOJ Report found that "While official FPD policy states clearly that officers must "never attempt to dissuade any citizen from lodging a complaint," FPD General Order 301.3, a contrary leadership message speaks louder than policy. This message is reflected in statements

by officers that indicate a need to justify their actions when they do accept a civilian complaint."

Id. at 83.

> **RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**
>
> **Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

321.    The DOJ Report found that "We saw many instances in which people complained of being prevented from making a complaint, with no indication that FPD investigated those allegations. In one instance, for example, a man alleging significant excessive force reported the incident to a commander after being released from jail, stating that he was unable to make his complaint earlier because several different officers refused to let him speak to a sergeant to make a complaint about the incident and threatened to keep him in jail longer if he did not stop asking to make a complaint." Id. at 83.

> **RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.

322.    The DOJ Report found that "Some individuals also fear that they will suffer retaliation from officers if they report misconduct or even merely speak out as witnesses when approached by someone from FPD investigating a misconduct complaint." Id. at 83.

RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.

Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.

323.    The DOJ Report found that "Even when individuals do report misconduct, there is a significant likelihood it will not be treated as a complaint and investigated." Id. at 83.

RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

324.    The DOJ Report found that "FPD officers and commanders also often seek to frame complaints as being entirely related to complainants' guilt or innocence, and therefore not subject to a misconduct investigation, even though the complaint clearly alleges officer misconduct." Id. at 84.

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.  In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

325.    The DOJ Report found that "FPD appears to intentionally not treat allegations of misconduct as complaints even where it believes that the officer in fact committed the misconduct." Id. at 84.

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal**

conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.

Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.

326.   The DOJ Report found that "Even where a complaint is actually investigated, unless the complaint is made by an FPD commander, and sometimes not even then, FPD consistently takes the word of the officer over the word of the complainant, frequently even where the officer's version of events is clearly at odds with the objective evidence." Id at 85.

RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.

Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.

327.   The DOJ Report found that "On the rare occasion that FPD does sustain an external complaint of officer misconduct, the discipline it imposes is generally too low to be an effective deterrent." Id. at 85.

RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to

**Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

328.    The DOJ Report found that "In FPD, untruthfulness appears not even to always

result in a formal investigation, and even where sustained, has little effect." Id. at 85.

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

329.    The DOJ Report found that "By failing to hold officers accountable, FPD leadership

sends a message that FPD officers can behave as they like, regardless of law or policy, and even

if caught, that punishment will be light. This message serves to condone officer misconduct and

fuel community distrust." Id. at 86.

**RESPONSE: Defendants object to Plaintiffs' use of the DOJ Report.  As set forth in the Court's Memorandum and Order, as it relates to Defendants' original Motion to Strike (Doc. #140), the Court ordered that the DOJ Report be stricken from consideration as part of the summary judgment briefing because it "lacks a proper indicium of reliability," "was clearly prepared in anticipation of litigation and by a biased preparer," "contains inadmissible hearsay," and "contains inadmissible legal conclusions." (Doc. #158 at p. 12).   Pursuant to the law of the case, this statement should therefore either be deemed stricken or disregarded by the Court in its consideration of the instant Motion for Summary Judgment.**

**Defendants further object to this statement on the grounds that it is immaterial to whether Defendants are entitled to judgment in their favor as a matter of law.   In its new Motion for Summary Judgment (Doc. #185), City did not move for summary judgment on Plaintiff's individual *Monell* claims, instead seeking judgment on Plaintiff's *Monell* claim on the grounds that Plaintiff failed to establish either an underlying constitutional violation or deliberate indifference because Plaintiff's claimed rights were not clearly established.**

Respectfully submitted,

**LEWIS RICE LLC**

By:  /s/ Ronald A. Norwood
      Ronald A. Norwood, #33841MO
      Aarnarian D. Carey, #58286MO
      Jacqueline K. Graves, #64875MO
      600 Washington Ave., Suite 2500
      St. Louis, Missouri  63101
      (314) 444-7759 (Telephone)
      (314) 612-7759 (Facsimile)
      rnorwood@lewisrice.com
      acarey@lewisrice.com
      jgraves@lewisrice.com

*Attorneys for Defendants City of Ferguson*

**REEVES LAW LLC**

By:  /s/  John M. Reeves
      John M. Reeves, #59634MO
      7733 Forsyth Blvd.,
        Suite 1100--#1192
      St. Louis, MO 63105
      314-775-6985
      reeves@reeveslawstl.com

*Attorney for Defendant Eddie Boyd, III*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 16th day of February, 2022, a true copy hereof was electronically filed with the Clerk of the Court using the CM/ECF system, to be served by operation of the Court's electronic filing system on all counsel of record.

/s/ Ronald A. Norwood