# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-2467
_____

Randy McDaniel

*Plaintiff - Appellee*

v.

Markeith Neal, individually and in his capacity as a police officer for the City of Pine Bluff, Arkansas

*Defendant - Appellant*

Tamina Smith, individually and in her capacity as a police officer for the City of Pine Bluff, Arkansas; City of Pine Bluff, Arkansas

*Defendant*s
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: June 16, 2022
Filed: August 15, 2022
_____

Before LOKEN and KELLY, Circuit Judges, and MENENDEZ, District Judge.[1]
_____

KELLY, Circuit Judge.

---

[1]The Honorable Katherine M. Menendez, United States District Judge for the District of Minnesota, sitting by designation.

Randy McDaniel sued Markeith Neal, a police officer in Pine Bluff, Arkansas, for use of excessive force, pursuant to 42 U.S.C. § 1983. Neal moved for summary judgment, raising the defense of qualified immunity. The district court denied Neal's motion, and Neal appeals. Having jurisdiction over this interlocutory appeal, we reverse the denial of qualified immunity and remand with instructions to dismiss the case.

## I.

This court has "authority under the collateral order doctrine to hear an interlocutory appeal of a denial of qualified immunity." Ehlers v. City of Rapid City, 846 F.3d 1002, 1008 (8th Cir. 2017). "Jurisdiction over an interlocutory appeal from the denial of qualified immunity extends only to abstract issues of law, not to determinations that the evidence is sufficient to permit a particular finding of fact after trial." Shannon v. Koehler, 616 F.3d 855, 861 (8th Cir. 2010) (cleaned up and quotations omitted). "Appellate review in these circumstances is therefore limited to determining whether all of the conduct that the district court deemed sufficiently supported for purposes of summary judgment violated the plaintiff's clearly established federal rights." Id. (cleaned up and quotations omitted). "When there are questions of fact the district court did not resolve, we determine the facts that it likely assumed by viewing the record favorably to the plaintiff as in any other summary judgment motion," Sok Kong ex rel. Map Kong v. City of Burnsville, 960 F.3d 985, 989 (8th Cir. 2020) (quoting Brown v. Fortner, 518 F.3d 552, 558 (8th Cir. 2008)), unless the plaintiff's version of the facts "is 'blatantly contradicted by the record,'" id. (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). In other words, we review "whether the official is entitled to qualified immunity based on the summary judgment facts as described by the district court," Jones v. McNeese, 675 F.3d 1158, 1162 (8th Cir. 2012) (quotation omitted), "along with those facts that the district court likely assumed," Sok Kong, 960 F.3d at 989 (quotation omitted). "We do not have jurisdiction to review whether a factual dispute is 'genuine,' but we do have jurisdiction to review the purely legal question whether a dispute identified by the district court is material." Thompson v. Murray, 800 F.3d 979, 983 (8th Cir. 2015).

The qualified immunity inquiry involves two questions: "(1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." McNeese, 675 F.3d at 1161 (cleaned up and quotations omitted). The defendant is entitled to qualified immunity unless the answer to both of these questions is yes. The court may consider them in either order. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Kelsay v. Ernst, 933 F.3d 975, 979 (8th Cir. 2019) (en banc) (cleaned up and quotation omitted). "While prior cases need not have expressly determined that the action in question is unlawful, in the light of pre-existing law the unlawfulness must be apparent." Ehlers, 846 F.3d at 1008 (quotation omitted). "We review a district court's qualified immunity determination on summary judgment *de novo*." Shannon, 616 F.3d at 861–62 (quotation omitted).

## II.

The district court found the following facts to be undisputed. On August 13, 2017, McDaniel was arrested for shoplifting at the Wal-Mart in Pine Bluff, Arkansas, by Neal and two other officers, including Detective Tamina Smith. McDaniel was brought to the loss prevention office. Neal searched him for weapons and found that he was unarmed. McDaniel sat on a bench in the office as a Wal-Mart staff member completed paperwork. McDaniel asked what was going to happen next. Smith responded that McDaniel would be going to jail, and she instructed McDaniel to stand up so that Neal could put him in handcuffs. McDaniel began to stand and then dashed toward the closed office door. Smith grabbed McDaniel's shirt as he tried to run by her, and McDaniel grabbed Smith's arm that was holding his shirt. Smith also unholstered and charged her taser. Neal grabbed the back of McDaniel's shirt, pulling him backwards into the room and away from the door. Neal then placed his arms fully around McDaniel from behind before taking McDaniel to the ground. Neal handcuffed McDaniel and then lifted him up

-3-

and set him back on the bench. McDaniel alleges that, as a result of Neal throwing him to the ground, he suffered a broken collarbone, a skull fracture that required 52 stitches, and a traumatic brain injury that caused permanent mental impairment.

McDaniel filed suit against Neal and Smith individually and in their official capacities and against the city of Pine Bluff. He alleged claims for excessive force pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act (ACRA). Defendants moved for summary judgment. The district court granted summary judgment in part, dismissing McDaniel's official capacity claims against Smith and Neal, his individual claims against Smith, and his claim against the city. The district court denied summary judgment on McDaniel's individual claims against Neal, finding that Neal was not entitled to qualified immunity. Neal appeals.

### III.

We turn first to the question whether Neal used excessive force in detaining McDaniel. "In assessing a claim of excessive force, courts ask 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them.'" Lombardo v. City of St. Louis, 141 S. Ct. 2239, 2241 (2021) (per curiam) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). "A court (judge or jury) cannot apply this standard mechanically." Id. (quoting Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015)). "Rather, the inquiry 'requires careful attention to the facts and circumstances of each particular case.'" Id. (quoting Graham, 490 U.S. at 396). "Those circumstances include 'the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.'" Id. (quoting Kingsley, 576 U.S. at 397). "The degree of injury is certainly relevant insofar as it tends to show the amount and type of force used." Chambers v. Pennycook, 641 F.3d 898, 906 (8th Cir. 2011).

In considering the relevant factors, the district court identified two areas of material dispute between the parties. First, the parties dispute the extent to which McDaniel posed a threat to Smith. Neal argues that McDaniel threatened Smith's safety when he grabbed her arm and that the need to protect Smith was part of the justification for taking McDaniel to the ground. McDaniel's position is that he grabbed Smith's arm to keep his balance as Smith and then Neal grabbed and pulled him, and he could not reasonably have been perceived as a threat to her safety. Second, the parties dispute at what point McDaniel was no longer fleeing or resisting. McDaniel asserts that once Neal had his arms around McDaniel from behind in a bearhug, he was fully subdued and there was no need for any further use of force. Neal argues that the situation continued to evolve until McDaniel was on the ground in handcuffs.

Because the district court denied Neal qualified immunity, we can infer it concluded that, accepting McDaniel's description of the facts, a reasonable jury could conclude that Neal's use of force was excessive. At this stage, we view the facts in the light most favorable to McDaniel. McDaniel did attempt to flee, but both Smith and Neal had grabbed him by the time he reached the closed door. They knew McDaniel was unarmed, and the offense they were there to arrest him for was nonviolent. At the time Neal performed the takedown, he had already wrapped his arms around McDaniel and pulled him back to the bench, so McDaniel was no longer able to flee. Despite these circumstances, Neal proceeded to throw McDaniel to the ground with enough force to fracture his collarbone and skull and cause a brain injury.

The footage from the officers' body-worn cameras (BWC) does not contradict McDaniel's version of events. In fact, the video footage and still images in the record show that Neal lifted McDaniel high enough and with enough force for his feet to fly up in the air before throwing him down on the ground. A Wal-Mart employee commented afterwards, "All I saw was feet." The same employee described McDaniel as having been "body slammed," and other employees who viewed a video of the events on Wal-Mart's security camera commented that the

takedown was like a move from professional wrestling. Similarly, the BWC footage and still images in the record do not "blatantly contradict" McDaniel's assertion that his contact with Smith was incidental to her attempts to prevent him from fleeing and not a threat to her safety. In fact, Smith did not perceive McDaniel as having attacked her—on BWC recordings, she says that she grabbed him to stop him from running out the door. We affirm the district court's conclusion that the disputed facts are material to the question of whether Neal used excessive force and that, viewing those facts in McDaniel's favor, Neal's use of force was excessive.

Neal points to three cases to support his assertion that his use of force was reasonable. The facts and circumstances of each of those cases, however, are distinguishable in ways relevant to the excessive force inquiry. See Kohorst v. Smith, 968 F.3d 871, 874–75 (8th Cir. 2020) (no excessive force where takedown of plaintiff did not cause injury); Fischer v. Hoven, 925 F.3d 986, 987 (8th Cir. 2019) (single officer's force not excessive when confronted by two intoxicated and hostile individuals); Ehlers, 846 F.3d at 1011 (spin takedown of unrestrained, noncompliant plaintiff in open area that resulted in knee and shoulder injury not excessive use of force). The reasonableness of a use of force is a fact-intensive inquiry. Viewing the facts of this case in McDaniel's favor, a reasonable factfinder could conclude that Neal's use of force was excessive.

## IV.

Even if his use of force was excessive, Neal is entitled to qualified immunity unless the excessiveness of the force was clearly established on the date of the incident, August 13, 2017. In finding Neal's use of excessive force to be clearly established, the district court relied on "the general constitutional principles against excessive force that were clearly established at the time of the incident" and noted that a plaintiff "is not required to point to precedent" that addresses the officer's "precise conduct." The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality," City & Cnty. of S.F. v. Sheehan, 575 U.S. 600, 613 (2015) (per curiam) (quotation omitted), and that "specificity is

especially important in the Fourth Amendment context," Mullenix v. Luna, 577 U.S. 7, 12 (2015) (per curiam). "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." Kisela v. Hughes, 138 S. Ct. 1148, 1153 (2018) (per curiam) (quoting Mullenix, 577 U.S. at 13). The Supreme Court acknowledged that "general statements of the law are not inherently incapable of giving fair and clear warning to officers," id. (quotation omitted), but cautioned that "[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it,'" id. (quoting Plumhoff v. Rickard, 572 U.S. 765, 778–79 (2014)).

McDaniel acknowledges that his case is factually similar to Kelsay v. Ernst, 933 F.3d 975 (8th Cir. 2019) (en banc). In Kelsay, the plaintiff was at a public pool with her friend Caslin and her three children. Someone at the pool called the police because of an interaction between Caslin and Kelsay, and police came and arrested Caslin for domestic assault. Officers decided Kelsay should be arrested for interfering in Caslin's arrest (though at summary judgment, Kelsay disputed that she had done so). An officer approached Kelsay and grabbed her arm, without informing her that she was under arrest. Kelsay stopped, turned, said she was going to check on her daughter, and continued walking away. The officer then "placed Kelsay in a bear hug, threw her to the ground, and placed her in handcuffs." Id. at 978. The takedown knocked Kelsay briefly unconscious and broke her collarbone. Id. at 978–79. The district court denied the officer's motion for summary judgment on the basis of qualified immunity, and the en banc court reversed, holding that the officer did not violate a clearly established right on May 29, 2014. Id. at 977.

McDaniel does not point to a case between May 29, 2014, and August 13, 2017, that clearly established that Neal's use of force was excessive. Rather, McDaniel suggests that the court analyze the bearhug and the takedown as two separate uses of force. McDaniel points the court to Jackson v. Stair, 944 F.3d 704

-7-

(8th Cir. 2019), in which this court vacated and remanded in part the district court's grant of summary judgment on the basis of qualified immunity. Officer Stair tased plaintiff Jackson three times during their interaction. The district court considered the officer's conduct as a whole, but this court addressed each tasing separately. See id. at 711–12. The first tasing was objectively reasonable because a reasonable officer "could have viewed Jackson's actions as threatening, resisting arrest, and endangering the safety of an officer." Id. at 711. But at the time of the second tasing, Jackson "was on his back, writhing on the ground [and] did not have time to react with compliance or continued resistance before the second tasing was deployed." Id. at 711–12. The court held that "the second tasing stands on its own" and "the district court erred by not analyzing it as a separate use of force." Id. at 712. In response to the dissent's argument that given the quick succession of the tasings, Jackson's "momentary post-tasered position on the ground does not justify considering it as a clearly punctuated interim of compliance," id. at 714 (Wollman, J., dissenting in part), the court pointed out that the officer "acted with too much speed and without providing Jackson a chance to comply" and so "it was unreasonable for Officer Stair to effectively 'kick him while he was down' without considering whether a second tasing was excessive," id. at 712 n.3. Even if we applied this reasoning to McDaniel's situation, however, it would not clearly establish the excessiveness of Neal's use of force because the court in Jackson did not hold that the second tasing was excessive. Instead, it remanded the case to the district court to analyze the second tasing as a separate use of force from the other two tasings.

Thus, neither we nor McDaniel can identify a case or body of case law that clearly established as of August 13, 2017, that Neal's use of force was excessive, even viewing the facts in the light most favorable to McDaniel. Given the Supreme Court's strict instructions on this point, we are compelled to conclude that Neal is entitled to qualified immunity.

Because McDaniel made no independent arguments related to his ACRA claim, and because the ACRA is generally treated as coextensive with § 1983 and

-9-

analyzed under federal standards, Neal is also entitled to qualified immunity as to McDaniel's ACRA claim.  See Hess v. Ables, 714 F.3d 1048, 1054 (8th Cir. 2013); Brewington v. Keener, 902 F.3d 796, 800 n.3 (8th Cir. 2018).  The decision of the district court is reversed, and the case is remanded with instructions to enter summary judgment in favor of Neal and dismiss the case.

_____