UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| FRED WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17CV2187 JCH |
| | ) | **FILED UNDER SEAL** |
| CITY OF FERGUSON, MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Joint Motion for Summary Judgment, filed November 22, 2021.  (ECF No. 185).  The motion is fully briefed and ready for disposition.

## BACKGROUND[1]

On August 1, 2012, Plaintiff Fred Watson ("Watson"), a Navy veteran, was sitting in his vehicle at Forestwood Park in Ferguson, Missouri, after playing basketball.  (Plaintiff Fred Watson's Statement of Additional Material Facts in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Watson's Additional Facts"), ¶¶ 1, 2).  Watson was living in Illinois at the time, and had lived there since at least 2009, but previously had lived in Florida for several years.  (*Id.*, ¶ 2 and Defendants' response thereto).  While Watson claims the vehicle was lawfully registered in Florida, and Watson possessed a Florida driver's license, Defendants counter that the registration and license were invalid because Watson admittedly had

---

1 In his Memorandum and Order addressing Defendants' initial Joint Motion for Summary Judgment, Judge Ronnie L. White of this Court granted Defendants' motion to strike from consideration allegations of Officer Boyd's misconduct after August, 2012, and the Department of Justice Report.  (*See* ECF No. 158, PP. 6-7, 11-12).  Watson has not asked the Court to reconsider this ruling, and the Court declines to do so at this time.

not resided in Florida since 2005.  (*Id.*, ¶ 5 and Defendants' response thereto).  The vehicle was running, with the air conditioning on and the driver's side window at least part-way down.  (*Id.*, ¶ 4 and Defendants' response thereto).  The car further had tinted windows, and while Watson claims the tint was legal in Florida, he admits he did not know if the tint violated Missouri law. (*Id.*, ¶ 6 and Defendants' response thereto).

On that day Defendant Eddie Boyd III ("Officer Boyd") was patrolling at Forestwood Park, where there had been at least one recent car break-in.  (Defendants' Joint Statement of Undisputed Material Facts ("Defendants' Facts"), ¶ 2).[2]   According to Defendants, at approximately 8:17 p.m. Officer Boyd observed a vehicle with excessively tinted windows and no front license plate, backed into a parking space against a tree line, idling, headlights on, near a playground where children were playing.  (*Id.*, ¶ 3).[3]  He parked his car near Watson's vehicle, and approached on foot.  (*Id.*, ¶ 4).[4]  Defendants maintain the windows on Watson's car were so dark that Officer Boyd was unsure whether the car was occupied until he approached and saw movement inside.  (*Id.*, ¶ 5).[5]  According to Watson, Officer Boyd unsnapped the holster to his gun as he approached, while asking Watson if he knew why he had been pulled over.  (Watson's Additional Facts, ¶ 17).

---

2 In his police report, Officer Boyd claimed that there had been several break-ins by a black vehicle with tinted windows.  (Watson's Additional Facts, ¶ 7).
3  Watson counters by claiming that Officer Boyd did not notice the tint until well into his conversation with Watson, and that his windows were not excessively tinted, but rather legally tinted in the state of Florida where the car was registered.  (Watson's response to Defendants' Facts, ¶ 3).  Further, while Watson denies there was a playground in the immediate vicinity of his car, he admits there were families playing in the area.  (Watson's Additional Facts, ¶ 12).
4 While Defendants maintain Officer Boyd merely pulled his police cruiser adjacent to Watson's car, Watson claims he parked directly in front, thereby blocking Watson's car.  (Defendants' Facts, ¶ 4; Watson's Additional Facts, ¶¶ 14, 15).
5 Watson admits that he obtained tinted windows in an effort to reduce racial profiling.  (Watson's response to Defendants' Facts, ¶ 5).

Watson rolled his window down further in order to speak with Officer Boyd.  (Watson's Additional Facts, ¶ 19).  While Watson maintains Officer Boyd could then see into his vehicle, Defendants maintain he was able to see only that Watson was not wearing a seatbelt.  (*Id.*, ¶ 20 and Defendants' response thereto).  Officer Boyd requested that Watson provide his pedigree information, including his name and address, driver's license and proof of insurance. (Defendants' Facts, ¶ 8).[6]  Although Watson never provided his driver's license or proof of insurance, he claims it was because he feared for his life and therefore kept his hands on the steering wheel.  (*Id.*, ¶¶ 9, 10 and Watson's response thereto).  Watson told Officer Boyd his name was "Fred Watson", and provided a Florida address, the one on his driver's license and vehicle registration, even though he currently was living in Illinois.  (*Id.*, ¶¶ 11, 12 and Watson's response thereto).[7]  Officer Boyd then asked that Watson provide his social security number, which Watson declined to do.  (Watson's Additional Facts, ¶ 21).  Defendants assert Officer Boyd attempted to locate Watson's name in REJIS, a computer system used by law enforcement agencies to identify individuals, including locating their driver's license information, but was unable to locate an individual named "Fred Watson" with the information provided by Watson. (Defendants' Facts, ¶¶ 13, 14).[8]  Officer Boyd eventually informed Watson he could and would be cited for having illegally tinted windows.  (Watson's Additional Facts, ¶ 24 and Defendants' response thereto).

---

[6] In his police report, Officer Boyd stated that Watson became enraged as he attempted to retrieve his pedigree information.  (Watson's Additional Facts, ¶ 16 and Defendants' response thereto).

[7] Again, according to Defendants Watson had not lived in Florida since 2005.  (Defendants' Facts, ¶ 12).

[8] According to Defendants, Freddie Watson is Watson's legal name, while Fred Watson is a non-legal name that Watson knew would not appear in the system.  (*See* Defendants' response to Watson's Additional Facts, ¶ 25).

Watson claims he then asked Officer Boyd for his name and badge number, which Officer Boyd refused to provide.  (Watson's Additional Facts, ¶ 30).  Officer Boyd allegedly informed Watson that the information would be on Watson's tickets.  (*Id.*, ¶ 31).  Watson alleges that due to this harassment, he moved his hand from the top of the steering wheel to the console above the radio, in an effort to reach his phone and call the police.  (*Id.*, ¶¶ 32, 33).  Officer Boyd directed Watson not to use the phone and to keep his hands on the steering wheel, allegedly for officer safety purposes.  (Defendants' Facts, ¶ 18).  While Watson claims that at this time Officer Boyd pulled out his gun and pointed it at Watson for ten seconds or so before re-holstering it, Officer Boyd denies ever pulling a gun on Watson.  (*Id.*, ¶ 19).  Watson further claims Officer Boyd said he could shoot Watson right then and nobody would give a damn.  (Watson's Additional Facts, ¶ 41).

Officer Boyd then directed Watson to throw his keys out of the car window.  (Defendants' Facts, ¶ 20; Watson's Additional Facts, ¶ 42).  The parties agree Watson did not comply with this directive, but Watson claims it was because his keys were in the backseat of his car and he did not want to remove his hands from the steering wheel because he feared for his life.  (Defendants' Facts, ¶ 20; Watson's Additional Facts, ¶¶ 43, 44).  Officer Boyd claims Watson also refused to follow his order to exit his vehicle without explanation.  (Defendants' Facts, ¶ 21).[9]  Officer Boyd eventually called for backup, and two Ferguson officers arrived on the scene.  (*Id.*, ¶ 22).

Once the backup officers were present, Watson exited his vehicle.  (Defendants' Facts, ¶ 23; Watson's Additional Facts, ¶ 52).  As he did so, Watson closed the door with his foot

---

9 Again, Watson claims he refused to exit his car out of fear for his safety.  (Watson's response to Defendants' Facts, ¶ 21).

because he did not want the police to search his vehicle.  (Watson's Additional Facts, ¶ 53).[10]
Officer Boyd handcuffed Watson, allegedly squeezing the cuffs to cause pain, and placed him in
the back of Officer Boyd's police car.  (*Id.*, ¶ 55).  He then entered Watson's vehicle and
searched his book bag, pants, glove compartment, and center console.  (Defendants' Facts, ¶
25).[11]  During the search, Officer Boyd located documentation indicating that Watson's legal
name was Freddie Watson, not Fred Watson.  (*Id.*, ¶ 27).  With this name Officer Boyd was able
to locate Watson in REJIS, although the parties dispute the contents of the information he found.
(*Id.*, ¶ 28).  While Officer Boyd asserts REJIS records indicated Watson was a Missouri resident,
and had never surrendered his Missouri license, which was expired[12], Watson claims the search
identified his Illinois address, his Florida residency, and the lawful registration and insurance of
his vehicle in Florida.  (*Id.*; Watson's Additional Facts, ¶ 57).  It is undisputed that Watson's
vehicle had a Florida license plate, and did not have an inspection sticker.  (Watson's Additional
Facts, ¶ 72; Defendants' Facts, ¶ 30).

When Watson was released, he was given seven municipal tickets from the City of
Ferguson, as follows:  no operator's license in possession; no proof of insurance; vision reducing
material applied to windshield[13]; expired state operator's license; no seat belt; failure to register
an out of state motor vehicle within 30 days of residence; and no vehicle inspection.  (Watson's
Additional Facts, ¶ 80).  According to Watson, a scrawled signature is illegible in the "Officer"

---

10 Officer Boyd testified that he interpreted Watson's movement as an attempt to conceal
something in the vehicle.  (Defendants' Facts, ¶ 24).
11 Officer Boyd's police report states that he conducted the search incident to arrest.  (Watson's
Additional Facts, ¶ 54).
12 Officer Boyd claims he was not able to locate a valid driver's license for Watson in Missouri,
Illinois or Florida, although the car was registered in Florida.  (Defendants' Facts, ¶ 29).
13 Although Officer Boyd had a device that measured tint on windows, he did not use the device
to measure whether Watson's windows or windshield were tinted.  (Watson's Additional Facts, ¶
81).

entry of each of the tickets.  (*Id.*, ¶ 76).  Further, for six of the seven tickets the "Badge" entry is blank on Watson's yellow carbon copy of the tickets, and for the seventh the badge number appears to have been scribbled out.  (*Id.*, ¶¶ 77, 78).[14]  He ultimately was charged with two additional offenses, that were written on complaints rather than tickets.  (*Id.*, ¶¶ 82, 83).  The first, for false statement, alleged that "Watson gave a false name after advising he did not have his identification on him.  He later said his military ID was in the vehicle he tried to secure before being taken into custody."  (*Id.*, ¶ 84).  The second, for failure to obey the orders of an officer, stated that "Watson refused to provide pedigree information when asked.  Then refused to exit his vehicle when advised he was under arrest."  (*Id.*, ¶ 83).

Watson filed his original Complaint in this matter against Defendants Boyd and the City of Ferguson on July 31, 2017.  In his First Amended Complaint, filed September 26, 2018, Watson asserts the following claims under 42 U.S.C. §§ 1983:  unlawful search and seizure in violation of the Fourth and Fourteenth Amendments against Defendant Boyd (Count I); unlawful retaliation in violation of the First Amendment against Defendant Boyd (Count II); malicious prosecution in violation of the Fourth and Fourteenth Amendments against Defendant Boyd (Count III)[15]; and municipal liability against the City of Ferguson (Count IV).

As noted above, Defendants filed the instant Joint Motion for Summary Judgment on November 22, 2021, claiming there exist no genuine issues of material fact and they are entitled to judgment as a matter of law.  (ECF No. 185).

## SUMMARY JUDGMENT STANDARD

---

14 Watson asserts Officer Boyd's badge number is clearly legible on the white Ferguson copies of the tickets.  (Watson's Additional Facts, ¶ 79).

15 In his Memorandum and Order addressing Defendants' initial Joint Motion for Summary Judgment, Judge White granted Defendants' Motion for Summary Judgment on Watson's malicious prosecution claim.  (*See* ECF No. 158, PP. 33-35).  Watson has not asked the Court to reconsider this ruling, and the Court declines to do so at this time.

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant.  Only disputes over facts that might affect the outcome will properly preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute."  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247.  The nonmoving party may not rest upon mere allegations or denials of its pleadings.  *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255.  The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial.  *Id*. at 249.

## DISCUSSION

### I.    Qualified Immunity

United States District Judge Rodney W. Sippel of this Court recently provided a detailed analysis of the doctrine of qualified immunity, which the Court quotes at length here:

> Qualified immunity protects a government official from liability "unless the official's conduct violated a clearly established constitutional or

statutory right of which a reasonable person would have known."
*Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

To determine whether an official is entitled to qualified immunity, the Court asks the following two-part question:  (1) whether the facts alleged, viewed in the light most favorable to the plaintiff, show that the defendant violated a constitutional or statutory right, and (2) whether the right at issue was clearly established at the time of the offending conduct.  *Brown v City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).   The Court may decide which determination to make first, *Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009), and "the defendants are entitled to qualified immunity unless the answer to both of these questions is yes."  *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

"A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011) (internal quotation marks and citation omitted).  "A general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful."  *Winslow v. Smith*, 696 F.3d 716, 738 (8th Cir. 2012) (internal quotations marks and citation omitted).  "The unlawfulness must merely be apparent in light of preexisting law, and officials can still be on notice that their conduct violates established law even in novel factual circumstances."  *Nelson v. Correctional Medical Services*, 583 F.3d 522, 531 (8th Cir. 2009) (internal quotation marks and citation omitted).

*Smalley v. Gamache*, No. 4:10CV319 RWS, 2013 WL 1149146, at *2 (E.D. Mo. Mar. 19, 2013).

### A.  Unlawful Search And Seizure (Count I)

As noted above, in Count I of his First Amended Complaint Watson asserts Officer Boyd is liable for an unlawful search and seizure.  Specifically, he maintains Officer Boyd stopped and arrested him without probable cause; seized him unreasonably, by pointing a gun at his head at close range; seized him unreasonably by initiating charges against him; and conducted an illegal

search, by ransacking Plaintiff's car after having unlawfully arrested him.  The Court addresses
Watson's claims in turn.

### i.      Stop Without Probable Cause

The Fourth Amendment protects the right of people to be secure "against unreasonable
searches and seizures."  U.S. Const. amend. IV.  Under the Fourth Amendment, a traffic stop
constitutes a seizure.  *United States v. $45,000.00 in U.S. Currency*, 749 F.3d 709, 715 (8th Cir.
2014).  Nonetheless, a traffic stop is reasonable under the Fourth Amendment "if it is supported
by either probable cause or an articulable and reasonable suspicion that a traffic violation has
occurred."  *United States v. Green*, 946 F.3d 433, 438 (8th Cir. 2019) (internal quotation marks
and citation omitted).  Thus, in general, "the decision to stop an automobile is reasonable where
the police have probable cause to believe that a traffic violation has occurred."  *Whren v. United
States*, 517 U.S. 806, 810 (1996) (citations omitted).  *See also United States v. Williams*, 929
F.3d 539, 544 (8th Cir. 2019) (internal quotation marks and citation omitted) ("A law
enforcement officer has reasonable suspicion [to conduct an investigatory stop] when the officer
is aware of particularized, objective facts which, taken together with rational inferences from
those facts, reasonably warrant suspicion that a crime is being committed.").  To that end, any
traffic violation, no matter how minor, provides probable cause for a traffic stop.  *United States
v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994).  *See also United States v. Harris*, 617 F.3d 977,
979 (8th Cir. 2010) (citation omitted) ("Even a minor traffic violation provides probable cause for
a traffic stop").  Furthermore, "[m]istakes of law or fact, if objectively reasonable, may still
justify a valid stop."  *Williams*, 929 F.3d at 544 (internal quotation marks and citation omitted).

In the instant case, as noted above Defendants maintain Officer Boyd observed a vehicle
with excessively tinted windows and no front license plate, backed into a parking space against a

tree line, idling, headlights on, near a playground where children were playing.  Both Missouri law and the Ferguson City Code of Ordinances ("City Code") restrict vision-reducing material applied to the windows and windshield of a car.  *See* R.S.Mo. § 307.173; City Code 44-404.[16] Further, Missouri law requires, with certain exceptions not relevant here, that license plates be fastened to the front and rear of motor vehicles.  *See* R.S.Mo. § 301.130.5.  Defendants maintain Officer Boyd therefore parked his car near Watson's vehicle and approached on foot, as the windows on Watson's car were so dark that Officer Boyd was unsure whether the car was occupied until he advanced and saw movement inside.  Defendants thus maintain Officer Boyd's traffic stop was reasonable under the Fourth Amendment, as it was supported by either probable cause or an articulable and reasonable suspicion that one or more traffic violations had occurred, even in the absence of any tint meter reading.  (*See* Defendants' Memorandum in Support of their Joint Motion for Summary Judgment ("Defendants' Memo in Support"), P. 13, citing cases from various jurisdictions to the effect that a tint meter reading is not required to establish probable cause for a stop due to a belief that windows were unlawfully tinted).

Watson attempts to counter the above by asserting that reasonable suspicion is limited to those situations where the officer is aware of particularized objective facts which reasonably warrant suspicion of crime, and must be determined by what the officer knew before he conducted the search or seizure.  Watson does not dispute an officer's knowledge or suspicion of unlawful tint can justify a detention.  Instead, he maintains that what is in dispute here is what

---

16 "Any person may operate a motor vehicle with front sidewing vents or windows located immediately to the left and right of the driver that have a sun screening device, in conjunction with safety glazing material, that has a light transmission of thirty-five percent or more plus or minus three percent and a luminous reflectance of thirty-five percent or less plus or minus three percent. Except as provided in subsection 5 of this section, any sun screening device applied to front sidewing vents or windows located immediately to the left and right of the driver in excess of the requirements of this section shall be prohibited without a permit pursuant to a physician's prescription as described below."  R.S. Mo. §307.173.1.

Officer Boyd actually knew and/or observed before detaining Watson.  According to Watson, that fact is a material one that must be presented to a jury for a credibility determination.

Upon consideration the Court finds that, even assuming a question of fact remains as to whether Watson's front windshield was tinted and/or whether Officer Boyd believed it to be tinted, said question is immaterial in light of other undisputed facts.  Most importantly, Watson does not dispute that his car lacked a front license plate.  Further, while Watson takes issue with whether his windshield was tinted, and/or whether Officer Boyd believed it to be tinted, as noted above he does not dispute that he possessed tinted windows in an effort to reduce racial profiling, and Missouri law and the City Code restrict the use of vision-reducing tint on windows as well.[17] Watson's speculation that Officer Boyd invented these violations after the fact to provide justification for the stop is insufficient to convert the issue into a credibility determination for the jury.  The Court thus finds Officer Boyd did not violate Watson's constitutional rights when he approached Watson's vehicle, and so he is entitled to summary judgment on this issue.

## ii.   <u>Arrest Without Probable Cause</u>

With respect to arrest, "[i]t is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments."  *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013) (internal quotation marks and citations omitted).  However, "a false arrest claim under § 1983 fails as a matter of law where the officer had probable cause to make the arrest."  *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001).  Probable cause exists where there are facts and circumstances within a law enforcement officer's knowledge that are sufficient to lead a person of reasonable caution to believe that a suspect has committed or is committing a crime.  *Galarnyk v. Fraser*, 687 F.3d

---

17 While Officer Boyd ticketed Watson only for having vision reducing material applied to his windshield, he noted the presence of tinted windows in his police report.  (*See* ECF No. 196-4).

1070, 1074 (8th Cir. 2012).  *See also Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011) (internal quotation marks and citation omitted) ("An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense").  "The existence of probable cause is based on the facts available to the officers at the moment [an] arrest [i]s made, and is determined from the standpoint of an objectively reasonable police officer."  *Walz v. Randall*, 2 F.4th 1091, 1100 (8th Cir. 2021).

Furthermore, "[a]n officer…is entitled to qualified immunity for a warrantless arrest if the arrest was supported by at least 'arguable probable cause.'…Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is objectively reasonable."  *Joseph*, 712 F.3d at 1226 (internal quotation marks and citations omitted).  "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Probable cause can still exist even when an officer mistakenly arrests a suspect, as long as the mistake is objectively reasonable.  *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008). Similarly, the fact that a suspect arrested by law enforcement is later found to be innocent is not material.  *Just v. City of St. Louis, Missouri*, 7 F.4th 761, 767 (8th Cir. 2021).  "Whether a law enforcement officer had probable cause at the time of arrest is a question of law."  *Joseph*, 712 F.3d at 1226-27 (citations omitted).

In their Motion for Summary Judgment, Defendants claim Officer Boyd had probable cause, or at least arguable probable cause, to believe that Watson had committed numerous offenses, any one or all of which justified his arrest.  (*See* Defendants' Memo in Support, P. 12).

– 12 –

Watson denies committing any offenses, and so the Court addresses Defendants' assertions in turn.

### a. No Operators License In Possession And No Proof Of Insurance

City Code 44-81(a) provides that "[i]t shall be unlawful for any person to drive any motor vehicle . . . in the city unless such person shall have a driver's license . . . as required by state law, and shall have such license in possession at all times while so driving on the streets of the city."   (Defendants' Facts, ¶ 33).   Further, City Code 44-81(c) specifically provides that "[f]ailure to produce a driver's . . . license upon lawful demand shall give a police officer probable cause to arrest the driver . . . ."  (*Id.*).

Missouri law also provides that "[n]o owner of a motor vehicle registered in this state, or required to be registered in this state, shall operate, register or maintain registration of a motor vehicle . . . unless the owner maintains the financial responsibility which conforms to the requirements of the laws of this state."  R.S.Mo. §303.025.1.  City Code 44-66(e) states that "[t]he operator of the motor vehicle shall exhibit the proof of financial responsibility on the demand of any police officer who lawfully stops such operator while that officer is engaged in the performance of the duties of his/her office."  (Defendants' Facts, ¶ 35).

Officer Boyd contends he had probable cause or arguable probable cause to cite and arrest Watson both for failure to provide a driver's license and for failure to provide proof of insurance.  It is undisputed that Officer Boyd asked Watson to provide his driver's license and proof of insurance, and that Watson failed to provide either.  Watson claims he declined to do so because he feared for his life, and therefore kept his hands on the steering wheel.   This unstated rationale (even if true) does not detract from the fact that from Officer Boyd's perspective, Watson refused to provide his license and proof of insurance upon request.   Under these

circumstances, the Court finds Officer Boyd had at least arguable probable cause to arrest Watson and issue the two citations.  This portion of Defendants' Motion for Summary Judgment must therefore be granted.

**b.  <u>Vision Reducing Material Applied To Windshield</u>**

Officer Boyd claims it is undisputed that Watson's car windows were heavily tinted at the time of his stop and arrest.  (Defendants' Memo in Support, P. 12, citing Defendants' Facts, ¶¶ 3, 5).  As noted above, both Missouri law and the City Code restrict vision reducing material applied to the windows and windshield of a car.  (*See* R.S. Mo. §307.173; City Code 44-404; Defendants' Facts, ¶ 32).  Officer Boyd argues that even if he was mistaken as to whether the tint was dark enough to be illegal, he did not violate Watson's constitutional rights because he had arguable probable cause to arrest Watson based on his belief that Watson's tinted windows violated both Missouri law and the City Code.  (Defendants' Memo in Support, P. 14 (citing *Loch v. City of Litchfield*, 689 F.3d 961, 966 (8th Cir. 2012) ("An act taken based on a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment."; *United States v. Mendez*, 2006 WL 852376, at *3 (E.D. Mo. 2006) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("'The validity of an arrest does not depend on whether the suspect actually committed the crime…'"); *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 846 (8th Cir. 2011) (internal quotation marks and citations omitted) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.")).

Upon consideration, the Court finds Officer Boyd had probable cause or arguable probable cause to arrest Watson based on the alleged unlawful tint.  In other words, while there may be an issue of fact as to whether the windshield itself was tinted, it is undisputed that Watson's vehicle windows contained tint, which Watson applied to reduce racial profiling.  As

noted above, in Missouri excessive tint is prohibited on windows as well, absent a prescription from a physician.  Thus, even if Officer Boyd ultimately was wrong, either with respect to the tint being excessive on the windshield and/or the windows, or with respect to in which state the car was registered, he still possessed at least arguable probable cause to issue the citation.  *See Joseph*, 712 F.3d at 1226-27 (holding that arguable probable cause exists even if the officer was mistaken, as long as the mistake was reasonable).[18]

### c.  Expired State Operator's License

Missouri law provides that "it shall be unlawful for any person . . . to . . . [o]perate any vehicle upon any highway in this state unless the person has a valid license." R.S.Mo. § 302.020.1(1).  Similarly, City Code 44-81(a) provides that "[i]t shall be unlawful for any person to drive any motor vehicle . . . in the city unless such person shall have a driver's license . . . as required by state law, and shall have such license in possession at all times while so driving on the streets of the city."  (Defendants' Facts, ¶ 33).

Officer Boyd maintains he had probable cause or arguable probable cause to cite and arrest Watson for operating a vehicle under an expired state driver's license, because the REJIS system indicated that Watson's Missouri driver's license was expired and had not been surrendered to another state.  Missouri law provides that "[t]he licensing authority in the state where application is made shall not issue a license to drive to the applicant if:...(3) The applicant is a holder of a license to drive issued by another party state and currently in force unless the applicant surrenders such license." R.S.Mo. § 302.600.  In this case, Officer Boyd determined that Watson's Missouri license had never been surrendered and was expired.  Because he was

---

18 Watson's assertions to the contrary, with respect to both the windshield not being tinted and the window tint's alleged legality in Florida, may be relevant in an effort to fight the charge or prove innocence.  They do not, however, affect the Court's arguable probable cause analysis.

unable to locate a driver's license for Watson in any other state[19] and Watson's Missouri license was never surrendered (as required to obtain a license in another state), Officer Boyd contends he reasonably believed that Watson had no valid driver's license.  He thus contends that "[a]fter conducting these searches in REJIS, Officer Boyd had probable cause, or at least arguable probable cause, to believe that Watson was driving with an expired driver's license." (Defendants' Memo in Support, P. 17).

Watson counters that taking the facts in the light most favorable to him, there was no probable cause for this charge because there existed ample, available information to indicate that Watson had a valid and current Florida driver's license, including the presence of his license in the vehicle, database results showing he had a Florida driver's license, and the fact that Watson provided a Florida address to Officer Boyd.  (Plaintiff's Response in Opposition to Defendants' Joint Motion for Summary Judgment ("Watson's Opp."), P. 28).

Upon consideration, the Court again finds that although Watson offers alternative explanations and/or disputes Defendants' assertions, said offerings do not go to the question of whether Officer Boyd had probable cause or arguable probable cause to arrest Watson and issue the citation.  Instead, Watson's claims represent potential defenses to the charge, and go to whether the citation ultimately would hold up in Court.  *See Amrine*, 522 F.3d at 832 ("Probable cause can still exist even when an officer mistakenly arrests a suspect, as long as the mistake is objectively reasonable."); *Just*, 7 F.4th at 767 (holding immaterial the fact that a suspect arrested by law enforcement is later found innocent).  This portion of Defendants' Joint Motion for Summary Judgment must therefore be granted.

### d.   <u>No Seat Belt</u>

---

19 As noted above, Officer Boyd was unable to locate a valid driver's license for Watson in Missouri, Florida or Illinois.

State and local law require that "[e]ach driver...of a passenger car...operated on a street or highway in this [state or city] shall wear a properly adjusted and fastened safety belt...."  R.S.Mo. § 307.178.2; City Code 44-402.  A "street or highway" is defined to include "every way or place open for vehicular travel by the public and regardless of whether it has been legally established by constituted authority or used for the statutory period of time as a public highway."  City Code 44-1.  The Missouri Supreme Court has held that "[o]nce the key is in the ignition, and the engine is running, an officer may have probable cause to believe that the person sitting behind the steering wheel is operating the vehicle."  *Cox v. Director of Revenue*, 98 S.W.3d 548, 550 (Mo. banc 2003) (citations omitted).  The Eighth Circuit likewise has found that a driver may be operating a vehicle while parked with the keys in the ignition.  *See Williams v. Decker*, 767 F.3d 734, 739 (8th Cir. 2014) (affirming application of qualified immunity where suspect was detained and questioned in parked, idling vehicle, based on the suspicion he was "operating" the vehicle while intoxicated).

In the instant case it is undisputed that Watson was sitting in his running vehicle, in a public park, and was not wearing his seatbelt.  (Defendants' Facts, ¶¶ 2, 3, 7).  Officer Boyd asserts these facts afforded him probable cause or arguable probable cause to cite and arrest Watson.  (Defendants' Memo in Support, P. 21).  He further maintains that even if he was mistaken, he is entitled to qualified immunity because the mistake was objectively reasonable.  (*Id.* at 21-22).

Watson counters that a reasonable jury could find that he did not violate the statute by sitting in a parked car in a parking lot while the car was idling, as in doing so he was not "operating" the vehicle.  Again, while this assertion may eventually have provided a defense to the underlying charge, the Court finds it does not negate the existence of at least arguable

probable cause on Officer Boyd's part, especially in light of the above cited case law.  This portion of Defendants' Joint Motion for Summary Judgment will therefore be granted.

### e.   Failure To Register An Out Of State Vehicle And No Vehicle Inspection

Missouri law provides that "[a]pplication for registration of a motor vehicle not previously registered in Missouri . . . and previously registered in another state shall be made within thirty days after the owner of such motor vehicle has become a resident of this state." R.S.Mo. § 301.100.3.   As previously discussed, Officer Boyd claims Watson gave him an incorrect name ("Fred Watson") and an incorrect address (Florida).  After performing a revised REJIS search, Officer Boyd found a "Freddie Watson" with an expired Missouri license that had never been surrendered.  Officer Boyd claims that this new information provided him with at least arguable probable cause to believe that Watson was a Missouri resident who had failed to register his vehicle under Missouri law.

Similarly, Missouri law requires that the owner of every vehicle required to be registered in Missouri "shall submit such vehicles to a biennial inspection of their mechanism and equipment...and obtain a certificate of inspection and approval and a sticker . . . ."  R.S.Mo. § 307.350.1.[20]  Officer Boyd argues he had probable cause, or at least arguable probable cause, to believe that Watson's vehicle was required to be registered in the state of Missouri based on the information located in REJIS.  Based on that suspicion, he further claims he had probable cause to believe Watson was in violation of the law for failure to have an inspection approval sticker.

Watson counters that Officer Boyd lacked probable cause for both charges, because the evidence in his possession clearly showed that Watson's car was lawfully registered in Florida rather than Missouri. While it is true that an officer is not permitted to ignore plainly exculpatory

---

20 So too does City Code 44-406.  (Defendants' Facts, ¶ 37).

evidence (*see Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999), the Court finds that Officer Boyd had ample evidence that any alleged Florida registration was invalid, as Watson's car should have been registered in Missouri.  Said evidence was sufficient to provide at least arguable probable cause to cite and arrest Watson for these violations, and so Defendant's Joint Motion for Summary Judgment on this issue must be granted.

### f.  Failure To Obey Orders Of Officer

Section 29-16 of the City Code provides that it shall be unlawful for any person "to willfully and knowingly obstruct, resist, oppose or fail to obey a lawful command of any police officer or city official charged with enforcement of this Code. . ."  (Defendants' Facts, ¶ 34).  Officer Boyd states that he ordered Watson to throw his keys out of the window and exit his vehicle, but Watson repeatedly refused.  (Defendants' Memo in Support, P. 17).  Because Watson refused to comply with his demands, Officer Boyd contends he had probable cause to arrest Watson.

Watson counters that the City Code makes it unlawful only for a person to "*willfully and knowingly* obstruct, resist, oppose, or fail to obey a *lawful* command of any police officer…" (Watson's Opp., P. 20).  He maintains a fact issue remains with respect to whether his alleged failure to comply was *willful* or *knowing*.  In other words, Watson asserts a jury could find his decision to remain in his car with his hands on the steering wheel was reasonable, in light of the fact that he faced an enraged and erratic police officer pointing a gun at him.

Upon consideration, the Court again finds Watson's claims go to the sustainability of the charge, and not to whether Officer Boyd had probable cause to issue the citation in the first place.  In other words, while there may be an issue of fact as to whether Watson's refusal to throw his keys out of the window or exit the vehicle was willful or knowing, in light of Officer

Boyd's allegedly threatening behavior, that question does not affect the fact that Officer Boyd had at least arguable probable cause to believe Watson was disobeying his order.  This portion of Defendants' Joint Motion for Summary Judgment will therefore be granted.

### g.  Providing False Statements

Officer Boyd also maintains he had probable cause to arrest and cite Watson for providing a false statement, in violation of City Code 29-16.  (Defendants' Memo in Support, P. 18).  It is undisputed that in response to Officer Boyd's request for Watson's name, Watson identified himself as "Fred Watson" rather than "Freddie Watson".  (Defendants' Facts, ¶ 11). Officer Boyd claims Watson also provided a false Florida address, when Watson knew he did not reside in Florida.  (*Id.*, ¶ 12).  Officer Boyd asserts these two false declarations were "material" because they hindered Officer Boyd in determining Watson's true identity.[21]  Therefore, Officer Boyd claims he had probable cause or arguable probable cause to cite and arrest Watson.

Watson counters Defendants' contention by asserting Officer Boyd only asked for his name, not his full name, and he commonly uses the name "Fred" rather than his birth name, "Freddy".  He thus contests whether he was willfully or knowingly attempting to deceive Officer Boyd with his response, as required to violate the statute.

Upon consideration, the Court again finds Watson's claims go to the sustainability of the charge, and not to whether Officer Boyd had probable cause to issue the citation in the first place.  In other words, while there may be an issue of fact as to whether Watson's answers were willfully or knowingly deceitful, that question does not affect whether Officer Boyd had at least arguable probable cause to believe Watson uttered at least one false declaration.  Officer Boyd

---

21 As noted above, Officer Boyd's search for "Fred Watson" did not yield any results in REJIS. (Defendants' Facts, ¶ 14).

therefore did not violate Watson's rights by arresting him on this basis and issuing the citation, and so this portion of Defendants' Motion for Summary Judgment must be granted.

### iii.    4th Amendment: Use of Weapon

In Count I of his First Amended Complaint, Watson further alleges that Officer Boyd violated the Fourth Amendment, as his use of force was objectively unreasonable and excessive. In order to establish a Fourth Amendment violation, "the claimant must demonstrate a seizure occurred and the seizure was unreasonable." *Quraishi v. St. Charles County, Missouri*, 986 F.3d 831, 839 (8th Cir. 2021) (internal quotation marks and citation omitted).  "A Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority." *Id.* (internal quotation marks and citations omitted).

"The Supreme Court has long recognized an officer's right to conduct an investigatory stop inherently includes the right to use some degree of physical force or threat to effect the stop." *El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 457 (8th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).  *See United States v. Newell,* 596 F.3d 876, 879 (8th Cir. 2010) (internal quotation marks and citation omitted) ("Officers must use the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose of the *Terry* stop.").  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citation omitted).  It further must account "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397.  Finally, the officer's "underlying intent or motivation" is irrelevant to the reasonableness inquiry.  *Id.*

In the instant case, Watson alleges that due to the harassment he faced from Officer Boyd, he moved his hand from the top of the steering wheel to the console above the radio, in an effort to reach his phone and call the police.  Officer Boyd directed Watson not to use the phone and to keep his hands on the steering wheel, allegedly for officer safety purposes.  Watson claims Officer Boyd then pulled out his gun and pointed it at Watson for ten seconds or so before re-holstering it, stating he could shoot Watson right then and nobody would give a damn.

Although Officer Boyd denies ever pulling a gun on Watson, he maintains that even if he did, the use of his weapon in response to Watson's perceived threat was not objectively unreasonable.  (Defendants' Memo in Support, P. 23).  Specifically, Officer Boyd claims his alleged use of force would have been reasonable under the circumstances, because he was confronted with a non-compliant occupant of a vehicle with heavily tinted windows that obstructed his view, and Watson made a sudden movement within the vehicle.  (*Id.*).

Watson counters that when he reached for his phone, it was on the dashboard in plain sight.  (Watson's Opp., P. 14).  He further asserts he remained calm throughout his interaction with Officer Boyd, and thus gave Officer Boyd no reason to fear for his safety.  Finally, Watson maintains Officer Boyd did not pull his gun until after Watson put his phone back down, suggesting that he was not concerned for his safety at the time.  Taken together, Watson states these facts raise the inference that Officer Boyd's use of his weapon was not reasonably related to safety, but instead stemmed from a desire to intimidate Watson and prevent him from reporting Officer Boyd's actions.

"It is well established…that when officers are presented with serious danger in the course of carrying out an investigative detention, they may brandish weapons…in order to

control the scene and protect their safety." *Williams v. Decker*, 767 F.3d 734, 740 (8th Cir. 2014) (internal quotation marks and citations omitted).  "In discerning whether [the officer's] actions met the Fourth Amendment's standard of reasonableness, the issue is whether the officer has an objectively reasonable concern for officer safety or suspicion of danger." *Id.* (internal quotation marks and citation omitted).

Upon consideration, the Court finds an objectively reasonable concern for officer safety or suspicion of danger existed.  *Id.*  Officer Boyd was facing a non-compliant occupant of a vehicle who made a movement within the vehicle.  "These circumstances are sufficient to create an objectively reasonable concern for officer safety or suspicion of danger."  *Id.* at 740-41 (citations omitted).  Importantly, Officer Boyd testified he was afraid Watson was going to use the phone to call someone to ambush him, and Watson himself testified that Officer Boyd instructed him to put his phone down for safety reasons.  (*See* Boyd Dep., attached to Watson's Additional Facts as Exh. 3 at 204:12-19; Watson Dep., attached to Defendants' Facts as Exh. 2 at 107:3-6).  The Court thus finds Officer Boyd is entitled to qualified immunity, as he did not violate Watson's constitutional rights even if he drew his gun for ten seconds, as Watson alleges.

As further support for its ruling, the Court finds that even if Officer Boyd did violate Watson's constitutional rights, said right was not clearly established at the time of the incident. *Shelton v. Stevens*, 964 F.3d 747, 753 (8th Cir. 2020).  "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."  *Id.* (internal quotation marks and citation omitted).  Thus, "[e]ven where an officer's action is deemed unreasonable under the Fourth Amendment, he is entitled to qualified immunity if a reasonable officer could have believed, mistakenly, that the use of force was permissible…"  *Id.* (citation omitted).  "Use of

excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Id.* (internal quotation marks and citation omitted). "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular action beyond debate." *Id.* (internal quotation marks and citation omitted). "A plaintiff need not show that the very action in question has previously been held unlawful, but he must establish that the unlawfulness was apparent in light of preexisting law." *Ellison v. Lesher*, 796 F.3d 910, 914 (8th Cir. 2015) (internal quotation marks and citation omitted).

Here, the Court finds it was not clearly established that Officer Boyd's alleged act of pulling his gun for ten seconds on a non-compliant suspect constituted an unreasonable seizure under the Fourth Amendment. Again, "[r]easonableness must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Shelton*, 964 F.3d at 752 (internal quotation marks and citation omitted). Further, "[t]he determination whether the force used to effect a seizure was reasonable ultimately requires a case-specific balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) (internal quotation marks and citations omitted). In performing the required analysis, the Court finds the contours of the constitutional right allegedly violated were not sufficiently clear that a reasonable officer would have understood Officer Boyd's action to have violated said right. *Mathers*, 636 F.3d at 399. This portion of Defendants' Joint Motion for Summary Judgment must therefore be granted.

### iv.    Searches

Officer Boyd claims his warrantless search of Watson's vehicle was legal either as a search incident to arrest, or pursuant to the automobile exception. (Defendants' Memo in Support, P. 24). Specifically, Officer Boyd asserts that after he stopped Watson based on, *inter alia*, the vehicle's tinted windows and absence of a front license plate, Watson was non-compliant with Officer's Boyd's commands to provide his license and registration, and gave untruthful answers when asked for his name and address. (*Id.*, P. 25). Officer Boyd maintains these facts gave him probable cause, or at least arguable probable cause, to believe Watson was engaged in criminal activity, and thus he properly searched Watson's vehicle to obtain additional evidence of any crimes. (*Id.*).

In a recent opinion, the Eighth Circuit Court of Appeals considered the legality of a warrantless search incident to arrest in an attempt to locate evidence of the offense of providing false identification information. *See United States v. Campbell-Martin*, 17 F.4th 807 (8th Cir. 2021). The Court first stated the general rule that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search *or it is reasonable to believe the vehicle contains evidence of the offense of arrest.*" *Id.* at 815 (emphasis added) (internal quotation marks and citation omitted). The Court concluded that "it [wa]s reasonable to believe that the vehicle contain[ed] evidence of the offense [of providing false identification information]." *Id.* at 816 (internal quotation marks and citation omitted). This was so even though the officers already knew the occupants had provided false identification, as they did not yet possess their true identification and it was reasonable to think that information would be in the car. *Id. See also United States v. Edwards*, 769 F.3d 509, 515 (7th Cir. 2014) (holding the search-incident-to-arrest exception applied to the offense of driving without the owner's consent, when officers were searching for

evidence of the car's ownership even though the defendant had already admitted that someone else owned the car)

This Court previously has held that Officer Boyd had probable cause or arguable probable cause to arrest Watson for, *inter alia*, the following offenses:  no operator's license in possession, no proof of insurance, and providing false declarations (for identifying himself as "Fred Watson" rather than "Freddie Watson" and providing a false Florida address).  Thus, pursuant to the reasoning in *Campbell-Martin*, the Court now finds his warrantless search of Watson's vehicle was lawful as a search incident to arrest.  Furthermore, even if the search did violate Watson's constitutional rights, in light of *Campbell-Martin* the Court cannot find such right was clearly established at the time of the search.  This portion of Defendants' Joint Motion for Summary Judgment must therefore be granted.[22]

### B.  Unlawful Retaliation (Count II)

As noted above, in Count II of his First Amended Complaint Watson asserts a claim for unlawful retaliation by Officer Boyd, in violation of the First Amendment.  Specifically, Watson claims he engaged in lawful First Amendment conduct when he, *inter alia*, asked that Officer Boyd provide his name and badge number, and that in retaliation for this exercise Officer Boyd arrested and initiated charges against him.

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech.  *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722, 204 L.Ed.2d 1 (2019).  If an official takes adverse action against someone based on that forbidden motive, and "non-retaliatory grounds are in fact insufficient to provoke the

---

22 In light of the Court's ruling that the search was a valid search incident to arrest, it need not reach the question of whether it was valid pursuant to the automobile exception.

adverse consequences," the injured person may generally seek relief by bringing a First Amendment claim. *Id.* (citing *Crawford-El v. Britton*, 523 U.S. 574, 593, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 283–284, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

"'To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.'" *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (quoting *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir.2004)).  To prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." *Hartman*, 547 U.S. at 259; *Nieves*, 139 S. Ct. at 1722.  It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive. *Id.* at 260 (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway").  Thus a "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves*, 139 S. Ct. at 1724.  *See also Watson v. Boyd*, 2 F.4th 1106, 1112 (8th Cir. 2021) (quoting *Nieves*, 139 S.Ct. at 1724) ("Similarly, a First Amendment retaliation claim turns on 'the presence or absence of probable cause for the arrest.'"); *Williams v. City of Carl Junction, Missouri*, 480 F.3d 871, 875 (8th Cir. 2007) (holding that a First Amendment retaliation claim requires a plaintiff to "plead and prove a

lack of probable cause for the underlying charge"); *Peterson*, 754 F.3d at 602 ("We agree that [the officer] is entitled to qualified immunity on [plaintiff's] retaliatory arrest claim because, as detailed above, [the officer] had at least arguable probable cause for the arrest.").

Defendants maintain Watson's claim for First Amendment retaliation fails because Officer Boyd had probable cause to arrest and charge Watson.  (Defendants' Memo in Support, P. 26).  This Court previously has held Officer Boyd did possess probable cause for the arrest and charges.  Under these circumstances Watson's claim for First Amendment retaliation cannot stand, and so this portion of Defendants' Motion for Summary Judgment must be granted.  *See Peterson*, 754 F.3d at 599 (an alleged retaliatory motive for an arrest and citation "cannot vitiate an otherwise lawful arrest"); *Nieves*, 139 S.Ct. at 1725 (citation omitted) ("[The plaintiff's] purely subjective approach would undermine that precedent by allowing even doubtful retaliatory arrest suits to proceed based solely on allegations about an arresting officer's mental state.").

## II.  *Monell*[23] Municipal Liability (Count IV) Against The City Of Ferguson

For § 1983 liability for a constitutional violation to attach to a governmental entity, the plaintiff must show that a constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise.  *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).  Municipal liability under § 1983 may also attach where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452

---

23 *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

(1986).

As discussed *supra*, Watson fails to state claims under § 1983 for unlawful search and seizure or unlawful retaliation, based on the conduct of Officer Boyd.  Pursuant to *Monell*, "[s]ection 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from...an 'official municipal policy.'"   *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 699 (8th Cir. 2016) (quoting *Monell*, 436 U.S. at 691).  It follows that, absent a constitutional violation by a city employee, there can be no § 1983 or *Monell* liability for the City.    *See Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) ('Because we conclude that Officer Hinman did not violate Malone's constitutional rights, there can be no § 1983 or *Monell* liability on the part of Chief Thomas and the City.'); *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 470 (8th Cir. 2010) (agreeing with the district court that plaintiffs' claims "could not be sustained absent an underlying constitutional violation by the officer"); *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007) ("Without a constitutional violation by the individual officers, there can be no § 1983 or *Monell* . ..municipal liability."); *Whitney v. City of St. Louis, Mo.*, 887 F.3d 857, 860-61 (8th Cir. 2018) (same).  Accordingly, the Court will grant Defendants' Joint Motion for Summary Judgment on Watson's Count IV *Monell* claims against the City.

## <u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Joint Motion for Summary Judgment (ECF No. 185) is **GRANTED**, and Watson's First Amended Complaint is **DISMISSED** with prejudice.  An appropriate Judgment will accompany this Memorandum and Order.


Dated this 26th Day of September, 2022.


/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE