**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| FRED WATSON, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17-cv-2187 |
| ) | |
| EDDIE BOYD, ET AL., ) | |
|     Defendants. ) | |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' SECOND MOTION TO BIFURCATE

Defendants' second motion to bifurcate is simply too little too late. Over eight years after the initial complaint was filed, this case is finally scheduled for trial in a little over a month. Quizzically, Defendants do not style their motion as one for reconsideration given that a similar bifurcation request was rejected by this Court *over five years ago*. Defendants do not explain why they waited until the eve of trial to file their motion. Moreover, their claims for why bifurcation is necessary are largely bereft of reasoning or facts specific to this case. And on top of that, Defendants misstate the scope of the claims and the evidence to be offered.

This Court should deny the motion. Bifurcation at this stage would not be convenient, "avoid prejudice, or [ ] expedite and economize" the proceedings. Fed. R. Civ. P. 42(b). To the contrary, if this Court grants bifurcation at this late date, the jury will be forced to face a piecemeal and confusing trial with multiple rounds of instructions and multiple deliberations. Mr. Watson will be prejudiced as he has already been preparing for a single trial that is just weeks away. And the trial will extend well beyond the week presently allotted. As explained below, this Court should not allow bifurcation at this late stage given that Defendants have not shown sufficient cause.

**PROCEDURAL AND FACTUAL BACKGROUND**

1

Mr. Watson filed his initial complaint in July 2017, which he amended in August 2018. In it, he argued that Officer Eddie Boyd violated his First and Fourth Amendment rights. *See* Doc. 35. He also argued that the City of Ferguson should be held liable for Boyd's violations. *Id.*

In his complaint, Mr. Watson pleaded four counts.[1] Count I alleged an unlawful search and seizure in violation of the Fourth Amendment. The seizure claim asserted that Officer Boyd issued Mr. Watson multiple citations without probable cause. *See* Doc. 35 at 16–17. In ruling on Defendants' second motion for summary judgment,[2] this Court held that Boyd was entitled to qualified immunity because he had at least arguable probable cause to issue the tickets. Doc. 214 at 13–21. Mr. Watson also alleged that Boyd unlawfully seized him by pointing a firearm at his head during the stop. *See* Doc. 35 at 16. This Court concluded that Boyd did not violate the Fourth Amendment, or that if he did, he was entitled to qualified immunity because the law was not clearly established. Doc. 214 at 21–24. The Eighth Circuit affirmed. *Watson v. Boyd*, 119 F.4th 539, 552–56 (8th Cir. 2024) (hereafter *Watson II*).

Count II raised a First Amendment retaliation claim. One component of that claim alleged that Boyd issued the citations in retaliation for Mr. Watson's protected speech. *See* Doc. 35 at 17–19. This Court granted summary judgment to Boyd on the theory that Boyd had at least arguable probable cause to issue the tickets, and the Eighth Circuit affirmed. Doc. 214 at 28; *Watson II*, 119 F.4th at 552–56. Mr. Watson also alleged that Boyd retaliated against him by pointing a gun at his head and threatening to shoot him after Mr. Watson engaged in protected speech. Doc. 35 at 17–19. This Court overlooked this claim when granting summary judgment to Defendants, but the

---

[1] Defendants were granted summary judgment on Count III, Mr. Watson's claim of Malicious Prosecution, and Plaintiff did not appeal that ruling. *Watson v. Boyd*, 447 F. Supp. 3d 924, 949 (E.D. Mo. 2020).
[2] Defendants appealed this Court's initial summary judgment ruling denying qualified immunity, and the Eighth Circuit remanded for more analysis on qualified immunity. *Watson v. Boyd*, 2 F.4th 1106, 1114 (8th Cir. 2021).

2

Eighth Circuit reversed, holding that viewing the evidence in the light most favorable to Mr. Watson, a reasonable juror could find that Boyd violated Mr. Watson's clearly established rights. *Watson II*, 119 F.4th at 556–59. That retaliatory use-of-force claim is now set for trial.

Finally, in Count IV, Mr. Watson claimed that the City of Ferguson was liable for its unconstitutional customs, and for failing to screen, supervise, and discipline Defendant Boyd. Doc. 35 at 21–24. Because the Eighth Circuit reversed the grant of summary judgment on the First Amendment retaliation claim, it also reversed this Court's dismissal of Mr. Watson's *Monell* claim. *Watson II*, 119 F.4th at 535.

After two rounds of summary judgment briefing, appeals, and Defendants' failed petition for certiorari, trial is set for February 2, 2026. Doc. 245. Witness lists, exhibit lists, and deposition and interrogatory designations due January 6, 2026. Doc. 234.

## LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) authorizes bifurcation of trials "[f]or convenience, to avoid prejudice, or to expedite and economize[.]" When determining whether bifurcation is appropriate, "district courts should consider the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion." *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1201–02 (8th Cir. 1990).

Contrary to Defendants' assertions, bifurcation "is the exception, not the rule." *Daniels v. City of Sioux City*, 294 F.R.D. 509, 511 (N.D. Iowa 2013) (quotation omitted)); *Herbst v. Givaudan Flavors Corp.*, No. C17-4008-LTS, 2019 WL 6108098, at *5 (N.D. Iowa Aug. 19, 2019) ("[B]ifurcation is a procedural tool that should be used sparingly[.]") (collecting cases). "The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course." *Schrant v. Flevares*, No. 4:12-cv-04180-KES, 2014 WL 7240090 at

3

*7 (D.S.D. Dec. 19, 2014) (citing Wright & Miller, *Federal Practice and Procedure* § 2388 (3d ed. 2008)). Courts should not order bifurcation unless the potential benefits outweigh the potential detriments. *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can.*, No. 4:00-cv-1073 (CEJ), 2006 WL 1026992, at *2 (E.D. Mo. Apr. 14, 2006).

Defendants bear the burden of demonstrating bifurcation is necessary. *Brown v. Ohio Cas. Ins. Co.*, No. 06-5018-cv-SW-REL, 2006 WL 2265366, at *3 (W.D. Mo. Aug. 7, 2006). "In this circuit, a district court in considering a trial on less than all of the issues must determine that (1) the issues are clearly distinct; (2) the bifurcation will not prejudice either party; *and* (3) the action will result in judicial economy. If the issues are not clearly separable, a bifurcation of issues is an abuse of discretion." *Butler v. Dowd*, 979 F.2d 661, 678 (8th Cir. 1992) (Beam, J., concurring) (citations omitted; emphasis added).

## ANALYSIS

### I. The Court has already denied a motion to bifurcate

Defendants' motion makes no mention of the fact that this is their second motion to bifurcate and that the first motion to bifurcate was denied by the court.

This case was filed on July 31, 2017. Doc. 1. On January 11, 2019, Defendant City of Ferguson filed a motion to bifurcate. Doc. 65. In that motion, the City asked this Court to "stay[] the action against the City until the resolution of the Plaintiff's claims against Officer Boyd" for the same reasons advanced here: bifurcation "would promote judicial economy and avoid unnecessary confusion and prejudice" and would potentially "moot the need for a trial against the City." *Id.* at 1. Plaintiff objected, laying out much of the same case law and argument below as to why judicial economy would not be served by bifurcation, and how bifurcation in Section 1983 cases can result in prejudice to plaintiffs. *See* Doc. 78. Plaintiff also noted that the motion to bifurcate

4

came years into litigation and only after several discovery-related motions. *Id.* at 5. This Court denied bifurcation: "Due to the extensive discovery that has already occurred in this case, the Court holds that the interests of judicial economy will not be served by bifurcation of Watson's claims against City of Ferguson and Boyd. Therefore, the Court denies the Motion to Bifurcate." Doc. 109 at 10. The Court did not suggest that it would entertain reconsideration closer to trial. *Id.*

In raising the same arguments that were previously rejected, Defendants' current motion is just a camouflaged request for this Court to reconsider its April 5, 2019, order denying bifurcation. But reconsideration is a higher standard, one that Defendants fail to meet. Reconsideration is disfavored because this Court "has an interest in judicial economy and ensuring respect for the finality of its decisions, values which would be undermined if it were to routinely reconsider its interlocutory orders." *Jenkins v. Seifert*, No. 4:16-cv-015560-AGF, 2017 WL 3458333, at *1 (E.D. Mo. Aug. 11, 2017) (quotation omitted); *Evans v. Contract Callers, Inc.*, No. 4:10-cv-2358-FRB, 2012 WL 234653, at *2 (E.D. Mo. Jan. 25, 2012) ("Although the Court 'has the power to revisit prior decisions of its own . . . in any circumstance, [it] should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice."'" (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)) (modifications by *Evans* court).

In raising the same arguments that were rejected previously, Defendants have given this Court no reason to consider its ruling. This Court made no clearly or manifestly erroneous findings of fact or conclusions of law in its April 5, 2019, order, and Defendants do not argue otherwise. Indeed, they do not even mention the order let alone explain why reconsideration is necessary. This alone justifies denial of their motion. "District courts 'will ordinarily deny a motion for reconsideration unless the party demonstrates a showing of manifest error in the prior ruling or

5

demonstrates new facts or legal authority that the party could not have previously produced with reasonable diligence to the court.'" *Ackerman v. Howmedica Osteonics Corps.*, No. 6:20-CV-03061-MDH, 2021 WL 12311023, at *1 (W.D. Mo. Jan. 20, 2021) (quoting *Elder-Keep v. Aksamit*, 460 F.3d 979, 988 (8th Cir. 2006)).

**II. This second motion to bifurcate is untimely and unclear**

The Eighth Circuit issued its mandate remanding the case to district court for trial on December 5, 2024. Doc. 229. The parties appeared for a status conference with this Court on December 17, 2024. Doc. 230. The parties jointly requested a one-week trial. Doc. 234. At this conference, Defendants did not mention bifurcation. Defendants did not ask for a briefing schedule to limit Mr. Watson's *Monell* claim. Defendants then filed a motion to continue trial, originally set for June 12, 2025 – again without mentioning bifurcation. Doc. 243.

Defendants have had multiple opportunities to raise bifurcation since the Eighth Circuit's remand. Yet Defendants waited to reraise this request until the literal the eve of trial: Significant pretrial deadlines, including the exchanging of exhibits, witness lists and deposition designations, will have passed by the time this motion is fully briefed. *See* Doc. 234 (setting pretrial deadlines).

And, at this late stage, it is not even clear what Defendants are asking for. The motion to bifurcate mentions *both* separating evidence relevant to punitive damages and *Monell,* making it currently unclear whether Defendants are proposing two or three different trials. If this Court were to try liability of Boyd first then, then, if necessary, try the case against the City, it's Plaintiff's position that only then could the jury determine compensatory damages—after the liability of *all* relevant defendants has been assessed. And this would be *before* even getting to punitive damages.

Given all this, Defendants put no effort into explaining how their request fits within the current trial setting agreed upon by both parties. Even if the trial is only two phases, it will certainly

6

take much longer than a week (which Defendants acknowledge), as the jury will have to be separately instructed before each phase; there will be opening and closing arguments during each phase; and there will be separate deliberations during each phase. Not to mention that the deliberations in the second phase will require revisiting what was discussed during the first. It is simply unmanageable for the parties to give two (or three) sets of opening statements, closing statements, and for a jury to be instructed and deliberate two (or three) times in *one* week.

### III. Bifurcation will not further judicial economy

Despite this, Defendants argue that bifurcation (or trifurcation) will further judicial economy.[3] This argument rests on two incorrect premises: (1) that the *Monell* claim is limited only to a finding on Mr. Watson's retaliatory use-of-force claim; and (2) evidence of Defendant Boyd's prior bad acts are relevant only to Mr. Watson's *Monell* claim and/or punitive damages. This Court's judicial economy analysis considers both how much efficiency is to be gained if the bifurcated issue is never tried as well as how much inefficiency is created if the bifurcated issue is tried. *Fair Isaac Corp.*, 650 F. Supp. 3d at 737.

#### A. Defendants Improperly Seek to Limit the *Monell* Claim

For the first time, in a footnote, Defendants contend that the *Monell* claim has been "narrowed" in light of the fact that "the only remaining underlying claim" is retaliatory use of force. Doc. 254 at 3 n.2. A sole footnote in a belated bifurcation motion is not the place to make an assertion that would drastically change the shape of trial, including the evidence that is presented and the instructions that are given. In any event, Defendants are wrong.

---

[3] Defendants present no argument that Rule 42 is satisfied on convenience grounds.

7

The Eighth Circuit's opinion did two things: (1) it held Boyd is not entitled to summary judgment on Mr. Watson's retaliatory use-of-force claim, and (2) it remanded Mr. Watson's *Monell* claim for trial. *Watson II*, 119 F.4th at 562. At no point did the Eighth Circuit address the scope of the *Monell* claim. *See id.* If Defendants truly believed that the *Monell* claim should be narrowed, they could have requested permission to file a renewed motion for summary judgment well in advance of trial. *See, e.g.*, *Molina v. City of St. Louis,* 766 F. Supp. 3d 857 (E.D. Mo. 2025) (where defendants filed a renewed motion for summary judgment to clarify the scope of the *Monell* claim). Defendants have not done so.

But Defendants also fundamentally misunderstand the law by arguing that only the retaliatory-use-of-force claim can serve as a basis for *Monell* liability at trial. It is axiomatic that a municipality can be liable for constitutional violations even where the individual officer is shielded by qualified immunity. *Owen v. City of Independence*, 445 U.S. 622, 650–51 (1980). The Eighth Circuit has explained that even in cases where "officials all enjoy personal immunity from suit, it hardly follows that they did not engage in any unlawful acts or that the City is thereby immune as well." *Webb v. City of Maplewood*, 889 F.3d 483, 486 (8h Cir. 2018). "For that reason," the Eighth Circuit has "long held for that reason that a municipality may be held liable for its unconstitutional policy or custom even when no official has been found personally liable for his conduct under the policy or custom." *Id.*.

By holding that Boyd had at least arguable probable cause to issue the tickets as relevant to both the unlawful seizure claim and the retaliatory arrest claim, that was a qualified immunity ruling that Boyd did not violate clearly established law. *See Brown v. City of St. Louis*, 40 F.4th 895, 901 (8th Cir. 2022) (explaining that it has "reserv[ed] the consideration of *arguable* probable cause for our clearly established prong analysis"). Even though Boyd might not be liable for those

8

constitutional violations because he has immunity, if a jury finds that those constitutional violations did in fact occur, the City *can* be held liable under *Monell*. *Owen*, 445 U.S. at 657–58.

*Monell* liability can be premised on "(1) an official municipal policy; (2) an unofficial custom; or (3) a deliberately indifferent failure to [screen], train, or supervise." *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013) (cleaned up).

And Mr. Watson alleged the City was liable for both its unofficial customs and its failure to screen and supervise. He argued, *inter alia*, that Ferguson has a "custom or usage of taking law enforcement action, including making arrests and pursuing charges against individuals, like Mr. Watson, who are engaged in activity protected by the First Amendment." Doc. 35 at 21. He alleged that Ferguson has "[a] custom of failing to screen, discipline, train, or supervise its officers and has instead permitted these unconstitutional practices in order to generate as much revenue as possible for the city." *Id.* He alleged that Ferguson has a "custom and usage of failing to adequately screen applicants to its Police Department, and it has done so with deliberate indifference." *Id.* Thus, Mr. Watson alleged that Ferguson should be liable for Boyd's unconstitutional actions *both* because he was injured as a result of Ferguson's unconstitutional customs *and* because Ferguson was deliberately indifferent in its screening and supervision of its officers, including Boyd.

Although a grant of qualified immunity on the clearly established prong precludes *Monell* liability is based on a failure-to-train theory, s*ee, e.g.*, *Szabla v. City of Brooklyn* Park, 486 F.3d 385, 393 (8th Cir. 2007), Mr. Watson already cannot proceed under an inadequate training theory. Doc. 254 at 3 n.2. The same is not true, however, when *Monell* liability is premised on an unlawful custom. This Court recently made this point plain in a passage that reads as if it were written for this case:

> Here, [Mr. Watson] ha[s] alleged and presented evidence that creates a question of fact regarding whether the City tacitly approved an unconstitutional custom, that is,

9

> that Defendant sanctioned a continuing, widespread, and consistent pattern of unconstitutional misconduct, and that pattern of sanctioned unconstitutional misconduct led to [Mr. Watson]'s injuries. To hold that the City cannot, as a matter of law, be liable for unconstitutional custom merely because [Boyd is] entitled to qualified immunity would risk granting the City de facto qualified immunity. Such a reading would be fundamentally inconsistent with Monell and with Eighth Circuit precedent.

*Molina*, 766 F. Supp. 3d at 872.

In other words, Ferguson can be liable for Boyd's retaliatory use of force in violation of First Amendment retaliatory force under any theory: that Ferguson was deliberately indifferent in hiring an officer with years of unconstitutional conduct, that Ferguson failed to supervise or discipline Boyd despite his repeated misconduct, or that Ferguson had an unlawful custom. ***And,*** Ferguson can be held liable if an unlawful custom led Boyd to write tickets without probable cause *even if* in doing so Boyd's actions weren't in violation of clearly established law.

Thus, under a correct view of the *Monell* claim, it is not clear how bifurcation would work. Defendants do not explain what "phase" of the trial the constitutional violations for which Boyd is entitled to qualified immunity but for which Ferguson could be held liable would be tried. Either option will lead to duplication—if witnesses must testify to the incident at both phases of trial, or confusion—the jury will be unsure about why they are hearing evidence about constitutional violations during Boyd's phase of the trial and yet Boyd cannot be liable.

Finally, Defendants make a somewhat radical claim in only two sentences that the City of Ferguson is entitled to avoid a trial on the *Monell* claim altogether if it offers to pay a judgment against Officer Boyd. Doc. 254 at 13. To support this novel claim, Defendants rely only on dicta, primarily from post-trial appeals, involving distinct factual scenarios[4]

---

[4] The lone Eighth Circuit case Defendants cite, *Robinson,* is inapposite, in part because it considered a case where the jury had assessed plaintiff's compensatory damages at zero, but also because the Eighth Circuit's opinion largely considered not the mootness of the *Monell* claim but rather the inconsistency of the jury's verdict in light of plaintiff's

Ferguson cannot insulate itself from liability simply by paying the damages on behalf of Boyd. This is, in part, because Mr. Watson has alleged Boyd and Ferguson have committed separate constitutional harms (and, as discussed, *supra*, there are allegations for municipal liability on claims where Boyd enjoys qualified immunity, and thus an offer to pay for Boyd could not resolve the *Monell* claim). *See Amato v. City of Sarasota Springs, N.Y.*, 170 F.3d 311, 321 n.9 (2nd Cir. 1999) (noting that, where a plaintiff raises distinct claims of wrongdoing against the municipality and officer, "the findings and awards against the individual would not moot the claims against the municipality"). But even assuming Mr. Watson had alleged that the City and Boyd are liable for the *same* conduct, it still would not render the *Monell* claim moot. *See Larez v. City of Los Angeles*, 946 F.2d 630, 640 (9th Cir. 1991) (noting a *Monell* claim was not mooted after a finding against the officer and that the City could still be liable for at least nominal damages) (relying on *Carey v. Piphus*, 435 U.S. 247 (1978)).[5] If this Court were inclined to adopt Defendants' narrowed view of the *Monell* claim, or adopt for the first time ever in this Circuit a rule that any offer to pay an officer's damages by the municipality moots a *Monell* claim, then it should only do so after renewed summary judgment briefing.

### B. Evidence of Boyd's Prior Acts and the City's Customs are Relevant and Admissible for the First Amendment Retaliation Claim

Bifurcation is inappropriate where the individual-liability claim and the *Monell* claim are not "clearly separable." *O'Dell*, 904 F.2d at 1202. Such is the case here.

---

counsel's failure to challenge the jury's decision (an outcome that the concurring Judge noted as "somewhat unsatisfactory") *Robinson v. City of St. Charles*, 972 F.2d 974, 976 (8th Cir. 1992); *id.* at 978 (Wellford, J., concurring).

[5] If this Court determines that Mr. Watson is entitled to only nominal damages on a *Monell* claim against Ferguson, it should still not preclude a jury from hearing the evidence and making a liability determination. *See Owen v. City of Independence*, 445 U.S. 622, 650–53 (1980) (discussing the many non-economic objectives of the Civil Rights Act and Section 1983 litigation, and noting that a court would be "uniquely amiss" to permit a municipal government "to disavow liability for the injury it has begotten"); *see King*, 2015 WL 4397761, at *2 ("[A] successful Monell action could have the benefit of deterring future official misconduct. That is a legitimate goal that a Section 1983 plaintiff may wish to pursue even if it results in an award of only nominal additional monetary damages.").

11

The facts surrounding Defendant Boyd's history of misconduct, the underlying violations of Mr. Watson's constitutional rights, and Ferguson's unconstitutional customs and failure to screen, supervise, and discipline Boyd are all inextricably linked, and therefore inseparable.

Mr. Watson plans to present testimony and evidence of similar bad actions by Officer Boyd: indeed, almost a dozen incidents almost identical to the situation faced by Mr. Watson, in which Boyd turns a stop violent in retaliation for a minor comment from a civilian. Under Federal Rule of Evidence 404(b), Boyd's history of dishonesty and unconstitutional conduct are relevant to show his motive and lack of mistake in using a firearm to retaliate against Mr. Watson for First Amendment protected speech. That same evidence is similarly admissible against Ferguson for its decision to hire an officer who had been run out of two departments; for its failure to supervise or discipline Boyd when he began engaging in the same conduct at Ferguson; and for its widespread custom that supported officers engaging in such conduct.

Likewise, Mr. Watson plans to present evidence of Ferguson supervisors' profound distrust of Boyd, especially as it relates to his character for truth-telling. Such evidence is essential to Boyd's reputation for honesty, which will be placed at issue when he testifies. *See, e.g. Holmes v. Slay*, 895 F.3d 993, 1000 (8th Cir. 2018). And this evidence would be relevant to the *Monell* claim on a failure to supervise or discipline theory.

Plainly speaking, bifurcation would necessitate the same witnesses being called to testify about the same evidence twice. For example, Mr. Watson plans to call former Ferguson Police Sergeant Harry Dilworth, Boyd's supervisor at the time of the incident, for his testimony acknowledging that in the six months surrounding Mr. Watson's stop, he had been presented with evidence of Boyd lying multiple times about an encounter with a civilian. Under Defendants' view of bifurcation, Dilworth would need to be called *again,* presumably days later, to testify about his own

12

failure to take remedial action. Likewise, Mr. Watson plans to call former Captain Dennis McBride to talk about his opinion that Boyd is untruthful. Should the case be bifurcated, Captain McBride would have to reappear to testify separately about the "weak supervision" Boyd was given by his direct supervisors. Mr. Watson plans to call prior victims of Boyd who experienced similar actions of Boyd's, to show motive and an absence of mistake and pattern in Boyd's conduct. Again, if the case is bifurcated (or trifurcated), Plaintiff then call those same witnesses days later to discuss those actions again as it relates to Ferguson's failure to recognize or address these similar abuses or as it relates to punitive damages.

If these related claims are bifurcated, the overlapping nature of the evidence would result in Mr. Watson, Defendant Boyd, fact witnesses from the Ferguson Police Department, and civilians being required to testify at least twice. In cases with significant overlap of claims, judicial economy will not benefit from bifurcation. *Sobolik v. Briggs & Stratton Power Prod. Grp.*, LLC, No. CIV. 09-1785 JRT/LIB, 2011 WL 5374440, at *1 (D. Minn. Nov. 7, 2011) ("[B]ifurcation would not preserve judicial economy because it would create redundancy."); *Taylor v. Roth, et al*, No. 4:01-cv-01375-JCH (E.D. Mo. Mar. 18, 2002) (ECF No. 31) ("[B]ecause bifurcation would require duplication of proof . . . bifurcation would not be conducive to judicial economy and could pose a likelihood of inconsistent results.").

### IV. Bifurcation will unreasonably prejudice Plaintiff

Even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice. *Bunn-O-Matic Corp.*, 195 F.R.D. at 620; *see Shannon v. Koehler*, 673 F. Supp. 2d 758, 766 (N.D. Iowa 2009) (finding magistrate judge's order to bifurcate trials between

13

police officer and City met the high standard of "clearly erroneous" where "separate trials would be a waste of, at the least, judicial resources")

Defendants state only—with almost no reasoning specific to this case—that evidence relevant to punitive damages or the liability of the City of Ferguson could prejudice Defendant Boyd. But theoretical prejudice to a Defendant cannot justify bifurcation, particularly when Defendants cannot and do not explain why a limiting instruction would be sufficient. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").

Defendants cite varied decisions from district courts in an attempt to manufacture a rule of law that courts *must* bifurcate individual claims from *Monell* claims. But no such rule exists. Trials of civil rights claims against individual officers and municipalities routinely occur. De*Holland, et al. v. Gerald, et al.*, 4:08-cv-707-HEA (E.D. Mo. June 10, 2011) (ECF No. 124); *Estate of Dobbins v. City of Pagedale, et al*, 4:00-cv-1104-SNL (E.D. Mo. Nov. 26, 2001) (ECF No. 39); *Moore, et al. v. Ferguson Police Department*, et al., 4:14-cv01443 (E.D. Mo. Oct. 17, 2016) (ECF No. 115). Juries can ably parse differences in liability for different defendants. *See, e.g., Rohrbough v. Hall et al*, 4:07-cv-00996 (E.D. Mo. June 10, 2010) (finding liability against defendant officer but no liability against St. Louis City in *Monell* claim).

Indeed, *this Court* routinely denies bifurcation in such cases because jury instructions and other procedural safeguards are sufficient to prevent prejudice. *See Taylor v. Roth*, et al., 4:01-cv-01375-JCH (E.D. Mo. Mar 18, 2002) (ECF No. 31) (finding bifurcation of claims against the St. Louis Police Board and individual officers not merited where "any possible prejudice to Defendant can be avoided by a limiting jury instruction"); *see also Lewis v. City of Albany Police Dep't,* 547 F. Supp. 2d 191, 200 (N.D.N.Y. 2008), aff'd, 332 F. App'x 641 (2d Cir. 2009) (finding bifurcation

14

inappropriate "particularly given the limiting instructions to the jury").[6] Without any specific examples of a prejudice that cannot be avoided with a properly instructed jury, Defendants' arguments for bifurcation are plainly insufficient.

By contrast, bifurcation *would* prejudice Mr. Watson. First, Mr. Watson has been diligently preparing for a trial which is weeks away, and counsel already had to take time away from preparation to respond to this belated motion. Second, bifurcation would quite literally double (or triple) the costs and time associated with litigation that could just as easily be handled in a single trial.

## CONCLUSION

Plaintiffs ask this Court to deny Defendants' motion to bifurcate and allow the trial to proceed as previously scheduled.

If this Court is inclined to grant the motion to bifurcate, Plaintiffs request a stay of the trial date and a hearing with the Court to discuss a change in the trial timeline, briefing as to what evidence can be presented in which phase, and the logistics of witnesses, exhibits, and jury instructions.

December 31, 2025                                                      Respectfully submitted,

**ArchCity Defenders**


By: /s/ *Maureen Hanlon*
Maureen Hanlon (#70990MO)
440 N. 4t h Street, Suite 390
Saint Louis, MO 63102
855-724-2489 ext. 1012
314-925-1307 (fax)
mhanlon@archcitydefenders.org
*Attorney for Plaintiff*

---

[6] In fact, courts have found important reasons *not* to bifurcate civil rights claims, which serve an important societal interest in addition to those of the named plaintiff: "if trial and discovery were routinely bifurcated with regard to *Monell* claims, it would be almost impossible for litigants to ever discover, and bring to light, evidence of governmental abuses." *Daniels v. City of Sioux City,* 294 F.R.D. 509, 512 (N.D. Iowa 2013).

**New York University School of Law**
**Federal Appellate Clinic**

By: /s/ *Daniel S. Harawa*
Daniel S. Harawa (#71747MO)
245 Sullivan Street, Fifth Floor
New York, NY 10012
Telephone: (212) 998-6420
Facsimile: (212) 995-4031
E-mail: Daniel.Harawa@nyu.edu
*Attorney for Plaintiff*