# Tab 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| FRED WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-cv-2187 |
| | ) | |
| CITY OF FERGUSON, MISSOURI, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OBJECTIONS AND SUPPLEMENTAL ANSWERS TO DEFENDANT
CITY OF FERGUSON'S FIRST SET OF INTERROGATORIES**

Plaintiff Fred Watson, hereby submits Objections and Responses to the First Set of

Interrogatories served on him by Defendant City of Ferguson ("Defendant City"):

1.      Identify all persons who are believed or known by Plaintiff, Plaintiff's

representatives or Plaintiff's attorneys to have any knowledge concerning any of the issues

raised by the pleadings in this case and specify the subject about which the witness has

knowledge.

**ANSWER:**

**Plaintiff objects to this Interrogatory to the extent that it calls for attorney work product and trial strategy, in that it goes beyond the requirements of Rule 26(1)(A)(i) by seeking information that might be used solely for impeachment. Subject to and without waiver of his objections, Plaintiff responds as follows:**

**See Plaintiff's Initial and subsequent First Supplemental Disclosures for a list of individuals who may have knowledge of the issues in this case.  Below are additional individuals who likely to have knowledge concerning the issues in this case.**

**Arika Jones has information regarding Mr. Freeman Bosley's initial representation of Mr. Watson.**

James Crowe and Earl Sanders of the Department of Justice have information regarding conversations they had with Mr. Watson as he was addressing the legal matters in this case.

Mike Linville is an employee at Ferguson Super Service tow yard as described in ¶54 of Plaintiff's Complaint.

At the National Geospatial Agency, Lynn Weaver and Brent Speier may have information regarding Mr. Watson's employment.

NJVC employees Bryant Stock, Lakeisha Beasley,  and James Roland may have information regarding Mr. Watson's employment at that company.  Additionally, NJVC Security Officer Marshall Murray had discussions with Mr. Watson regarding Mr. Watson's security clearance.

Attorney Hugh Eastwood served as co-counsel with Bevis Schock representing Mr. Watson on his municipal charges.

All employees of the Ferguson Court Clerk from 2012-2015 have knowledge of the practices and customs of the Ferguson Municipal Court.

All individuals who suffered unconstitutional conduct by any Ferguson Police Officer from 2008-2017 have information about the customs of unconstitutional behavior ratified by the Ferguson Police Department.

Tiffani Taylor was detained by Defendant Boyd in 2012 and issued several bogus tickets from Defendant Boyd and subsequently harassed by Defendant Boyd at a gas station.  She can be reached at (314) 504-4823.

Stephanie Karr has knowledge of Ferguson's continued prosecution of Mr. Watson.

Lee Clayton Goodman has knowledge of Ferguson's continued prosecution of Mr. Watson.

Former colleagues of Defendant Boyd at the St. Louis, St. Ann, and Ferguson police departments may have information about Defendant Boyd.

Plaintiff will continue to supplement these answers with additional responsive information if discovered and/or received.

2.    Identify all persons who are believed or known by Plaintiff, Plaintiff's representatives or Plaintiff's attorneys to have witnessed any of the occurrences mentioned in the Complaint.

**ANSWER:**

**See Answer to #1.**

3.    State whether you have obtained a statement, whether oral, written, or recorded in any way, including, but not limited to, a stenographic, mechanical, electrical, audio, video, motion picture, photograph, or other recording, or transcription thereof, from any person identified in your response to Interrogatory No. 1 or Interrogatory No. 2 with regard to the facts or circumstances surrounding the occurrences mentioned in these pleadings, and if so, state the following:

(a) Date, place, and time taken;

(b) Name and address of the person or persons connected with taking it;

(c) Names and addresses of all persons present at the time it was taken;

(d) Whether the statement was oral, written, shorthand, recorded, taped, etc.;

(e) Was it signed;

(f) Names and addresses of the persons or organizations under whose direction and upon whose behalf it was taken or made; and

(g) Please attach an exact copy of the original of said statement and, if you do not have a copy of the statement, identify the person presently having control or custody of such statements; if oral, please state verbatim the contents thereof.

3

**ANSWER:**

Plaintiff objects to this interrogatory in that it is overbroad, unduly burdensome, and seeks information and communications protected by the attorney-client privilege. It also seeks work product without a showing of substantial need set forth in Rule 26(b)(3). *See, e.g., Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000).

Subject to and without waiving the aforementioned objections, Plaintiff states the following:

Several of the individuals noted in Plaintiff's Initial Disclosures, Supplemental Disclosures, and Supplemental Interrogatories have taken a deposition in this case before all parties.

Plaintiff's counsel spoke with Xavier Webster on September 12, 2018 on the telephone about his recollection of the events.

Plaintiff's counsel spoke with Robin Daniels on October 29, 2018 on the telephone about her recollection of the events.

Plaintiff's counsel spoke with Delvin Brown on September 26, 2018 at the St. Louis Criminal Justice Center about his recollection of the events.

Plaintiff's counsel spoke with Sue Shrago on October 22, 2018 about her unlawful arrest by Defendant Boyd on July 20, 2012 and her subsequent interaction with the Ferguson Police Department and the Ferguson Municipal Court.

Plaintiff's counsel spoke with Rodney May on October 22, 2018 about his seizure by Defendant Boyd on July 20, 2012.

Plaintiff's counsel spoke with Tiffani Taylor on January 3, 2019 about her encounter with Defendant Boyd and the subsequent investigation by the Ferguson Police Department.

Plaintiff's counsel spoke with Mike Linville of Ferguson Super Service on or around October 22, 2019.

Plaintiff will continue to supplement these answers with additional responsive information if discovered and/or received.

4

4.      State whether there exist photographs, videotapes, movies, Vines, or other visual, audio, or video recordings with respect to the occurrences mentioned in the Complaint.  If so, state the following:

>    (a)      Describe each photograph, videotape, movie, Vine, or other visual, audio, or video recordings;
>
>    (b)      State the date each was taken;
>
>    (c)      State the name and address of the person taking each such photograph, videotape, movie, Vine, or other visual, audio, or video recording;
>
>    (d)      State the name and address, employer, insurer, and job title of the person presently having control or custody of each such photograph, videotape, movie, Vine, or other visual, audio, or video recording; and
>
>    (e)      Please attach an exact copy of the photographs, videotapes, movies, Vines, or other visual, audio, or video recordings.

**ANSWER:**

**Plaintiff objects to this interrogatory in that it seeks information and communications protected by the attorney-client privilege. It also seeks work product without a showing of substantial need set forth in Rule 26(b)(3) and relevant case law.**

**Subject to these objections and without waiving them, photographs Bates-stamped "WATSON_00020 - WATSON_00027" were taken by Mr. Watson upon gaining access to his car as described in ¶54 of the Complaint.**

**Furthermore, see all documents produced by Plaintiff and Defendants in this litigation.**

5

5.    If you contend that you were wrongfully arrested without probable cause, state with particularly all facts supporting that contention, and identify any documents concerning that contention.

**ANSWER:**

**Plaintiff objects to this Interrogatory for the following reasons: It is vague and overbroad. Despite the request for "facts," the interrogatory would also require Plaintiff's counsel to make a determination as to what documents and non-written information support the contention. Because of this, this interrogatory is also calling for legal conclusions and for trial strategy of Plaintiff's counsel. Further, it is overbroad in that it improperly calls for a voluminous written narrative in that it seeks "all facts" and "any documents concerning that contention."** *See Poulos v. Summit Hotel Props., LLC*, **No. CIV 09–4062–RAL, 2010 WL 2640394, at \*2 (D.S.D. Jul. 1, 2010).**

**Subject to and without waiving these objections, see the following testimony of Fred Watson:**

| Depo    Page (Fred    Watson Deposition) | Fred Watson Testimony |
|---|---|
| 83 | Plaintiff was sitting in my car, engine running, AC blowing, just cooling off after playing basketball. Officer Boyd pulled up. Plaintiff had his window down halfway. Defendant Boyd parked his police car right in front of Mr. Watson's, blocking him in the parking spot. |
| 84 | Boyd exited his car, unsnapping his weapon and asked Plaintiff if Plaintiff knew why he pulled Plaintiff over when he did not pull Plaintiff over. Plaintiff lowered his window even more, and Boyd was able to clearly see inside everything in the front of Plaintiff's car. Plaintiff  told Boyd that Boyd didn't pull Plaintiff over, and Plaintiff had been sitting still in his car for at least 10 minutes. |
| 86-88 | Boyd asked Plaintiff to give him Plaintiff's social security number. Plaintiff told him that Plaintiff couldn't provide his social security number. |

6

| | |
|---|---|
| | He demanded Plaintiff's social security number before even asking Plaintiff his name. |
| 88 | Boyd told Plaintiff that Plaintiff could be a pedophile before asking Plaintiff for his name. |
| 89 | At the time he said all of the above, Plaintiff was sitting in his car in the park. Plaintiff hadn't done anything illegal. |
| 92 | Boyd didn't have Mr. Watson's ID at this point. Plaintiff was just a citizen in the park. |
| 93 | Boyd asked Plaintiff if Plaintiff knew why he pulled Plaintiff over. |
| 94 | Boyd was bullying Plaintiff. |
| 95 | Boyd told Plaintiff Boyd could give Plaintiff a ticket for his car tint. |
| 96-7 | Boyd then asked Plaintiff for his name. Plaintiff told him Plaintiff's name was Fred Watson. Boyd was standing outside Plaintiff's window.<br>Boyd asked Plaintiff me to throw his keys out the window. |
| 99 | Plaintiff heard Boyd ask for backup. |
| 100 | If Boyd would have asked Plaintiff for his legal name, Plaintiff would have told him Freddie Watson. |
| 101 | Before this incident, Plaintiff hadn't had any tickets or any law enforcement infractions. |
| 103 | Plaintiff did not throw his keys out the window because they were in the back seat folded up in Plaintiff's clothes, in his pants. |
| 104 | Plaintiff asked Boyd for his name and badge number and he refused to give Plaintiff that information.<br>Plaintiff's hands were on the steering wheel.<br>Boyd got upset and started yelling.<br>Plaintiff picked up his phone to call the police.<br>Boyd was yelling and screaming at Plaintiff to "put the fucking phone down." He was yelling about police safety. |
| 105 | Plaintiff put the phone down on his car console, which is where it was when Plaintiff picked it up. Plaintiff's hands did not go down.<br><br>Plaintiff never made any sudden moves in the car. |
| 110 | After Boyd called for backup, and after Plaintiff put down his phone, Boyd pulled his gun and pointed it at Plaintiff. |

7

| | Boyd said this to Plaintiff: I can shoot you right here, I can kill you, nobody will give a shit. |
|---|---|
| 111 | Boyd did not ask for Plaintiff's ID or ask Plaintiff to throw his keys out the window until after Boyd pulled his gun on Plaintiff. |
| 112 | Boyd eventually asked for Plaintiff's driver's license and registration.

Plaintiff asked whether he should do so with his hands on the wheel and told him his license was in the back seat in his pants.

Plaintiff told him that his registration was in the glove compartment. |
| 114 | Plaintiff was in fear of his life and wasn't going to move from his spot behind the steering wheel. |
| 115 | After the backup officer arrived, the backup officer told Plaintiff to do what Boyd requested, or it could get worse, including having a K9 unit run through the car. |
| 116 | Plaintiff told the officers he was going to open his car door. |
| 118 | The K9 unit would tear up Plaintiff's car. |
| 119 | The backup officer said: Looks like a nice car, you don't want the dogs in here tearing your shit up. |
| 120 | Boyd said to get out of the car slowly and put his hands up.

Plaintiff complied and did so while hitting a button to close the window and turning off the car.

Boyd pushed Plaintiff against the car, and Plaintiff closed his car door with his foot. At that point, Boyd put handcuffs on Plaintiff and put him in the back of the squad car.

Plaintiff closed his car door because he didn't want to police to think they had consent to search his car. |
| 122 | It was at this point that the police first seemed to run Plaintiff's name on the computer. |
| 124-125 | The officers opened two doors of Plaintiff's car. Boyd went into Plaintiffs' car, looked around, grabbed Plaintiffs' bookbag off the back seat and dumped out the contents of it. They took Plaintiff's pants from the |

|   | back seat and trashed the car, going through the glove compartment and moving around in the center console. |
|---|---|
|   | After he was rambling through the car he gets my registration, Boyd approached Plaintiff's car and try to run Plaintiff's name. Boyd tried to run Plaintiff's name twice. Boyd finds my registration and it's not Fred, it's Freddie, and  he said some other things and he's running it but during that time Plaintiff asked him did he see Plaintiff's military or government ID in the console and he looked up in the rear-view mirror and kind of just looks at Plaintiff and that was the only thing Plaintiff I said to him after the exchange, after the gun was pulled, that was  the last thing that Plaintiff said to him. |
| 129 | While cuffed, Plaintiff asked Boyd whether he saw Plaintiff's Military ID in the console.  His NGA ID was in a big plastic card on a lanyard. |
| 131 | A tow truck arrived. The police towed Plaintiff's car and took Plaintiff to jail. |
| 132 | Boyd made it look like Plaintiff had been hostile to other officers. |
| 133 | The police cuffed Plaintiff to a wall on a bench at the police station. After being booked, the police again asked for Plaintiff's social security number and Plaintiff said that he couldn't provide that. |
| 134 | Plaintiff was in jail for more than 7 hours. |
| 151 | Plaintiff twice tried to file complaints with the Ferguson Police Department. |
| 199 | Plaintiff's phone was at the 2 o'clock position, a few inches from the steering wheel. |
| 200 | When Plaintiff tried to call the police, Boyed yelled: "Put your fucking phone down and put your hands on the steering wheel." |
| 201 | Plaintiff feared how Boyd might respond to even slight movements. |
| 202 | Plaintiff feared trying to retrieved the keys in the back seat without getting himself shot and killed by Boyd. |
| 253 | Plaintiff did not plead guilty to any tickets issued by Ferguson and did not consent to have any attorney representing him to plead guilty on his behalf. |
| 254 | Ferguson issued seven traffic tickets as a result of this incident. |

9

| 257-258 | None of the tickets issued by Ferguson were justified. |
|---|---|

**Plaintiff also asserts that all of the charges Ferguson brought against Fred Watson were dismissed and that Fred Watson never pleaded guilty to any charges brought by Ferguson.**

**Plaintiff also relies on the deposition testimony taken in this case, including the depositions of employees of Ferguson, Beavis Shock and Freeman Bosley for the proposition that he never pleaded guilty to any charges brought by Ferguson.**

**Plaintiff expressly reserves all right to update this interrogatory as further facts become available.**

6.    Describe in specific detail all the reasons you believe you lost your job with the National Geospatial-Intelligence Agency and identify any documents concerning the lost of that job.

**ANSWER:**

**Plaintiff objects to this Interrogatory for the following reasons. It is vague and overbroad. Despite the request for "all the reasons," the interrogatory would also require Plaintiff's counsel to make a determination as to what documents and non-written information support the contention. Because of this, this interrogatory is also calling for legal conclusions and for trial strategy of Plaintiff's counsel. Further, it improperly calls for a voluminous written narrative. *See Poulos v. Summit Hotel Props., LLC*, No. CIV 09–4062–RAL, 2010 WL 2640394, at \*2 (D.S.D. Jul. 1, 2010).**

**Subject to and without waiving theses Objections, Plaintiff states that his "periodic reinvestigation" (which occurred approximately once per five years) was held in late 2013 or early 2014. In the process of the reinvestigation, he discussed with investigators the arrest and charges underlying this lawsuit.**

**As Defendant Ferguson failed to dismiss the frivolous charges against Mr. Watson, the investigation remained open, and Mr. Watson was granted "Conditional TS-SCI" Clearance because the Ferguson charges had not yet been dismissed. He held this status for several months, but he was not granted his previous unrestricted status because the charges remained pending. See email documents produced by Mr. Watson regarding the status of his Conditional Clearance.**

10

**When Mr. Watson appeared for work on Monday, August 18, 2014, he was told that he could no longer access his workplace because of clearance issues.**

**See also the following testimony of Fred Watson, which Plaintiff incorporates in the context of all of Mr. Watson's deposition testimony, the allegations of his complaint and other answers he has provided to written discovery:**

| 263 | Plaintiff couldn't get the tickets resolved. Not getting the tickets resolved would not allow them to readjudicate Plaintiff or revalidate his clearance for the next five years, so without having his clearance NGA held that not having these tickets resolved or a solution, nothing to provide to the government or NJVC there's was no way that they could close that because of the criminal charges, including the failure to obey or false declaration. |
|-----|------------------------------------------------------------------------------------------------------|
| 293 | Plaintiff did not have a disposition of the charges that Boyd brought against Plaintiff so there's no way that Plaintiff could still be hired and close his clearance if he still had pending charges. |
|     | Plaintiff's clearance was not withdrawn because of any statements he made to NGA security. |
|     | If Ferguson did not bring these charges against Plaintiff, he would still be employed. If Boyd and the City of Ferguson had not violated plaintiff's rights he would still be employed. |

**Plaintiff has produced many documents related to his employment at NJVC and his loss of clearance at the NGA. He expressly reserves his right to update this interrogatory as further facts become available.**

7._____Identify, as that term is defined herein, all damages that you claim in this action by stating each separate category or type of damages that you claim and, for each category or type of damages, state:

(a)     The amount of damages claimed;

(b)     When you allegedly incurred each type of damages;

(c)     The person who calculated each damages amount;

(d)     How each damages amount was calculated;

(e)     Any steps you have taken to mitigate damages; and

(f)     Please identify any documents concerning the damages you claim and
        your calculation of damages.

**ANSWER:**

**Response to sections a and c: Plaintiff has suffered all of the types of damages set
forth in the First Amended Complaint, both compensatory and punitive damages.
At this time, Plaintiff is unable to designate a particular amount he seeks for
damages. Plaintiff has no specific means for calculating his damages; to my
knowledge, no person has "calculated" my damages. Plaintiff will be looking to the
jury to determine a precise number regarding the damages he has suffered. Also,
this interrogatory calls for speculation as to the amounts and nature of calculating
damages, which are ongoing at this time, and thus growing in scope.**

**With regard to sections b, d, e and f:  Plaintiff objects to these sections of this
Interrogatory for the following reasons. They are vague. They call for attorney
legal conclusions and work product. This interrogatory impermissibly seeks work
product prior to the time that the Trial Court has ordered that such a contention
interrogatory be answered, in that this interrogatory calls for "any documents
concerning the damages."**

**Without waiving any of the above objections, Plaintiff indicates that the damages
he is claiming began to accrue on August 1, 2012 and they are continuing to accrue
to this day.**

8.    From August 1, 2012 to date, identify every phone number, e-mail account,

instant messenger account, website, webpage, Facebook, MySpace, Twitter, Instagram, Vine,

and/or LinkedIn account or other social media account, or domain name you have established,

used or maintained, and, for each such account, site, page, domain, or number, state your

username, when it was established, which company services the number/site/account, from

12

which computers or mobile device(s) you accessed the account, and describe the nature of your use of such account, site, page, domain or number.

**ANSWER**:

**Mr. Watson has used the following phone numbers:**



**(Aug. 2012 to present) - Sprint**

**(Since 2017) – Sprint**

**Mr. Watson has used the following email addresses:**

**- (Aug 2012 to present)**

**- (Aug 2012 to present)**

**- (Aug 2012 to present)**

9.    State whether you have ever been a party to any lawsuit, legal action or administrative proceeding, whether criminal or civil in nature (other than the municipal action identified in the Complaint), and, for each such suit, action or proceeding, state:

(a)    The names of the parties in the lawsuit, action or proceeding and a summary of the allegations contained therein;

(b)    The date of filing and the state, city and court or agency in which each such suit, action or proceeding was filed;

(c)    The nature of the proceeding and names and addresses of the attorneys or other representatives for each party; and

(d)    The disposition of any such suit, action or proceeding.

**ANSWER**:

**Objection. This Interrogatory calls for the disclosure of detailed information (e.g., summarizing allegations) that is obtainable by Defendant from other**

13

sources that are more convenient, less burdensome, or less expensive, including but not limited to documents or information readily available through public sources.

Subject to and without waiving that objection, Plaintiff has been party to the following lawsuits:

Watson v. Griffin, St. Clair County IL Circuit Court, 12-F-0117 . The case was a child support action filed in Illinois in 2016. The suit was resolved with Mr. Watson being granted child support for his two sons.

Fred Watson v. Kim Maldonado and Chet Shelton, St. Clair County IL Circuit Court, 13-L-0202. This case stemmed from the flooding of a basement that Mr. Watson had been renting from the defendants. The case was dismissed.

Watson v. Johnson, St. Clair County IL Circuit Court, 16-L-0414. This case concerned a car accident in which a car Mr. Watson was operating was struck by a negligent driver. The case is ongoing.

10.    State whether you have pleaded guilty or nolo contendre to or been convicted of

any felony or misdemeanor or ordinance violation (under federal, state or municipal law).  If so,

please state:

(a) The city and state where convicted;

(b) The date of the conviction;

(c) The name of the offense of which you were convicted;

(d) Whether you pleaded guilty to the offense, and

(e) Identify all documents concerning such proceedings.

**ANSWER:**

Objection. This Interrogatory calls for the disclosure of detailed information (e.g., summarizing allegations) that is obtainable by Defendant from other sources that are more convenient, less burdensome, or less expensive,

14

**including but not limited to documents or information readily available through public sources.**

**Plaintiff received a speeding ticket in the City of Northwoods in 2013. According to the records produced from the City of Ferguson in this case, Plaintiff was cited for a municipal violation from the City of Ferguson in the 1990's, but he does not have recollection of that citation.**

11.    State whether you have ever filed for bankruptcy.  If so, please state:

(a)  The jurisdiction of the filing;

(b)  The date of the filing;

(c)  The resolution of such filing; and

(d)  Identify all documents concerning such proceedings.

**<u>ANSWER</u>:**

**Plaintiff has never filed for bankruptcy.**

12.    If you contend that your constitutional rights were violated by the City or Defendant Boyd pursuant to an official custom, policy, or practice of the City, please state with specificity the custom, policy, or practice pursuant to which your constitutional rights were allegedly violated and identify all documents reflecting the fact that such a custom, policy, or practice was the cause of your arrest and prosecution and identify any documents concerning that contention.

**<u>ANSWER</u>:**

**Plaintiff objects to Interrogatory Number 12 to the extent that said Interrogatory seeks a legal conclusion.  Plaintiff further objects as information concerning this Interrogatory is in the possession of Defendant City.  The interrogatory is vague and overbroad. This interrogatory would also require Plaintiff's counsel to make a legal determination as to what documents support his contentions. Because of this, this interrogatory is also calling for legal conclusions and for trial strategy of Plaintiff's counsel, as**

15

well as work product. Further, it improperly calls for a voluminous written narrative. This interrogatory impermissibly seeks work product prior to the time that the Trial Court has ordered that such a contention interrogatory be answered.  Further, it is overbroad in that it improperly calls for a voluminous written narrative in that it seeks "all documents" supporting Plaintiff's claims.  *See Poulos v. Summit Hotel Props., LLC*, No. CIV 09–4062–RAL, 2010 WL 2640394, at *2 (D.S.D. Jul. 1, 2010).

Subject to and without waiving those objections, and while reserving all rights to supplement this response, Plaintiff states the following:

In its treatment of Mr. Watson, Ferguson acted unconstitutionally pursuant to informal and unwritten policies in the form of customs, patterns, practices and usage. These customs became the de facto standard operating procedure of Ferguson.  These are not formally enacted policies established by a particular person but rather evolved to be Ferguson's way of doing business on the Ferguson streets, within the Ferguson Police Department, and in the Ferguson Municipal Court.

The following customs, policies, or practices existed within the City of Ferguson or the Ferguson Police Department.

<u>Failure to Screen</u>

Within the Ferguson Police Department, there existed a custom of failing to screen police officers appropriately. This failure to screen Officer Boyd led to the constitutional violations committed against Mr. Watson. An adequate screening of Mr. Boyd would have revealed that Mr. Boyd had a history of filing false reports and lying in police investigations.  Further, Mr. Boyd's Missouri Peace Officer Standards and Training License was revoked in 2009.

Mr. Boyd's four-page Ferguson application to be an officer appears to be the same application given to general Ferguson employees. The application did not ask whether Mr. Boyd had previously been disciplined at his former jobs, nor did it ask if his Missouri POST license had ever been suspended or revoked. The application failed to ask if Mr. Boyd had ever been a party to a lawsuit related to his duties as an on-duty officer (which he had).

The subsequent cursory "background investigation" conducted by Ferguson failed to request Mr. Boyd's personnel files from previous employers, which would have revealed the discipline he was subject to at SLMPD and St. Ann. The Ferguson investigation into Mr. Boyd's SLMPD history merely

16

confirmed the dates of employment. There is no evidence that Ferguson made any inquiry as to why Mr. Boyd left two previous police departments for similar positions in new departments.

<u>Failure to Discipline</u>

The City of Ferguson was not aware of any of the discipline from previous departments against Mr. Boyd, and as such, failed to implement any procedures to address his previous discipline.

Once he began working at the City of Ferguson, Mr. Boyd's actions put the City of Ferguson on notice as to his dishonesty and unconstitutional practices, yet he received no discipline for these actions. Several emails in the possession of the City of Ferguson reveal that officers were aware or Mr. Boyd's dishonesty and retaliation against citizens (including assaulting them), yet there is no documentation of discipline related to these incidents. Further, the City failed to implement procedures to effectively learn about complaints of citizens and further failed to effectively investigate and punish its officers for violations of general orders and the Constitution.

Plaintiff's constitutional rights were violated by the City or Defendant Boyd pursuant to official customs, policies, and practices of the City. Plaintiff contends that Boyd was acting at all times based upon Ferguson custom, policy and practice including Ferguson's custom, policy and practice of:

a.  stopping citizens without reasonable suspicion in order to check them for warrants;

b.  charging and prosecuting people for baseless charges in order to generate revenue;

c.  making arrests and pursuing charges against individuals, like Mr. Watson, who are engaged in activity protected by the First Amendment to the United States Constitution; and

d.  creating a record including charges, police reports, public statements, and testimony, that purports to provide legal justification for the arrest or citation, even in the absence of probable cause for the arrest or citation.

<u>Failure to Supervise</u>

In addition to the aforementioned failures, Defendant Boyd was repeatedly given exemplary ratings in his annual reviews, and there is no evidence that

17

Ferguson took any affirmative steps to provide greater training or supervision to Defendant Boyd despite his repeated constitutional violations.

**Continuing Deprivation of Mr. Watson's Rights**

The City of Ferguson further ratified the malicious prosecution and ongoing seizure of Mr. Watson by failing to dismiss the patently frivolous charges, by failing to give Mr. Watson notice of the charges he faced, by rubber-stamping municipal tickets of officers without any prosecutorial supervision,  by entering pleas of guilt without the consent of Mr. Watson or attorney, by prosecuting the case even after being made aware of the repeated constitutional violations committed by Defendant Boyd, by failing to produce highly relevant *Brady* impeachment evidence, by attempting to cover up its unauthorized entry of pleas by changing the status of Mr. Watson's cases in the court records, and by continuing the prosecution of Mr. Watson even after the above information was discovered.

13.    For the custom, policy, or practice identified in your response to Interrogatory No. 12, identify the Policymaker you contend is responsible for establishing that custom, policy, or practice and identify any documents concerning that contention.

**ANSWER:**

Plaintiff objects to Interrogatory Number 13 to the extent that said Interrogatory seeks a legal conclusion.  Plaintiff further objects as information concerning this Interrogatory is in the possession of Defendant City.  The interrogatory is vague, overbroad, and unduly burdensome. This interrogatory is calling for trial strategy of Plaintiff's counsel, as well as work product. Further, it improperly calls for a voluminous written narrative. This interrogatory impermissibly seeks work product prior to the time that the Trial Court has ordered that such a contention interrogatory be answered.

Plaintiff is currently in the middle of several discovery disputes with Defendant Ferguson concerning highly relevant documents related to Ferguson's failures to screen, discipline, and supervise Defendant Boyd. After those disputes are resolved, Plaintiff intends to take the deposition of several supervisors within the Ferguson Police Department.  Plaintiff will update this response as discovery related to these claims are produced.

18

**Subject to and without waiving the foregoing objections, Plaintiff states that the following jobs had policymaking roles at the City of Ferguson: Chief of Police, supervisors within the Ferguson Police Department, City Manager, Mayor, City Prosecutor, Municipal Judge.**

14.     For the custom, policy, or practice identified in your response to Interrogatory No. 12, state in detail the manner in which the custom, policy, or practice was promulgated or "ratified."

**ANSWER:**

**Plaintiff objects to Interrogatory Number 14 to the extent that said Interrogatory seeks a legal conclusion. Plaintiff further objects as information concerning this Interrogatory is in the possession of Defendant City. The interrogatory is vague, overbroad, and unduly burdensome. This interrogatory is calling for trial strategy of Plaintiff's counsel, as well as work product. Further, it improperly calls for a voluminous written narrative. This interrogatory impermissibly seeks work product prior to the time that the Trial Court has ordered that such a contention interrogatory be answered.**

**Plaintiff is currently in the middle of several discovery disputes with Defendant Ferguson concerning highly relevant documents related to Ferguson's failures to screen, discipline, and supervise Defendant Boyd. After those disputes are resolved, Plaintiff intends to take the deposition of several supervisors within the Ferguson Police Department. Plaintiff will update this response as discovery related to these claims are produced.**

15.     State all facts which tend to support your contention that the person identified in your answer to Interrogatory No. 13 was a Policymaker and identify any documents concerning that contention.

**ANSWER:**

**Plaintiff objects to Interrogatory Number 15 to the extent that said Interrogatory seeks a legal conclusion. Plaintiff further objects as information concerning this Interrogatory is in the possession of Defendant City. The interrogatory is vague, overbroad, and unduly burdensome. This interrogatory is calling for trial strategy of Plaintiff's counsel, as well as work product. Further, it improperly calls for a**

19

**voluminous written narrative. This interrogatory impermissibly seeks work product prior to the time that the Trial Court has ordered that such a contention interrogatory be answered.**

**Subject to and without waiving the foregoing objections, Plaintiff is currently in the middle of several discovery disputes with Defendant Ferguson concerning highly relevant documents related to Ferguson's failures to screen, discipline, and supervise Defendant Boyd. After those disputes are resolved, Plaintiff intends to take the deposition of several supervisors within the Ferguson Police Department. Plaintiff will update this response as discovery related to these claims are produced.**

16.    State all facts which tend to support the conclusion that the City violated your constitutional rights and identify any documents concerning that contention.

**ANSWER:**

**Plaintiff objects to this Interrogatory for the following reasons. It is vague and overbroad. Despite the request for "facts," the interrogatory would also require Plaintiff's counsel to make a determination as to what documents and non-written information support the contention. Because of this, this interrogatory is also calling for legal conclusions and for trial strategy of Plaintiff's counsel. Further, it improperly calls for a voluminous written narrative in that it seeks "all facts" and "any documents concerning that contention."  *See Poulos v. Summit Hotel Props., LLC*, No. CIV 09–4062–RAL, 2010 WL 2640394, at \*2 (D.S.D. Jul. 1, 2010).**

**Subject to and without waiving the foregoing objections, see Plaintiff's answers to interrogatory numbers 5, 6, 12, and 13.**

**To support his claims, Plaintiff will rely on all documents produced thus far in litigation as well as any other documents that will be produced by any parties in the litigation.**

17.    State all facts which tend to support the conclusion that Officer Boyd violated your constitutional rights and identify any documents concerning that contention.

**ANSWER:**

**Plaintiff objects to this Interrogatory for the following reasons. It is vague and overbroad. Despite the request for "facts," the interrogatory would also require**

**Plaintiff's counsel to make a determination as to what documents and non-written information support the contention. Because of this, this interrogatory is also calling for legal conclusions and for trial strategy of Plaintiff's counsel. Further, it improperly calls for a voluminous written narrative in that it seeks "all facts."** ***See Poulos v. Summit Hotel Props., LLC*, No. CIV 09–4062–RAL, 2010 WL 2640394, at \*2 (D.S.D. Jul. 1, 2010).**

**See Plaintiff's answers to numbers 5, 6, 12 and 13. Plaintiff is not relying upon any written custom, policy, or practice. Plaintiff is primarily relying upon customs of Ferguson. Rather, these customs evolved over time and represent the character and culture of Ferguson, and the way in which Ferguson and its employees conduct themselves.**

**Plaintiff expressly reserves all right to update this interrogatory.**

**To support his claims, Plaintiff will rely on all documents produced thus far in litigation as well as any other documents that will be produced by any parties in the litigation.**

18.     State all facts which tend to support the conclusion that your arrest and prosecution was motivated by a retaliatory or other improper purpose in violation of your First Amendment or other constitutional rights and identify any documents concerning that contention.

**ANSWER:**

**Plaintiff objects to this Interrogatory for the following reasons. It is vague and overbroad. Despite the request for "facts," the interrogatory would also require Plaintiff's counsel to make a determination as to what documents and non-written information support the contention. Because of this, this interrogatory is also calling for legal conclusions and for trial strategy of Plaintiff's counsel. Further, it improperly calls for a voluminous written narrative in that it seeks "all facts."** ***See Poulos v. Summit Hotel Props., LLC*, No. CIV 09–4062–RAL, 2010 WL 2640394, at \*2 (D.S.D. Jul. 1, 2010).**

**Subject to and without waiving the foregoing objections, Plaintiff states that the following are some facts to support the conclusion that the arrest and prosecution was retaliatory:**

21

- Defendant Boyd acted aggressively when Mr. Watson asked for his badge and name;
- At the jail, Defendant Boyd refused to give Mr. Watson his badge number or name;
- Defendant Boyd ransacked Mr. Watson's car;
- Defendant Boyd wrote Mr. Watson frivolous tickets even when he had proof that Mr. Watson's vehicle was registered and insured;
- Defendant Boyd has similarly written frivolous and excessive tickets to other citizens in Ferguson who exercise their First Amendment rights;
- Defendant Boyd wrote Mr. Watson nine separate tickets;
- Defendant Boyd scratched out his name on the tickets to Mr. Watson;
- When Mr. Watson attempted to call the police, Defendant Boyd pulled his weapon and pointed it at Mr. Watson, threatening to shoot him;
- The City of Ferguson refused to dismiss the charges after being shown proof of Mr. Watson's identification, insurance, and registration;
- The City of Ferguson was aware or should have been aware of Defendant Boyd's past unconstitutional policing activities involving retaliatory actions and prosecutions;
- The City of Ferguson used its Court and Police Department in order to generate the maximum amount of revenue for the City;
- It has been the pattern and practice of Ferguson to engage in this type of for-profit policing, as set forth in the DOJ report;
- For years, Ferguson continued the prosecution of Mr. Watson, despite Mr. Watson's consistent position that these tickets were not issued in good faith, the fact that the tickets were not supported by the facts known to Officer Boyd and the City of Ferguson, the unwillingness of Ferguson to consider the facts of the actual incident, the utter frivolousness of the tickets issued by Officer Boyd and the fact that the charges were ultimately dismissed by Ferguson.

**Plaintiff expressly reserves all rights to update this interrogatory.**

19.    State all facts which tend to support the conclusion that your arrest and prosecution was done maliciously, with an evil motive, or with reckless indifference and conscious disregard to your rights and identify any documents concerning that contention.

**ANSWER:**

**Plaintiff objects to this Interrogatory for the following reasons. It is vague and overbroad. Despite the request for "facts," the interrogatory would also require**

22

**Plaintiff's counsel to make a determination as to what documents and non-written information support the contention. Because of this, this interrogatory is also calling for legal conclusions and for trial strategy of Plaintiff's counsel. Further, it improperly calls for a voluminous written narrative in that it seeks "all facts."** *See Poulos v. Summit Hotel Props., LLC,* **No. CIV 09–4062–RAL, 2010 WL 2640394, at *2 (D.S.D. Jul. 1, 2010).**

**See Plaintiff's answers to numbers 5, 6, 12, 13, and 18. Further, Plaintiff expressly reserves all rights to update this interrogatory as further facts become available.**

20.     Identify all statements contained in official reports prepared by Officer Boyd that you contend are false, as alleged in paragraph 117 of your Complaint.

**ANSWER:**

**Plaintiff objects to this Interrogatory for the following reasons. It is vague and overbroad. Despite the request for "statements," the interrogatory would also require Plaintiff's counsel to make a determination as to what documents and non-written information support the contention. Because of this, this interrogatory is also calling for legal conclusions and for trial strategy of Plaintiff's counsel. Further, it improperly calls for a voluminous written narrative in that it seeks "all statements."** *See Poulos v. Summit Hotel Props., LLC,* **No. CIV 09–4062–RAL, 2010 WL 2640394, at *2 (D.S.D. Jul. 1, 2010).**

21.     Identify all facts which tend to support your conclusion that the City has been deliberately indifferent in its duty to correct, supervise, control, or discipline its agents, officers, and employees when they have committed acts that violate the constitutional rights of those they encounter and has instead ratified such alleged malfeasance and identify any documents concerning that contention.

**ANSWER:**

**Plaintiff objects to this Interrogatory for the following reasons. It is vague and overbroad. Despite the request for "facts," the interrogatory would also require Plaintiff's counsel to make a determination as to what documents and non-written**

23

information support the contention. Because of this, this interrogatory is also calling for legal conclusions and for trial strategy of Plaintiff's counsel. Further, it improperly calls for a voluminous written narrative in that it seeks "all facts." *See Poulos v. Summit Hotel Props., LLC*, No. CIV 09–4062–RAL, 2010 WL 2640394, at *2 (D.S.D. Jul. 1, 2010).

Subject to and without waiving the foregoing objections, See Plaintiff's answers to numbers 5, 6, 12, 13, and 18. Further, Plaintiff expressly reserves all rights to update this interrogatory. Plaintiff further incorporates the DOJ Report (ECF No. 1-5), which outlined Ferguson's pervasive culture of failing to discipline its police officers. Plaintiff further refers to the following lawsuits:

- *United States of America v. City of Ferguson, Missouri*—4:16-CV-180-CDP. This lawsuit was brought against the City of Ferguson, Missouri alleging that it was a pattern and practice of the Ferguson Police Department to deprive citizens of their constitutional rights.

- *Kidd v. Boyd*-- 4:15-cv-01801-CEJ. This lawsuit alleged that Ferguson Officer Eddie Boyd arrested a woman for requesting the name of the officer. This suit settled.

22.    State whether you have entered into a fee or payment agreement with your current attorneys concerning this lawsuit or your defense of the prosecutions described in the Complaint. If the answer is yes, for each such arrangement, please state:

(a) The name of the attorneys with whom you have entered into the agreement;

(b) Whether the agreement is in writing;

(c) The terms of the agreement

(d) And identify any documents concerning that agreement.

**ANSWER:**

Plaintiff objects to this Interrogatory to the extent that it seeks information which is protected by attorney-client privilege and by the work product doctrine.

Further, Plaintiff objects to this Interrogatory as fee agreements in § 1983 cases are "not relevant to Plaintiffs' claims or any defenses and not reasonably calculated to

24

**lead to discovery of admissible evidence."** ***See Zubrod v. Hoch,*** **No. C15-2065, 2016 U.S. Dist. LEXIS 58319, at *14 (N.D. Iowa May 2, 2016).**

23.    Identify and describe each person whom you intend to call as an expert witness (whether retained or not) at any trial in this action, and in your response state:

    (a)    The general nature of the subject matter of that opinion testimony;

    (b)    All documents reviewed in formulating any opinions in this action;

    (c)    The qualifications of that individual to provide such opinions in this action;

    (d)    If retained, the amount that the expert is charging for serving as an expert witness in this action.

**<u>ANSWER</u>:**

**Plaintiff does not intend to call an expert witness.**

24.    Identify and describe any person you or your counsel have not yet retained but from whom you intend to elicit expert opinion testimony at any trial in this action.

**<u>ANSWER</u>:**

**Plaintiff does not intend to call an expert witness.**

25

Dated:  January 28, 2019               Respectfully submitted,

                                           ARCHCITY DEFENDERS, INC.

                                          By: /s/ *John M. Waldron*
                                              Blake A. Strode (MBE #68422MO)
                                              Michael-John Voss (MBE #61742MO)
                                              Sima Atri (MBE #70489MO)
                                              John M. Waldron (MBE #70401MO)
                                              440 N. 4th Street.  Suite 390
                                              Saint Louis, MO 63102
                                              (855) 724-2489
                                              (314) 925-1307 (fax)
                                              bstrode@archcitydefenders.org
                                              mjvoss@archcitydefenders.org
                                              satri@archcitydefenders.org
                                              jwaldron@archcitydefenders.org
                                              *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that notice of filing and a true and correct copy of the foregoing was served on all attorneys of record via email this 28th day of January, 2019.

/s/ John M. Waldron

**VERIFICATION FOR**

**ANSWERS/RESPONSES TO INTERROGATORIES**

I _Watson, Fred_____, do hereby state under penalty of perjury that the foregoing

Response to Defendant City of Ferguson's First Set of Interrogatories are true and correct to the best of

my knowledge.

Watson, Fred_____
Plaintiff's Name

_____
Plaintiff's Signature

28 Jan 2019_____
Date