**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FRED WATSON,<br><br>Plaintiff,<br><br>vs.<br><br>EDDIE BOYD, III, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:17-cv-02187-MTS |

**MEMORANDUM AND ORDER**

Eddie Boyd, III, a police officer with the City of Ferguson, initiated a heated encounter with Fred Watson in a Ferguson city park in 2012. The encounter culminated in Watson's arrest and transport to the Ferguson Police Department, where officers booked him, placed him in a holding cell, issued him seven tickets, and required him to pay a $700 bond to secure his release. Watson later filed this action under 42 U.S.C. § 1983 against Boyd and the City of Ferguson, alleging that they violated his constitutional rights.

While this action was pending, the City of Ferguson reached a settlement in a class action against it involving its jailing practices and its jail conditions, *Fant v. City of Ferguson*. Because Watson had been jailed by the City of Ferguson, Watson was a *Fant* class member. Watson did not object to the settlement, and a U.S. district judge approved it, incorporating the parties' settlement agreement into the judgment. No one appealed that judgment. Watson declined to opt out of the settlement and accordingly shared in the $4.5 million settlement paid by the City of Ferguson to the class. Because

the plain language of the *Fant* settlement agreement released Watson's claims here, this Court will grant Defendants' Motion for Summary Judgment based on their affirmative defense of res judicata.

**I.**

This Motion involves the intersection of this action with another, *Fant v. City of Ferguson*. Each case has a long procedural background, and the Court briefly lays out each in turn.

A.

Fourteen years ago, in a Ferguson, Missouri park, Plaintiff Fred Watson had a run-in with Officer Eddie Boyd, III, that sparked this protracted litigation. The U.S. Court of Appeals for the Eighth Circuit has described the factual background at length, doing so in the light most favorable to Plaintiff given the review posture. *Watson v. Boyd*, 119 F.4th 539, 543–46 (8th Cir. 2024).[1]

Watson sat in his parked, running vehicle at a Ferguson park. Officer Boyd parked his patrol car near Watson's vehicle and approached on foot, ostensibly because Watson's vehicle had excessively tinted windows, no front license plate, and was idling with its headlights on near an area where children were playing. At some point during the encounter, Officer Boyd requested identifying information and questioned Watson, who provided a shortened version of his name and declined to provide his Social Security number. Watson, at some point during the encounter, asked Officer Boyd for his name and badge number, to which Officer Boyd responded that it would appear on the ticket he

[1] This summation takes certain passages from the Court of Appeal's decision without further attribution.

issued. Watson then removed his right hand from the steering wheel to reach for his phone. Officer Boyd yelled for Watson to put down his phone and keep his hands on the steering wheel, and Watson complied. Officer Boyd called for backup, pulled his gun, and told Watson that he could shoot Watson and that nobody would care.

Watson remained in the vehicle until additional officers arrived, then exited with his hands raised. Officer Boyd handcuffed Watson and searched his vehicle and the items therein. Officer Boyd issued Watson seven tickets: no operator's license; no proof of insurance; vision reducing material applied to windshield; expired state operator's license; no seat belt; failure to register an out-of-state motor vehicle within thirty days of residence; and no vehicle inspection.[2] Officer Boyd transported Watson to the Ferguson Police Department, where Watson was booked and placed in a holding cell. To secure his release, he was forced to pay a bond of $700. Watson contested the charges, and all were ultimately dismissed without him pleading guilty or paying fines.

In 2017, represented by attorneys from ArchCity Defenders, Inc. ("ArchCity Defenders"), Watson filed this action under 42 U.S.C. § 1983 based on his encounter with Officer Boyd. Against Officer Boyd, Watson's pleading contained three counts: (1) violation of his Fourth and Fourteenth Amendment rights to be free from unlawful searches, seizures, and force (Count I); (2) violation of his First Amendment right to be free from retaliation for requesting Officer Boyd's name and badge number (Count II); and (3) violation of his Fourth and Fourteenth Amendment right to be free from

[2] Two more charges were levied against Watson in complaints received by his attorney: making a false statement and failure to obey the orders of a police officer.

malicious prosecution (Count III). He also brought *Monell*[3] claims under § 1983 (Count IV) against the City of Ferguson for the following: (1) maintaining a custom of unconstitutional conduct by police officers; (2) failing to adequately screen Officer Boyd during the hiring process; (3) inadequately training Officer Boyd; and (4) failing to supervise or discipline Officer Boyd.

A first round of dispositive motions and an appeal ensued. *See Watson v. Boyd*, 447 F. Supp. 3d 924 (E.D. Mo. 2020) (White, J.) (granting in part and denying in part Defendants' motion for summary judgment), *vacated and remanded*, 2 F.4th 1106 (8th Cir. 2021). On remand, after more litigation, this Court granted summary judgment to all Defendants on all of Watson's claims. *Watson v. City of Ferguson*, 4:17-cv-2187-JCH, 2022 WL 16569365 (E.D. Mo. Sept. 26, 2022) (Hamilton, J.). This time, a divided panel of the Eighth Circuit "affirm[ed] the district court's grant of summary judgment on all claims except Watson's First Amendment retaliatory use-of-force claim and remand[ed] for further proceedings on that claim." *Watson v. Boyd*, 119 F.4th 539, 562 (8th Cir. 2024).[4]

Upon the most recent remand of this matter, this action was randomly reassigned to the undersigned, and the Court set a trial date. Prior to trial, this Court provided Defendants leave to amend their answer to state the affirmative defense of res judicata. Doc. [296]; *see* Fed. R. Civ. P. 15(a)(2). Defendants did so and later filed the instant

---

[3] *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

[4] Judge Gruender dissented in part, noting that he would have affirmed the judgment in favor of Defendants "in its entirety." *Watson v. Boyd*, 119 F.4th 539, 563 (8th Cir. 2024) (Gruender, J. concurring in part and dissenting in part). Defendants filed a petition for writ of certiorari with the Supreme Court, which it denied. *Boyd v. Watson*, 146 S. Ct. 280 (2025).

Motion for Summary Judgment based on their affirmative defense. *See* Fed. R. Civ. P. 56(a).

B.

In 2015, eleven named plaintiffs filed a putative class action against the City of Ferguson. The case, styled as *Fant v. City of Ferguson*, claimed that Ferguson city "officials and employees—through their conduct, decisions, training and lack of training, rules, policies, and practices—have built a municipal scheme designed to brutalize, to punish, and to profit." 4:15-cv-0253-AGF, ECF No. 1 ¶ 4 (E.D. Mo. Feb. 8, 2015). All the plaintiffs had been "jailed by the City of Ferguson because they were unable to make a monetary payment to the City arising from traffic tickets or other minor offenses." *Fant*, ECF No. 53 ¶ 1; *see also id.* at ¶ 41 n.5 (noting one plaintiff "was routinely stopped and arrested by Ferguson police and charged with minor offenses for years").

During the litigation of their case, the plaintiffs in *Fant* relied on the Civil Rights Division of the Department of Justice's report after its investigation of the Ferguson Police Department. *Fant*, ECF No. 113 at 15 n.39 ("Plaintiffs rely on evidence summarized in a report concerning the City's Police Department issued in March 2015 by the Civil Rights Division of the United States Department of Justice[.]"). The report noted that "[t]he City's emphasis on revenue generation has a profound effect on [the police department's] approach to law enforcement." *Fant*, ECF 115-39 at 5. The report then went on to cite Watson's encounter with Officer Boyd in the park, the one Watson sued over in this action. *Id.* at 6. In June 2022, the court certified five damages classes. *Fant*, ECF No. 519; *see* Fed. R. Civ. P. 23(c)(1).

In June of 2023, the parties in *Fant* alerted the court that they had reached a resolution in principle. *Fant*, ECF No. 649. In January 2024, Plaintiffs moved for preliminary approval of class settlement, *Fant*, ECF No. 668, and submitted the signed Settlement Agreement and Release, *Fant*, ECF No. 669-1.[5] The court preliminarily approved the settlement the following month. *Fant*, ECF No. 675; *see* Fed. R. Civ. P. 23(e)(1). The Order Granting Preliminary Approval certified modified classes for settlement purposes:

> ***Bearden* Settlement Class**: All persons who have, at any time from February 8, 2010, through December 30, 2022, been kept in jail by the City of Ferguson for failing to pay a fine, fee, bond, surcharge, or cost, without an inquiry into their ability to pay.
>
>> **Modified *Gerstein* Settlement Class** (a subclass of the *Bearden* Settlement Class): All persons who have, at any time from February 8, 2010, through December 30, 2022, been held in jail by the City of Ferguson after a warrantless arrest with no finding of probable cause by a neutral magistrate for their arrest and continued detention.
>>
>> **Warrant Settlement Class** (a subclass of the *Bearden* Settlement Class): All persons who have, at any time from February 8, 2010, through December 30, 2022, been held in jail by the City of Ferguson after being arrested on a warrant issued by the City.
>>
>> **Post-Judgment Settlement Class** (a subclass of the *Bearden* Settlement Class): All persons who have, at any time from February 8, 2010, through December 30, 2022, been jailed by the City of Ferguson because of their non-payment in connection with a prior judgment.

---

5 *See also* Ferguson Class Action, https://www.fergusonclassaction.com/wp-content/uploads/2024/02/Ferguson-Settlement-Agreement-Execution-Copy.pdf [https://perma.cc/X5HB-EGGE] (last visited Sept. 21, 2026).

> **<u>Jail-Conditions Settlement Class</u>**: All persons who, at any time since February 8, 2010, through December 30, 2022, were held in the City of Ferguson Jail.

*Fant*, ECF No. 675 at 4. The same Order preliminarily appointed Maureen Hanlon of ArchCity Defenders, among other attorneys, as class counsel for the settlement classes. *Id.* at 5.

Per the terms of the Settlement Agreement and Release, the settlement was structured as an opt-out class. *Id.* at 3. Class counsel submitted a class notification plan to the court, which it approved. *See id.* The plan provided for multiple means of giving notice to the class members. The settlement administrator would mail a postcard to class members, publish a notice in the *St. Louis American* for four consecutive weeks, publish a notice in the *St. Louis Post-Dispatch*, and post notices for two weeks on social media platforms that directed individuals to the settlement website set up by the settlement administrator. Doc. [322] ¶ 17. The website contained the complete "long form notice" and other information regarding the settlement along with a toll-free phone number where class members could obtain more information about the settlement. *Id.* ¶ 20. The court found that the notice provided to class members was adequate and fully complied with due process. *Fant*, ECF No. 684 at 2–3.

The long form notice warned class members that if they did not exclude themselves, "then any claims [they] ha[d] that were or could have been raised in the Lawsuit, including but not limited to any claims regarding the City of Ferguson's use of 'sham warrants' and claims for injunctive relief, between February 8, 2010 and December 30, 2022, will be fully and completely resolved, so that you cannot sue,

continue to sue, or be part of any other lawsuit against the City of Ferguson related to these claims." *Fant*, ECF No. 669-5 at 8.[6] And it warned that opting out of the settlement was the "only option that lets you retain the right to bring *or continue* your own lawsuit against the City of Ferguson based on *any of the issues* in this Lawsuit." *Id.* at 1 (emphasis added).

The court's Order and Final Judgment Granting Final Approval of Class Action Settlement provided that:

> 4. In the event that the Effective Date occurs, the Releasing Parties[7] shall automatically be deemed to have fully and irrevocably released and forever discharged the Released Parties[8] of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, that result from, arise out of, are based upon the conduct, omissions, duties or matters during the Class Period that were or could have been alleged in the Action (the "Released Claims").
>
> . . .
>
> 6. Each and every Class Member is and shall be conclusively and forever bound by the Settlement Agreement. The Settlement Agreement

[6] *See also* Ferguson Class Action, https://www.fergusonclassaction.com/wp-content/uploads/2024/02/2024.02.27-Exhibit-D_Long-Form-Notice.pdf, [https://perma.cc/47XS-H77Y] (last visited Sept. 21, 2026).

[7] "Releasing Parties" were defined as "Plaintiffs and all Class Members, and each of their respective executors, representatives, heirs, predecessors, assigns, beneficiaries, successors, bankruptcy trustees, guardians, joint tenants, tenants in common, tenants by entireties, agents, attorneys, and all those who claim through them or on their behalf." *Fant*, ECF No. 669-1 ¶ 2.33.

[8] "Released Parties" were defined as "Defendant and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and the present and former City Council Members, appointed and elected officials, officers, employees, police or other law enforcement officers, corrections officers, prosecutors, and persons participating in the operation of the Municipal Court within the City of Ferguson, including municipal judges, clerks and other personnel, agents, insurers, members, attorneys, advisors, consultants, representatives, partners, independent and other contractors, predecessors, successors and assigns of each of them." *Fant*, ECF No. 669-1 ¶ 2.32.

> shall be preclusive in all pending and future lawsuits or other proceedings. It shall be binding as to all the Released Claims.

*Fant*, ECF No. 684.

**II.**

There is an initial issue to address before getting to Defendants' Motion for Summary Judgment. When Defendants raised the *Fant* issue in this action, the Court granted Defendants' leave to amend their operative answer to assert res judicata as an affirmative defense. Doc. [296]; *see* Fed. R. Civ. P. 15(a)(2). Perhaps worried about his chances on the merits of Defendants' res judicata defense, Watson asks that the Court reconsider its allowance for Defendants to amend their pleading to include res judicata as an affirmative defense. Doc. [301]. The Court will deny Watson's Motion.

A.

First, the Court stands by its ruling allowing amendment. Elsewhere, this Court has previously described "the liberal amendment standard that the Federal Rules establish" for pleadings. *See Allen v. Semi Trucking, LLC*, 4:23-cv-0639-MTS, 2025 WL 3687386, at *1, n.* (E.D. Mo. Dec. 19, 2025). That liberal amendment standard applies to the amendment of answers, not just to the amendment of complaints. *Kontrick v. Ryan*, 540 U.S. 443, 459 (2004); *see* Fed. R. Civ. P. 7(a). This Court still discerns no "undue delay, bad faith or dilatory motive" by Defendants here. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Amendment therefore must be freely given. *See id.*[9] "Proper

[9] Watson also argues that Federal Rule of Civil Procedure 16(b)(4) applies here because this Court had issued a scheduling order in this matter, and the deadline to file amended pleadings had passed. Doc. [302] at 5–7. This Court entered the most recent scheduling order in this action prior to the *Fant*

pleading is important, but its importance consists in its effectiveness as a means to accomplish the end of a just judgment." *Maty v. Grasselli Chem. Co.*, 303 U.S. 197, 201 (1938). Justice is therefore best served by deciding the actual substantive issue of res judicata, not on the technicalities of pleading.

B.

In addition, amendment was not even necessary here to reach the res judicata issue because a federal court, where appropriate, may raise res judicata *sua sponte*. *Arizona v. California*, 530 U.S. 392, 412 (2000) (citing *United States v. Sioux Nation*, 448 U.S. 371, 432 (1980) (Rehnquist, J., dissenting)). Reaching the issue *sua sponte* is "fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *Id.* This Court has allotted a significant amount of time to this litigation and the *Fant* litigation, as is its unflagging duty in cases and controversies properly before it. For example, Court records show that, to date, 24,282 pages of documents have been filed in *Fant*. *See Fant*, ECF No. 713. If there are colorable arguments that the settlement in the yearslong *Fant* litigation precludes Watson's claims here, "[a]ddressing the merits of res judicata in this case helps avoid judicial waste." *See Emerald Pointe, LLC v. Taney County*, 78 F.4th 428, 433 (8th Cir. 2023) (citation modified).

---

settlement. That amounts to a significant changed circumstance, which satisfies Rule 16(b). *See Ellingsworth v. Vermeer Mfg. Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020).

C.

Lastly on this point, allowing amendment is in line with Federal Rule of Civil Procedure 1's command that the Rules be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." If this Court declined to decide this fully briefed res judicata issue in this action, it would only delay the determination of this issue because Defendants would be free to seek an injunction from Judge Audrey G. Fleissig, who entered judgment in *Fant*, enjoining Watson from prosecuting this action. *See Benacquisto v. Am. Express Fin. Corp.*, 44 F.4th 741, 743 (8th Cir. 2022); *Thompson v. Edward D. Jones & Co.*, 992 F.2d 187, 189–90 (8th Cir. 1993); *see also In re Managed Care*, 756 F.3d 1222, 1233 (11th Cir. 2014) (explaining that federal courts "may invoke the authority conferred by the All Writs Act to enjoin parties from prosecuting separate litigation to protect the integrity of a judgment entered in a class action and to avoid relitigation of issues resolved by a class action"). Consequently, a district judge of this Court would be tasked with deciding this issue regardless of whether the undersigned allowed Defendants to meet pleading formalities in this action. There is no reason to punt this ripe issue for another day to then be decided in a courtroom on another floor. *Cf. Kern v. TXO Prod. Corp.*, 738 F.2d 968, 973 (8th Cir. 1984) ("[O]ne court is as good as another." (quoting *Young v. S. Pac. Co.*, 25 F.2d 630, 632 (2d Cir. 1928) (L. Hand, J., concurring))).

*

For these reasons, the Court will deny Watson's Motion for Reconsideration.[10]

## III.

With the res judicata issue properly before the Court, the Court turns to Defendants' Motion for Summary Judgment. It is well settled that the defense of res judicata may properly be decided in a motion for summary judgment. *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018) (citing *Smith v. United States*, 369 F.2d 49, 53 (8th Cir. 1966)); *accord Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1441 (9th Cir. 1990). To succeed on their Motion, Defendants must meet the usual Rule 56 standard.

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The movant bears the initial responsibility of informing the district court of the basis for its motion and must identify the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)); *see* Fed. R. Civ. P. 56(c)(1). Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the

---

[10] The Defendants pleaded the affirmative defenses of waiver and estoppel. Doc. [43] at 17; Doc. [44] at 15; *see* Fed. R. Civ. P. 8(c). They maintain that they would succeed on the defense of waiver under the same res judicata logic such that amendment was not even needed. Doc. [312] ¶ 6. The Court need not address this argument since it finds proceeding with Defendants' res judicata defense is proper.

movant as not in dispute is, in fact, genuinely disputed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

A.

Res judicata is also termed claim preclusion. *Res Judicata*, *Black's Law Dictionary* (12th ed. 2024). It "comes from the Latin meaning 'a thing adjudicated,' and it refers to situations in which an earlier judgment can bind a later proceeding on one or more issues." *Cont'l Cas. Co. v. Indian Head Indus., Inc.*, 941 F.3d 828, 835 (6th Cir. 2019). "Under res judicata 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Yankton Sioux Tribe v. U.S. Dep't of Health & Hum. Servs.*, 533 F.3d 634, 639 (8th Cir. 2008) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). The doctrine is "a manifestation of the recognition that endless litigation leads to chaos; that certainty in legal relations must be maintained; that after a party has had his day in court, justice, expediency, and the preservation of the public tranquility require that the matter be at an end." *Schroeder v. 171.74 Acres of Land, More or Less*, 318 F.2d 311, 314 (8th Cir. 1963) (citation modified).

When a court approves a settlement agreement and embodies it in a judgment, that agreement is "entitled to full res judicata effect." *In re Gibraltar Res., Inc.*, 210 F.3d 573, 576 (5th Cir. 2000); *accord Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1141 (9th Cir. 2013); *cf. Arizona*, 530 U.S. at 414 (noting "consent judgments ordinarily support claim preclusion"). Thus, a court-approved settlement embodied in a judgment will preclude at least some subsequent litigation. The question, then, becomes what the scope of the res

judicata effect is. Ordinarily, when federal common-law principles govern, the application of a familiar test determines the scope of res judicata. *See Saylor v. Jeffreys*, 131 F.4th 864, 866 (8th Cir. 2025). That familiar test does not answer the question, though, when a judgment incorporates a settlement agreement, as is the case here.

"The answer to the res judicata question" in cases where a judgment incorporates a settlement agreement is "determined by inspecting the language of the judgment, . . . including the settlement agreement that was included in that judgment." *In re Gen. Am. Life Ins. Co. Sales Pracs. Litig.*, 357 F.3d 800, 803 (8th Cir. 2004); *accord Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1291 (11th Cir. 2004) (explaining that courts should look not "to traditional principles of *res judicata*" but rather to the judgment and the settlement agreement's "express terms" to determine the scope of its preclusive effect); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 743 F. App'x 802, 803 (9th Cir. 2018) (mem.) (explaining the court would "look to the terms of the settlement agreement, rather than general principles of res judicata, to determine the preclusive effect of the judgment"). The Eighth Circuit has recognized that, once incorporated into a judgment, "a settlement agreement is interpreted as a contract." *In re Gen. Am. Life Ins.*, 357 F.3d at 800 (quoting *Thompson*, 992 F.2d at 191 n.5). Thus, the Eighth Circuit has explained that courts should look to the "plain language of the terms in the [class action] settlement agreement" to determine whether subsequent claims are "precluded." *Benacquisto*, 44 F.4th at 746.

In *Fant*, Judge Fleissig explicitly incorporated the settlement agreement into the judgment. *See Fant*, ECF No. 684 at 5 ("The Parties will comply with the terms of the

Settlement Agreement, and the terms of the settlement are incorporated in this Order and Judgment."). Consequently, this Court now must determine *Fant*'s preclusive effect by interpreting its settlement agreement, as incorporated into the judgment, rather than by applying ordinary res judicata principles of claim preclusion. *See* 6 *Newberg & Rubenstein on Class Actions* § 18:19 (6th ed.) (explaining settled class actions bar later actions "through contractual enforcement of the terms of the settlement agreement, not through preclusion law" because court approval "turn[s] the private settlement into a judicial ruling"); *contra* Doc. [321] at 7–8 ("Defendants muddy the waters by focusing almost exclusively on the language of the Fant Settlement and not the elements of the claim preclusion test.").

The Court therefore looks to the text of *Fant*'s settlement agreement and judgment.

B.

Through the *Fant* judgment, Watson "fully and irrevocably released and forever discharged" the City of Ferguson and Officer Boyd

> of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, . . . whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, that result from, arise out of, are based upon the conduct, omissions, duties or matters during the Class Period that were or *could have been alleged* in the [*Fant*] Action.

*Fant*, ECF No. 684 at 5–6 (emphasis added). Thus, if Watson could have alleged these claims he has here in *Fant*, then these claims are precluded. Watson seems to acknowledge this interpretation but argues that his claims here could not have been

alleged in *Fant*. *See* Doc. [321] at 11 ("Mr. Watson's claims are not encompassed by the terms of the Fant class action release as they could not have been alleged in the Fant Lawsuit."). What Watson does not provide, though, is any reason why these claims could not have been alleged in *Fant*.

1.

Calling the claims "completely distinct," *id.* at 9, Watson seems to suggest that his claims here could not have been joined with his claims in *Fant*. Watson is incorrect because of permissive claim joinder under the Federal Rules of Civil Procedure.

a.

While largely forgotten today, litigants once labored under the "inflexible and restrictive" system of common-law pleading. *See* Charles E. Clark, *Procedure: The Handmaid of Justice*, 23 Wash. U. L.Q. 297, 308–09 (1938). But that is no longer the case. The implementation of the Federal Rules of Civil Procedure in 1938 ushered in the modern trend of the "freedom to join diverse claims . . . in a single civil action." *Id.* at 308.

For the last eighty-eight years, Federal Rule of Civil Procedure 18 has permitted permissive claim joinder. *See* Edson R. Sunderland, *The New Federal Rules*, 45 W. Va. L.Q. 5, 13–14 (1938). It allows a "party asserting a claim" to "join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). In other words, it allows "a party to plead multiple claims of *all* types against an opposing party." Fed. R. Civ. P. 18 advisory committee's note to 1966 amendment (emphasis added). The Rule "permits and encourages" claim joinder. *Leimer v. Woods*,

196 F.2d 828, 833 (8th Cir. 1952); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (explaining that the "joinder of claims, parties and remedies is strongly encouraged").[11]

Under this longstanding rule, Watson therefore could have brought all the claims he had against the City of Ferguson in one action (e.g., the *Fant* action) "as a matter of right." *See* 6A *Wright & Miller's Federal Practice & Procedure* § 1582 (3d ed. 2026 update) ("Technically, there can be no misjoinder of claims."). The *Fant* judgment accordingly precludes Watson's claims in this action against the City of Ferguson. Interpreting the language in *Fant* any other way disregards Rule 18 and the permissive claim joinder that has existed in federal district courts for nearly ninety years. Indeed, it is farcical to think that the parties in *Fant*, represented by sophisticated counsel, drafted settlement language—subsequently approved by a federal district court—that they intended to be in disharmony with a Federal Rule of Civil Procedure, especially one as prominent as Rule 18. *See* Charles E. Clark, *The Proposed Federal Rules of Civil Procedure*, 22 A.B.A. Journal 447, 448 (1936) (describing permissive joinder as "among the most important features" of the new Rules).

b.

*Fant*'s language similarly encompasses Watson's claims against Officer Boyd because Watson could have brought those in *Fant*, too. Since Watson could have brought

---

[11] Ironically, one of the reasons claim joinder is encouraged is to avoid claim preclusion arguments in other actions. *See* 6A *Wright & Miller's Federal Practice & Procedure* § 1582 (3d ed. 2026 update) ("The possibility of being barred from asserting a particular claim in a second suit undoubtedly encourages cautious attorneys to join claims that actually might not be encompassed by claim-preclusion rules."); *Lanier Bus. Prods. v. Graymar Co.*, 342 F. Supp. 1200, 1203 (D. Md. 1972) (noting that joining all the claims a plaintiff has against his opponent avoids "possible claims of res judicata at a later date").

all his claims against the City of Ferguson in *Fant*, he also could have joined Officer Boyd as a *Fant* defendant and asserted the claims Watson has against Boyd. *See* Fed. R. Civ. P. 20(a)(2). True, Rule 20(a)(2) does not allow for as robust of a joinder of defendants as Rule 18(a) allows for claims, but Rule 20's requirements are not onerous. *See id.* The Rule allows a plaintiff to join multiple defendants in a single action "if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." Wright & Miller, *supra*, § 1655. Those requirements are plainly met here. One need look no further than to the fact that, in this action, Watson joined both the City of Ferguson and Officer Boyd. This joinder of parties is commonplace. *See Alvarez v. City of Santa Ana*, 802 F. Supp. 3d 1186, 1204 n.11 (C.D. Cal. 2025) ("*Monell* claims against a municipality who employed an officer who allegedly violated a person's constitutional rights are often brought simultaneously with a claim against the officer.").[12]

2.

If the meaning of "could have been alleged" is unclear, which is difficult to imagine, another portion of the release points to it being interpreted broadly. In the *Fant* release, the parties' proposal included a proviso that stated "[n]othing herein shall be construed to release any claims that Defendant or Allied World Assurance Company Holdings, Ltd, may have against St. Louis Area Insurance Trust ('SLAIT'), including, without limitation, any appeal(s)." *Fant*, ECF No. 669-1 ¶ 13.2. The parties therefore

---

[12] Recall also that the *Fant* settlement specifically included among the "Released Parties" the City of Ferguson's "police or other law enforcement officers." *Fant*, ECF No. 669-1 ¶ 2.32.

plainly knew how to exclude claims from the broad settlement language. A look to other settlements demonstrates this knowledge as well.

Elsewhere, in cases raising *Fant*-like claims against different municipalities, the parties' settlement agreements contained explicit carve-outs regarding other claims. *See* Doc. [323] ¶ 54. Take *Thomas v. City of Edmundson*, for example. 4:18-cv-2071-RLW (Mo. E.D.). Like *Fant*, the *Thomas* plaintiffs were represented by attorneys with ArchCity Defenders, including Maureen Hanlon. *See id.* The plaintiffs maintained that the defendants violated plaintiffs' constitutional rights under color of state law by incarcerating them because they could not afford to pay debts allegedly owed from traffic and other minor offenses and by causing the plaintiffs to pay fines and fees for traffic and other minor offenses. *Thomas*, ECF No. 1. When the parties settled, though, their proposed language differed significantly from *Fant*. The parties' settlement agreement contained a carve-out that stated "the Edmundson Released Claims do not include any Settlement Class Member's claims or causes of action, if any, related to alleged use of excessive force by Defendant's law enforcement officers during the course of an arrest." *Thomas*, ECF No. 86-1 at 16.

The plaintiffs (and their ArchCity Defenders attorneys) plainly knew how to carve claims out. That they did not carve out Watson's claims strongly suggests that the broad language they proposed was "an integral part of the settlement bargain entered into." *See Thompson*, 992 F.2d at 190 n.5. The Court "cannot now modify the terms of that bargain at the insistence of one class member." *Id.*

3.

With no joinder-related reason why Watson could not have brought these claims in *Fant*, he turns to Rule 23. Doc. [321] at 13–14. He argues that class certification in *Fant* would have faltered if he brought these claims there; therefore, he could not have brought them. *Id.* That argument misses the mark. First, it rests on a faulty premise because Rule 23 does not require every claim in an action to be suitable for class-wide adjudication. The Rule provides that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Consequently, "actions involving both individual and class claims are not uncommon." *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986) (citing *Marshall v. Kirkland*, 602 F.2d 1282 (8th Cir. 1979)).

In any event, Watson's argument addresses a question irrelevant to the scope of the release. The *Fant* release was not limited to claims that could have been *adjudicated* on a class-wide basis; rather, it extended to claims that could have been *alleged* in *Fant*. Whether a claim could have been alleged is not the same question as whether it could have been adjudicated on a class-wide basis. Watson therefore conflates two separate questions: whether he could have brought the claims in *Fant* and whether the court could have certified or maintained a particular class configuration encompassing them.

Further, the Eighth Circuit rejected an argument like Watson's in *Thompson*. 992 F.2d at 190. There, the appellant maintained that a class action settlement release did not include her claims because her claims were "inherently individual in nature and could not have been brought in the class action without destroying the commonality, typicality and

adequacy of representation requirements of Rule 23(a).” *Id.* The Eighth Circuit rejected her argument, noting that her argument “ignore[d] the broad language” of the notice and the final judgment. *Id.* So too here.

4.

Watson also seems to argue that if the words in the *Fant* settlement were given their plain meaning, the settlement would have been improper. He notes that it is “certainly unlikely any federal court would have approved that.” Doc. [321] at 11. *But see Burnett v. Nat’l Ass’n of Realtors*, --- F.4th ----, No. 24-3444, 2026 WL 2421806, at *8 (8th Cir. Aug. 19, 2026) (“It is not at all uncommon for settlements to include a global release of all claims past, present, and future, that the parties might have brought against each other.” (quoting *Williams v. Gen. Elec. Cap. Auto Lease, Inc.*, 159 F.3d 266, 274 (7th Cir. 1998))); *In re Gen. Am. Life Ins.*, 357 F.3d at 805 (noting “most settling defendants insist on” “including in a settlement a description of claims that is somewhat broader than those that have been specifically pleaded”). Watson points to what some call the identical factual predicate doctrine. *See* Doc. [321] at 8 (citing *TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, 959 F.3d 1318, 1327 (11th Cir. 2020)); *id.* at 13. This argument also fails to provide Watson with any shelter from *Fant* for multiple reasons.

a.

First, Watson’s identical factual predicate argument comes too late because he should have raised this issue, if at all, at *Fant*’s settlement approval stage. “Rule 23(e) wisely requires court approval of the terms of any settlement of a class action.” *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986). Watson could have objected to the proposed

settlement. Fed. R. Civ. P. 23(e)(5)(A); *see, e.g.*, *Spearman v. Nelnet Servicing, LLC*, 4:22-cv-3191-JMG, 2025 WL 974065, at *2 (D. Neb. Mar. 31, 2025). When he decided not to raise the issue, he bound himself to the settlement language by declining to opt out of it. Like in *Thompson*, Watson "was notified of the terms of the proposed settlement," which "clearly indicated" any claims he could have alleged that "would be barred." *Thompson*, 992 F.2d at 190 n.4. Nevertheless, he "did not opt out of the class, did not voice any objection to the terms of the settlement, and did not seek relief from the final judgment of dismissal and order under Rule 59(e) or 60(b) of the Federal Rules of Civil Procedure." *Id.* at 191–92 (citation modified). Since he chose not to do so, "[h]e cannot now object to the terms of the settlement." *Id.* at 190 n.4. He is "bound by [it] and must abide by its express terms." *Id.* at 192.

Since *Thompson*, the Eighth Circuit has made clear that, when the "text of [a] settlement agreement and of the notice sent to class members was sufficiently explicit to encompass the claim that plaintiff now seeks to assert," a class action settlement "[i]s not vulnerable to a collateral attack." *See In re Gen. Am. Life Ins.*, 357 F.3d at 802; *accord Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012) ("There is considerable support for the proposition that a collateral attack is not a vehicle for an absent class member to retrospectively challenge the propriety of class certification under the Federal Rules of Civil Procedure."). If Watson took issue with the language of the settlement—language his own attorneys in this case helped draft—he could have raised it with the *Fant* court. If the *Fant* court disagreed with him, he could have appealed to the Eighth

Circuit. If any of that, or all of it, were too much trouble, he simply could have opted out of the *Fant* settlement. He did none of those things, and he is therefore bound by it.

b.

Watson's argument surrounding the identical factual predicate doctrine fails for at least another reason: applying the *Fant* judgment to Watson's claims here is perfectly in line with the doctrine. The Supreme Court has the "ultimate authority to determine and declare" the "'uniform federal rule[s]' of res judicata," *see Taylor v. Sturgell*, 553 U.S. 880, 891 (2008), but it has never adopted the identical factual predicate doctrine, *see* Kris J. Kostolansky & Diane R. Hazel, *Class Action Settlements: Res Judicata, Release, and the Identical Factual Predicate Doctrine*, 55 Idaho L. Rev. 263, 275 (2019). This "lack of Supreme Court guidance" has left the doctrine's "interpretation and application to the respective circuits." *Id.*

Until very recently, the Eighth Circuit had not expressly recognized the identical factual predicate doctrine. *See id.* at 275 n.91; *cf. In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 91 F.4th 174, 183 n.3 (4th Cir. 2024). The furthest it had gone was in *Thompson*, where it mentioned in one footnote that "[c]ourts should no doubt be cautious about permitting issue preclusion in the context of a settlement of a class action," *Thompson*, 992 F.2d at 190 n.5 (quoting *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982)), and mentioned in another footnote that the appellant's claims "rest on the same or similar facts as the class action claims," *id.* at 191 n.6.

Last month the Eighth Circuit "acknowledged that district courts must apply the identical factual predicate test." *Gibson v. Nat'l Ass'n of Realtors*, --- F.4th ----, No. 24-3473, 2026 WL 2580277, at *3 (8th Cir. Sept. 1, 2026) (per curiam) (citing *Burnett*, 2026 WL 2421806, at *8). But it did so in an appeal of the class action itself. *See id.* The *Gibson* and *Burnett* cases did not touch the holdings of *Thompson* or *In re General American Life Insurance*, which both limited the collateral review of class actions. *Cf. Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel.").

The Eighth Circuit has now explained that a settlement agreement in a class action "may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action," but that it can do so "only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." *Burnett*, 2026 WL 2421806, at *8 (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)) (citation modified). Therefore, a release, the Eighth Circuit explained, "may lawfully bar later actions arising from the same cause as the settled litigation." *Id.* (quoting *In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1090 (11th Cir. 2023)). That is, it can apply to "all legal theories and claims arising out of a common nucleus of fact." *Id.* *Burnett* also recognized that the Eighth Circuit "allow[s] 'very broad' releases" in class actions. *Burnett*, 2026 WL 2421806, at *9 (quoting *Gen. Am.*, 357 F.3d at 803).

Watson's claims here fall within *Fant*'s very broad release. According to Watson's own allegations, Ferguson officers prowled about the City looking for

opportunities to issue tickets "to generate as much revenue as possible for the City." Doc. [35] ¶ 134. Ferguson, Watson alleged, "incentivize[d] officers to write a multitude of tickets to generate revenue." *Id.* ¶ 100. In turn, "Ferguson Police Officers routinely detained citizens without probable cause in order [to] write them as many tickets as they could conceive of." *Id.* ¶ 102. Ferguson, Watson added, "had a custom of encouraging officers to generate revenue by writing excessive tickets, conducting pretextual searches and seizures, and engaging in other unconstitutional misconduct." *Id.* ¶ 136.

Watson alleges that it was this revenue-driven policing that led directly to his encounter with Officer Boyd. Watson's First Amended Complaint attached a report from the Department of Justice concluding that "Ferguson's law enforcement practices are shaped by the City's focus on revenue rather than by public safety needs." Doc. [35-4] at 5. The report describes Watson's encounter with Officer Boyd that spurred this action. *Id.* at 6. It tells of an event "in the summer of 2012," when "a 32-year-old African-American man sat in his car cooling off after playing basketball in a Ferguson public park" only to be accosted by a police officer who "arrested the man, reportedly at gunpoint, charging him with eight violations of Ferguson's municipal code." *Id.* The report further concluded that Ferguson City officials "consistently set maximizing revenue as the priority for Ferguson's law enforcement activity," and that "City, police, and court officials for years have worked in concert to maximize revenue at every stage of the enforcement process, beginning with how fines and fine enforcement processes are established." Doc. [35] ¶ 98 (quoting Doc. [35-4] at 9–15).

The *Fant* case involved the same alleged revenue-driven enforcement scheme. Filed in 2015 by individuals who were jailed by the City of Ferguson and who were represented by some of the same ArchCity Defenders attorneys, the *Fant* plaintiffs alleged that the City of Ferguson had "a municipal scheme designed to brutalize, to punish, and to profit" by jailing individuals who were in debt to the City from "tickets or other minor offenses" and unable to make a monetary payment to the City. *Fant*, ECF No. 53 ¶¶ 1, 4. This drive for profit, the *Fant* plaintiffs alleged, "infect[ed] City police decisions, including decisions about . . . issuing tickets," and this focus disproportionately targeted blacks. *Id.* ¶ 168 (alleging that, "[i]n Ferguson, blacks were significantly more likely to be stopped, searched, and arrested than whites"). In seeking class certification, the plaintiffs in *Fant* relied on the same DOJ report that describes Watson's encounter and that Watson attached to his First Amended Complaint in this action. *Fant*, ECF No. [115-39].

Thus, Watson's claims here and the claims in *Fant* arose out of this same common nucleus of fact. The *Fant* classes existed because people were allegedly accosted by police, ticketed, and jailed in a scheme by the City of Ferguson to make money. Watson alleges that officers arrested and ticketed him as part of the same scheme. Indeed, he was a *Fant* class member at least in part because of his arrest that day. Doc. [35] ¶¶ 40–45. His claims here are therefore the prologue to his claims in *Fant*. Watson's claims here are well within the identical factual predicate because they do not "lie distinctly outside the ambit of the [*Fant*] class action proper." *See In re Lumber Liquidators*, 91 F.4th at 185 (Wilkinson, J., concurring).

c.

If more is needed to demonstrate that the *Fant* action and this action are sufficiently similar, look to the proceedings in *Fant* after the settlement. Attorneys with ArchCity Defenders moved the *Fant* court to distribute the remaining class settlement funds to two community groups as *cy pres* recipients. *Fant*, ECF No. 709. In fact, the very same attorney who signed Watson's brief opposing Defendants' Motion for Summary Judgment in this action—arguing that this action is too dissimilar to *Fant*—was listed on the brief that asked the *Fant* court to give the remaining funds to the community groups. *Fant*, ECF No. 710.

The Eighth Circuit has been clear that remaining funds from a class action "should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1067 (8th Cir. 2015) (quoting *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir. 2002)). ArchCity Defenders were therefore representing to the *Fant* court that these two community groups were sufficiently similar to the *Fant* class as required by Eighth Circuit precedent. *See* Fed. R. Civ. P. 11(b).

One of these groups was the Michael O.D. Brown We Love Our Sons & Daughters Foundation. According to the website that ArchCity Defenders cited to the *Fant* court, *see Fant*, ECF No. 712 at 5, the Foundation seeks to "transfor[m] public policy systems to reduce incidents of police brutality and other misconduct," Michael O.D. Brown We Love Our Sons & Daughters Foundation,

https://michaelodbrown.org/about/ [https://perma.cc/HSL6-TDBM] (last visited Sept. 21, 2026). The *Fant* court approved the *cy pres* distribution to the Michael O.D. Brown We Love Our Sons & Daughters Foundation. In doing so, it noted that the "Court agrees with Plaintiffs that the two proposed recipients grew out of the same public issues as the underlying litigation, *namely, scrutiny regarding the policing practices in the City of Ferguson* and other North St. Louis County municipalities." *Fant*, ECF No. 713 (emphasis added).

* * *

The plain language of the judgment in *Fant* encompasses Watson's claims in this action, and none of the arguments he raises convinces this Court to adopt a contorted reading of *Fant*'s judgment as opposed to its plain meaning. Even if Watson had timely raised the identical factual predicate argument at the *Fant* class settlement stage, which he did not do, his argument would have failed. His claims in this action and his claims in *Fant* arose out of a common nucleus of fact.

C.

"The federal common law of preclusion is, of course, subject to due process limitations." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Watson has not argued that it offends due process to enforce the *Fant* settlement agreement against him. *See generally* Doc. [321]. Nor would it offend due process. The Eighth Circuit has noted in this context that "[t]he most important element of due process is adequate notice." *In re Gen. Am. Life Ins.*, 357 F.3d at 800. It cannot even be argued in good faith that there was any notice issue in *Fant*, especially as to Watson. *Fant* class members received actual notice

via the United States Postal Service. Notice was also published in multiple St. Louis newspapers, and local media independently covered the settlement as a news story. Doc. [322] ¶¶ 17, 21.

Further, Watson is the least likely *Fant* class member that could argue any notice issue. His own attorneys, like Maureen Hanlon of ArchCity Defenders, were class counsel in *Fant* while they also represented Watson in this case. In "our system of representative litigation . . . each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *See Link v. Wabash R.R.*, 370 U.S. 626, 634 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1880)); *accord Washington v. Parkinson*, 737 F.3d 470, 473 (7th Cir. 2013) (explaining that "an attorney is the agent of her client, and an agent's knowledge is imputed to her principal"); *cf. Nick v. Morgan's Foods, Inc.*, 270 F.3d 590, 596 (8th Cir. 2001) ("It is a well-established principle in this Circuit that a party may be held responsible for the actions of its counsel.").

The Due Process Clause also "requires that the named plaintiff at all times adequately represent the interests of the absent class members." *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 812 (1985). Just as Watson did not make a due process argument more broadly, he did not make an adequacy argument specifically. There is no adequacy issue here. There were numerous class representatives in *Fant*. They litigated tenaciously for years before reaching a settlement with the City of Ferguson in arm's-length negotiations with an experienced mediator, which was approved by a district judge of this Court. Given the similarity of Watson's claims with those of the class members,

they adequately represented him. *See* 1 *Newberg and Rubenstein on Class Actions* § 3:58 (6th ed.) (explaining that adequacy "does not require complete identity of claims or interests between the proposed representative and the class"). And Watson could not credibly argue that the *Fant* class counsel were inadequate when they included some of his own attorneys. *Cf. Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th Cir. 1992) ("A litigant chooses counsel at his peril.").

**IV.**

"The plain language of the settlement agreement and of the notice to class members controls the main issues in this case." *In re Gen. Am. Life Ins.*, 357 F.3d at 802. Watson's own attorneys proposed incredibly broad settlement language to the *Fant* court to settle that litigation. *Cf. Burnett*, 2026 WL 2421806, at *9 (quoting *Gen. Am.*, 357 F.3d at 803) ("[T]he Settlement's 'language is very broad' and 'clearly encompasse[s] the claim[s] in question.'"). In exchange for $4.5 million, the class would surrender all claims that could have been alleged in *Fant*. No one objected, and a district judge of this Court approved the settlement language. No one appealed that decision.

Watson easily could have chosen to opt out of that settlement. He chose not to do so, and, in return, he shared in the $4.5 million, as did his attorneys at ArchCity Defenders. Under the settlement language, he cannot continue to sue the City of Ferguson and Boyd. "As a class member who chose not to opt out after notice of the terms of the settlement, [Watson] is bound by the Order and Final Judgment in the [*Fant* action] and must abide by its express terms." *Thompson*, 992 F.2d at 192. Defendants

have shown that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reconsideration, Doc. [301], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment, Doc. [312], is **GRANTED**.

A separate Judgment will be entered herewith.

Dated this 22nd day of September 2026.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE